**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | Case No. 1:24-cv-03071-PKC<br><br>Hon. P. Kevin Castel |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND................................................................................................... 2

      A.    Summary Of Claims In The Instant Action And The Factually
           Related Derivative Action................................................................................ 2

      B.    The Alternative Service Defendants Reside Abroad And Refused
           To Accept Service Through Their U.S. Counsel ...................................... 3

      C.    Attempting Service Abroad Under The Hague Service Convention
           Is Time Consuming, Costly, And Not Certain To Succeed........................ 5

PROCEDURAL HISTORY...................................................................................................... 7

      A.    Relevant Proceedings In The Derivative Action ...................................... 7

      B.    The Instant Action.................................................................................... 8

ARGUMENT ............................................................................................................................ 8

      I.    Legal Standards For Alternative Service Under Fed. R. Civ. P. 4(f)(3)................ 8

      II.    Alternative Service Pursuant To Rule 4(f)(3) Is Appropriate Here ........................ 9

      A.    Alternative Service Is Not Prohibited By International Agreement ........... 9

      B.    The Court Should Exercise Its Discretion To Allow Alternative
           Service.................................................................................................. 10

      III.    Service On The Alternative Service Defendants By Email To Their U.S.
           Counsel In The Derivative Action Satisfies Due Process.................................... 12

CONCLUSION........................................................................................................................ 14

# TABLE OF AUTHORITIES

CASES

*In GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ...................................................................... *passim*

*In re BRF S.A. Sec. Litig.*,
    2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) ............................................... 8, 9, 12, 13

*Jian Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y. 2013) ....................................................................... 13

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
    2024 WL 2317715 (S.D.N.Y. May 22, 2024) ......................................................... 13

*Stream SICAV v. Wang*,
    989 F. Supp. 2d 264 (S.D.N.Y. 2013)............................................................... *passim*

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694, (1988).......................................................................................... 10

RULES

Fed. R. Civ. P. 4(f)................................................................................................ *passim*

N.Y. C.P.L.R. § 308(5) ............................................................................................... 7

OTHER AUTHORITIES

Hague Service Convention,
    20 U.S.T. 361, 1969 WL 97765................................................................................ 9

**PRELIMINARY STATEMENT**

Lead plaintiff Alessandro Somansino and named plaintiff Mark Lewko ("Plaintiffs") hereby move the Court, pursuant to Fed. R. Civ. P. 4(f)(3), to allow them to serve defendants Golden Meditech Holdings Limited ("Golden Meditech"), Yuen Kam, Ting (a/k/a Tina) Zheng, Bing Chuen (a/k/a Albert) Chen, and Mark Da-Jian Chen (the "Alternative Service Defendants"), by email to their respective U.S. counsel in factually related shareholder derivative litigation pending in the Supreme Court of the State of New York, County of New York, captioned *MW Gestion v. Golden Meditech Holdings Limited*, Index No. 653598/2023 (the "Derivative Action").

Alternative service is warranted to avoid the significant uncertainty, delays, and expense that would be required to attempt to serve the Alternative Service Defendants abroad through procedures under the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"). Plaintiffs recently filed their amended complaint, and Defendants' pre-motion letters relating to the amended complaint (including any proposed motions to dismiss) are due to be filed by October 28, 2024. Attempting to serve the Alternative Service Defendants through Hague Service Convention procedures would, even if eventually successful, result in an inefficient, staggered case schedule with various Defendants filing their initial motions at different times, months after the Defendants that have already been served. Each of the Alternative Service Defendants can be served effectively and immediately through their U.S. counsel in the closely related Derivative Action. Under these circumstances, requiring adherence to Hague Service Convention procedures would serve no purpose, and alternative service should be allowed.

**FACTUAL BACKGROUND**

**A.    Summary Of Claims In The Instant Action And The Factually Related Derivative Action**

This is a class action on behalf of investors in Global Cord Blood Corporation ("GCBC") stock between June 18, 2019 and May 9, 2022, bringing claims against the Alternative Service Defendants, GCBC, Jennifer Weng, and Cellenkos Inc. ("Cellenkos"), under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). *See* ¶¶1, 17-25.[1] Plaintiffs allege that Defendants carried out a scheme to defraud investors by misappropriating hundreds of millions of dollars from GCBC during 2015-2022 to companies controlled by Defendant Kam and his company Golden Meditech, and then attempting to cover up the theft via a sham transaction in which GCBC would acquire Cellenkos and purportedly pay $664 million to a Golden Meditech subsidiary for a license on certain Cellenkos products. *See* ¶¶4-7.

These same factual allegations are also at the core of the Derivative Action. The Derivative Action is brought by GCBC shareholders derivatively on behalf of GCBC, against defendants including each of the Alternative Service Defendants, and brings causes of action under Cayman Islands and New York law for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, dishonest assistance, knowing receipt, and unjust enrichment,. *See* PX A (Derivative Action complaint) at ¶¶20-24; 165-216. As in the instant action, Defendants' theft of hundreds of millions of dollars from GCBC, and the cover up Cellenkos transaction, are also of central importance to the Derivative Action. *See id.* at ¶¶71-133.

---

[1] References to "¶__" herein refer to paragraphs of the Amended Class Action Complaint For Violations Of The Federal Securities Laws ("Amended Complaint") (ECF No. 60), unless otherwise specified.

**B.     The Alternative Service Defendants Reside Abroad And Refused To Accept Service Through Their U.S. Counsel**

Defendant GCBC has been served in the Cayman Islands. *See* ECF No. 37. Defendant Weng has been served in New York. *See* ECF No. 36. Defendant Cellenkos has been served in Texas. *See* ECF No. 80. Plaintiffs do not expect that these Defendants will dispute the validity of service, and so Plaintiffs are not moving for alternative service as to GCBC, Weng, or Cellenkos.

Plaintiffs' counsel have attempted to find addresses in the U.S. where the Alternative Service Defendants could be served, through means including searches and review of SEC filings, LexisNexis SmartLinx Person Reports, LexisNexis Company Search, Golden Meditech's public reports and archived webpages, and documents filed in the Derivative Action. *See* Spencer Decl. ¶2.[2] Plaintiffs' counsel have not found any such potential U.S. service addresses other than the New York address where Defendants Weng and Mark Chen were previously served (*see* ECF Nos. 35, 36). *See* Spencer Decl. ¶2.

Defendant Yuen Kam has not been served. *See* Spencer Decl. ¶3. Kam is represented in the Derivative Action by Michael D. Birnbaum and Timothy W. Blakely of Morrison & Foerster LLP. *See* PX B (Case Detail page for the Derivative Action on the NYSCEF website, listing counsel); PX G (stipulation by Michael D. Birnbaum as counsel for Defendant Kam in the Derivative Action). Plaintiffs' counsel asked Mr. Birnbaum if Kam would accept service through counsel, and was told he would not. *See* Spencer Decl. ¶3. Plaintiffs' counsel then asked Kam's attorney for an address where Kam could be served, and no address was initially provided. *Id.*

---

[2] References to the "Spencer Decl." are to the Declaration of Garth Spencer In Support Of Plaintiffs' Motion For Alternative Service, filed herewith. References to "PX __" are to Plaintiffs' exhibits attached to the Spencer Declaration.

After Plaintiffs filed their Pre-Motion Letter re Motion for Alternative Service of Process (ECF No. 78) ("Pre-Motion Letter"), Mr. Birnbaum provided a service address for Kam in Beijing. *Id.*

Defendants Ting (a/k/a Tina) Zheng and Bing Chuen (a/k/a Albert) Chen have not been served. *See* Spencer Decl. ¶4. Zheng and Bing Chuen Chen are represented in the Derivative Action by Nicholas Walter and Jacob Miller of Jones Day. *See* PX B; PX I (stipulation by Nicholas Walter as counsel for Zheng and Albert Chen in the Derivative Action). Plaintiffs' counsel asked Mr. Miller and Mr. Walter if Zheng and Chen would accept service through counsel, and was told they would not. *See* Spencer Decl. ¶4. Plaintiffs' counsel then asked Zheng's and Chen's attorneys for addresses where they could be served. *Id.* Mr. Walter provided an address for Zheng in Beijing, and initially did not provide an address for Chen. *Id.* After Plaintiffs filed their Pre-Motion Letter, Mr. Walter provided a service address for Bing Chuen Chen in Shenzhen, China. *Id.*

Defendant Mark Chen was served via his spouse, Defendant Weng, in New York, but has not otherwise been served. *See* ECF No. 35; Spencer Decl. ¶5. Mark Chen's counsel have indicated that he intends to dispute the effectiveness of service. *See* ECF No. 39. Mark Chen is represented in the Derivative Action by David Hille and Robert Tiedemann of White & Case LLP. *See* PX B; PX C (Mark Chen affirmation filed in Derivative Action by David Hille). Mr. Hille also represents Mark Chen in the instant action. *See* ECF Nos. 38 (notice of appearance), 39 (letter to the Court). In an affirmation filed in the Derivative Action, Mark Chen claims to reside in Xiamen, China, and that he does not reside with Defendant Weng in New York. *See* PX C. Plaintiffs' counsel asked Mr. Hille and Mr. Tiedemann if Mark Chen would accept service through them, and was told he would not. *See* Spencer Decl. ¶5.[3] Plaintiffs' counsel then asked for an address where Mark Chen could be served, and Mr. Tiedemann provided an address in Xiamen, China. *Id.*

---

[3] Plaintiffs' inquiry was made without prejudice to their position that service on Mark Chen via

Defendant Golden Meditech has not been served. *See* Spencer Decl. ¶6. Golden Meditech and various of its subsidiaries are represented in the Derivative Action by Daniel Saval, Jay Mandel, and Robin Baik of Kobre & Kim LLP. *See* PX B; PX F (motion to dismiss reply brief filed in the Derivative Action on behalf of the Golden Meditech defendants by Kobre & Kim LLP). Golden Meditech is organized in the Cayman Islands, headquartered in Hong Kong, and primarily does business through its subsidiaries in Mainland China. *See* ¶18; PX D (Cayman companies registry search report); PX E (Golden Meditech annual report excerpts describing it as "a leading integrated healthcare enterprise in Mainland China" and listing principal places of business in Beijing and Hong Kong). Plaintiffs' counsel asked Messrs. Saval, Mandel, and Baik if Golden Meditech would accept service through them, and was told it would not. *See* Spencer Decl. ¶6.

## C.    Attempting Service Abroad Under The Hague Service Convention Is Time Consuming, Costly, And Not Certain To Succeed

Plaintiffs' counsel obtained time and cost estimates for service abroad using procedures under the Hague Service Convention for defendants in Mainland China and the Cayman Islands,[4] from two firms specializing in international service: Shreefer Law Firm, LLC ("Shreefer") (which worked with counsel for plaintiffs in the Derivative Action to attempt to serve foreign defendants in that case), and Civil Action Group dba APS International ("APS"). *See* Spencer Decl. ¶7.

According to the information obtained from Shreefer and APS, a service attempt in Mainland China through China's Hague Service Convention central authority would take

---

Defendant Weng was effective. *See* Spencer Decl. ¶5. Likewise, Plaintiffs' motion for alternative service on Mark Chen is made without prejudice to their position that service on him was already effective.

[4] Plaintiffs' counsel also obtained information concerning service in Hong Kong. However, because all of the Alternative Service Defendants previously believed to reside in Hong Kong have since provided service addresses in Mainland China, Hague Service Convention procedures in Hong Kong are not discussed herein.

approximately 5-12 months to complete. *See* Spencer Decl. ¶8. This is similar to the timeframe for service through China's central authority provided on the website of the Hague Conference on Private International Law ("HCCH")[5] concerning the Hague Service Convention, which states that the "[t]ime for execution of request" in China is "[a]round 6 months." *See* PX K (HCCH webpage for Hague Service Convention "China - Central Authority & practical information"). Plaintiffs' counsel understands from Shreefer and APS that Chinese authorities refuse to serve documents that they believe imply, through the manner of their geographic references, that Hong Kong is not a part of the People's Republic of China. *See* Spencer Decl. ¶8. Documents to be served in Mainland China must be translated into Chinese. *See id.*; PX K ("all documents and evidence to be served must be written in Chinese or that a translation in Chinese be attached thereto"). Plaintiffs' counsel obtained estimates of approximately $2,300 to $5,700 for translation of the Amended Complaint into Chinese. *See* Spencer Decl. ¶8.  Plaintiffs' counsel obtained estimates from Shreefer and APS of $570-$800 for service on one defendant in Mainland China, with service on each additional defendant ranging from $450 to $500. *See id*.

According to the information obtained from Shreefer and APS, a service attempt in the Cayman Islands through its Hague Service Convention central authority would take approximately 3-6 months to complete. *See* Spencer Decl. ¶9. Plaintiffs' counsel obtained estimates from Shreefer and APS of $450-$850 for service on one defendant in the Cayman Islands. *Id.* Service in the Cayman Islands under the Hague Service Convention can be expedited for completion in approximately two to nine weeks, at a cost of $1,350-1,950 for one defendant. *Id.*

---

[5] HCCH is an intergovernmental organization that administers the Hague Service Convention and various other international agreements.

## PROCEDURAL HISTORY

### A.     Relevant Proceedings In The Derivative Action

The complaint in the Derivative Action was filed on July 25, 2023. *See* PX A. On October 11, 2023, plaintiffs in the Derivative Action filed their first motion for alternative service pursuant to N.Y. C.P.L.R. § 308(5). *See* Derivative Action, NYSCEF Doc. No. 21. On December 13, 2023, Justice Masley denied the motion in part without prejudice. *See* Derivative Action, NYSCEF Doc. No. 141. On March 5, 2024, plaintiffs in the Derivative Action renewed their motion for alternative service pursuant to N.Y. C.P.L.R. § 308(5) by proposed *ex parte* order. *See* NYSCEF Doc. No. 307. The renewed motion was supported by an affirmation of Karina Shreefer, principal of Shreefer Law Firm, LLC, detailing the Derivative Action plaintiffs' unsuccessful efforts to serve defendants abroad including Albert Chen, Tina Zheng, Yuen Kam, and Mark Chen, using Hague Service Convention procedures. *See* PX H (Shreefer affirmation).

By order dated March 28, 2024, Justice Masley granted in part the Derivative Action plaintiffs' motion for alternative service, authorizing service via: (i) Golden Meditech's registered address in the Cayman Islands; (ii) email addresses for the individual defendants contained in a service list filed by GCBC's Joint Provisional Liquidators in the U.S. Bankruptcy Court for the Southern District of New York; and (iii) publication in the International Edition of the New York Times. *See* PX J (Ex Parte Order Authorizing Alternative Service Pursuant To CPLR 308(5)). On September 5, 2024 and September 10, 2024, oral argument was held on motions to dismiss brought by various defendants (including Mark Chen and Golden Meditech) in the Derivative Action. *See* Spencer Decl. ¶11. As of the time of the instant filing, no decision has been issued on the Derivative Action defendants' motions to dismiss. *Id.*

**B.      The Instant Action**

The initial complaint in the instant action was filed on April 22, 2024, naming various defendants including each of the Alternative Service Defendants. *See* ECF No. 1. On July 9, 2024, the Court entered an order appointing Alessandro Somansino as lead plaintiff, and appointing his counsel Glancy,  Prongay & Murray LLP as lead counsel. *See* ECF No. 56. On July 17, 2024, lead plaintiff filed a letter to the Court (joined in by Defendants Weng, Mark Chen, and GCBC), requesting a schedule including lead plaintiff's filing of an amended complaint by September 20, 2024, and Defendants' filing of pre-motion letters on or before October 28, 2024. *See* ECF No. 57. The Court so-ordered the Parties' proposed schedule on July 17, 2024. *See* ECF No. 58.

On September 20, 2024, Plaintiffs filed the Amended Complaint against the Alternative Service Defendants, GCBC, Jennifer Weng, and Cellenkos. *See* ECF No. 60. On September 24, 2024 Plaintiffs filed their Pre-Motion Letter concerning the instant motion for alternative service. *See* ECF No. 78. On September 26, 2024, the Court so-ordered Plaintiffs' proposed motion schedule as revised, directing briefing of the alternative service motion. *See* ECF No. 79.

## ARGUMENT

**I.      Legal Standards For Alternative Service Under Fed. R. Civ. P. 4(f)(3)**

"Rule 4(f) governs service of process on individuals located in a foreign country." *In re BRF S.A. Sec. Litig.*, 2019 WL 257971, at *2 (S.D.N.Y. Jan. 18, 2019) (Castel, J.).[6] "Rule 4(f)(1) permits service through any internationally agreed means . . . such as the Hague Convention." *Id*. "Rule 4(f)(3) permits a court to authorize a means of service on a foreign defendant so long as that means of service is not prohibited by international agreement and comports with constitutional notions of due process." *Id*. "Due process is satisfied when the method of service is reasonably

---

[6] All internal quotes and citations are omitted from quotations herein.

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

"Generally, there is no hierarchy among the subsections in Rule 4(f)," and "[s]ervice of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief." *Id.* As such, "court-directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1)." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012). "The decision of whether to order service of process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013).

While some courts deciding motions under Rule 4(f)(3) consider whether the plaintiff has reasonably attempted to effectuate service on the defendant, or whether the circumstances are such that the court's intervention is necessary, "those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement." *BRF*, 2019 WL 257971, at *2. In other words, "[a] plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Stream SICAV*, 989 F. Supp. 2d at 278.

## II.    Alternative Service Pursuant To Rule 4(f)(3) Is Appropriate Here

### A.    Alternative Service Is Not Prohibited By International Agreement

The Hague Service Convention does not prohibit the form of alternative service proposed here—email to the Alternative Service Defendants' U.S. counsel. In fact, the Hague Service Convention does not even apply to this form of service.

Article I of the Hague Service Convention provides that "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, 20 U.S.T. 361, 1969 WL

97765. Because the relevant transmittal here will be email to U.S. based counsel,[7] there is no transmittal for service abroad and the Hague Service Convention by its terms does not apply. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707–08, (1988) (holding "this case does not present an occasion to transmit a judicial document for service abroad within the meaning of Article 1," where a foreign corporation was served via its U.S. subsidiary); *Stream SICAV*, 989 F. Supp. 2d at 278–79 ("Substitute service on a U.S. entity does not trigger the requirements of the Hague Convention"); *GLG*, 287 F.R.D. at 267 ("(1) service on GLG's counsel; and (2) service on GLG's registered agent in Washington . . . would not run afoul of the Hague Convention since in both instances no documents would be transmitted abroad").

**B.      The Court Should Exercise Its Discretion To Allow Alternative Service**

Alternative service is warranted here to avoid the significant delays, uncertainty, and expense that would be required to attempt to serve the Alternative Service Defendants abroad through Hague Service Convention procedures.

Defendants' pre-motion letters relating to the amended complaint (including any proposed motions to dismiss) are due to be filed by October 28, 2024. *See* ECF No. 58. Attempting to serve the Alternative Service Defendants through Hague Service Convention procedures would, even if eventually successful, result in an inefficient, staggered case schedule with various Defendants filing their initial motions at different times, months after the Defendants that have already been served (*i.e.*, GCBC, Jennifer Weng, Cellenkos, and, subject to his expected dispute as to the

---

[7] Of the counsel representing the Alternative Service Defendants in the Derivative Action, two are based abroad according to their law firm website biographies: Timothy Blakely of Morrison & Foerster LLP is based in Hong Kong, and Robin Baik of Kobre & Kim LLP is based in South Korea. *See* Spencer Decl. ¶10. To avoid any possible dispute as to the Hague Service Convention's applicability, Plaintiffs do not propose to serve any Defendants via Mr. Blakely or Mr. Baik. All other counsel representing the Alternative Service Defendants in the Derivative Action are based in New York according to their law firm website biographies. *See id.*

validity of service, Mark Chen). "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *GLG*, 287 F.R.D. at 266 (collecting cases); *Stream SICAV*, 989 F. Supp. 2d at 280 ("Stream SICAV represents, plausibly, that requiring it to serve Wang through the Hague Convention now would either needlessly delay the resolution of this case for many months, when in other respects it is ready to go forward, or result in the case against SmartHeat moving forward decoupled from the case against Wang—an inefficient result.").

Attempting to serve Defendants Kam, Zheng, Bing Chuen Chen, and Mark Chen at the addresses in China provided by their counsel, if successful, is expected to take 5-12 months. *See* Spencer Decl. ¶8; PX K (HCCH webpage for Hague Service Convention "China - Central Authority & practical information"). There is no guarantee that such service attempts would succeed. *See* PX H (Shreefer affirmation detailing the Derivative Action plaintiffs' unsuccessful efforts to effect service abroad using Hague Service Convention procedures, including service attempts on defendants Albert Chen, Zheng, Kam, and Mark Chen). Chinese authorities may even refuse to serve the Amended Complaint if they believe it implies that Hong Kong is not part of the People's Republic of China.  *See* Spencer Decl. ¶8.[8]

Attempting to serve Golden Meditech at its registered address in the Cayman Islands would result in similar delay, with service through the Cayman Islands central authority expected to take approximately 3-6 months to complete. *See* Spencer Decl. ¶9. Even expedited service in the Cayman Islands, at additional cost, is expected to take 2-9 weeks to complete. *See id.*[9]

---

[8] For this reason, if the Court decides to order Plaintiffs to attempt to serve any of the Alternative Service Defendants in China, prior to making such service attempts Plaintiffs intend to file a motion seeking leave of court to file a second amended complaint, to replace all references to "Hong Kong" with references to "Hong Kong, China."

[9] In addition to the unnecessary delays and uncertainty, requiring service attempts on the

Each of the Alternative Service Defendants can be served effectively and immediately through their U.S. counsel in the closely related Derivative Action. Under these circumstances, requiring adherence to Hague Service Convention procedures would serve no purpose, and alternative service should be allowed.

For similar reasons, this Court and others in this District have repeatedly authorized alternative service without requiring service attempts abroad under Rule 4(f)(1). *See, e.g.*, *BRF*, 2019 WL 257971, at *4 (authorizing alternative service where movant had not pursued letters rogatory because "there is no useful purpose in requiring it to do so merely in order to confirm the existence of delay"); *Stream SICAV*, 989 F. Supp. 2d at 280 ("The Court sees no reason to slow the progress of this case by ordering service through the Convention when service through SmartHeat and its counsel will be just as reliable, if not more so."); *GLG*, 287 F.R.D. at 267 ("Given the certainty that service on GLG's attorneys and/or GLG will result in notice to Zhang, and given that service via the Hague Convention would be a pointless and lengthy exercise, an order of alternative service is justified.").

## III.    Service On The Alternative Service Defendants By Email To Their U.S. Counsel In The Derivative Action Satisfies Due Process

To satisfy due process, the method of alternative service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *BRF*, 2019 WL 257971, at *2. It is common sense that counsel can communicate with their clients and will inform them of significant developments such as the filing of a lawsuit against the clients. As such, courts routinely find that service via

---

Alternative Service Defendants through Hague Service Convention procedures would needlessly cause Plaintiffs' counsel to incur thousands of dollars in expenses. *See* Spencer Decl. ¶¶8-9 (expense estimates).

counsel satisfies due process. *See, e.g.*, *id.* at \*6 ("It is likely that Diniz's criminal attorneys are knowledgeable about the underlying facts of this case and can communicate with him concerning the present lawsuit"); *Stream SICAV*, 989 F. Supp. 2d at 280 ("it is all but inconceivable that SmartHeat and its counsel would be unable to inform Wang of this lawsuit, in the unlikely event they have not already done so"); *GLG*, 287 F.R.D. at 267 ("it is impossible to imagine that a corporation's attorney would not advise the corporation's Chairman and Chief Executive Officer of the fact that service destined for that officer had been made upon its attorney").

Courts have repeatedly authorized alternative service on foreign defendants, including companies and individuals residing in China, via their U.S. counsel. *See, e.g.*, *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 2024 WL 2317715, at \*3 (S.D.N.Y. May 22, 2024) (granting motion to serve Chinese defendant via its U.S. counsel without requiring service attempts using Hague Service Convention procedures); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) ("the Court orders that Plaintiffs may serve Baidu's counsel in New York. Such service is a common form of service ordered under Rule 4(f)(3)."); *GLG*, 287 F.R.D. at 267 ("In many instances, courts have authorized service under Rule 4(f)(3) on an unserved party's counsel") (collecting cases).

Furthermore, there is ample evidence that the Alternative Service Defendants are communicating with their U.S. counsel. The Alternative Service Defendants' U.S. counsel are actively representing them in the Derivative Action. *See* PX B (Case Detail page for the Derivative Action on the NYSCEF website, listing counsel); PX G (stipulation by Michael D. Birnbaum as counsel for Defendant Kam in the Derivative Action); PX I (stipulation by Nicholas Walter as counsel for Zheng and Albert Chen in the Derivative Action); PX C (Mark Chen affirmation filed in Derivative Action by David Hille); PX F (motion to dismiss reply brief filed in the Derivative

13

Action on behalf of the Golden Meditech defendants by Kobre & Kim LLP). Mark Chen's U.S. counsel also represent him in the instant action. *See* ECF Nos. 38 (notice of appearance), 39 (letter to the Court). U.S. counsel for defendants Kam, Zheng, Bing Chuen Chen, and Mark Chen, each provided an address to Plaintiffs' counsel where their clients can be served in China. *See* Spencer Decl. ¶¶3-5. Therefore, there can be no doubt that the Alternative Service Defendants are in communication with their U.S. counsel, and that service via their U.S. counsel is reasonably calculated to notify them of this action in conformity with due process.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion, and authorize service on the Alternative Service Defendants by email to their U.S. counsel in the Derivative Action.


Dated: October 3, 2024

By: */s/ Garth Spencer*
**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Garth Spencer (GS-7623)
Christopher Fallon (*admitted pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

*Lead Counsel for Lead Plaintiff Alessandro*
*Somansino, Named Plaintiff Mark Lewko,*
*and the Putative Class*

14

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 3, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

On October 3, 2024, I also served true and correct copies of the foregoing document by email to:

| | |
|---|---|
| KOBRE & KIM LLP<br>Daniel J. Saval<br>daniel.saval@kobrekim.com<br>Jay Y. Mandel<br>jay.mandel@kobrekim.com<br><br>*Counsel for Golden Meditech Holdings Limited in the Derivative Action* | JONES DAY<br>Nicholas C.E. Walter<br>ncewalter@jonesday.com<br>Jacob Miller<br>jakemiller@jonesday.com<br><br>*Counsel for Ting (Tina) Zheng and Bing Chuen (Albert) Chen in the Derivative Action* |
| MORRISON & FOERSTER LLP<br>Michael D. Birnbaum<br>mbirnbaum@mofo.com<br><br>*Counsel for Yuen Kam in the Derivative Action* | WHITE & CASE LLP<br>David Hille<br>dhille@whitecase.com<br>Robert E. Tiedemann III<br>rtiedemann@whitecase.com<br><br>*Counsel for Mark Da-Jian Chen in the Derivative Action* |

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 3, 2024, at Wilmington, North Carolina.

*/s/ Garth Spencer*
Garth Spencer