# PX A

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| MW GESTION and MW OPTIMUM, derivatively on behalf of nominal defendant GLOBAL CORD BLOOD CORPORATION,<br><br>     Plaintiffs,<br><br>     v.<br><br>GOLDEN MEDITECH HOLDINGS LIMITED, TING (TINA) ZHENG, ALBERT CHEN, YUEN KAM, MARK DA-JIAN CHEN, JENNIFER J. WENG, KEN LU, JACK CHOW, JACKY CHENG, CELLENKOS INC., GOLDEN MEDITECH STEM CELLS (BVI) COMPANY LIMITED, GM PRECISION MEDICINE (BVI) LIMITED, GOLDEN MEDITECH (BVI) COMPANY LIMITED, EASTON CAPITAL CORP., and REDWOOD VALUATION PARTNERS,<br><br>     Defendants. | **Index No. [_]**<br><br>**<u>STOCKHOLDER DERIVATIVE COMPLAINT</u>** |

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 07/25/2023

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION .................................................................................. 1

II.     PARTIES ............................................................................................................. 5

III.    JURISDICTION AND VENUE ............................................................................ 9

IV.     SUBSTANTIVE ALLEGATIONS ..................................................................... 15

        A.      The Cellenkos Transaction ..................................................................... 19

                1.      The Cellenkos Transaction is a Related-Party Transaction .................... 20

                2.      The Cellenkos Transaction Was Not Properly Approved ........................ 21

                3.      The Cellenkos Transaction Grossly Overvalued Cellenkos .................... 26

        B.      The Cellenkos Transaction Was the Result of Defendants' Misconduct and
                Lacked Shareholder Approval ................................................................. 28

        C.      Defendants Stole Hundreds of Millions of Dollars From the Company ............. 32

        D.      The JPLs' Findings of Further Theft and Other Misconduct ............................ 35

                1.      The JPLs' Findings of Defendants' Further Misconduct ........................ 36

                2.      Defendants Have Obstructed the JPLs' Efforts ..................................... 39

V.      DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS ..................................... 41

VI.     CAUSES OF ACTION ....................................................................................... 43

                Count 1: Breach of Fiduciary Duty Under Cayman Islands Law ......................... 43

                Count 2: Aiding and Abetting Breach of Fiduciary Duty
                Under New York Law .................................................................................... 45

                Count 3: Dishonest Assistance Under Cayman Law ......................................... 47

                Count 4: Knowing Receipt Under Cayman Law .............................................. 50

                Count 5: Unjust Enrichment Under New York Law or Common Law ................. 51

VII.    NOTICE OF INTENT TO RAISE ISSUES UNDER FOREIGN LAW ......................... 52

VIII.   PRAYER FOR RELIEF ..................................................................................... 53

IX.     DEMAND FOR TRIAL BY JURY ...................................................................... 53

i

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

Plaintiffs MW Gestion and MW Optimum ("Plaintiffs"), derivatively on behalf of Global Cord Blood Corporation ("Global Cord Blood" or the "Company"), bring this action against (1) Golden Meditech Holdings Limited, (2) Ting (Tina) Zheng, (3) Albert Chen, (4) Yuen Kam, (5) Mark Da-Jian Chen, (6) Jennifer J. Weng, (7) Ken Lu, (8) Jack Chow, (9) Jacky Cheng, (10) Cellenkos Inc., (11) Golden Meditech Stem Cells (BVI) Company Limited, (12) GM Precision Medicine (BVI) Limited, (13) Golden Meditech (BVI) Company Limited, (14) Easton Capital Corp., and (15) Redwood Valuation Partners, for breaches of fiduciary duty, aiding abetting breaches of fiduciary duty, dishonest assistance, knowing receipt, and/or unjust enrichment. Plaintiffs allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys. Plaintiffs believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### I.  NATURE OF THE ACTION

1. Plaintiffs bring this derivative action to recoup the substantial funds—at least hundreds of millions of dollars—that insiders brazenly stole from Global Cord Blood.

2. The Company provides umbilical cord blood storage and related services in China. It has been enormously successful. Its most recent financial statements show that Global Cord Blood had over $1 billion in cash and its revenue and profits were growing at a significant rate.

3. For several years, the Company's shareholders have been advocating for the Company to use that cash in the best interests of shareholders, as it is required to do, such as by repurchasing the Company's shares (which were trading significantly below the net cash of the Company), paying a dividend, or pursuing a buyout at a fair valuation. Instead, Global Cord Blood's management and Board were secretly working to divert the Company's funds to related

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023

RECEIVED NYSCEF: 07/25/2023

parties in highly conflicted transactions. These payments were, at best, blatantly unfair to the Company and its shareholders. The evidence shows that these transactions went even further and were outright theft.

4.      On April 29, 2022, Global Cord Blood announced that it was purchasing Cellenkos, a biotechnology company that focuses on umbilical cord blood-derived cellular therapies, for over $1 billion, including $664 million in cash and 114 million Global Cord Blood shares—roughly the same number of the Company's shares that were already outstanding (the "Cellenkos Transaction"). The transaction thus stood to dilute the Company's shareholders by half.

5.      The Cellenkos Transaction was flawed in every way. It was rushed to completion in under three days from when the Company's Board was first notified of it, without the shareholder approval that would be expected—and was required—for such a momentous transaction. The court in the Cayman Islands that is overseeing an action arising out of the transaction described the plot to rush through the Cellenkos transaction as being done with a "breath-taking combination of speed and stealth."

6.      The Cellenkos transaction grossly overvalued Cellenkos, such as by assuming that all of its treatments would receive regulatory approval. Even though none of those treatments had reached Phase 2 of clinical trials, the Company's valuation of Cellenkos did not discount the value of those products based on the uncertain path that they faced.

7.      Global Cord Blood's management and Board were willing to approve such a lopsided transaction because it was a highly conflicted related-party transaction. Cellenkos was majority-owned by Defendant Yuen Kam (or entities associated with him), the former Chairman of the Company.

2

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/25/2023

8.    Kam was Global Cord Blood's Chairman until January 2018 as a result of his control of a company he founded called Golden Meditech Holdings Limited ("Golden Meditech") that was Global Cord Blood's majority owner until that time. Even after Golden Meditech divested its stake in Global Cord Blood, its executives and Global Cord Blood's executives continued to secretly overlap in their management of both companies. For example, Kam is in a personal relationship with Global Cord Blood's CEO, Defendant Ting (Tina) Zheng and they have two children together, but this relationship was not publicly disclosed. Moreover, Defendant Albert Chen was secretly involved in managing Golden Meditech while he was serving as Global Cord Blood's CFO. Kam himself also continued to exert control over Global Cord Blood after he was no longer formally associated with the Company. After the Cellenkos Transaction was announced, Albert Chen held Kam out as a representative of Global Cord Blood for a private meeting with the Company's largest shareholder.

9.    The Cellenkos Transaction was so conflicted that the $664 million cash portion of the transaction payment was scheduled to be paid not to Cellenkos, but to a subsidiary of Golden Meditech that received the license for one of Cellenkos's products for no discernible consideration.

10.    When Global Cord Blood's shareholders tried to stop the Cellenkos Transaction through an Extraordinary General Meeting ("EGM") that was supported by investors holding over 85% of the Company's shares, the Company's management and Directors tried to disrupt the meeting and challenged its validity in court. The Company's insiders also tried to slyly subvert the EGM by quickly issuing over 12 million shares as part of the Cellenkos Transaction so that they could argue that there was not sufficient shareholder support for the meeting.

3

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                       RECEIVED NYSCEF: 07/25/2023

11.    The patently unfair Cellenkos Transaction that was designed to provide a windfall of at least hundreds of millions of dollars to related parties would be bad enough. But facts have emerged in the Cayman Islands proceeding showing that Defendants' actions are even worse.

12.    Documentation provided by China Guangfa Bank shows that Defendant Albert Chen forged Global Cord Blood's bank statements in an effort to show that the $664 million cash portion of the Cellenkos Transaction was already paid. The Cayman court explained that Albert Chen did not provide any "cogent or convincing response to as serious an allegation as could ever be made against the Chief Financial Officer of a listed company."

13.    This evidence also impugned the Company's purportedly "Independent Directors"—Defendants Jennifer Weng, Mark Chen, Yungang Ken Lu, Jacky Cheng, and Jack Chow—who displayed "seeming silence, or paralysis . . . in the face of these shocking allegations about forgery."

14.    The Cayman court appointed Joint Provisional Liquidators ("JPLs") to secure Global Cord Blood's assets and to investigate and prevent further misappropriation. The JPLs have been highly critical of Defendants Zheng, Albert Chen, and the Company's purportedly "independent" Directors' extensive efforts to obstruct the JPLs' work.

15.    Evidence that was presented to the Cayman Islands court, and that was investigated further and corroborated by the JPLs, shows that the Cellenkos Transaction was actually part of a cover-up aimed at "filling a gap" in Global Cord Blood's balance sheet. It turns out that from September 2015 to May 2022, Global Cord Blood made payments of approximately $606 million to entities related to Golden Meditech. Nearly all of these related-party payments were not publicly disclosed. Defendants thus used the Cellenkos Transaction to try to paper over at least hundreds of millions of dollars that were paid to related parties for completely unexplained reasons, while

4

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM     INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

also substantially increasing the stake of those related parties in the Company. The Cellenkos Transaction was the culmination of this scheme.

16.     The JPLs have been able to identify only approximately US$427,000 and HK$135,000 in Global Cord Blood's bank accounts, as compared to the over $1 billion in cash that the Company reported before the Cellenkos Transaction was announced. Defendants have thus misappropriated at least hundreds of millions of dollars, if not more, from Global Cord Blood. Plaintiffs bring this action to recover those funds from the responsible parties.

## II.     PARTIES

17.     Plaintiff MW Gestion is an institutional asset manager based in France that manages investment assets through separate funds, including Plaintiff MW Optimum, and is authorized to bring legal action on their behalf.

18.     Plaintiff MW Optimum is an investment fund based in Luxembourg under the management of MW Gestion and is a sub-fund of MW Asset Management. MW Optimum currently owns Global Cord Blood shares and other securities and has continuously owned Global Cord Blood shares and other securities since the time of the transaction complained of herein. Plaintiffs MW Gestion and MW Optimum sought to register these Global Cord Blood shares in the name of MW Optimum, but was informed by their custodian that the custodian could not do this because Global Cord Blood is subject to the process being overseen by the JPLs.

19.     Nominal Defendant Global Cord Blood is a Cayman Islands corporation that, at the relevant time, had its principal executive offices at 48th Floor, Bank of China Tower, 1 Garden Road, Central, Hong Kong, China. Global Cord Blood is incorporated under the laws of the Cayman Islands. Its registered address at the time of the events described herein was Conyers Trust Company (Cayman) Limited, Cricket Square, Hutchins Drive, P.O. Box 2681, Grand Cayman KY1-1111, Cayman Islands. The JPLs have since changed Global Cord Blood's registered address

5

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
INDEX NO. 653598/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 07/25/2023

to Mourant Governance Services (Cayman) Limited, which is located at PO Box 1348, 94 Solaris Avenue, Camana Bay, Grand Cayman, KY1-1108, Cayman Islands. Global Cord Blood's shares traded on the NYSE under the symbol "CO" until the NYSE halted trading in the Company's shares on September 23, 2022, as a result of the events described herein. On June 22, 2023, the Securities and Exchange Commission filed a Form 25 Notification of Removal from Listing and/or Registration Under Section 12(b) of the Securities Exchange Act of 1934, stating: "Pursuant to 17 CFR 240.12d2-2(b), the Exchange has complied with its rules to strike the class of securities from listing and/or withdraw registration on the Exchange." The Company's shares continue to trade in the United States on the over-the-counter market.

20.    Defendant Golden Meditech Holdings Limited ("Golden Meditech") is a private company incorporated under the laws of the Cayman Islands. Its principal executive offices are located at 48th Floor, Bank of China Tower, 1 Garden Road, Central, Hong Kong, China—the same as Global Cord Blood. Defendant Yuen Kam founded Golden Meditech in 1993. It was listed on the Hong Kong Stock Exchange in 2001 and was taken private by Defendant Kam in October 2020. A disclosure that Golden Meditech issued on August 21, 2020, in connection with Kam's proposal to take it private, listed its registered office at Ocorian Trust (Cayman) Limited, P.O. Box 1350, Clifton House, 75 Fort Street Grand Cayman, KY1-1108 Cayman Islands.

21.    Defendant Ting (Tina) Zheng served as Global Cord Blood's CEO at all relevant times and as its Chairperson since Defendant Kam left that position on January 31, 2018. She was a Director of the Company from the time of its merger with Pantheon in June 2009 until she was removed in 2023 by the JPLs, as described further below. In addition, Zheng served as a non-executive member of the Board of Directors of Golden Meditech from August 2012 to May 2019. Defendants Zheng and Kam are in a personal relationship and have two children together.

6

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

22.    Defendant Albert Chen (also known as Chen Bing Chuen) served as Global Cord Blood's Chief Financial Officer at all relevant times and was a member of the Company's Board of Directors.  He was a Director of the Company from the time of its merger with Pantheon in June 2009 until he was removed in 2023 by the JPLs, as described further below. In addition, Albert Chen previously served as the Corporate Finance Vice President of Golden Meditech, beginning in March 2005. While the Company represented that Albert Chen was no longer associated with Golden Meditech, he secretly continued to be involved in its operations, as described further below.

23.    Defendant Yuen Kam founded Golden Meditech and served as its Chairperson and CEO at all relevant times.  In addition, Kam served as Global Cord Blood's Chairperson until January 31, 2018.  While the Company represented that Kam was no longer associated with Global Cord Blood after Golden Meditech sold its stake in the Company in 2018, Kam secretly continued to control its operations, as described further below.

24.    Defendant Mark Da-Jian Chen ("Mark Chen") was a Director of Global Cord Blood from 2009 until he was removed in 2023 by the JPLs, as described further below. He was the founder, CEO, Chairman, and President of Pantheon before it merged with the Company's predecessor in 2009.

25.    Defendant Jennifer J. Weng was a Director of Global Cord Blood from 2009 until she was removed in 2023 by the JPLs, as described further below. She was Pantheon's CFO and Secretary before it merged with the Company's predecessor in 2009. Defendants Weng and Mark Chen are married to each other.

26.    Defendant Dr. Ken Lu was a Director of Global Cord Blood from 2009 until he was removed in 2023 by the JPLs, as described further below.

7

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

27.    Defendant Jack Chow was a Director of Global Cord Blood from November 2019 until he was removed in 2023 by the JPLs, as described further below.

28.    Defendant Jacky Cheng was a Director of Global Cord Blood from February 2020 until he was removed in 2023 by the JPLs, as described further below.

29.    Defendants Zheng, Albert Chen, Mark Chen, Weng, Lu, Chow, and Cheng are referred to collectively as the "Director Defendants".

30.    Defendant Global Cord Blood refers to Defendants Mark Chen, Weng, Lu, Chow, and Cheng as "independent non-executive directors." But these Directors were not independent. As described further below, they were highly conflicted and did the bidding of Defendants Kam, Zheng, and Albert Chen in approving the completely unfair Cellenkos Transaction and overseeing the misappropriation of at least hundreds of millions of dollars from the Company.

31.    Defendant Cellenkos Inc. ("Cellenkos") is a biotechnology company based in Houston and incorporated in Delaware that focuses on umbilical cord blood-derived T-regulatory ("T-reg") cellular therapies. Defendant Kam and Golden Meditech (which he controls) own approximately 55.7% of Cellenkos, as described further below.

32.    Defendant Golden Meditech Stem Cells (BVI) Company Limited, a subsidiary of Golden Meditech, is a British Virgin Islands ("BVI") company that stood to receive substantial consideration from the Cellenkos Transaction. A Schedule 13D/A that Golden Meditech Stem Cells (BVI) Company Limited filed with the SEC, in connection with its and Golden Meditech's holdings of Global Cord Blood securities, named Defendant Kam as a Director of Golden Meditech Stem Cells (BVI) Company and listed its address as P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

8

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

33.    Defendant GM Precision Medicine (BVI) Limited, a subsidiary of Golden Meditech, is a BVI company that stood to receive substantial consideration from the Cellenkos Transaction. As part of the Cellenkos Transaction, GM Precision Medicine (BVI) Limited entered into a Framework Agreement dated as of April 29, 2022 with Global Cord Blood.

34.    Defendant Golden Meditech (BVI) Company Limited, a BVI company, is associated with Golden Meditech and stood to receive substantial consideration from the Cellenkos Transaction. As part of the Cellenkos Transaction, Golden Meditech (BVI) Company Limited entered into a Stock Purchase Agreement dated as of April 29, 2022 with Global Cord Blood and Cellenkos.

35.    Defendant Easton Capital Corp. is a company co-founded by Defendant Mark Chen and is located at 767 Third Avenue, 7th Floor, New York, New York. Easton Capital Corp. provided an analysis of Cellenkos's technology to support the Cellenkos Transaction.

36.    Defendant Redwood Valuation Partners provided a valuation of Cellenkos to support the Cellenkos Transaction. Redwood Valuation Partners is based in Seattle, Washington, and has an office located at 1410 Broadway, New York, NY 10018.

### III.    JURISDICTION AND VENUE

37.    This Court has subject-matter jurisdiction over this action because Plaintiffs seek relief exceeding $600 million, which is in excess of this Court's jurisdictional minimum.

38.    The Court has personal jurisdiction over all Defendants other than Easton Capital Corp. pursuant to CPLR 302, and over Easton Capital Corp. pursuant to CPLR 301.

39.    All Defendants directly or indirectly transacted business in New York, which gave rise to Plaintiffs' causes of action.

40.    Global Cord Blood was listed and actively traded on the New York Stock Exchange ("NYSE"), under the ticker symbol "CO," from November 19, 2009 until trading was halted on

9

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

September 23, 2022, and the Company was then delisted on June 22, 2023. The Company's shares continue to trade in the United States on the over-the-counter ("OTC") market. In addition, Global Cord Blood explained in its Annual Reports filed on Form 20-F, including before and after the Cellenkos Transaction, that the Company publishes its "results on a quarterly basis through press releases, distributed pursuant to the rules and regulations of the New York Stock Exchange."

41.     The Company's listing on the NYSE is particularly significant because NYSE rules govern the issuance of shares, which was central to the Cellenkos Transaction. As the Cayman court ruled, the "contention that a new share allotment of more than 20% of the Company's existing issued capital would require shareholder approval in conformity with the standard NYSE rule (which could have been but seemingly had not been explicitly dis-applied), seemed commercially to be fundamentally plausible." (*See infra* ¶ 117).

42.     Defendants Zheng, Albert Chen, Mark Chen, Weng, Lu, Chow, and Jacky Cheng, by virtue of serving as a director and/or officer of a corporation whose ordinary shares traded on the NYSE, have sufficient minimum contacts with New York that require them to defend against a lawsuit relating to their breaches of fiduciary duty and other misconduct to that corporation, which comports with traditional notions of fair play and substantial justice.

43.     Defendant Kam, by virtue of secretly controlling a corporation whose ordinary shares traded on the NYSE and engaging in gross misconduct toward that company, has sufficient minimum contacts with New York that require him to defend against a lawsuit relating to breaches of fiduciary duty and other misconduct to that corporation, which comports with traditional notions of fair play and substantial justice.

44.     Furthermore, all Defendants have sufficient minimum contacts with New York as a result of the substantial nexus that the Cellenkos Transaction has with New York. All Defendants

10

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                              RECEIVED NYSCEF: 07/25/2023

were involved in the Cellenkos Transaction, either as buyers (in association with Global Cord Blood), sellers (in association with Cellenkos and Golden Meditech), or advisors.

45.    The April 29, 2022 Stock Purchase Agreements between Global Cord Blood and Cellenkos (and its related parties), which formed the basis of the Cellenkos Transaction, are governed by New York law. Each Stock Purchase Agreement, which constitutes "the entire agreement between the Parties" pertaining to the Cellenkos Transaction, specifically states that it "will be construed and enforced in accordance with the substantive laws of the State of New York without reference to principles of conflicts of Law." That substantial issues of New York law were involved in negotiating the transaction is made clear by the fact that the Company, at the direction of Defendants Zheng and Albert Chen, among other Defendants, retained United States counsel—Cleary, Gottlieb, Steen & Hamilton LLP, which has offices at One Liberty Plaza, New York, NY 10006 and Loeb & Loeb LLP, which has offices at 345 Park Avenue, New York, NY 10154—to assist in reaching and finalizing the transaction.

46.    Moreover, Global Cord Blood engaged Continental Stock Transfer & Trust ("Continental"), whose offices are located at 1 State Street, 30th Floor, New York, NY 10004, as a transfer agent for the Cellenkos Transaction. Continental purported to maintain Global Cord Blood's share register and has the share register in its possession.

47.    Continental has also purported to maintain Global Cord Blood's share register at all relevant times. The court in the Cayman Islands proceeding recognized that, based on documentary evidence relied upon by Global Cord Blood, Continental had a de facto longstanding authority to administer Global Cord Blood's share register despite no formally documented authority to do so. Continental also had the authority from Global Cord Blood to issue Global Cord Blood shares.

11

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM          INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 07/25/2023

48.     Continental's significant involvement in the Cellenkos Transaction further demonstrates a strong nexus between New York and the transaction. The Cayman court's July 29 Judgment referenced correspondence from Continental and Loeb & Loeb, related to the issuance of shares that were part of the Cellenkos Transaction, as taking place at "New York time" (as opposed to other correspondence that were designated as having taken place at "Hong Kong time"). This further shows that Loeb & Loeb and Continental engaged in these activities from New York.

49.     In particular, Defendant Albert Chen explained that Continental had historically maintained and continued to maintain Global Cord Blood's share register. Defendant Albert Chen confirmed that, on April 29, 2022, he emailed Continental and Loeb & Loeb, Global Cord Blood's counsel with offices in New York, to inform them that the issuance of over 12 million Global Cord Blood shares, in accordance with the terms of the transaction, were on schedule to be completed on May 2, 2022. On May 4, 2022, Loeb & Loeb emailed Continental a letter of instruction to issue 2,863,636 shares to GM Precision Medicine (BVI) Limited and 9,500,000 shares to PAGAC III Holding VII Limited ("PAG," another entity involved in the transaction and associated with Golden Meditech). On the same day, Defendant Albert Chen emailed Continental requesting an updated register of Global Cord Blood's shareholders that recorded the issuance of these shares. Continental replied by enclosing Global Cord Blood's share register that recorded the shares that were purportedly issued to GM Precision Medicine (BVI) Limited and PAG. Continental also emailed Defendant Albert Chen copies of the share certificates of GM Precision Medicine (BVI) Limited and PAG confirming that the shares had been issued in accordance with the letter of instruction from Albert Chen.

12

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                              RECEIVED NYSCEF: 07/25/2023

50.    Continental's attempt to issue over 12 million shares, and Loeb & Loeb's assistance with that issuance, as well as Continental's maintenance of the share register and distribution of the share certificates, from New York demonstrates that a substantial part of the Cellenkos Transaction occurred in New York. Indeed, while this share issuance was invalid for the reasons explained by the Cayman court, the court described it as "pivotal" to Defendants' scheme. Global Cord Blood and the Director Defendants relied on this share issuance as the main point in their defense in the Cayman proceeding. They argued that because of this share issuance, other shareholders did not have sufficient holdings to call an extraordinary general meeting ("EGM") where they could vote on whether to override the Cellenkos Transaction. While the Cayman Islands court ultimately rejected this argument—including because the evidence indicated that the share issuance was not valid, as well as because of evidence of Defendants' blatant fraud—the court emphasized that this attempted share issuance was central to Global Cord Blood and the Director Defendants' plot to rush through the Cellenkos transaction with a "breath-taking combination of speed and stealth." (*See infra* ¶¶ 84-85, 112-16).

51.    The Cellenkos Transaction's nexus to New York is further established by the EGM that took place following the announcement of the transaction. In response to the Transaction, Blue Ocean called an EGM at which the Company's shareholders voted overwhelmingly to reject the transaction, replace the Company's Board, and put in place measures to protect shareholders from further mismanagement. (*See infra* ¶¶ 90-93). The EGM was held on June 16, 2022, in person at the offices of DLA Piper LLP, located at 1251 Avenue of the Americas, New York, NY 10020. Additionally, Morrow Sodali LLC, who has an office located at 509 Madison Avenue, Suite 1206, New York, NY 10022, was retained to solicit support for the EGM. Global Cord Blood and the

13

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

Director Defendants have contested the validity of the EGM and that issue is a central part of the proceedings in the Cayman Islands.

52.     The June 16, 2022 EGM creates an even stronger nexus to New York because the Director Defendants sent representatives—including Defendants Mark Chen and Weng, two of their attorneys from Carey Olsen, and a shareholder (Hunter S. Reisner) associated with the Director Defendants—to New York to try to disrupt the EGM. These individuals were on the premises of the EGM that was held at DLA Piper's office in New York when they tried to gain access to the meeting to stop the proceedings. As the Cayman court explained in its July 29, 2022 Judgment, there was an "'argy bargy' shortly prior to the EGM which resulted in [Defendants] Jennifer Weng and Mark Chen, directors of the Company, being refused entry to the meeting room by lawyers for [Blue Ocean]." Defendants' scheme to complete the Cellenkos Transaction and cover-up their other theft and misconduct depended on their contention that the EGM held on June 16, 2022, in New York, was not valid.

53.     An even further nexus to New York is established by the location of key advisors for the Cellenkos Transaction. Global Cord Blood engaged Defendant Easton Capital Corp., whose sole office is located at 767 Third Avenue, 7th Floor, New York, NY 10017, to provide an analysis of the "attractiveness" of Cellenkos's technology. Easton Capital Corp. was founded by Defendant Mark Chen (although this relationship was not disclosed to the public), who is married to Defendant Weng. The Director Defendants used its analysis to justify the Cellenkos Transaction.

54.     Moreover, Defendant Redwood Valuation Partners LLC, which has an office located at 1410 Broadway, New York, NY 10018, was engaged by Global Cord Blood to provide a report estimating the fair market value of Cellenkos for purposes of justifying the Cellenkos Transaction.

14

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

55.    Global Cord Blood also engaged Duff & Phelps (which is part of Kroll Corporate Finance), whose headquarters are located at 55 East 52nd Street, 17 Fl, New York, NY 10055, to provide them with a valuation of the Company for the Cellenkos Transaction.

56.    These reports by advisors located in New York that supported the Cellenkos Transaction are particularly significant because the JPLs have found that "[t]he valuation of Cellenkos appears to have material defects in its methodology." They have also noted "irregularities and inconsistencies of the assumptions and projections used" in the valuation.

57.    The Limited Partnership Agreement of Cellenkos, filed together with the Stock Purchase Agreements, also has a nexus to New York. The agreement specifically defines a business day, for purposes of the agreement, as one other than a day "on which commercial banks in the City of New York … are authorized or required to close." This indicates that the Cellenkos Transaction used the New York banking system located in New York City.

58.    Venue is proper in this Court under CPLR 503 because at least one of the parties (Easton Capital Corp.), resided in New York County when this action was commenced and under CPLR 509 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in New York County.

## IV.    SUBSTANTIVE ALLEGATIONS

59.    Global Cord Blood, together with its subsidiaries, provides umbilical cord blood storage and ancillary services in the in the Beijing Municipality, Guangdong Province, and Zhejiang Province of the People's Republic of China ("PRC").  Previously known as "China Cord Blood Corporation,"[1] Global Cord Blood's shares began publicly trading on the New York Stock Exchange ("NYSE"), under the ticker symbol "CO," on November 19, 2009.

---

[1] The Company changed its name from China Cord Blood Corporation to Global Cord Blood Corporation in March 2018.

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 07/25/2023

60.     The Company began in or around 2003 as a subsidiary of Golden Meditech, under the name China Cord Blood Services. On June 30, 2009, China Cord Blood Services merged with a special purpose acquisition company ("SPAC") called Pantheon China Acquisition Corp, which resulted in the parent company being a Cayman Islands company called China Cord Blood Corporation.

61.     In recent years, the Company has reported substantial amounts of revenue, income and cash reserves. For example, the Company's Annual Report filed with the SEC on Form 20-F on July 29, 2021, reported for the year ended March 31, 2021, revenue of approximately $177 million, gross profit of approximately $150 million, and net income of approximately $79 million. The Company also reported cash and cash equivalents of approximately $927 million and total assets of approximately $1.2 billion for that period.

62.     Global Cord Blood then reported that it performed even better over the course of 2021. It reported substantial increases in all of these metrics for the first three quarters of its fiscal 2022, which the Company reported on February 28, 2022, with revenues of $148.5 million, gross profit of $126.3 million, and net income of $63.2 million for the nine months that ended on December 31, 2021. At that point, the Company had cash and cash equivalents of $1.02 billion.

63.     Shareholders have advocated for the Company to use those funds for the benefit of its shareholders (as a publicly traded company is meant to do), such as by repurchasing the Company's shares (which were trading significantly below the net cash of the Company), paying a dividend to shareholders, or accepting an offer to be acquired at fair value. In the past several years, the Company has received but rejected multiple "going private" offers (*i.e.*, offers to buy the Company and convert it to being privately owned).

16

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023

RECEIVED NYSCEF: 07/25/2023

64.     From the Company's inception until January 2018, Global Cord Blood's largest shareholder was Golden Meditech, a medical device and hospital management company incorporated in the Cayman Islands and based in the PRC.[2]  Founded in 2001 by Defendant Yuen Kam ("Kam"), Golden Meditech was publicly listed on the Hong Kong Stock Exchange until October 2020, when it was taken private by Kam.

65.     Golden Meditech's previous financial interest in Global Cord Blood is just one of the significant connections that have existed between the two companies at all relevant times.  Until their misconduct came to light, Global Cord Blood and Golden Meditech maintained the same registered address in Hong Kong, China, even occupying the same building floor.  Furthermore, Defendant Kam served as Global Cord Blood's Chairperson until January 31, 2018; Global Cord Blood's subsequent Chairperson and CEO, Defendant Zheng, served as a non-executive member of Golden Meditech's Board of Directors from August 2012 to May 2019; and Global Cord Blood's current Chief Financial Officer, Defendant Albert Chen, served as Golden Meditech's Vice President of Corporate Finance from March 2005 and secretly continued to manage Golden Meditech even after he officially stopped serving in that role. Even further highlighting the connections between Golden Meditech and Global Cord Blood, Defendants Zheng and Kam are in a relationship and have two children, yet Global Cord Blood represented in May 2022 that "we are not aware of any 'closely related' relationship between any Board member and the sellers of Cellenkos."

66.     In September 2016, Golden Meditech, in combination with The University of Texas at MD Anderson Cancer Center ("MD Anderson"), announced the founding of Cellenkos Inc.

---

[2] On or about January 31, 2018, Golden Meditech sold its entire interest in Global Cord Blood, approximately 65.4% of the Company's outstanding shares, to Nanjing Yingpeng Huikang Medical Industry Investment Partnership ("Nanjing Yingpeng") at $11 per share.

17

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

("Cellenkos"), a biotechnology company based in Houston that focuses on umbilical cord blood-derived T-regulatory ("T-reg") cellular therapies.[3]  One of Cellenkos's primary products is CK0802, an allogenic cell therapy product that was in a randomized, double blinded placebo controlled, multi-center trial for the treatment of COVID-19 induced acute respiratory distress syndrome ("ARDS").  In October 2021, pursuant to a license agreement (the "License Agreement"), Cellenkos assigned the license of CK0802 to Golden Meditech Precision Medicine Limited ("GMPM"), a subsidiary of Golden Meditech.  Thereafter, on October 25, 2022—in preparation for the Cellenkos Transaction at issue here—GMPM assigned its interest in the License Agreement to GM Precision Medicine (BVI) Limited, a 100% wholly owned subsidiary of GMPM.

67.     On April 29, 2022, after the market closed, in a Form 6-K filed with the SEC, Global Cord announced that it had entered into a Material Definitive Agreement to acquire Cellenkos in exchange for $664 million in cash and approximately 125 million new shares that the Company would issue, valued at US$11 per share.

68.     On this news, Global Cord Blood's stock price fell $0.98 per share, or 28.57%, from $3.43 at the close of trading on April 29, 2022, to close at $2.45 per share on May 2, 2022.

69.     Then, on May 3, 2022, Blue Ocean Structure Investment Company Limited ("Blue Ocean"), a wholly owned subsidiary of Nanjing Yingpeng, filed a Petition (the "Petition") opposing the Cellenkos Transaction in the Grand Court of the Cayman Islands, Financial Services Division.  Specifically, the Petition asserted that (1) Cellenkos had no discernible long-term value and the Cellenkos Transaction purchase price was thus unjustifiable, (2) the Cellenkos Transaction

---

[3] Golden Meditech was also the majority owner of Cellenkos, holding 52.19% of Cellenkos' outstanding shares.

18

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM   INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 07/25/2023

would result in a massive dilution of Global Cord Blood shareholders, (3) the close relationship between Global Cord Blood and Cellenkos constituted a conflict of interest and made the transaction an improper related-party transaction, and (4) the Cellenkos Transaction was approved without sufficient shareholder knowledge or approval.

70. Information that has come out in the Cayman Islands proceedings has revealed that the truth is even worse, and more outlandish, than Blue Ocean alleged in the Petition. This evidence shows that Defendants have misappropriated at least hundreds of millions of dollars of Global Cord Blood's assets through the improper Cellenkos Transaction and other secret transfers of Company property to Defendants that constitute outright theft.

A.    **The Cellenkos Transaction**

71. The Cellenkos Transaction stood to substantially dilute Global Cord Blood's shareholders because it involved the issuance of over 114 million new shares when the Company had a comparable number of shares (approximately 122 million) outstanding at the time.[4] The transaction also involved the payment of $664 million, which was over two-thirds of the Company's $927 million cash balance that it reported in its 2021 20-F filed with the SEC. Shareholders had been advocating for some time that the Company should have used its sizable cash balance for other purposes that would provide a greater benefit to shareholders, such as repurchasing shares or paying a dividend to shareholders.

72. As Blue Ocean explained in its Petition (which it amended on September 22, 2022), the Cellenkos Transaction is a related-party transaction and grossly overvalued Cellenkos for several reasons.

---

[4] While the Company's announcement of the transaction referenced 125 million new shares, other descriptions of the transaction describe over 114 million new shares being issued.

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

### 1.     The Cellenkos Transaction is a Related-Party Transaction

73.    Defendant Kam founded Golden Meditech. He continued to control Global Cord Blood after Golden Meditech sold its stake in the Company in 2018. Golden Meditech also founded Cellenkos in September 2016.

74.    Defendant Kam, including through Golden Meditech and a company owned by Kam's sister, owns or controls 55.7% of Cellenkos, as well as a license agreement that Global Cord Blood agreed to purchase from a Golden Meditech subsidiary in exchange for the $664 million cash portion of the deal and over 12 million shares.

75.    In addition, Defendant Kam is in a relationship with, and has two children with, Defendant Zheng, Global Cord Blood's CEO. Zheng also served as a non-executive member of Golden Meditech's Board of Directors from August 2012 to May 2019.

76.    The JPLs have noted that Defendant Albert Chen's contention that Global Cord Blood and Golden Meditech have not been related parties since July 1, 2009 is contradicted by "the revelation that Yuen Kam and Tina Zheng had two children together" and "it also transpired that Albert Chen had been using various aliases to continue to be involved in [Golden Meditech] matters, a fact conceded to by Albert Chen in an affidavit dated 9 September 2022 submitted to the [Cayman] Court."

77.    When Blue Ocean complained about the Cellenkos Transaction immediately after it was announced, Global Cord Blood referenced Defendant Kam as the Company's representative to discuss the issue, even though Kam was no longer officially associated with the Company. (S*ee infra* ¶ 88).

78.    Defendant Albert Chen, CFO of Global Cord Blood, secretly also served as CFO of Golden Meditech using an alias "SK" and the email address samkykong@goldenmeditech.com,

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                                RECEIVED NYSCEF: 07/25/2023

pretending to be Kong Kam Yu, Sammy, a former Golden Meditech director. This was not disclosed and Defendant Albert Chen falsely denied having any connection to Golden Meditech.

79.     Defendant Mark Da-Jian Chen, a Director of the Company, founded Easton Capital Corp., which prepared a report on Cellenkos's technology that Global Cord Blood's Board relied on to justify the Cellenkos Transaction. This relationship was also not disclosed.

80.     Golden Meditech is closely affiliated with Global Cord Blood. Until their misconduct was revealed, they shared the same office, telephone numbers, and personnel.

### 2.     The Cellenkos Transaction Was Not Properly Approved

81.     The Cellenkos Transaction is an extraordinary transaction for Global Cord Blood by any measure, worth well over $1 billion to Cellenkos and parties related to Company insiders. The transaction involves the payment of $664 million and over 114 million shares, nearly ***doubling*** the amount of the Company's outstanding shares and thus highly diluting its current shareholders. It also involves the payment of over $29 million to Cellenkos for product development and the issuance of approximately 25 million shares in awards to Company insiders. Yet Defendants, acting through Global Cord Blood's Board and management, hastily pushed the transaction through in just 62 hours, without notifying shareholders or calling a meeting for them to vote on the transaction. Ordinary shareholders (including the Company's majority shareholder Blue Ocean) did not learn of the transaction until after it was announced. Even Ping Xu, the one Company Director who was appointed by Blue Ocean (on January 31, 2018), was not given sufficient time to weigh in on the transaction. While he was not able to participate in the rushed process through which the Board approved the transaction, he was able to piece together, after the fact, what transpired from emails that he received. This correspondence and the documents they included provided Blue Ocean with many facts and details through which they were able to show

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/25/2023

in their Petition the improper process by which the Cellenkos Transaction was approved by Global Cord Blood's Board and the substantive unfairness of the transaction to Global Cord Blood.

82.    On April 26, 2022, Global Cord Blood's Board was first informed of the "proposed" Cellenkos Transaction, including a draft PowerPoint presentation and executed versions of the transaction documents. The following day, the Board was provided with (1) a valuation analysis prepared by Duff & Phelps Opinions Practice (part of Kroll Corporate Finance), the Global Cord Blood Corporation Valuation Report, dated April 27, 2022; (2) the Cellenkos Valuation Report prepared by Defendant Redwood Valuation Partners, dated January 7, 2022, valued as of November 30, 2021; (3) an analysis of Cellenkos prepared by Defendant Easton Capital Corp on "the attractiveness of the technology developed[,] licensed or owned by CLK [Cellenkos]," dated December 16, 2021; and (4) a Global Cord Blood Corporation Tax Analysis, prepared by Deloitte and dated April 2022.

83.    On April 28, 2022, a Board meeting was scheduled for the following day, April 29, 2022. On April 28, the Board was sent a fully drafted set of Board minutes for the meeting the following day, including a resolution that the Cellenkos Transaction was in the best interests of the Company, the press release announcing the transaction, and the final version of the PowerPoint presentation on the transaction that was substantially different from the one circulated on April 26 (expanded from 19 to 36 pages). On April 29, the day of the meeting, the Board was sent published results from Cellenkos's clinical trials.

84.    The Board dutifully approved the Cellenkos Transaction on April 29, 2022 and announced it that day. As the Cayman court explained in its Judgment dated July 29, 2022 (the "July 29 Judgment"), "it is impossible at this stage to discern any easily comprehensible commercial rationale for the Company, especially being a listed company, consummating and

22

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                      RECEIVED NYSCEF: 07/25/2023

implementing an arrangement which was so financially and strategically significant with such a breath-taking combination of speed and stealth, particularly in circumstances where the Company was (as at April 29, 2022) under 'minority' rather than majority shareholder control."

85.    The Cayman court also determined that Blue Ocean has "a good arguable case (it being accepted that there is a serious question to be tried)" that the Cellenkos Transaction required—but did not receive—shareholder approval. Rather, "the Company's approach to the Transaction made it impossible for any of the majority shareholders to challenge the Transaction before it was partially completed." Indeed, "[n]ot only did the Company deliberately proceed to complete Stage 1, despite being asked by [Blue Ocean] not to proceed on May 2, 2022. The Company instructed its lawyers [at Cleary], on or about May 3, 2022, to ask [Blue Ocean's] lawyers to postpone taking any legal action for two days, while the purported share issuance was pushed (seemingly rushed) through the next day." The Court also compared the Company to "a rugby player [that] managed to desperately dive over the try line just before being tackled by [Blue Ocean]" and as having used a "corporate stratagem to tilt the playing field in its favour."

86.    While the Company did not call an extraordinary general ("EGM") meeting of shareholders to approve the Cellenkos Transaction, it planned to hold one to approve the granting of certain corporate actions (such as the granting of stock awards to Company insiders) following completion of the transaction. But that would take place only after ordinary shareholders were substantially diluted by the granting of over 114 million shares through the transaction that would allow Company insiders to pass whatever they wish regardless of any objections by ordinary shareholders. The sham nature of these machinations highlights the extent to which the Cellenkos Transaction was not properly approved in the first place.

23

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

87.     Blue Ocean's correspondence with Global Cord Blood's Board and its representatives following the announcement of the Cellenkos Transaction highlights the extent to which it was controlled by Defendants. On May 2, 2022, Blue Ocean, through its attorneys at DLA Piper, wrote to the Board, the Company's attorneys at Cleary, Gottlieb, Steen & Hamilton ("Cleary"), and the Company's Registered Office (Conyers Trust) to complain that the transaction disenfranchised ordinary shareholders. Blue Ocean demanded that the Company desist from the transaction and call an EGM for shareholders to vote on it.

88.     Defendant Albert Chen replied by referencing a meeting that was supposedly scheduled with Blue Ocean (but that Blue Ocean was not aware of) with the Company's representative. The chosen representative, however, was Defendant Kam. Kam was not officially associated with Global Cord Blood since Golden Meditech sold its stake in the Company to Blue Ocean in 2018. This shows the extent to which Kam secretly controlled Global Cord Blood's management and Board, including through the Cellenkos Transaction.

89.     Blue Ocean responded that it was not aware of any such meeting and repeated its demands. The most that Cleary could state in response was that they would review Blue Ocean's letter with their client and "revert in due course." In subsequent correspondence, Cleary first stated, on May 3, 2022, that its client needed more time to review these issues with its Cayman counsel and warned Blue Ocean not to publicly disclose the information at issue in the interim. Cleary then represented on May 5, 2022, that it was "not aware of any 'closely related' relationship between any Board member and the sellers of Cellenkos." Blue Ocean states in the Petition that Global Cord Blood "misled Cleary as regards the existence of the Personal Relationship between [Defendants Kam and Zheng]."

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                              RECEIVED NYSCEF: 07/25/2023

90.    Blue Ocean subsequently called an EGM for Global Cord Blood's shareholders, with the support of over 75% of shareholders. This meeting was held on June 16, 2022, at DLA Piper's office in New York City, at 1251 Avenue of the Americas, New York, NY 10020.

91.    Although Global Cord Blood took the position that the meeting was not validly convened, two of its Directors, two of its attorneys from Carey Olsen, and a shareholder (Hunter S. Reisner) associated with the Directors aligned with Defendants Kam tried to gain access to the meeting to disrupt its proceedings. The Cayman court explained in its July 29, 2022 Judgment that there was an "'argy bargy' shortly prior to the EGM which resulted in [Defendants] Jennifer Weng and Mark Chen, directors of the Company, being refused entry to the meeting room by lawyers for Petitioner."

92.    Blue Ocean announced in an SEC filing on June 16, 2022, that "104,369,577 shares out of 121,551,075 total outstanding shares of Global Cord voted in the EGM, which represents 85.86 percent of all outstanding shares."

93.    This EGM successfully passed several resolutions, including (1) removing the Company's then-current Board (including Defendants Ting Zheng, Albert Chen, Mark D. Chen, Jack Chow, Dr. Ken Lu, Jennifer J. Weng and Jacky Cheng) (passed by 97.92% of the vote); (2) appointing a new Board (passed by 97.88% of the vote); (3) canceling the Cellenkos Transaction (passed by 99.98% of the vote); and (4) amending the Company's Articles of Association to add provisions to protect ordinary shareholders (passed by 99.97% of the vote).

94.    Global Cord Blood's incumbent Board and management, including Defendants, have contested this EGM and Blue Ocean's Petition in the Cayman Islands, as described further below.

25

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

### 3.    The Cellenkos Transaction Grossly Overvalued Cellenkos

95.    The Cellenkos Transaction was scheduled to occur in three stages. The first stage involved the payment of $664 million and the issuance of over 12 million shares to acquire a license agreement from GM Precision Medicine (BVI) Limited, a subsidiary of Golden Meditech, to market a product called CK0802 in Asia. CK0802 treats a symptom of COVID-19 and completed only a Phase 1 trial involving just 45 patients before the Cellenkos Transaction was announced.

96.    The Cellenkos Transaction plainly overvalued CK0802 by paying $664 million at over 12 million shares for the right to license it in Asia. Moreover, that consideration was paid not to Cellenkos, but rather, to a Golden Meditech subsidiary. On October 25, 2021, Cellenkos assigned the license for CK0802 to Golden Meditech Precision Medicine Limited ("GMPM," a Golden Meditech subsidiary). Then, on April 27, 2022, GMPM assigned the license to its subsidiary, Defendant GM Precision Medicine (BVI) Limited. There is no evidence of Golden Meditech or its subsidiaries paying any consideration to Cellenkos in exchange for the license agreement.

97.    A third party (BVCF Management Ltd ("BVCF")) acquired 523,148 Cellenkos shares on November 4, 2021, for $15 million. This values the shares at $28.67 per share, even after accounting for CK0802's Phase 1 clinical trial.

98.    In contrast, the Company's Board obtained a valuation from Defendant Redwood Valuation Partners, dated January 7, 2022, that valued Cellenkos as of November 30, 2021 at $329 per share, or $4.6 billion, which is approximately the same as the price of the Cellenkos Transaction. Redwood reached this price using a discounted cash flow ("DCF") analysis that substantially inflated the value of Cellenkos in several ways.

26

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                                                                RECEIVED NYSCEF: 07/25/2023

99.    First, the extreme divergence between this valuation, obtained at the direction of the Company's conflicted Board, and BVCF's contemporaneous valuation at a fraction of the price, shows the unreasonableness of the Redwood valuation.

100.    Second, the Redwood valuation assumed that all of Cellenkos's products would be successful and yield revenue, even though they faced technical and regulatory risks at the time. For example, as of that time, at most 2 of Cellenkos's 8 products in development had passed through Phase 1 trials, and none had moved to Phase 2, but Redwood assumed that all 8 would be approved by the FDA. That is a completely unrealistic assumption. Failing to discount for those risks is a substantial flaw in the Redwood valuation.

101.    Third, Redwood applied a discount rate that is plainly too low, based on the assumption that Cellenkos was far more advanced than the early stage start-up company that Cellenkos described itself as on its website.

102.    Fourth, Redwood accepted without challenge the projections provided by Cellenkos and Global Cord Blood's management. Any projections provided by the Company and Cellenkos cannot be taken at face value given their blatant conflicts of interest and gross misconduct.

103.    Redwood valued Golden Meditech's (and its subsidiary's) license agreement for CK0802 at $800 million, but did not mention at all what Golden Meditech paid for that license (if anything) just one month earlier.

104.    Other aspects of the Cellenkos Transaction are also highly favorable to Defendants. These include (1) Global Cord Blood providing Cellenkos with $29.2 million for clinical trials and product development over the course of the first year following the transaction; (2) Cellenkos

27

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

insiders (including Leong Kim Chuan ("Jackie")[5], a director of Golden Meditech Stem Cells (BVI) Company Limited; and Vyserion, which is owned by Kam's sister[6]) having close connections to Golden Meditech and Kam; (3) covenants that Global Cord Blood will not delist its shares (which benefits Defendants because they have been fighting off attempts by ordinary shareholders to have the Company taken private so that they can receive fair value for their shares); and (4) a pool of RSUs (restricted stock units, or stock awards) of 24,652,834 RSUs for Company insiders.

105.    The JPLs have similarly found that "[t]he valuation of Cellenkos appears to have material defects in its methodology." They have also noted "irregularities and inconsistencies of the assumptions and projections used."

106.    Further evidence of Defendants' misconduct has emerged in the Cayman Islands proceedings.

**B.    The Cellenkos Transaction Was the Result of Defendants' Misconduct and Lacked Shareholder Approval**

107.    On May 12, 2022, the Grand Court of the Cayman Islands granted Blue Ocean's *ex parte* injunction order, pausing the Cellenkos Transaction. Blue Ocean and Global Cord Blood then continued to contest the propriety of the transaction, the validity of the EGM that Blue Ocean called, and the ability of Global Cord Blood's Board to control the Company.

108.    On September 22, 2022, the Grand Court of the Cayman Islands suspended the powers of Global Cord Blood's Directors (including Defendants) and appointed Joint Provisional

---

[5] Leong Kim Chuan ("Jackie") is a Director of Cellenkos and of Golden Meditech Stem Cells (BVI) Company Limited (a subsidiary of Golden Meditech). Chuan holds a 7.2% interest in Cellenkos (including potential shares from the exercise of warrants).

[6] Vyserion is a British Virgin Islands ("BVI") company that acquired 1.25 million shares in Cellenkos in 2016, when Golden Meditech also acquired 1.3 million shares in Cellenkos. Vyserion stood to receive substantial consideration from the Cellenkos Transaction. Vyserion has been owned by O Na, also known as Nan Wang. Blue Ocean explains in its amended Petition in the Cayman Islands that O Na is Defendant Kam's sister.

28

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                                    RECEIVED NYSCEF: 07/25/2023

Liquidators ("JPLs") over the Company. The JPLs are authorized and empowered by the Grand Court to take such steps as they consider necessary or expedient to protect the Company's assets.

109.    Following the appointment of the JPLs, the NYSE halted trading in Global Cord Blood's ordinary shares, effective September 23, 2022.

110.    As bad as the Cellenkos Transaction is for Global Cord Blood, evidence that has emerged in the Cayman proceedings shows that Defendants engaged in an even more blatant fraud than initially appeared to be the case.

111.    On June 7, 2022, Global Cord Blood stated for the first time that it had already completed Stage 1 of the Cellenkos Transaction. This included payment of the $664 million to Golden Meditech's subsidiary (Golden Meditech Precision Medicine BVI) on April 29, 2022 and the issuance of 12.3 million shares on May 4, 2022. In other words, not only did the Company's conflicted Board rush through the transaction in less than three days, it proceeded to siphon off $664 million in cash from the Company as quickly as possible, ***the day the transaction closed***.

112.    The new share issuance was also crucial to Defendants' scheme because Defendants used it as a basis to argue that shareholders no longer had sufficient shares to call the June 16, 2022 EGM (which required support of 75% of shareholders if it was not supported by the Board) or take the steps they did at that meeting. As the July 29 Judgment describes the Company's position, "the EGM was invalidly convened because on June 3, 2022, the 75% threshold was clearly not met by the supporting shareholders if the May 4, 2022 allotment was taken into account."[7]

---

[7] Correspondence that Blue Ocean obtained also showed that Global Cord Blood was planning to complete Stage 2 of the transaction by May 4, 2022, which would involve the issuance of even more shares, totaling 78,017,744 shares (including Stages 1 and 2) for the Cellenkos Transaction by that time. Defendants have not disclosed the extent to which they completed this additional share issuance.

29

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

113.    Global Cord Blood and Defendants presented evidence that the $664 million payment was already made, and over 12 million shares already issued, as part of an effort to get the Cayman court to withdraw its injunction halting the Cellenkos Transaction because the transaction had already been completed in part. This information was not publicly disclosed in SEC filings or contemporaneous press releases, as the Cayman court would have expected it to have been disclosed. In fact, the Cayman court found that the Company made misleading statements when it announced the Cellenkos Transaction on April 29, 2022, by misrepresenting that the transaction would close on some future date and "the consideration would be paid on some future date when in fact closing had already effectively occurred and the US$664 million had been or was being paid on the same date as the filing" and "further failed to promptly disclose that over 12 million new shares had been issued on May 4, 2022 by way of consummating Stage 1 of the Transaction."

114.    The Cayman court noted in the July 29 Judgment that in Cleary's May 5, 2022 response to Blue Ocean noted above, Cleary "defend[ed] the integrity of the Transaction" and stated "that cash consideration of US$664 million had been paid and that 12,363,636 new shares had been allotted." The court also noted that Defendant Albert Chen provided an affidavit, dated June 7, 2022, in which he stated that on "4 May 2022, 17.00 NY time 12,363,636 new shares were issued," supported by a "copy of the Company's Register of Members, updated further to the completion of Stage 1 of the Transaction."

115.    The Cayman court did not accept the Company's argument that the June 16, 2022 EGM was not validly convened, because the Company did not provide sufficient evidence that it had validly revised its share register—which the Company did not even validly maintain in the first place—to reflect the May 4, 2022 share issuance. The validity of the June 16 EGM thus

30

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/25/2023

remained undecided in the July 29 Judgment. But the evidence that Defendants presented to the Cayman court showed the extent to which they tried to alter the share register, including through extensive correspondence with Continental and Loeb & Loeb in New York.

116.    Even so, Defendants' scheme initially succeeded to some extent. The Cayman court, in the July 29 Judgment, discharged the court's prior order enjoining the Cellenkos Transaction because that would better maintain the *status quo* of Stage 1 of the transaction purportedly having been completed (although that discharge was never perfected). But the Court also saw the impropriety of Defendants' actions. It ruled that "the Company cannot proceed with Stages 2 and 3 of the Transaction" and that Blue Ocean "has a good arguable case for succeeding in establishing that the Transaction was unlawful because it required shareholder approval."

117.    As the Cayman court explained, the Cellenkos Transaction required shareholder approval under NYSE rules and the Company's articles of association. The court explained that the "contention that a new share allotment of more than 20% of the Company's existing issued capital would require shareholder approval in conformity with the standard NYSE rule (which could have been but seemingly had not been explicitly dis-applied), seemed commercially to be fundamentally plausible." In addition, Article 61 of the Company's articles of association requires a shareholder meeting for "the granting of any mandate or authority to the Directors to offer, allot, grant options over or otherwise dispose of the unissued shares in the capital of the Company representing not more than twenty per cent (20%) in nominal value of its existing issued share capital." This language indicates that "a massive allotment of roughly 100% [of the Company's current share capital] would require shareholder approval."

31

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
INDEX NO. 653598/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 07/25/2023

118. Overall, the Cayman court described its rulings in the July 29 Judgment as "a bit of a mess." Subsequent evidence has showed that Defendants' misconduct was even greater than it initially appeared to be up until that point.

## C. Defendants Stole Hundreds of Millions of Dollars From the Company

119. On September 28, 2022, the Cayman court issued its ruling appointing the JPLs, based on new evidence that Blue Ocean presented in its Amended Petition, dated September 22, 2022 (the "Amended Petition").

120. The September 28 Ruling explained that the court's ruling in the July 29 Judgment that Stage 1 of the Cellenkos Transaction had already been completed was based on a purported statement from China Guangfa Bank that Defendant Albert Chen presented to show that the $664 million was already paid.

121. New evidence that Blue Ocean presented from China Guangfa Bank, obtained with the assistance of local government officials in China, now showed that the bank statement that Defendant Albert Chen had presented earlier was forged. As the court explained, "it is very difficult to avoid the conclusion that this document . . . which resulted in my 29 July 2022 Judgment was in fact a forged document." While it was not necessary for the court to make that affirmative finding, it was "difficult to see how that document can possibly be anything other than a forgery, particularly because [Defendant] Albert [Chen] himself has, despite having an opportunity to explain the various discrepancies, merely denied the forgery allegation and said nothing more than that about it." The court concluded that "*there is in fact no cogent or convincing response to as serious an allegation as could ever be made against the Chief Financial Officer of a listed company*." This "new forgery evidence" had "not been contested in any substantive or serious way."

32

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM     INDEX NO. 653598/2023
NYSCEF DOC. NO. 2     RECEIVED NYSCEF: 07/25/2023

122.     Among other evidence of forgery, "the key amounts that were relied on by the Company as having been paid on or about 29 April 2022 to consummate this Transaction simply were not in the relevant bank account, let alone paid out of it, at the time that the Company's deponent swore those monies were there and were paid."

123.     In addition to raising even greater alarm about Defendants' theft of hundreds of millions of dollars, the absence of these funds was "pivotal because they were used as the platform for justifying the issuance of new shares which were said to deprive [Blue Ocean] and supporting shareholders [including Plaintiffs] of the majority that they required to validly convene an extraordinary general meeting and, as they thought that had validly done, remove the existing management." As the court explained, "one might cynically view the [Company's] management as an unelected dictatorship."

124.     The Cayman court explained that Blue Ocean had "almost an irresistible case – for setting aside the [July 29 Judgment], albeit not perfected yet, on the grounds that it was procured by fraud." That fraud was the basis for the court's rulings in the July 29 Judgment discharging the injunction on Stage 1 of the Cellenkos Transaction and deciding that shareholders should not be permitted at that time to implement the resolutions passed at the June 16 EGM.

125.     The Cayman court concluded that "there clearly is a risk of mismanagement flowing from the fact that the best available evidence strongly suggests that" Defendant Albert Chen—the Company's CFO, who is also an Executive Director—"has misled the Court and put before the Court a false bank statement pivotal to the matters the Court was adjudicating at the 13-15 July 2022 hearing," which led to the July 29 Judgment.

126.     Furthermore, the evidence implicated Global Cord Blood's purportedly "Independent Directors"—*i.e.*, Defendants Jennifer Weng, Mark Chen, Yungang Ken Lu, Jacky

33

Cheng, and Jack Chow—who displayed "seeming silence, or paralysis . . . in the face of these shocking allegations about forgery." As the court explained:

> One might have thought that if the independent directors were in fact capable of exercising control, that they would have taken steps by now to demonstrate very decisively that they were in fact putting the ship in order; that they were marginalising the crew who appeared to be guilty of misconduct and that the Court need have no concern that the Company's affairs going forward would be conducted in an orderly manner. Nothing of that sort has happened as far as the material before the Court is concerned . . . . I am bound to find that there is a serious risk of mismanagement and misconduct by the Company's directors based on the material that is presently before the Court.

127.    The Cayman court therefore found that appointment of the JPLs was needed to prevent misconduct or mismanagement.

128.    In addition, the Cayman court determined that the JPLs were needed to prevent dissipation or misuse of Global Cord Blood's assets.

129.    As the Cayman court explained, "[c]oncerns do arise about the misuse of the Company's assets having regard to the fact that money that [Defendant Albert Chen] said was in a particular account has now been shown not to have been there."

130.    The Cayman court also noted evidence suggesting that "in fact the reason for the Cellenkos Transaction might be 'filling a gap'" to cover up secret related-party transactions that were improperly made in the past and never disclosed. The evidence available at that point showed that "legitimate or published related party payments are in fact less than payments which were actually made, as revealed by bank account records."

131.    This was based on evidence in the Amended Petition that Blue Ocean obtained "indicating that the Company without lawful excuse or justification has paid RMB3,557,616,000 [approximately $500 million] to JingJing (which is owned by Kam) between 1 April 2017 and 31 May 2022." These "Unlawful Payments are not recorded in any of the published financial statements of the Company for the relevant period. The [Cellenkos] Transaction, and in particular

34

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 07/25/2023

the [$664 million] Cash Consideration to be paid to Kam and/or Kam controlled entities for the License Agreement [for CK0802] was designed to conceal the Unlawful Payments and was not a genuine commercial transaction in the best interests of the Company."

132.    The subsequent investigation by the JPLs has provided substantial additional evidence to support this "filling a gap" theory.

133.    In addition, the Company's Directors have engaged in substantial obstruction of the JPLs' efforts.

**D.    The JPLs' Findings of Further Theft and Other Misconduct**

134.    The Cayman court appointed three individuals from Grant Thornton Recovery & Reorganisation Limited as the JPLs. The JPLs are focused on investigating the misappropriation of Global Cord Blood's assets and historic mismanagement and wrongdoing, securing misappropriated assets, and preserving the Company's current assets and operations.

135.    The JPLs have filed four reports describing their findings, including on October 20, 2022, December 1, 2022, March 1, 2023, and June 1 2023.

136.    The JPLs stated in their third report that on February 16, 2023, they removed all members of the Company's Board and replaced them with a new set of Directors, all of whom are associated with Grant Thornton. When the Company's Directors are referred to herein, the former Directors, who were in place during the relevant time until they were replaced by the JPLs, are being referenced unless specifically noted otherwise.

137.    The JPLs sought to have the Cayman proceeding recognized by the United States Bankruptcy Court for the Southern District of New York as a foreign main bankruptcy proceeding under Chapter 15 of the U.S. Bankruptcy Code. The Bankruptcy Court rejected that request on December 5, 2022, because the JPLs "aver that they hope never to need to liquidate the company

35

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM     INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                              RECEIVED NYSCEF: 07/25/2023

or even its assets." *In re Global Cord Blood Corp.*, Case No. 22-11347 (DSJ), 2022 WL 17478530, at *11 (Bankr. S.D.N.Y. Dec. 5, 2022).

### 1.     The JPLs' Findings of Defendants' Further Misconduct

138.     In a declaration submitted on October 7, 2022, in connection with that petition to the U.S. Bankruptcy Court, Margot MacInnis (one of the JPLs) stated that they had not found "any reason to doubt the accuracy of that evidence" that Blue Ocean presented in the Cayman proceeding. This includes the allegation that the Cellenkos Transaction "is a related party transaction given a number of close connections between" Golden Meditech and Global Cord Blood, including the relationship between Defendants Kam and Zheng, and Kam's ownership or control of 55.7% of Cellenkos and ownership of the license agreement for CK0802. (*See supra* ¶¶ 73-80, 96-98, 131).

139.     The MacInnis Declaration also noted allegations from the Amended Petition that Global Cord Blood "paid $500 million to [Defendant] Kam's companies over five years that was not disclosed in [the Company's] published financial statements." In addition, MacInnis understood "that in submissions to the [Cayman Islands] Court on September 22, 2022, it was alleged that large amounts of funds were taken from [Global Cord Blood's] subsidiaries and paid to Mr. Kam's companies within four days of Blue Ocean presenting its initial petition on May 5, 2022."

140.     MacInnis explained that "[m]ore than a half billion dollars of [Global Cord Blood's] funds may have been secretly and wrongfully transferred from the [Company], and it is possible that the some of those funds may be in or have passed through the United States."

141.     The JPLs have been trying to obtain full operating control of Global Cord Blood's operating subsidiaries in Hong Kong, China; locate and secure all of its assets; obtain Global Cord

36

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 07/25/2023

Blood's books and records; investigate the underlying events at issue; and locate the Company's executives and Directors.

142.    The four reports that the JPLs have published to date show even further misconduct by Defendants. But the JPLs have not been able to recover any of the misappropriated funds.

143.    An analysis of the Company's bank account information shows that an indirect subsidiary of the Company called Chen Hong "generated sufficient cash inflows to fund total payments of approximately US$606 million in 74 transactions during the period from September 2015 to May 2022 to entities related to [Golden Meditech]." In contrast, the Company's Annual Reports that it filed during that time show related-party payments totaling only $42.975 million. The actual payments of $606 million are over 14 times the reported payments "and the JPLs have seen no indication or explanation for this substantial inconsistency."

144.    The JPLs have also noted other "unusual transactions" in the Company's financial statements, including what the Company described as a "refundable earnest money deposit" of $54 million for a "Letter of Intent with a third party to potentially acquire non-controlling equity interests in a healthcare company."

145.    The JPLs have identified only approximately US$427,000 and HK$135,000 in the bank accounts of Global Cord Blood and its subsidiaries, compared to liabilities that creditors have notified the JPLs about so far of approximately $985,000. This means that while the Company generated significant cash, including the approximately $927 million in cash that it had as of its 2021 Annual Report, nearly all of those funds have been misappropriated.

146.    In addition, the JPLs have noted that "funds were deposited into and immediately paid out from [the Company's] bank accounts in the week prior to the appointment of the JPLs."

37

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

147.    Moreover, a "review of the Company's Bank of China statements also demonstrates that there has been a total of US $9.9 million of payments made by cheques authorised by [Defendant] Albert Chen to [Golden Meditech] from that account from April 2021 to June 2022. The JPLs have queried these payments with [Golden Meditech] and received no response to date."

148.    Global Cord Blood's businesses continue to operate and the JPLs are making efforts to ensure that the Company's day-to-day operations continue. The Company has continued to receive substantial amounts of revenue as a result of these operations.

149.    At the outset of their work, the JPLs informed the parties to the Cellenkos Transaction that the transaction remained injuncted and the Company was prohibited from taking any steps to consummate it. The JPLs stated in their first report that on October 9, 2022, the sellers to the transaction "wrote to the JPLs to advise that they were exercising their right to terminate the" share purchase agreements through which the Company was to purchase their shares in Cellenkos. This purported termination, however, does not undo the first stage of the transaction that the Company represented previously that it consummated, or the hundreds of millions of dollars that Defendants misappropriated from the Company through other means.

150.    In each of their reports, the JPLs have noted, with increasing concern, that the Company did not have adequate funding to support the JPLs' activities, for which the JPLs will seek approval from the Cayman court. Through their fourth report, the JPLs incurred approximately $16.3 million in costs and expenses. They "remain in discussion with major shareholders and third party professional funders with a view to securing an acceptable longer term funding." The JPLs, however, still have not secured that funding over ten months after their appointment.

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM       INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 07/25/2023

151.    This inadequate funding is a particular impediment to the JPLs brining actions against parties such as Defendants who have legal liability to the Company for their misconduct, which the JPLs noted in their third report would be "far more expensive" than their other activities. The JPLs thus did not mention such legal actions in their most recent report, focusing instead on their other activities.

### 2.    Defendants Have Obstructed the JPLs' Efforts

152.    The JPLs have noted many steps that Defendants (including Defendants Albert Chen, Zheng, and the Company's purportedly "independent" Directors) have taken to disrupt the JPLs' efforts, including taking corporate actions with respect to the Company's subsidiaries in order to impede the JPLs' control of them, deactivating the Company's website (which the JPLs were able to restore at a different web address), and refusing to provide the Company's books and records. The JPLs noted Defendants Albert Chen and Zheng's efforts "to allot shares [and] change the name, registered address and directors of the" Company's subsidiaries in Hong Kong, China.

153.    Moreover, all of Global Cord Blood's Directors other than Xu Ping (who was appointed by Blue Ocean) "are deliberately refusing to co-operate with the JPLs" and "are failing to comply with" the requests of the JPLs. These Directors have not acknowledged the JPLs' authority, "confirmed their intention to stop seeking to exercise powers which they no longer possess" (despite the fact that the Cayman's court's order appointing the JPLs also suspended the power of the Company's Directors), provided any information or assets to the JPLs, or cooperated with them in any way. The JPLs received a letter dated November 30, 2022, from White & Case, on behalf of the purported "Independent Directors," denying that these Directors possessed any of the Company's books and records, asserting that they "have no ability to help the JPLs gain access to [the Company's headquarters], and contain[ing] no offers of assistance." In a response dated December 5, 2022, the JPLs invited the purported Independent Directors to meet. The JPLs

39

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 07/25/2023

explained in their third report that counsel for these Directors responded that "there would be no benefit in the former independent directors having a meeting with the JPLs, that they held no information related to the Company and considered that such a meeting would be a 'complete waste of time'."

154.    Instead, the Company's purportedly "independent" Directors represented to the Bankruptcy Court in the U.S. that they are continuing to exercise their duties as "responsible stewards of [the Company] in accordance their fiduciary duties, [and] are standing by to ensure that the Company is managed properly and responsibly in the best interests of all stakeholders." The JPLs called this "an apparent attempt to stymie the JPLs' ongoing investigations." Moreover, the JPLs stated that "one or more of the Directors are likely to be directly or indirectly involved" in the many steps that "have been and continue to be taken to frustrate the JPLs' efforts."

155.    In February 2023, the JPLs obtained an order from the Cayman court that limits the powers of the Company's former Board and includes a penal notice that provides for punishment (including potential contempt of court, imprisonment, fines, or having their assets seized) if the Directors continue not to cooperate with the JPLs (including refusing to comply with their discovery demands).

156.    The JPLs have not even been able to gain access to the Company's headquarters, which it shares with Golden Meditech. Golden Meditech has claimed that Global Cord Blood vacated the premises on our around September 13, 2022, "due to rent arrears" of approximately HK$2.3 million. But the JPLs noted that this was not communicated to them until October 13, 2022, which was "itself a cause for skepticism."

157.    All of this obstructive behavior has significantly impeded the JPLs' efforts.

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/25/2023

## V.     DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

158.    In bringing this action, Plaintiffs have satisfied all statutory and procedural requirements of applicable law. Because Global Cord Blood is a Cayman company, Cayman law governs the circumstances under which a stockholder can assert a derivative claim. Under Cayman law, a stockholder can assert a derivative claim on behalf of a company if: (1) the unchallenged conduct infringed on the stockholder's personal rights; (2) the conduct would require a special majority to ratify; (3) the conduct qualifies as a fraud on the minority; or (4) the conduct consists of *ultra vires* acts.

159.    Plaintiffs have satisfied several of these requirements based on Defendants' blatantly fraudulent acts of mismanagement and theft from the Company. This diverting of at least hundreds of millions of dollars of the Company's substantial funds to the personal interests of Defendant Kam and the other Company insiders or related parties associated with Cellenkos and Golden Meditech was plainly *ultra vires* conduct. The scheming that the Director Defendants engaged in to further this plot—including forgery and obstruction of efforts by the Company's shareholders and the JPLs to prevent and remediate the misconduct at issue—also epitomizes acts outside the authority of the Director Defendants. For example, as the Cayman court explained, Defendant Albert Chen did not provide any "cogent or convincing response to as serious an allegation as could ever be made against the Chief Financial Officer of a listed company."

160.    These requirements are independently satisfied because the Cellenkos Transaction required shareholder approval. (*See supra* ¶¶ 116-17).

161.    Defendants' misconduct also trampled on Plaintiffs' personal rights as a stockholder of Global Cord Blood. In addition, while Defendants were not technically majority shareholders of the Company, their actions are tantamount to a fraud on the minority because they used their entrenched positions comprising the entirety of the Company's senior management and

41

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

every Board seat except for one to force through actions that plainly were not in the interests of the Company's ordinary shareholders. As the Cayman court explained, the Company's management caused Global Cord Blood to issue "new shares which were said to deprive" shareholders, including Plaintiffs, "of the majority that they required to validly convene an extraordinary general meeting and, as they thought that had validly done, remove the existing management." The court noted that "one might cynically view the [Company's] management as an unelected dictatorship."

162.    Plaintiffs are therefore not required under Cayman Islands law to demand that Global Cord Blood pursue claims against Defendants prior to bringing this action.

163.    In any event, given Defendants' control over the Company and their personal involvement in the misappropriation of Company assets, any such demand would be futile. Moreover, to the extent that the JPLs currently control the Company, the JPLs have explained that they do not have sufficient funding to bring this action. They have prioritized their other activities over bringing legal actions to recoup the substantial funds that Defendants misappropriated or aided in being misappropriated by the other Defendants. Plaintiffs are therefore not required under New York or Cayman Islands law to demand that Global Cord Blood pursue claims against Defendants prior to bringing this action.

164.    Plaintiffs will fairly and adequately represent the interests of other Global Cord Blood stockholders who are similarly situated in enforcing the Company's rights. Plaintiffs are an institutional investor, have retained experienced counsel, and have a significant interest—aligned with that of Global Cord Blood's other stockholders—in redressing Defendants' misappropriation of hundreds of millions of dollars from the Company.

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

## VI.     CAUSES OF ACTION

### Count 1: Breach of Fiduciary Duty Under Cayman Islands Law
*(Against Defendants Ting (Tina) Zheng, Albert Chen, Mark Chen, Jennifer Weng, Ken Lu, Jack Chow, and Jacky Cheng (the "Director Defendants")*

165.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

166.    As directors, the Director Defendants owed common law and fiduciary duties to Global Cord Blood. Those duties required each Director Defendant to, among other things:

a.   act *bona fide* in what they believed to be in Global Cord Blood's best interest;

b.   use the powers conferred upon them as a Director for their proper purpose and not for a collateral purpose;

c.   not place themselves in a position in which there is a conflict between their duty to Global Cord Blood and their personal interest; and

d.   not make a profit out of property acquired by reason of their relationship to the Company of which they were a director.

167.    Defendants Zheng and Albert Chen also had these duties in their dual roles as Global Cord Blood's senior executives.

168.    The Director Defendants breached each of these duties. The Director Defendants placed themselves in a conflicted position and then used their positions as Directors to approve a transaction in which they or related parties profited at Global Cord Blood's and its stockholders' expense. Indeed, rather than acting *bona fide* in what they believed to be Global Cord Blood's best interests, the Director Defendants allowed themselves and related parties to misappropriate at least hundreds of millions of dollars of Global Cord Blood's funds and to engage in the Cellenkos Transaction to cover-up that misconduct and to profit even more and further entrench the control of related parties over the Global Cord Blood.

43

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                            RECEIVED NYSCEF: 07/25/2023

169.    In perpetrating this scheme that misappropriated Global Cord Blood's assets and culminated in the Cellenkos Transaction, the Director Defendants **did not act in Global Cord Blood's best interests**. Instead, they acted in bad faith to misappropriate at least hundreds of millions of dollars from the Company, siphoning off the Company's substantial cash reserves to related parties through outright theft or, at best, grossly inadequate consideration.

170.    The Director Defendants also **used their positions for the improper and collateral purposes** of benefiting Defendant Kam and Golden Meditech, their benefactors who they were still closely associated with.

171.    In addition, the Director Defendants **made their roles at Global Cord Blood subject to severe conflicts of interest** as a result of their serving the interests of related parties instead of the best interests of the Company.

172.    Furthermore, the Director Defendants **personally profited as a result of these activities, to the detriment of Global Cord Blood**. Defendants Zheng and Albert Chen profited directly from these activities because they continued to maintain close personal and professional relationships with Defendant Kam and Golden Meditech. The other Director Defendants also stood to profit based on their past close ties to Defendant Kam and Golden Meditech, and the continued interaction between Defendants Global Cord Blood, Golden Meditech, Kam, Zheng, and Albert Chen.

173.    The Director Defendants would have overseen and approved the hundreds of millions of dollars of undisclosed related party payments that Global Cord Blood made. At the very least, the Director Defendants breached their duties in allowing such substantial undisclosed payments to be made under their oversight. The Director Defendants further breached their fiduciary duties by taking substantial steps to cover up Global Cord Blood's related-party

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023
RECEIVED NYSCEF: 07/25/2023

payments through the Cellenkos Transaction and their subsequent steps to obstruct the efforts of the Company's shareholders and the JPLs to cancel the transaction and recover the misappropriated funds.

174. As such, the Director Defendants breached numerous fiduciary duties in connection with this course of conduct.

175. Global Cord Blood was damaged as a result of the Director Defendants' breaches of their fiduciary duties, in that the Company has lost at least hundreds of millions of dollars that were misappropriated from the Company.

176. The Director Defendants' breaches of fiduciary duty also harmed Global Cord Blood even more because of the reputational harm that they caused the Company. Even if Global Cord Blood is able to continue its operations, it will not be able to perform at the same level that it did before the Director Defendants' misconduct.

### Count 2: Aiding and Abetting Breach of Fiduciary Duty Under New York Law
*(Against Defendants Yuen Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners)*

177. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

178. Defendants Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners acted with knowledge of the fact that the Director Defendants were in breach of their fiduciary duties to Global Cord Blood.

179. Defendant Kam by definition was aware of, and aided and abetted, those breaches because he orchestrated the scheme, secretly continued to control Global Cord Blood, had multiple

45

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/25/2023

ties to the Company and the Director Defendants, and was the primary recipient the hundreds of millions of dollars (or more) that were misappropriated from Global Cord Blood.

180.    Defendant Cellenkos Inc. was aware of the breaches of fiduciary duty involved in the Cellenkos Transaction because Defendant Kam owned or controlled the majority of Cellenkos. Defendant Cellenkos Inc. was further aware of the breaches of fiduciary duty involved in the Cellenkos Transaction based on the patently unfair nature of the transaction.

181.    Defendants Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, and Golden Meditech (BVI) Company Limited were aware of the breaches of fiduciary duty involved in the Cellenkos Transaction and all of the improper payments and transfers that Global Cord Blood made because these Defendants were owned and/or controlled by Defendants Kam and Albert Chen. These Defendants were further aware of the breaches of fiduciary duty involved in the Cellenkos Transaction and all of the improper payments and transfers that Global Cord Blood made because of the patently unfair nature of these transactions, the close association between these Golden Meditech entities and Global Cord Blood, and the direct involvement of these Golden Meditech entities in these improper transactions.

182.    Defendant Easton Capital Corp. was aware of the breaches of fiduciary duty involved in the Cellenkos Transaction because it was founded by Defendant Mark Chen.

183.    Defendants Easton Capital Corp. and Redwood Valuation Partners were also aware of, and aided and abetted, the breaches of fiduciary duty involved in the Cellenkos Transaction because their analysis in support of the transaction was completely unfounded. There was no way to justify the lofty valuations attributed to CK0802 and Cellenkos's other products given the failure to discount for their early stages and uncertain futures. As the JPLs have observed, "[t]he valuation

46

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 07/25/2023

of Cellenkos appears to have material defects in its methodology" and there are "irregularities and inconsistencies [in] the assumptions and projections used" in the analyses.

184.    Defendants Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners therefore substantially assisted the breaches of fiduciary duty by the Director Defendants and knowingly aided and abetted those breaches.

185.    Global Cord Blood has been substantially harmed as a result of Defendants Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners aiding and abetting of the Director Defendants' breaches of fiduciary duties, to the same extent that the breaches themselves damaged the Company.

### Count 3: Dishonest Assistance Under Cayman Law
*(Against Defendants Yuen Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners)*

186.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

187.    Defendants Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners assisted in the Director Defendants' breaches of fiduciary duties to Global Cord Blood described in Count 1 above.

47

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/25/2023

188. Defendant Kam by definition assisted those breaches because he orchestrated the scheme, secretly continued to control Global Cord Blood, had multiple ties to the Company and the Director Defendants, and was the primary recipient the hundreds of millions of dollars (or more) that were misappropriated from Global Cord Blood.

189. Defendant Cellenkos Inc. by definition assisted in the breaches of fiduciary duty involved in the Cellenkos Transaction.

190. Defendants Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, and Golden Meditech (BVI) Company Limited assisted in the breaches of fiduciary duty involved in the Cellenkos Transaction and all of the improper payments and transfers that Global Cord Blood made because these Defendants were owned and/or controlled by Defendants Kam and Albert Chen. These Defendants further assisted the breaches of fiduciary duty involved in the Cellenkos Transaction and all of the improper payments and transfers that Global Cord Blood made because of the close association between these Golden Meditech entities and Global Cord Blood, and the direct involvement of these Golden Meditech entities in these improper transactions.

191. Defendant Easton Capital Corp. assisted the breaches of fiduciary duty involved in the Cellenkos Transaction because it was founded by Defendant Mark Chen.

192. Defendants Easton Capital Corp. and Redwood Valuation Partners also assisted the breaches of fiduciary duty involved in the Cellenkos Transaction because their analysis in support of the transaction was completely unfounded. There was no way to justify the lofty valuations attributed to CK0802 and Cellenkos's other products given the failure to discount for their early stages and uncertain futures. As the JPLs have observed, "[t]he valuation of Cellenkos appears to

48

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 07/25/2023

have material defects in its methodology" and there are "irregularities and inconsistencies [in] the assumptions and projections used" in the analyses.

193.     These facts, as well as the patently unfair nature of the Cellenkos Transaction and Global Cord Blood's improper payments and transfers, also support the conclusion that Defendants Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners assisted in the Director Defendants' breaches of fiduciary duties to Global Cord Blood in a dishonest manner.

194.     The dishonest nature of Defendant Kam's assistance is further supported by his misappropriation of at least hundreds of millions of dollars from Global Cord Blood, his secretly exerting control over the Company, and his substantial undisclosed relationships with Director Defendants.

195.     The dishonest nature of the assistance that Easton Capital Corp. provided is further supported by the fact that Easton Capital Corp. was founded by Defendant Mark Chen.

196.     The dishonest nature of the assistance that Easton Capital Corp. and Redwood Valuation Partners provided is further supported by the patently unfounded nature of their analysis that was used to support the Cellenkos Transaction.

197.     The dishonesty of the individuals who prepared the analyses from Easton Capital Corp. and Redwood Valuation Partners is attributable to them. For example, John Friedman, who co-founded Easton Capital Corp. with Defendant Mark Chen prepared the analysis from Easton Capital Corp. Discovery will further show the individuals from Easton Capital Corp. and Redwood Valuation Partners who prepared their patently unfounded analyses that the Director Defendants used to support the Cellenkos Transaction.

49

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/25/2023

198.    Global Cord Blood has been substantially harmed as a result of Defendants Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Easton Capital Corp., and Redwood Valuation Partners providing dishonest assistance to the Director Defendants' breaches of fiduciary duties, to the same extent that the breaches themselves damaged the Company.

**Count 4: Knowing Receipt Under Cayman Law**
*(Against Defendants Yuen Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Ting (Tina) Zheng, and Albert Chen)*

199.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

200.    Global Cord Blood's assets, including its cash and cash equivalents, were held subject to fiduciary duties. In breach of those fiduciary duties, the Director Defendants caused Global Cord Blood to dispose of its cash to Kam, Golden Meditech, and related individuals and entities, all of whom beneficially received those assets or their traceable proceeds from Global Cord Blood.

201.    Defendant Kam by definition knew that Global Cord Blood's assets were transferred to him in breach of the Director Defendants' fiduciary duties because he orchestrated the scheme, secretly continued to control Global Cord Blood, and had multiple ties to the Company and the Director Defendants.

202.    Defendant Cellenkos, Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, and Golden Meditech (BVI) Company Limited, all had knowledge that Global Cord Blood's assets were transferred to them in breach of the Director Defendants' fiduciary duties because Defendant Kam controlled all

50

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM          INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 07/25/2023

of these Defendants through his direct or indirect ownership of them and his position as Golden Meditech's CEO and Chairperson. Defendant Albert Chen also controlled Golden Meditech through his continued involvement in managing it. All of the entities listed in this paragraph also had knowledge that Global Cord Blood's assets were transferred to them in breach of the Director Defendants' fiduciary duties, based on the patently unfair nature of the Cellenkos Transaction.

203.    Defendant Zheng received Global Cord Blood's misappropriated assets by virtue of her personal relationship with Defendant Kam,

204.    Defendant Albert Chen received Global Cord Blood's misappropriated assets by virtue of his secret continued involvement in Golden Meditech's operations.

205.    Defendants Zheng and Albert Chen had knowledge that Global Cord Blood's assets were transferred to them in breach of the Director Defendants' fiduciary duties because of their personal involvement in those breaches.

206.    The knowledge of the Defendants named in this Count makes it unconscionable for these Defendants to retain Global Cord Blood's assets that they received.

207.    These Defendants are therefore liable to give restitution of, or otherwise repay, the assets that they received from Global Cord Blood as a result of the actions described above.

208.    These Defendants are also liable to return or cancel any shares that they received from Global Cord Blood as a result of the actions described above.

**Count 5: Unjust Enrichment Under New York Law or Common Law**
***(Against Defendants Yuen Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Ting (Tina) Zheng, and Albert Chen)***

209.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

51

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM INDEX NO. 653598/2023
NYSCEF DOC. NO. 2                                                         RECEIVED NYSCEF: 07/25/2023

210. Global Cord Blood conferred a monetary benefit on Defendants Yuen Kam, Cellenkos Inc., Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, Golden Meditech (BVI) Company Limited, Ting (Tina) Zheng, and Albert Chen in the form of money and shares improperly transferred to these Defendants.

211. Under principles of equity and good conscience, these Defendants should not be permitted to retain the money and shares improperly transferred to them because they knowingly concealed material information regarding these improper payments and transfers that constituted the looting of Global Cord Blood's assets.

212. These Defendants had a duty to disclose the improper payments and transfers they received from Global Cord Blood, as well as their scheme to loot Global Cord Blood of its assets.

213. As a result of these Defendants' conduct, Global Cord Blood suffered damages in the form of the substantial amount of assets that were improperly transferred out of the Company to these Defendants.

214. In the alternative to the other causes of action described above, Plaintiffs have no other adequate remedy at law against the Defendants named in this Count.

215. Plaintiffs seek the restitution or repayment of all assets that these Defendants have unjustly received as a result of the conduct alleged herein.

216. These Defendants are also liable to return or cancel any shares that they received from Global Cord Blood as a result of the actions described above.

## VII.    NOTICE OF INTENT TO RAISE ISSUES UNDER FOREIGN LAW

217. Pursuant to CPLR 4511, Plaintiffs give notice of their intent to raise issues under Cayman Islands law, including, but not limited to, the law governing Defendants' duties to Global Cord Blood, their breach of such duties, and the dishonest assistance and knowing receipt claims

52

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM
NYSCEF DOC. NO. 2

INDEX NO. 653598/2023

RECEIVED NYSCEF: 07/25/2023

set out above. Plaintiffs intend to offer expert testimony, documents, and other relevant information to the Court to determine the foreign law at issue.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

a.  Awarding compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial;

b.  Disgorging all profits Defendants have made as a result of their breaches;

c.  Disgorging all profits that Defendants received, directly or indirectly, as a result of their dishonest assistance;

d.  Rescinding the Cellenkos Transaction, or any part of it, and all related agreements;

e.  Voiding the transfers of Global Cord Blood's assets to Defendants or their related parties;

f.  Restitution of the assets that Defendants misappropriated from Global Cord Blood;

g.  Awarding costs, attorneys' fees, expert fees, and other costs, as well as prejudgment and postjudgment interest; and

h.  Such other and further relief as the Court deems just and proper.

## IX.    DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury. Plaintiffs shall file and serve a note of issue at the appropriate time.

Dated:  July 25, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Michael Grunfeld*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

53

FILED: NEW YORK COUNTY CLERK 07/25/2023 08:59 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 07/25/2023

jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

*Attorneys for Plaintiffs*

54