**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | No. 24-cv-3071-PKC<br><br>Hon. P. Kevin Castel |

**DEFENDANT MARK CHEN'S MEMORANDUM OF LAW IN**
<u>**OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE**</u>

WHITE & CASE LLP

David Hille
Ladan F. Stewart
Robert Tiedemann
Susan Grace
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

*Attorneys for Defendant Mark Chen*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................ 2

      A.     Plaintiffs Have Made No Attempt To Effect Service Under the Hague Convention ................................................................................................................ 2

      B.     Plaintiffs Have Not Served Mr. Chen in New York ................................................. 3

LEGAL STANDARD ........................................................................................................................ 4

ARGUMENT ..................................................................................................................................... 4

I.     PLAINTIFFS FAIL TO SHOW THAT ALTERNATIVE SERVICE IS WARRANTED IN THIS ACTION ................................................................................. 4

      A.     Plaintiffs Have Made No Effort To Serve Mr. Chen in Accordance with the Requirements of the Hague Convention ................................................................... 6

      B.     Plaintiffs Fail To Show a Need for Judicial Intervention ........................................ 8

II.    PLAINTIFFS' PROPOSED METHOD OF ALTERNATIVE SERVICE IS NOT PERMITTED ................................................................................................................... 11

      A.     The Hague Convention Applies to Plaintiffs' Proposed Method of Service ......... 11

      B.     The Hague Convention Prohibits Service Via Email On U.S. Counsel ................. 14

CONCLUSION ................................................................................................................................. 16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BRF S.A. Sec. Litig.*,
  No. 18-cv-2213-PKC, 2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) ......................................7,8

*Convergen Energy LLC v. Brooks*,
  No. 20-cv-3746-LJL, 2020 WL 4038353 (S.D.N.Y. July 17, 2020) .............................. *passim*

*DEF v. ABC*,
  366 F. App'x 250 (2d Cir. 2010) ......................................................................................9

*Devi v. Rajapaska*,
  No. 11-cv-6634-NRB, 2012 WL 309605 (S.D.N.Y. Jan. 31, 2012).........................................6

*In re GLG Life Tech Corp. Sec. Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) .................................................................................. *passim*

*Halvorssen v. Simpson*,
  328 F.R.D. 30 (E.D.N.Y. 2018).......................................................................................6, 8

*Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*,
  385 F. Supp. 3d 212 (S.D.N.Y. 2019).....................................................................................5

*Moonbug Ent. Ltd. v. www.blippimerch.com*,
  No. 23-cv-1384-JHR, 2023 WL 2730107 (S.D.N.Y. Mar. 28, 2023) .....................................15

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
  No. 1:24-cv-00744-JLR, 2024 WL 2317715 (S.D.N.Y. May 22, 2024)............................7, 13

*S.E.C. v. China Ne. Petroleum Holdings Ltd.*,
  27 F.Supp. 3d 379 (S.D.N.Y. 2014)...................................................................................5, 6

*S.E.C. v. Cluff*,
  No. 17-cv-2460-RMB-KNF, 2018 WL 896027 (S.D.N.Y. Jan. 10, 2018)...........................6, 7

*Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*,
  No. 23-cv-3960-CM, 2023 WL 3977505 (S.D.N.Y. June 13, 2023)............................... *passim*

*Shen Zhen v. Jiangsu Huari Webbing Leather Co.*,
  No. 23-cv-4578-JGLC, 2023 WL 6553969 (S.D.N.Y. Sept. 12, 2023) ..................................16

*Shenzhen Chengront Tech. Co. v. Besign Direct*,
  No. 1:22-cv-10281-JLR, 2022 WL 17741496 (S.D.N.Y. Dec. 9, 2022)..................................16

*In re Sinohub, Inc. Sec. Litig.*,
  No. 12-cv-8478-WHP, 2013 WL 4734902 (S.D.N.Y. Aug. 14, 2013) .....................................8

*Smart Study Co. v. Acuteye-Us*,
  620 F. Supp. 3d 1382 (S.D.N.Y. 2022)...........................................................................14, 15

*Spin Master, Ltd. v. Aomore-US*,
  No. 23-cv-7099-DEH, 2024 WL 3030405 (S.D.N.Y. June 17, 2024).........................12, 13, 14

*Stream SICAV v. Wang*,
  989 F. Supp. 2d 264 (S.D.N.Y. 2013)...............................................................................7, 8, 13

*Uipath, Inc. v. Shanghai Yunkuo Info. Tech. Co.*,
  No. 23-cv-7835-LGS, 2023 WL 8600547 (S.D.N.Y. Dec. 12, 2023) .....................................15

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
  421 F.3d 129 (2d Cir. 2005)....................................................................................................9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)........................................................................................ *passim*

*Water Splash, Inc. v. Menon*,
  581 U.S. 271 (2017)...........................................................................................................14, 15

*Zhang v. Baidu.com Inc.*,
  293 F.R.D. 508 (S.D.N.Y. 2013) .......................................................................................7, 13

## Statutes and Rules

Fed. R. Civ. P. 4.................................................................................................... *passim*

The Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 1969 WL 97765 ...………*passim*

Defendant Mark Chen respectfully submits this memorandum of law in opposition to Lead Plaintiff Alessandro Somansino and named plaintiff Mark Lewko's ("Plaintiffs") Motion for Alternative Service (ECF No. 81) (the "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiffs ask the Court for an order authorizing them to serve Mr. Chen—who resides in China and has resided in China for the last 20 years—"by email to [his] U.S. counsel," without ever attempting to serve Mr. Chen through the proper channels required by the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  Plaintiffs' request should be denied.

Courts in this District consistently recognize that failure to attempt service under the Hague Convention is reason alone to deny a request for alternative service.  Courts frequently require such attempts where, as here, the party to be served resides in a country that is a signatory to the Hague Convention.  Plaintiffs' failure to attempt service under the Hague Convention is particularly striking here given that Mr. Chen provided Plaintiffs with his address in China.

Plaintiffs fail to show that any judicial intervention is needed in this case.  Plaintiffs argue that the Hague Convention is time-consuming and costly, but they cite no authorities where those justifications alone were found to merit alternative service.  Likewise, Plaintiffs claim service under the Hague Convention is "uncertain," but they point solely to difficulties encountered due to circumstances not present here such as the lack of an address.  At bottom, Plaintiffs request alternative service solely for their own convenience, having assessed that the Alternative Service Defendants can be served "immediately through their U.S. counsel" in a separate action.  The law

---

[1] Mr. Chen expressly reserves, and does not waive, all privileges and defenses that may be available to him, including as to service of process and personal jurisdiction.

does not, and should not, relieve Plaintiffs of their obligation to properly serve foreign defendants solely because they have U.S. counsel, let alone in a separate action.

Further, Plaintiffs' Motion must be denied because Plaintiffs' requested form of alternative service—email to U.S. counsel—is prohibited by the Hague Convention.  Plaintiffs do not even contend that email service is permissible under the Hague Convention, nor can they.  Plaintiffs seek to avoid the Hague Convention altogether by arguing that it is not implicated by service on U.S. counsel because such service is completed entirely in the United States.  This exact argument has already been considered at length and squarely rejected by courts in this District.  Multiple decisions have held that Plaintiffs' argument runs afoul of the plain language of Rule 4(f), which expressly permits alternative service only if it is completed outside of the United States.  In other words, Plaintiffs cannot have it both ways.  Service cannot be outside of the United States for purposes of invoking Rule 4(f) but inside the United States for purposes of avoiding the requirements of the Hague Convention.  To the extent Plaintiffs wish to serve Mr. Chen via alternative means under Rule 4(f), the only methods of service that can be authorized are methods where service is completed abroad.  The Hague Convention therefore necessarily applies to Plaintiffs' requested service and, because the Convention prohibits email service on litigants in China, Plaintiffs' Motion must be denied.

## FACTUAL BACKGROUND

### A.  Plaintiffs Have Made No Attempt to Effect Service Under the Hague Convention

This putative securities class action was filed on April 22, 2024.  *See* ECF No. 1.  On July 9, 2024, Alessandro Somansino was appointed as Lead Plaintiff.  *See* ECF No. 56.  On July 31, 2024, Plaintiffs' counsel contacted David Hille and Robert Tiedemann of White & Case LLP to

ask whether White & Case would accept service on behalf of Mr. Chen. *See* Ex. 1 at 2-3.[2] On August 8, Mr. Tiedemann responded and advised Plaintiffs that White & Case is not authorized to accept service on behalf of Mr. Chen. *Id.* at 2. Plaintiffs' counsel then asked Mr. Tiedemann to provide an address where Mr. Chen can be served "without disputing the validity of service." *Id.* Mr. Tiedemann provided such an address for Mr. Chen on September 12. *Id.* at 1. Rather than commence service at that address, however, Plaintiffs instead filed a pre-motion letter with the Court requesting leave to seek alternative service. *See* Pls.' Pre-Mot. Ltr. dated Sept. 24, 2024 (ECF No. 78).[3]

The Court granted Plaintiffs' request to file the motion on September 26, 2024, *see* ECF No. 79, and the Motion was filed on October 3.

## B.    Plaintiffs Have Not Served Mr. Chen in New York

Plaintiffs have failed to effect service on Mr. Chen in the United States. While Plaintiffs assert that Mr. Chen was served in New York "via his spouse, Defendant Weng, in New York," Pls.' Br. (ECF No. 82) at 4, Plaintiffs are well aware from the Derivative Action that Mr. Chen does not reside in New York.[4] Mr. Chen resides in China, has not lived in New York since 2005, and has never resided at the New York apartment where MW Gestion purported to make service on him. *See* Chen Decl. ¶¶ 2-8; *see also* Ex. 2 (Derivative Action Motion to Dismiss) at 16. As set forth in Mr. Chen's Motion to Dismiss filed in the Derivative Action and again in his attached

---

[2] Unless otherwise specified, all references to Exhibits refer to the exhibits to the Declaration of David Hille, filed herewith.

[3] According to Plaintiffs' brief, each of the other individual "Alternative Service Defendants" (namely, Defendants Yuen Kam, Ting (a/k/a Tina) Zheng, and Bing Chuen (a/k/a Albert) Chen) also provided Plaintiffs with an address where they can be served, and they did so prior to Plaintiffs filing their Motion. *See* Pls.' Br. 3-4. As to the remaining "Alternative Service Defendant," Defendant Golden Meditech, Plaintiffs do not claim to have requested an address for service. *See id.* at 5.

[4] The purported service in New York was made by the original plaintiff in this securities action, MW Gestion, on May 7, 2024—after Mr. Chen had already moved to dismiss the Derivative Action on grounds including lack of personal jurisdiction and lack of service. *See* Aff. of Service (ECF No. 35); *see also* Ex. 2.

declaration here, while Mr. Chen and Ms. Weng are legally married, they have been living apart—on different continents—since 2014. *See* Ex. 2 at 16; Chen Decl. ¶ 7. Mr. Chen has never resided at Ms. Weng's New York apartment and he has no ownership or other interest in that apartment whatsoever. Chen Decl. ¶¶ 6-8; *see also* Ex. 2 at 16. Further, Mr. Chen has not been served, agreed to accept service, or authorized anyone to accept service on his behalf, in New York or anywhere else. Chen Decl. ¶¶ 9-10.

In light of the above, Mr. Chen intends to seek leave to file a motion to dismiss on the grounds of, *inter alia*, lack of service and lack of personal jurisdiction generally. Under the current scheduling order, Mr. Chen's pre-motion letter is due on October 28, 2024. *See* ECF No. 58.

## LEGAL STANDARD

Rule 4(f) of the Federal Rules of Civil Procedure is entitled "Serving an Individual in a Foreign Country." Fed. R. Civ. P. 4(f). The Rule provides as follows:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Conviction on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if any international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: . . . ; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

## ARGUMENT

**I.    PLAINTIFFS FAIL TO SHOW THAT ALTERNATIVE SERVICE IS WARRANTED IN THIS ACTION**

"'The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court.'" *In re GLG Life Tech Corp. Sec. Litig.*,

287 F.R.D. 262, 265 (S.D.N.Y. 2012) (quoting *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)).  While parties are not strictly required to exhaust efforts to effect service pursuant to Rules 4(f)(1) or 4(f)(2) before seeking alternative service under Rule 4(f)(3), courts have repeatedly held that "the moving party must make some showing of the need for judicial intervention" before alternative service will be permitted.  *Convergen Energy LLC v. Brooks*, No. 20-cv-3746-LJL, 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020).  That generally requires: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary."  *Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (citation and quotation omitted); *see also, e.g.*, *Convergen Energy*, 2020 WL 4038353 at *4.

"[I]n cases involving service on a person residing in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under [Rule] 4(f)(3)."  *GLG*, 287 F.R.D. at 266.  As courts have explained, the "purpose of this [requirement] is to 'prevent parties from whimsically seeking an alternate means of service,' . . . as well as to accord with 'principles of comity' by 'encourag[ing] the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process.'"  *Convergen Energy*, 2020 WL 4038353, at *4 (quoting *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014)); *see also GLG*, 287 F.R.D. at 266 ("Imposing such a requirement [to reasonably attempt service and show that judicial intervention is necessary] has been viewed as necessary in order to prevent parties form whimsically seeking alternate means of service and thereby increasing the workload of the courts.") (citation and quotation omitted); *see*

*also Halvorssen v. Simpson*, 328 F.R.D. 30, 34 (E.D.N.Y. 2018). "The general legal proposition is that, as always, when a party asks a court to exercise its authority, the party must make some showing that the exercise of that authority is necessary." *Convergen Energy*, 2020 WL 4038353, at *4. Plaintiffs have failed to make that showing here.

### A. Plaintiffs Have Made No Effort to Serve Mr. Chen in Accordance with the Requirements of the Hague Convention

Plaintiffs do not purport to have made any attempt to serve Mr. Chen (or the other Alternative Service Defendants) through the Hague Convention. Plaintiffs state they "obtained time and cost estimates for service abroad," but they do not identify a single act they took to set the process in motion. Pls.' Br. 5. Nor do they identify any fact or circumstance that would hinder, delay or obstruct service under the Hague Convention. In fact, Plaintiffs admit that they have Mr. Chen's address where he is amenable to service under the Hague Convention in China. Pls.' Br. 4. Yet rather than use that address to effect (or even attempt) service under the Hague Convention, Plaintiffs jump right to asking the Court to waive the U.S.'s treaty obligations altogether.

Plaintiffs' failure to attempt service under the Hague Convention is reason alone to deny their request for alternative service, as courts in this District have repeatedly recognized. *See Devi v. Rajapaska*, No. 11-cv-6634-NRB, 2012 WL 309605, at *2 (S.D.N.Y. Jan. 31, 2012) (requiring formal attempt at service through the Hague Convention, "the traditional mechanism for effectuating service abroad" where plaintiff did not "actually carr[y] out an attempt to serve defendant" before seeking alternative service); *China Ne. Petroleum*, 27 F.Supp. 3d at 398 (denying alternative service and noting that courts allowing alternative service "have done so when plaintiffs have been unable, despite diligent efforts, to serve the defendant in the foreign country according to the Hague Convention procedures") (cleaned up); *S.E.C. v. Cluff*, No. 17-cv-2460-RMB-KNF, 2018 WL 896027, at *4 (S.D.N.Y. Jan. 10, 2018) (refusing to grant alternative

service where the "plaintiff failed to act diligently when it did not attempt to use the Hague Convention or. . . take any steps to attempt service in any other manner authorized by Rule 4(f) before seeking [alternative service]").

Further, the fact that Plaintiffs have Mr. Chen's address (in addition to those of the Alternative Service Defendants) but still did not attempt service distinguishes this case from the cases Plaintiffs cite. *See* Pls.' Br. 12. Each of Plaintiffs' cases involved defendants who either did not provide an address at all, or refused to do so until well after the plaintiffs were forced to file a motion for alternative service, such that the address was still deemed "not known" for purposes of the Hague Convention. *See Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 1:24-cv-00744-JLR, 2024 WL 2317715, at *3 (S.D.N.Y. May 22, 2024) (granting alternative service where defendant refused to respond to request for address until weeks after the plaintiff filed a motion for alternative service); *GLG*, 287 F.R.D. at 267 (holding request for alternative service was "occasioned to some degree by the recalcitrance" of the defendant's own company that withheld CEO's address for five months then provided it only four days before a response to the alternative service motion was due); *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (holding the plaintiff "articulated good reasons why it could not have realistically served [the defendant] until now," including that "[t]o serve a defendant in China, a plaintiff must provide the defendant's address"); *see also* Mem. Supp. Mot. for Alternate Service, *Stream SICAV v. Wang*, No. 12-cv-6682-PAE, (S.D.N.Y. July 24, 2013), ECF No. 68 (explaining the difficulties associated with attempting to identify the defendant's residential address in China).[5]

---

[5] The remaining cases cited by Plaintiffs either did not involve the Hague Convention or concerned plaintiffs who made attempts at service under the Hague Convention before requesting alternative service. *See Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (in case that named the People's Republic of China as a defendant, alternative service granted where plaintiffs "originally tried to serve [the defendants] through the Chinese Ministry of Justice, China's designated Central Authority under the Hague Convention," but China refused under Article 13 of the Hague Convention on grounds of infringement of sovereignty or security); *In re BRF S.A. Sec. Litig.*, No. 18-cv-2213-PKC, 2019 WL 257971, at *3 (S.D.N.Y. Jan. 18, 2019) (concerning service in Brazil through the Inter-American

As Plaintiffs have Mr. Chen's address, there is no reason to excuse Plaintiffs from attempting to proceed in accordance with the requirements of the Convention. *See, e.g.*, *Halvorssen*, 328 F.R.D. at 35 (E.D.N.Y. 2018) (requiring plaintiff to attempt Hague Convention service where defendants disclosed addresses at which they represented they were "all amenable to . . . service"); *In re Sinohub, Inc. Sec. Litig.*, No. 12-cv-8478-WHP, 2013 WL 4734902, at *2 (S.D.N.Y. Aug. 14, 2013) (requiring a "formal effort to serve [defendants] through the Hague Convention" even where their addresses were unknown and noting plaintiff's "request to bypass the Hague Convention after a trail of public records turned cold [was] a measure of convenience rather than necessity").

**B.      Plaintiffs Fail to Show a Need for Judicial Intervention**

Aside from failing to attempt service under the Hague Convention, Plaintiffs also otherwise fail to show that there is a need for the Court to grant alternative service.

First, Plaintiffs do not cite any authority that supports granting alternative service based solely on the fact that complying with the Hague Convention would take longer than Plaintiffs' proposed alternative forms of service. Pls.' Br. 10-11. While courts have considered delays as a factor in awarding alternative service, *see* Pls.' Br. 11, the cases Plaintiffs cite involved delays where the defendants' addresses were not known despite the plaintiffs' diligent efforts to locate them. *See GLG*, 287 F.R.D. at 266; *Stream SICAV*, 989 F. Supp. 2d at 280. Moreover, Plaintiffs' purported concerns about delay ring hollow given that this case has already been pending for nearly six months (with Lead Plaintiff being appointed for three full months) and the pre-motion letter process for motions to dismiss is not scheduled to be completed until November 21, 2024—i.e.,

---

Convention on Letters Rogatory and Additional Protocol, which is "neither mandatory nor exclusive," and where the defendant "'made some attempts at service' and offered evidence 'demonstrating the difficulties associated with the letters rogatory process'"); *Volkswagenwerk*, 486 U.S. at 705 (concerning service under Illinois state law that was completed entirely in Illinois and did not require the transmission of any documents abroad).

seven months after the original complaint was filed.  *See* Scheduling Order, ECF No. 58.  Had Plaintiffs pursued service under the Hague Convention, the process could already have been well underway (or even complete) by the time the Court sets a briefing schedule for any motions to dismiss.[6]

Second, Plaintiffs argue that effecting service under the Hague Convention is costly, as it would require translation of the Amended Complaint into Chinese (estimated at $2,300-$5,700) and approximately $570-$800 to serve one defendant in Mainland China (or $2,370-$3,150 to serve all five Alternative Service Defendants).  *See* Pls.' Br. 6.  Plaintiffs cite no authority suggesting such amounts are unduly burdensome or would otherwise justify dispensing with the requirements of the Hague Convention.  *See id.*  Nor can they, as such costs are part and parcel of bringing a class action against foreign individuals (not to mention those costs pale in comparison to the resources that have been spent in bringing and responding to Plaintiffs' request for alternative service).

Third, Plaintiffs assert that service under the Hague Convention is "uncertain" and has "no guarantee" of success, but that argument is entirely conclusory.  Pls.' Br. 11.  For example, Plaintiffs cite the Shreefer affirmation, which they describe as "detailing the Derivative Action plaintiffs' unsuccessful efforts to effect service abroad using the Hague Convention procedures."

---

[6] Plaintiffs' failure to even attempt service on the Alternative Service Defendants also makes their claims subject to dismissal under Rule 4(m).  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Although the rule creates an exception for "service in a foreign country pursuant to subdivision (f)," the Second Circuit has held that the exception "does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country."  *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133–34 (2d Cir. 2005) (quoting *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 512 (2d Cir.1993)).  This action has been pending since April 22, 2024—well over 90 days.  (Indeed, it has already been over 90 days since Lead Plaintiff was appointed on July 9, 2024.)  Thus, since Mr. Chen and the other Alternative Service Defendants remain unserved, the claims against them are subject to dismissal under Rule 4(m).  *See USHA*, 421 F.3d at 134 (dismissing case as to co-defendant pursuant to Rule 4(m) where plaintiffs conceded they did not attempt service); *DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) (upholding dismissal of third-party complaint).  Mr. Chen reserves the right to make a dismissal motion under Rule 4(m) at the appropriate time.

Pls.' Br. 11.  Yet the Derivative Action plaintiffs were attempting to effect service on individuals with no known addresses, as Plaintiffs' own exhibits demonstrate.  *See* Pls.' Ex. PX H, Shreefer Aff. (ECF No. 83-8) at ¶ 6 (describing efforts by Derivative Action plaintiffs to serve defendants at "potential residential addresses"), ¶ 18 (describing attempts to serve Mr. Chen at an address in Beijing even though there was "no reason to believe that service at [that] address will be successful" as Mr. Chen had not resided there for several years).  Here, by contrast, Plaintiffs admit they have current addresses at which Mr. Chen (and the other individual Alternative Service Defendants) are amenable to service under the Hague Convention.  *See* Pls.' Br. 6.  The difficulties encountered by the Derivative Action plaintiffs are simply not relevant here.[7]

Plaintiffs also assert that Chinese authorities "may even refuse to serve the Amended Complaint if they believe it implies that Hong Kong is not part of the People's Republic of China." Pls.' Br. 11.  Yet Plaintiffs do not explain whether or how that concern is implicated by the Complaint or Amended Complaint in this action except by acknowledging that it could be addressed by simply replacing any references to "Hong Kong" with references to "Hong Kong, China."  *See* Pls.' Br. 11 n.8.  Plaintiffs therefore fail to provide any reason to believe that Chinese authorities might refuse to serve the Amended Complaint on Mr. Chen or any of the other Alternative Service Defendants.

Finally, Plaintiffs assert that the Hague Service Convention procedures "would serve no purpose" because the Alternative Service Defendants "can be served effectively and immediately through their U.S. counsel" in the Derivative Action."  Pls.' Br. 12.  Yet Plaintiffs do not and cannot cite any authority suggesting federal courts can simply order alternative service any time a

---

[7] As Plaintiffs concede, the court in the Derivative Action also denied the first motion of the derivative plaintiffs for alternative service on the ground that the plaintiffs there had not shown that use of the Hague Convention was impracticable.  Pls.' Br. at 7 (citing Derivative Action, NYSCEF No. 141 at 2).

defendant has U.S. counsel in a different action.  To the contrary, "[t]he law should encourage foreign individuals and entities to consult with United States counsel about their obligations under United States law."  *Convergen Energy*, 2020 WL 4038353, at \*8.  "There thus is a public value in allowing an individual who in good faith seeks such advice to obtain it without simultaneously and automatically appointing counsel as an agent for service of process or relieving any adversary of the otherwise applicable requirements for service of process."  *Id.*

## II.   PLAINTIFFS' PROPOSED METHOD OF ALTERNATIVE SERVICE IS NOT PERMITTED

Even if Plaintiffs had attempted service under the Hague Convention, the method of alternative service Plaintiffs propose is not permissible.  Plaintiffs seek leave under Rule 4(f)(3) to serve Mr. Chen and the other Alternative Service Defendants "by email to their U.S. counsel" in the Derivative Action.  Pls.' Br. 1.  This request must be denied because email service on U.S. counsel is prohibited by the Hague Convention.

### A.   The Hague Convention Applies to Plaintiffs' Proposed Method of Service

It is well settled that "compliance with the [Hague] Convention is mandatory in all cases to which it applies."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988); *see also* Hague Convention, art. 1.  The Convention "specifically applies to service on foreign citizens in signatory countries, except where the address of the person to be served with the document is not known."  *Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23-cv-3960-CM, 2023 WL 3977505, at \*3 (S.D.N.Y. June 13, 2023) (citation and quotation omitted).  Here, "[b]oth China and the United States are parties to the Hague Convention," and Plaintiffs admit they have Mr. Chen's address, so the Convention applies to this action.  *Id.*  While the Hague Convention does not apply to service that is completed entirely inside the United States, *see Volkswagenwerk*, 486 U.S. at 705, "use of Convention procedures is *mandatory* if documents

11

have to be transmitted abroad to effect service." *Safavieh*, 2023 WL 3977505, at *3 (emphasis in original). Plaintiffs try to end run the Hague Convention by asking for an alternative service method that would be completed in the United States. Pls.' Br. 9-10. This argument fails.

Plaintiffs seek leave for alternative service under Rule 4(f)(3). Courts in this District have held that, because Rule 4(f) concerns service "at a place not within any judicial district of the United States," any service under the rule "must be completed abroad." *Spin Master v. Aomore-US*, No. 23-cv-7099-DEH, 2024 WL 3030405, at *7 (S.D.N.Y. June 17, 2024). In other words, the only alternative service that can be ordered under Rule 4(f)(3) is service that is completed *outside* the United States. *See id.* ("The text of Rule 4(f) makes clear that [a plaintiff] can only avail itself of the Rule if service would occur abroad and '*not within* any judicial district of the United States.'"); *Convergen Energy*, 2020 WL 4038353, at *9 ("The language of the Federal Rules is clear, and that language does not permit the Court to order alternative service at a place outside any judicial district of the United States when service would be made in a judicial district of the United States."). Thus, to the extent Rule 4(f)(3) alternative service is ordered on foreign defendants via U.S.-based counsel, such service is permitted under Rule 4(f) "only where 'U.S. counsel is a conduit to the service that is effectuated at a place not within any jurisdiction of the United States.'" *Spin Master*, 2024 WL 3030405, at *7 (quoting *United States v. Mrvic*, 652 F. Supp. 3d 409, 413 (S.D.N.Y. 2023)).

As the Court explained in *Spin Master*:

> Plaintiff[s] cannot have it both ways. Service cannot be outside of the United States for purposes of invoking Rule 4(f), but inside the United States for purposes of avoiding the requirements of the Hague Convention. Service [is] either completed abroad in China, in which case the method requested by Plaintiff[s] is prohibited by the Hague Convention; or it [is] completed in the United States, in which case it is not authorized under Rule 4(f).

2024 WL 3030405, at *9.

12

Further, the *Spin Master* decision also addressed the very cases Plaintiffs cite in their Motion. *Compare* 2024 WL 3030405, at *8 *with* Pls.' Br. 10 (citing *Volkswagenwerk*, *GLG*, and *Stream SICAV*, which in turn cites *Volkswagenwerk* and *GLG*). As the Court explained, while some courts have concluded that service on U.S. counsel would not run afoul of the Hague Convention because no documents would be transmitted abroad, those cases all rely directly on *Volkswagenwerk* and/or *GLG*, "which itself relies on *Volkswagenwerk*." *Spin Master*, 2024 WL 3030405, at *8; *see also Stream SICAV*, 989 F. Supp. 2d at 279 (citing *Volkswagenwerk*).[8] But, as the *Spin Master* decision explained, the Court in *Volkswagenwerk* did not address Rule 4(f)(3), as it simply ruled that the Hague Convention was not applicable where state law permitted service upon a foreign corporation's subsidiary and service was completed entirely inside the United States. 2024 WL 3030405, at *8. Accordingly, Plaintiffs' cases do not help them here.

Furthermore, if service would be complete upon transmission to Mr. Chen's U.S. counsel in the United States, as Plaintiffs assert (Pls.' Br. 10), then the requested service would also be prohibited by Rule 4(e). *See* Fed. R. Civ. P. 4(e) (setting forth the means by which an individual may be served "in a judicial district of the United States"). Rule 4(e) allows service to be made on an agent such as U.S. counsel, but only if the agent is "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). Here, such service is not permitted because Mr. Chen's U.S. counsel is not authorized to accept service of process. *See* Ex. 1 at 2; Chen Decl. ¶ 9; *see also Convergen Energy*, 2020 WL 4038353, at *9 (declining to enter a Rule 4(f)(3) order permitting service on U.S. counsel where the foreign defendants "have made clear that counsel is not authorized to accept service of process").

---

[8] Plaintiffs' other cited authorities fare no better, as each one pre-dates *Spin Master* and relies on *Volkswagenwerk* for the same mistaken proposition that the Hague Convention does not apply where service is made on a foreign defendant's agent in the U.S. *See, e.g.*, *Zhang*, 293 F.R.D. at 515 (citing *Volkswagenwerk*); *Orient Plus*, 2024 WL 2317715, at *3 (same).

13

In short, because Plaintiffs seek alternative service under Rule 4(f) and "service under Rule 4(f) is completed abroad, such service must comport with the requirements of the Hague Convention." *Spin Master*, 2024 WL 3030405, at *7; *Safavieh*, 2023 WL 3977505, at *3 ("Since the complaint and related documents still need to be transmitted to Chengdu in China, service must be effected according to Convention procedures.").

**B.      The Hague Convention Prohibits Service Via Email on U.S. Counsel**

As noted, Plaintiffs seek to serve Mr. Chen and the other Alternative Service Defendants through email to U.S. counsel.  Courts in this District have clearly held, however, that "the Hague Convention does not permit service on Chinese parties via email through counsel." *Spin Master*, 2024 WL 3030405, at *7.  Indeed, the Supreme Court has made clear that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Volkswagenwerk*, 486 U.S. at 698).  In other words, the Hague Convention "prohibits any service methods 'not specifically authorized' by the Convention's terms." *Spin Master*, 2024 WL 3030405, at *7 (quoting *Smart Study v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022)). The Hague Convention "is silent as to service via counsel or via electronic means" and, as a result, "[s]uch service is thereby 'prohibited by international agreement.'" *Id.* (citing *Stansell v. Revolutionary Armed Forces of Colom.*, No. 16-mc-405, 2023 WL 6173524, at *5 (S.D.N.Y. Sept. 22, 2023) (denying motion to serve foreign defendants through counsel given movant's failure to demonstrate that "service on counsel is not barred—read: is explicitly authorized—by the Hague Convention")); *see also Safavieh*, 2023 WL 3977505, at *4.

Although some courts in this District have held that email service is permitted under the Hague Convention, most of those decisions pre-date the Supreme Court's decision in *Water Splash*, which recognized that the Convention's purpose is to set forth simple and certain methods

14

of service that can be used to serve foreign litigants. *Uipath, Inc. v. Shanghai Yunkuo Info. Tech. Co.*, No. 23-cv-7835-LGS, 2023 WL 8600547, at *2 (S.D.N.Y. Dec. 12, 2023). Before *Water Splash*, some courts in this Circuit had held that email service is permitted under the Hague Convention because a signatory's objection to service by "postal channels" does not expressly bar service by email.[9] *Safavieh*, 2023 WL 3977505, at *4 (discussing cases). In 2022, the *Smart Study* court rejected this logic as inconsistent with both the Hague Convention and *Water Splash*. *See Smart Study*, 620 F. Supp. 3d at 1395. As the *Smart Study* court explained, *Water Splash* clarified that the Hague Convention is "meant to set forth simple and certain methods of service that can be used to serve foreign litigants." *Id.* at *1396. Moreover, "[t]o infer that the Convention's silence as to a particular method equates to an implied permission to use virtually any method of service not proscribed by the Convention contravenes that purpose." *Id.*; *accord Safavieh*, 2023 WL 3977505, at *4.

The *Smart Study* court further held that China's specific objection to service by postal channels does in fact preclude service by email. *See* 620 F. Supp. 3d at 1395 (citing guidance by the Supreme People's Republic of China expressly stating that China's objection to service by mail should be presumed to "not allow electronic service"). Therefore, since *Smart Study*, courts in this District have consistently held that email service on litigants in China is barred by the Hague Convention. *See, e.g.*, *Moonbug Ent. Ltd. v. www.blippimerch.com*, No. 23-cv-1384-JHR, 2023 WL 2730107, at *3 (S.D.N.Y. Mar. 28, 2023) (holding service via email is "prohibited by international agreement [and] is impermissible under Rule 4(f)(3)" because "China has objected to Hague Convention provisions allowing for service by postal channels, and guidance from the Supreme People's Court of China indicates that this objection extends to service by email.");

---

[9] The Hague Convention affirmatively authorizes service by postal channels, provided the receiving country does not object. *See Smart Study*, 620 F. Supp. 3d at 1392.

15

*Shenzhen Chengront Tech. Co. v. Besign Direct*, No. 1:22-cv-10281-JLR, 2022 WL 17741496, at *2 (S.D.N.Y. Dec. 9, 2022); *see also Shen Zhen v. Jiangsu Huari Webbing Leather Co.*, No. 23-cv-4578-JGLC, 2023 WL 6553969, at *1 (S.D.N.Y. Sept. 12, 2023).

As Plaintiffs' proposed method of alternative service is prohibited by the Hague Convention, Plaintiffs' Motion for alternative service must be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, and upon the accompanying Declarations of Mark Chen and David Hille, Defendant Mark Chen respectfully requests that this Court deny Plaintiffs' Motion for an order allowing alternative service of process.  Mark Chen also respectfully submits that for the sake of good order and judicial efficiency, it makes sense to postpone the time to respond to the Amended Complaint (currently via pre-motion letter due October 28, 2024) until such time as all defendants have been properly served in this action.

Dated: October 10, 2024                              Respectfully submitted,

                                                     WHITE & CASE LLP

                                                     David Hille
                                                     Ladan F. Stewart
                                                     Robert Tiedemann
                                                     Susan Grace
                                                     1221 Avenue of the Americas
                                                     New York, NY 10020-1095
                                                     (212) 819-8200
                                                     dhille@whitecase.com
                                                     ladan.stewart@whitecase.com
                                                     rtiedemann@whitecase.com
                                                     susan.grace@whitecase.com

                                                     *Attorneys for Defendant Mark Chen*