# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| MW GESTION and MW OPTIMUM, derivatively on behalf of nominal defendant GLOBAL CORD BLOOD CORPORATION, | Index No. 653598/2023 |
| Plaintiffs, | Hon. Andrea Masley |
| v. | Part 48 |
| GOLDEN MEDITECH HOLDINGS LIMITED, TING (TINA) ZHENG, ALBERT CHEN, YUEN KAM, MARK DA-JIAN CHEN, JENNIFER J. WENG, KEN LU, JACK CHOW, JACKY CHENG, CELLENKOS INC., GOLDEN MEDITECH STEM CELLS (BVI) COMPANY LIMITED, GM PRECISION MEDICINE (BVI) LIMITED, GOLDEN MEDITECH (BVI) COMPANY LIMITED, EASTON CAPITAL CORP., and REDWOOD VALUATION PARTNERS, | Mot. Seq. No.  ORAL ARGUMENT REQUESTED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
BY DEFENDANTS MARK CHEN AND JENNIFER WENG
TO DISMISS PLAINTIFFS' DERIVATIVE COMPLAINT**

WHITE & CASE LLP

David Hille
Robert Tiedemann
1221 Avenue of the Americas
New York, NY 10020-1095
(212) 819-8200

*Attorneys for Defendants Mark Chen and
Jennifer Weng*

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

      A.    The Parties ...................................................................................... 2

      B.    The Proposed Cellenkos Transaction.............................................. 3

      C.    The Cayman Islands Proceedings ................................................... 3

      D.    The Derivative Action..................................................................... 4

ARGUMENT ............................................................................................................................5

    I.    PLAINTIFFS LACK STANDING TO BRING THIS DERIVATIVE ACTION UNDER CAYMAN ISLANDS LAW ................................................................... 5

      A.    Plaintiffs Lack Derivative Standing Under *Foss* ........................................ 5

          1.    The Infringement on Shareholders' Personal Rights Exception Does Not Apply ................................................................. 6

          2.    The Ultra Vires Exception Does Not Apply ................................... 7

          3.    The Fraud on the Minority Exception Does Not Apply ................. 7

      B.    Plaintiffs Lack Standing to Pursue the Derivative Claims Because GCBC Is in a Liquidation Proceeding Controlled By the JPLs.................. 9

      C.    Plaintiffs' Claims Must Be Dismissed Because They Are Not Registered Shareholders of GCBC .......................................................... 10

      D.    Plaintiffs' New York Action Violates the Statutory Stay Under Cayman Islands Law.............................................................................. 11

    II.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR BREACH OF FIUCIARY DUTY AGAINST DEFENDANTS CHEN AND WENG .................................. 12

    III.    THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MARK CHEN.................................................................................................. 15

      A.    Plaintiffs Have Not Served Mr. Chen ...................................................... 15

      B.    Mark Chen Is Not Subject to Jurisdiction Under CPLR 302(a)(1) ........... 16

          1.    Mr. Chen Did Not Transact Business in New York .................... 17

          2.    Plaintiffs' Claims Do Not Arise from the Alleged New York Contacts.................................................................................19

Case 1:24-cv-03071-PKC    Document 85-2    Filed 10/10/24    Page 4 of 30

C.      The Exercise of Jurisdiction Over Mr. Chen Would Violate Due
        Process ................................................................................................ 20

CONCLUSION ............................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Cas. & Sur. Co. v. Merchants Mut. Ins. Co.*,
84 A.D.2d 736 (1st Dep't 1981) .......................................................................................14

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*,
160 A.D.3d 93 (1st Dep't 2018) ........................................................................................20

*Alki Partners, L.P. v. Vatas Holding GmbH*,
769 F. Supp. 2d 478 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472
F. App'x 7 (2d Cir. 2012) ..................................................................................................17

*Aquiline Cap. Partners LLC v. FinArch LLC*,
861 F. Supp. 2d 378 (S.D.N.Y. 2012) ...............................................................................19

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102 (1987) ......................................................................................................19, 20

*Baliga v. Link Motion Inc.*,
2022 WL2531535 (S.D.N.Y. Mar. 9, 2022) ......................................................................10

*Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*,
307 Fed. Appx. 479 (2d Cir. 2008) ...................................................................................17

*Burry v. Madison Park Owner LLC*,
84 A.D.3d 699 (1st Dep't 2011) ........................................................................................12

*Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC*,
2016 WL7189819 (Mass. Super. Sept. 30, 2016) .............................................................10

*City of Harper Woods Employees' Ret. Sys. v. Olver*,
577 F. Supp. 2d 124 (D.D.C. 2008), *aff'd*, 589 F.3d 1292 (D.C. Cir. 2009) .........................7

*Copp v. Ramirez*,
874 N.Y.S.2d 52 (1st Dep't 2009) ................................................................................15, 19

*Davis v. Port*,
193 A.D.3d 500 (1st Dep't 2021) ......................................................................................12

*Davis v. Port*,
2020 WL4464338 (N.Y. Sup Ct. July 31, 2020), *aff'd*, 193 A.D.3d 500 (1st Dep't 2021) ...12

*Davis v. Scot. Re Group Ltd.*,
160 A.D.3d 114 (1st Dep't 2018) ................................................................................5, 6, 7

*Davis v. Scot. Re Grp. Ltd.*,
   2014 WL 7475035 (N.Y. Sup. Ct. Oct 14, 2014), *aff'd*, 160 A.D.3d 114 (1st Dep't 2018) ..16

*Galef v. Alexander*,
   615 F. 2d 51 (2d Cir. 1980)..................................................................................5

*Giuliano v. Gawrylewski*,
   122 A.D.3d 477 (1st Dep't 2014) .......................................................................12

*Goldin v. Tag Virgin Is., Inc.*,
   2014 WL2094125 (N.Y. Sup Ct. May 20, 2014).................................................14

*Grika v. McGraw*,
   2016 WL8716417 (N.Y. Sup. Ct. Dec. 21, 2016) ..............................................14

*Haussmann v. Baumann*,
   2021 WL6110467 (N.Y. Sup. Ct. 2021 Dec. 27, 2021), *aff'd sub nom.* 217 A.D.3d 569 (1st
   Dep't 2023) ...............................................................................................18, 19

*Haussmann v. Baumann*,
   217 A.D.3d 569 (1st Dep't 2023) .......................................................................11

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
   33 F.4th 669 (2d Cir. 2022) .................................................................................9

*In re AstraZeneca Sec. Litig.*,
   559 F. Supp. 2d 453 (S.D.N.Y. 2008), *aff'd sub nom. State Universities Ret. Sys. of Illinois
   v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009).......................................17

*In re Kenneth Cole Prods., Inc.*,
   27 N.Y.3d 268 (2016) .......................................................................................14

*In re Renren, Inc. Derivative Litig.*,
   2020 WL2564684 (N.Y. Sup. Ct. May 20, 2020), *aff'd sub nom. Matter of Renren, Inc.*, 192
   A.D.3d 539 (1st Dep't 2021) ..........................................................................5, 19

*In re Tyco Int'l, Ltd.*,
   340 F. Supp. 2d 94 (D.N.H. 2004).....................................................................6, 8

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..........................................................................................19

*Johnson v. Ward*,
   4 N.Y.3d 516 (2005)..........................................................................................16

*Karabu Corp. v. Gitner*,
   16 F. Supp. 2d 319 (S.D.N.Y. 1998)...................................................................18

*Klein v. Educ. Loan Servicing, LLC*,
   71 A.D.3d 957 (2d Dep't 2010) ........................................................................15

*Kreutter v. McFadden Oil*,
   71 N.Y.2d 460 (1988) .......................................................................................18

*NCA Holding Corp. v. Ernestus*,
   1998 WL388562 (S.D.N.Y. July 13, 1998) .......................................................17

*New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*,
   145 A.D.3d 16 (1st Dep't 2016) .........................................................................5

*Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*,
   138 A.D.3d 570 (1st Dep't 2016) ......................................................................12

*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370 (2014) .......................................................................................16

*Poms v. Dominion Diamond Corp.*,
   2019 WL2106090 (N.Y. Sup. Ct. May 15, 2019) .............................................19

*Ret. Plan for Gen. Empls. v. McGraw*,
   158 A.D.3d 494 (1st Dep't 2018) ......................................................................12

*Reynolds Corp. v. Nat'l Operator Servs., Inc.*,
   73 F. Supp. 2d 299 (W.D.N.Y. 1999) ...............................................................18

*Saratoga Advantage Tr. Tech. & Commc'ns Portfolio v. Marvell Tech. Grp., Ltd.*,
   2016 WL4364593 (N.D. Cal. Aug. 16, 2016) .....................................................6

*Soc'y of Plastics Indus., Inc. v. Cnty. of Suffolk*,
   77 N.Y.2d 761 (1991) .........................................................................................5

*Teplin v. Manafort*,
   81 A.D.2d 531 (1st Dep't 1981) ........................................................................16

*Transasia Commodities Ltd. v. Newlead JMEG, LLC*,
   2014 WL6091958 (N.Y. Sup. Ct. Nov. 13, 2014) .............................................17

*Ultra Ortho Prods., Inc. v. N. Carolina Farm Bureau Ins. Grp.*,
   2018 WL5916186 (N.Y. Civ. Ct. Nov. 9, 2018) ...............................................15

*Williams v. Beemiller, Inc.*,
   33 N.Y.3d 525 (2019) .......................................................................................19

*Winn v. Shafer*,
   499 F. Supp. 2d 390 (S.D.N.Y. 2007)..................................................................6

Case 1:24-cv-03071-PKC   Document 85-2   Filed 10/10/24   Page 8 of 30

## STATUTES AND RULES

CPLR 301................................................................................................16

CPLR 302(a)(1) ...........................................................................2, 15, 16

CPLR 308(2)..............................................................................................15

CPLR 3016(b)........................................................................................12, 13

CPLR 3211...................................................................................... *passim*

Defendants Mark Chen and Jennifer Weng respectfully submit this memorandum of law in support of their motion to dismiss the Derivative Complaint (the "Complaint") pursuant to CPLR 3211(a)(3), (7), and (8).

## PRELIMINARY STATEMENT

The Complaint should be dismissed in its entirety because Plaintiffs lack standing to assert derivative claims under Cayman Islands law for several independent reasons. In addition, the Complaint fails to state a claim for breach of fiduciary duty against Defendants Mark Chen and Jennifer Weng (Count 1), the only claim asserted against them, and Plaintiffs cannot establish personal jurisdiction over Mr. Chen.

Plaintiffs lack standing. Under Cayman Islands law, the general rule is that it is for the company itself to bring proceedings where a wrong has been done to it (known as the rule in *Foss v Harbottle* [1843] 67 Eng. Rep. 189, 2 Hare 461). A shareholder is not permitted to bring a claim on behalf of the company (*i.e.*, a derivative claim) unless such claim falls under one of four narrow "*Foss*" exceptions, none of which applies here. Further, even if Plaintiffs' claims met a *Foss* exception (and they do not), Plaintiffs would still lack standing. *One*, under Cayman Islands law, the power to bring claims on behalf of GCBC, a company in provisional liquidation, rests solely with the joint provisional liquidators ("JPLs") appointed in the Cayman Islands proceedings. *Two*, as Plaintiffs are not registered shareholders of GCBC, Plaintiffs lack standing to assert derivative claims. *Three*, Plaintiffs' derivative claims violate the statutory moratorium on new or continued proceedings against GCBC, pursuant to section 97(1) of the Cayman Islands Companies Act (2023 Revision) (the "Cayman Companies Act"). *See* Section I *infra*.

In addition, Plaintiffs fail to state a claim for breach of fiduciary duty against Mr. Chen and Ms. Weng because the Complaint lacks any particularized allegations that Mr. Chen or Ms. Weng

1

acted in bad faith or for an improper purpose, or that either of them was in a conflicted position, profited from any challenged transaction, or had actual knowledge of any purported theft or fraud by others. Plaintiffs' group pleading as to the "Director Defendants" generally is insufficient to state a claim against Mr. Chen and Ms. Weng. *See* Section II *infra*.

Moreover, the Court lacks personal jurisdiction over Defendant Mark Chen, a resident of China since 2005, who has had no meaningful contacts with New York for nearly twenty years. Mr. Chen has not been properly served in this action. New York courts repeatedly have rejected Plaintiffs' arguments that a foreign director is subject to "transacts business" long-arm jurisdiction under CPLR 302(a)(1) based merely on incidental transaction details such as the company's retention of lawyers and advisors in New York or its listing on the NYSE. *See* Section III *infra*.

## FACTUAL BACKGROUND[1]

### A. The Parties

Plaintiff MW Gestion is an institutional asset manager based in France and Plaintiff MW Optimum is an investment fund based in Luxembourg. NYSCEF No. 2 ¶¶ 17-18. Neither Plaintiff is a registered owner of shares in Global Cord Blood Corporation ("GCBC" or the "Company"). NYSCEF No. 2 ¶ 18. Neither Plaintiff alleges any connection to New York other than MW Optimum's alleged ownership of GCBC shares and neither alleges any special or unique injury.

Nominal defendant GCBC is a Cayman Islands exempted company, organized under the Cayman Companies Act, and headquartered in Hong Kong, China. NYSCEF No. 2 ¶ 19. GCBC, which provides umbilical cord blood storage, only operates in China. NYSCEF No. 2 ¶ 2. Defendants Mark Chen and Jennifer Weng, by whom this motion is submitted, were non-

---

[1] Citations in the form of "NYSCEF No. 2 ¶ __" refer to paragraphs of the Complaint. The Complaint's allegations are assumed to be true for purposes of this motion to dismiss.

2

executive, independent directors on the GCBC Board of Directors, along with defendants Ken Lu, Jack Chow, and Jacky Cheng, (collectively, the "INEDs") until February 2023. NYSCEF No. 2 ¶¶ 24-28.[2] Defendant Ting Zheng formerly was a director and the CEO of GCBC. NYSCEF No. 2 ¶¶ 21, 136. Defendant Albert Chen formerly served as the CFO of GCBC. NYSCEF No. 2 ¶ 22. Defendant Yuen Kam was a prior Chairperson of GCBC and the founder of Golden Meditech. NYSCEF No. 2 ¶ 23.

### B. The Proposed Cellenkos Transaction

In late April 2022, the GCBC Board received materials for its upcoming meeting related to GCBC's proposed acquisition of Cellenkos, a Texas based biotechnology company incorporated in Delaware (the "Cellenkos Transaction"), including, *inter alia*, a January 2022 valuation report of Cellenkos, a December 2021 analysis of Cellenkos' intellectual property, and an April 2022 Deloitte Tax Analysis of the proposed transaction structure. NYSCEF No. 2 ¶¶ 66-67, 82. On April 29, 2022, the GCBC Board voted to approve the Cellenkos Transaction, which was announced in an SEC filing the same day. NYSCEF No. 2 ¶¶ 67, 84.

### C. The Cayman Islands Proceedings

In early May, before the Cellenkos Transaction closed, Blue Ocean, a majority shareholder in GCBC, filed a petition in the Grand Court of the Cayman Islands (the "Cayman Court") seeking an order that GCBC refrain from proceeding with the Cellenkos Transaction and hold an Extraordinary General Meeting of shareholders ("EGM"), or that GCBC be wound up under Cayman Islands law. NYSCEF No. 2 ¶¶ 51, 69. On May 12, 2022, the Cayman Court enjoined the Cellenkos Transaction. NYSCEF No. 2 ¶ 107. The shareholder then called an EGM, which was held in New York on June 16, 2022. NYSCEF No. 2 ¶ 51. At the EGM, the shareholders in

---

[2] Of the five individual INEDs, plaintiffs purport to have served only Mark Chen and Jennifer Weng. The three other INEDs have not been served or appeared herein.

3

attendance purported to pass resolutions to remove and replace the Board, amend GCBC's Articles of Association, and to cancel the Cellenkos Transaction. NYSCEF No. 2 ¶ 93. Following an injunction against the Cellenkos Transaction by the Cayman Court (discussed below), the Cellenkos parties terminated the Cellenkos Transaction. NYSCEF No. 2 ¶ 149.

On September 22, 2022, after Blue Ocean amended its petition, the Cayman Court issued an order (the "Appointment Order") appointing Joint Provisional Liquidators ("JPLs"). NYSCEF No. 2 ¶ 119. The Appointment Order granted the JPLs control over the Company in all jurisdictions, including "the power to bring or defend any action or other legal proceeding in the name and on behalf of [GCBC] other than the Petition." Affirmation of Tom Smith KC in Support of Defendants' Motions to Dismiss, dated October 13, 2023 (NYSCEF No. 51 ¶ 15(1))[3] (quoting Appointment Order, ¶ 8(a)) (NYSCEF No. 56 at 8). On February 16, 2023, the JPLs, by sanction of the Cayman Court, exercised their power to remove all former directors of the GCBC Board, including the INEDs, and appointed in their place new board members. NYSCEF No. 2 ¶ 136. The Cayman Islands proceedings, which concern, *inter alia*, the financial investigation of GCBC, preservation of its assets, and the dispute between Blue Ocean and GCBC regarding the Cellenkos Transaction, remain ongoing. NYSCEF No. 51 ¶ 19.

### D. The Derivative Action

On July 25, 2023, without giving notice to, let alone seeking leave of, the Cayman Court or the JPLs, Plaintiffs filed their Complaint in the instant action, alleging derivative claims on behalf of GCBC. NYSCEF No. 2 ¶ 163. In their Complaint, Plaintiffs allege that GCBC entered into the failed Cellenkos Transaction in furtherance of a "scheme" to cover up the misappropriation

---

[3] Citations in the form of "NYSCEF No. 51 ¶ __" refer to paragraphs of the Affirmation of Tom Smith KC. The foreign legal authorities relied upon in this Memorandum are exhibits to the Smith Affirmation, which are cited by reporter and NYSCEF Docket Number.

of "hundreds of millions of dollars" in undisclosed related-party transactions. NYSCEF No. 2 ¶ 169. As to Mr. Chen and Ms. Weng (and the other director defendants), Plaintiffs assert breach of fiduciary duty claims under Cayman Islands law (Count 1). NYSCEF No. 2 ¶¶ 165-176; 217. The Complaint does not allege that Mr. Chen or Ms. Weng were interested in the transaction or beholden to the purported wrongdoers in any way.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO BRING THIS DERIVATIVE ACTION UNDER CAYMAN ISLANDS LAW

The Complaint should be dismissed under CPLR 3211(a)(3) because Plaintiffs fail to satisfy the "threshold" requirement of standing and are not the "proper party to request an adjudication." *Soc'y of Plastics Indus., Inc. v. Cnty. of Suffolk*, 77 N.Y.2d 761, 769 (1991).

New York courts look to the substantive law of the place of incorporation to determine whether a plaintiff has standing to bring a derivative suit on behalf of a corporation. *In re Renren, Inc. Derivative Litig.*, 2020 WL2564684, at *24 (N.Y. Sup. Ct. May 20, 2020), *aff'd sub nom. Matter of Renren, Inc.,* 192 A.D.3d 539 (1st Dep't 2021) ("Renren is incorporated in the Cayman Islands, so Cayman Islands law governs the issue of derivative standing in this case."); *see also New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*, 145 A.D.3d 16, 22 (1st Dep't 2016) ("[U]nder the internal affairs doctrine, claims concerning the relationship between the corporation, its directors, and a shareholder are governed by the substantive law of the state or country of incorporation") (citation and quotation omitted); *Galef v. Alexander*, 615 F. 2d 51, 58 (2d Cir. 1980) (same). Because GCBC is incorporated in the Cayman Islands, Cayman Islands law governs derivative standing. This is not disputed. NYSCEF No. 2 ¶ 158.

#### A. Plaintiffs Lack Derivative Standing Under *Foss*

Cayman Islands law follows the English common law rule set forth in *Foss v. Harbottle*

5

[1843] 67 Eng. Rep. 189, 2 Hare 461 (NYSCEF No. 59). "Under Cayman Islands law interpreting *Foss*, [claims involving a wrong to the company] are owned and controlled by the company, not its shareholders,'" and "'a shareholder is not permitted to bring a derivative action on behalf of that company.'" *Davis v. Scot. Re Group Ltd.*, 160 A.D.3d 114, 116 (1st Dep't 2018) (quoting *Winn v. Shafer*, 499 F. Supp. 2d 390, 396 (S.D.N.Y. 2007)). The company is the proper plaintiff in a suit for wrongs done to it, not the shareholders. *See Winn*, 499 F. Supp. 2d at 396; NYSCEF No. 51 ¶¶ 28-29.

There are four narrow exceptions to the rule in *Foss* that shareholders lack standing to bring a claim on behalf of a Cayman corporation, none of which applies here: (1) if the conduct infringed on the shareholder's personal rights; (2) if the conduct would require a special majority to ratify; (3) if the conduct consists of ultra vires acts; or (4) if the conduct qualifies as a fraud on the minority. NYSCEF No. 51 ¶¶ 34-35; *see also Davis*, 160 A.D.3d at 116 (citing *Winn*, 499 F. Supp. 2d at 396). Here, Plaintiffs attempt to invoke the first, third and fourth exceptions of the *Foss* rule. NYSCEF No. 2 ¶¶ 158-164; NYSCEF No. 51 ¶¶ 36-40.

### 1. The Infringement on Shareholders' Personal Rights Exception Does Not Apply

Plaintiffs are not entitled to pursue their claims under the "personal rights exception" to the *Foss* rule because Plaintiffs bring their claims derivatively on behalf of GCBC. *See* NYSCEF No. 2 at 1 ("Plaintiffs MW Gestion and MW Optimum [], derivatively on behalf of Global Cord Blood Corporation [] bring this action..."). Plaintiffs neither assert any individual rights, nor seek any individual relief. In fact, Plaintiffs state that they "will fairly and adequately represent the interests of other Global Cord Blood stockholders who are *similarly situated* in enforcing the Company's rights." NYSCEF No. 2 ¶ 164 (emphasis added). Therefore, the rights asserted by Plaintiffs are the same as those of all other stockholders and no personal rights are

6

implicated.  NYSCEF No. 51 ¶ 36; *see also In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 98 (D.N.H. 2004) (noting that "personal rights" may not be a true *Foss* exception "because a shareholder's suit to protect her personal rights is not brought as a derivative action") (citing English law treatises); *Saratoga Advantage Tr. Tech. & Commc'ns Portfolio v. Marvell Tech. Grp., Ltd.*, 2016 WL4364593, at *4 (N.D. Cal. Aug. 16, 2016) (same).

### 2.    The Ultra Vires Exception Does Not Apply

The "*ultra vires*" exception is also inapplicable.  The "*ultra vires*" exception to the rule in *Foss* requires a transaction to be outside the scope of the company's articles of association. NYSCEF No. 51 ¶ 38; *City of Harper Woods Employees' Ret. Sys. v. Olver*, 577 F. Supp. 2d 124, 133–34 (D.D.C. 2008), *aff'd,* 589 F.3d 1292 (D.C. Cir. 2009) ("For the purpose of the rule in *Foss v. Harbottle*, the term "*ultra vires*" refers to a transaction that is either beyond the capacity of a company as established by its memorandum of association or a transaction prohibited by the statute to which a company owes its existence.").  Thus, the exception does not apply if the conduct at issue is within the scope of the company's power, regardless of whether that power is wrongfully exercised.  NYSCEF No. 51 ¶ 38; *Arab Monetary Fund v Hashim and Others* [1993] 1 Lloyd's Rep. 543 ("[It is] established that a company has capacity to carry out a transaction which falls within its objects even though carried out by the wrongful exercise.") (NYSCEF No. 68 at 27).

Plaintiffs concede that the Company's Articles of Association permitted the Company to enter into the Cellenkos Transaction.  NYSCEF No. 2 ¶ 117.  Allegations that shareholder approval was required under the Articles do not change the analysis.  *Arab Monetary Fund* [1993] 1 Lloyd's Rep. 543.  (NYSCEF No. 68 at 27).  Therefore, Plaintiffs lack standing under the "*ultra vires*" exception.

### 3.    The Fraud on the Minority Exception Does Not Apply

The "fraud on the minority" exception is likewise inapplicable.  NYSCEF No. 51 ¶¶ 39-

7

40, 51. The reason is simple: the alleged wrongdoers no longer have any control over GCBC. The narrow "fraud on the minority" exception requires Plaintiffs to plead that (1) "the alleged wrongdoers controlled a majority of the stock with voting rights" and (2) "those wrongdoers committed fraud." *Davis*, 160 A.D.3d at 116.

The relevant inquiry for the "wrongdoer control" element in the "fraud on minority" analysis is whether the alleged wrongdoers have the power to block the company from bringing a claim against them. NYSCEF No. 51 ¶ 40 (citing *Barrett v Duckett*, [1995] 1 BCLC 243, 249i-250a) (NYSCEF No. 71 at 8-9). The Cayman Court adopted this standard in *Top Jet Enter. Ltd. v Sino Jet Holding Ltd. and Jet Midwest Inc.* 2018 (1) CILR 18, 43, [34] ("The principle applies whenever a shareholder is not able to persuade or cause the normal organs of the company to commence proceedings in respect of the wrong done to it.") (NYSCEF No. 72 at 27); *see also* NYSCEF No. 51 ¶ 40.

Here, Plaintiffs' claims are barred because none of the alleged wrongdoers has any control over GCBC. NYSCEF No. 51 ¶¶ 43-45. Under the Appointment Order, the wholly unconflicted JPLs were granted control of GCBC and were vested with the sole rights to pursue proceedings on its behalf. *See* Factual Background, C *supra*; NYSCEF No. 51 ¶¶ 50-51. Further, under powers granted by the Cayman court, the JPLs removed the former board and officers, including Mr. Chen and Ms. Weng and all of the other defendants who previously served as officers or directors, and appointed new members in their place. *See* Factual Background, C *supra*. Indeed, Plaintiffs readily concede that "the JPLs currently control the Company." NYSCEF No. 2 ¶ 163.

The New Hampshire District Court's opinion in *Tyco* is analogous. Analyzing the application of the "fraud on the minority" exception to the *Foss* rule under Bermuda law,[4] the *Tyco*

---

[4] Bermudan law is instructive as to Cayman law on standing to bring derivative actions. NYSCEF No. 51 ¶ 49.

court held that while the plaintiff there had "sued several of Tyco's former directors and officers as well as the company's current directors, *her standing to maintain each of her claims depends upon the sufficiency of her allegations that the* <u>*current directors*</u> *have engaged in fraud on the minority*. This is necessarily so because it is the current board's litigation judgment that she seeks to displace." *Tyco*, 340 F. Supp. 2d at 100 (emphasis added). Here, Plaintiffs seek to displace the JPL's litigation judgment—the independent body currently in control of pursuing claims on behalf of GCBC—not to pursue such claims or participate in this proceeding. Because the JPLs and the current board had no role whatsoever in the wrongdoing alleged in the Complaint, Plaintiffs cannot meet the wrongdoer control requirement under the "fraud on the minority" exception and lack standing to pursue their claims. NYSCEF No. 51 ¶¶ 47-48.

### B. Plaintiffs Lack Standing to Pursue the Derivative Claims Because GCBC Is in a Liquidation Proceeding Controlled By the JPLs

Further, under Cayman Islands law, when a company is in a liquidation process, the power to institute proceedings on behalf of the company vests in the independent liquidator, and Cayman courts generally refuse to grant permission to others to pursue a derivative claim for the benefit of the company. NYSCEF No. 51 ¶ 43 (citing *In re Sphinx* [2014] (2) CILR 131, 142 ("[W]here a company is in liquidation, it is well established that the right to bring litigation in its name vests in the liquidator.")) (NYSCEF No. 74 at 13); *see also IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022) ("[W]hen a company is in liquidation under Cayman law, only the liquidators may ordinarily bring suit on behalf of the company in the first instance.").

In *Sphinx,* the Cayman Court recognized "the vast distinction between the position where the company is a going concern and a minority shareholder's derivative action can be brought, and the position where the company is in liquidation. In the latter context, where the company goes into liquidation, there is no longer any necessity for bringing a minority shareholders' action

9

because the liquidator can sue directly in the name of the company on behalf of all shareholders, after obtaining leave of the court if necessary." *In re Sphinx* [2014] (2) CILR at 144 (NYSCEF No. 74 at 15). Thus, where a company is in liquidation, "any earlier wrongdoing by those in charge of the company could be vindicated by an action brought by the liquidator." *Id*.

Accordingly, because provisional liquidators have been appointed with the full power to bring claims on behalf of GCBC (*see* Factual Background, C *supra*), Plaintiffs' claims may only be brought by the JPLs "by way of an action in the name of the company," absent authorization from the Cayman Court. NYSCEF No. 51 ¶¶ 41-47 (citing *In re Sphinx* [2014] (2) CILR at 145) (NYSCEF No. 74 at 16); *see also Fargro v Godfrey*, [1986] 1 WLR 1134 (holding that "once the company was in liquidation the proper plaintiff was the liquidator, who should, if willing, sue in the name of the company subject to proper indemnities for any costs which he might incur in bringing the action or, if unwilling, the aggrieved shareholder should sue in the name of the company subject to the approval of the court and satisfactory indemnities for costs.") (NYSCEF No. 75 at 2).

Here, there is no allegation that the JPLs have refused to consider the claims or to take action. Moreover, the derivative Plaintiffs did not seek approval of the Cayman Court to bring this action. As Cayman Islands law vests the JPLs with sole discretion to determine whether to assert claims on behalf of the company, Plaintiffs again lack standing and their derivative claims must be dismissed.

### C. Plaintiffs' Claims Must Be Dismissed Because They Are Not Registered Shareholders of GCBC

Perhaps even more fundamentally, under Cayman Islands law only a *registered* shareholder of the underlying company may bring a derivative claim. NYSCEF No. 51 ¶¶ 53-54; *see also Svanstrom v Jonasson* [1997] CILR 200 ("The application of these principles would

10

preclude a person who holds a beneficial interest in the shares of a company and whose name does not appear on the register of members from being one of the 'aggrieved minority' permitted to bring an action on behalf of the company.") (NYSCEF No. 80 at 11); *Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC*, 2016 WL7189819, at *4 (Mass. Super. Sept. 30, 2016) ("[T]his court is struck by emphatic pronouncements in *Svanstrom* of all three justices rendering opinions that only a *registered* shareholder had standing to bring a derivative suit.  The justices all focused on the importance of the principle of Cayman law that companies do not have to acknowledge ownership of their shares by anyone other than the registered owner…") (emphasis added); *Baliga v. Link Motion Inc.*, 2022 WL2531535, at *11 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted*, 2022 WL3699339 (S.D.N.Y. Aug. 25, 2022) ("As [Plaintiff] was not a *registered shareholder* [of a Cayman Islands corporation], it would therefore appear that he lacked standing to assert, derivatively, any claims as to which the internal-affairs doctrine applied.") (emphasis added).

Here, Plaintiff MW Optimum is a Luxembourg investment fund that claims to "own" some unspecified amount of GCBC shares as of some unspecified date and admits that it is not the registered holder of the shares.  NYSCEF No. 2 ¶ 18.  MW Gestion is even further removed from the shares claiming to only be an "institutional asset manager" that is somehow "authorized" to bring this action on MW Optimum's behalf.  NYSCEF No. 2 ¶ 17.  As neither Plaintiff is a registered shareholder of GCBC, neither has standing to pursue derivative claims.  The Complaint should be dismissed on this basis as well.

### D.  Plaintiffs' New York Action Violates the Statutory Stay Under Cayman Islands Law

Under Cayman Islands law, when "a provisional liquidator is appointed, no suit, action or other proceedings, shall be proceeded with or commenced against the company except with the

11

leave of the Court and subject to such terms as the Court may impose." NYSCEF No. 51 ¶¶ 60-61 (quoting Cayman Companies Act, s. 97(1)) (NYSCEF No. 57). This moratorium applies extraterritorially. NYSCEF No. 51 ¶¶ 65-66. Here, GCBC is a nominal defendant subject to, at a minimum, both discovery and Plaintiffs' claims for attorney fees and expenses. NYSCEF No. 2 § VIII (g). As such, the instant action breaches this statutory moratorium. NYSCEF No. 51 ¶¶ 67-69. Accordingly, the Complaint should be dismissed. *See, e.g.*, *Haussmann v. Baumann*, 217 A.D.3d 569, 570-71 (1st Dep't 2023) (affirming dismissal of German law derivative suit, stating "[t]his Court has consistently invoked the internal affairs doctrine in derivative actions to apply foreign law on substantive issues, including those affecting a party's right to sue.").

## II. PLAINTIFFS' FAIL TO STATE A CLAIM FOR BREACH OF FIUCIARY DUTY AGAINST DEFENDANTS CHEN AND WENG

The Complaint should also be dismissed because it fails to state a claim for breach of fiduciary duty against Mr. Chen and Ms. Weng (or any of the INEDs). CPLR 3211(a)(7).

Pursuant to CPLR 3016(b), claims for breach of fiduciary duty must be pled with particularity. *Davis v. Port*, 193 A.D.3d 500, 501 (1st Dep't 2021) (affirming dismissal of breach of fiduciary duty claims under Cayman Islands law for lack of particularity under CPLR 3016(b)); *Giuliano v. Gawrylewski*, 122 A.D.3d 477, 478 (1st Dep't 2014) (affirming dismissal of breach of fiduciary duty claim pursuant to CPLR 3016(b)); *Ret. Plan for Gen. Empls. v. McGraw*, 158 A.D.3d 494, 495-96 (1st Dep't 2018) (same); *Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*, 138 A.D.3d 570, 571 (1st Dep't 2016) (same); *Burry v. Madison Park Owner LLC*, 84 A.D.3d 699, 700 (1st Dep't 2011) (same).

Under Cayman Islands law, a director of a corporation owes fiduciary duties to that corporation, including: (1) to act *bona fide* in what he considers to be the best interest of the company, (2) to exercise his powers for the purposes for which they are conferred, and (3) not to

12

place himself in a position where there is a conflict between his personal interests and his duty to the company.[5]  NYSCEF No. 51 ¶¶ 70-71.  A "[b]reach of fiduciary obligation ... connotes disloyalty or infidelity.  Mere incompetence is not enough.  A servant who loyally does his incompetent best for his master is not unfaithful and is not guilty of breach of a fiduciary duty." *Bristol and West Building Society* [1998] Ch 1 at 18 E-F) (NYSCEF No. 87 at 19).  A plaintiff must allege facts demonstrating that the fiduciary "did not act in good faith or for an improper purpose." *Davis v. Port*, 2020 WL4464338, at *5 (N.Y. Sup Ct. July 31, 2020), *aff'd*, 193 A.D.3d 500 (1st Dep't 2021) (dismissing fiduciary duty claims under Cayman Islands law); *see also* NYSCEF No. 51 ¶ 71.

Here, the Complaint lacks *any* well-pled, particularized allegations, as required, that Mr. Chen or Ms. Weng acted in bad faith or for an improper purpose, or that either of them possessed a conflicting relationship, profited from any challenged transaction, or had actual knowledge of any theft or fraud by any third party.

The only specific allegation as to Ms. Weng is that she attempted to attend the EGM shareholder meeting held on June 16, 2022 and was denied entry.  NYSCEF No. 2 ¶¶ 52, 91.  The same allegation is made with respect to Mr. Chen.  *Id.*  Clearly, attempting to attend an EGM shareholder meeting while a sitting director of the company is not a breach of fiduciary duty.  With respect to Mr. Chen, Plaintiffs also allege that he "founded" Easton Capital Corp. which prepared a financial report on Cellenkos upon which the GCBC board relied.  NYSCEF No. 2 ¶ 79.  As an initial matter, using a financial advisor with which a director previously had a relationship would not constitute a breach of fiduciary duty.  There is no allegation that Mr. Chen profited from Easton

---

[5] As discussed above, Plaintiffs' breach of fiduciary duty claims are governed by Cayman Islands law.  This is undisputed as Plaintiffs describe Count 1 as "Breach of Fiduciary duty Under Cayman Islands Law."

13

Capital Corp. having been retained.  In any event, it is simply not true.  As set forth in his affirmation regarding jurisdictional contacts,[6] Mr. Chen was not a founder of Easton Capital Corp. and has never held any interest in that entity.  NYSCEF No. 50 ¶ 13.  Mr. Chen worked at a separate entity with the name "Easton" in its name until 2005.  *Id.*  There is no suggestion that such entity had any involvement or role in the 2022 Cellenkos Transaction.  *Id.*

As to the remaining allegations against Mr. Chen and Ms. Weng, and all the INEDs for that matter, Plaintiffs offer nothing more than conclusory and group-pled allegations that fail to meet the stringent pleading standards under CPLR 3016(b).  Plaintiffs allege that: (1) the Cellenkos Transaction was entered "to cover up secret related-party transactions that were improperly made in the past and never disclosed," (NYSCEF No. 2 ¶ 130); (2) "the Director Defendants allowed themselves and related parties to misappropriate at least hundreds of millions of dollars of Global Cord Blood's funds and to engage in the Cellenkos Transaction to cover-up that misconduct and to profit even more[,]" (NYSCEF No. 2 ¶ 168); (3) "the Director Defendants acted in bad faith to misappropriate at least hundreds of millions of dollars from the Company... to related parties through outright theft or, at best, grossly inadequate consideration" (NYSCEF No. 2 ¶ 169); and (4) all the GCBC directors were beholden to Defendants Kam, Zheng and Albert Chen. NYSCEF No. 2 ¶¶ 170-172.

Plaintiffs, however, do not allege any *specific facts* to support these conclusory allegations, certainly not as to Mr. Chen, Ms. Weng or the other INEDs.  In *In re Kenneth Cole Prods., Inc.*, the Court of Appeals broadly rejected such conclusory pleading, finding that "[m]ere speculation cannot support a cause of action for breach of fiduciary duty."  27 N.Y.3d 268, 278 (2016).  As here, the plaintiff in *In re Kenneth Cole* solely premised his claims on "[c]onclusory allegations or

---

[6] The Affirmation of Mark Chen in Support of Motion to Dismiss the Derivative Complaint.  NYSCEF No. 50.

14

Case 1:24-cv-03071-PKC     Document 85-2     Filed 10/10/24     Page 23 of 30

bare legal assertions with no factual specificity." *Id.* Dismissing the breach of fiduciary duty claim for failure to state a claim, the Court of Appeals explained that "Plaintiff's speculation that the [special] committee merely submitted to Cole's wishes is insufficient to state a cause of action for breach of fiduciary duty." *Id.* at 279.

Plaintiffs also repeatedly plead collectively as to the "Director Defendants" generally. *See, e.g.*, NYSCEF No. 2 ¶¶ 159, 168-174. "Such group pleading does not suffice[.]" *Goldin v. Tag Virgin Is., Inc.*, 2014 WL2094125, at *10 (N.Y. Sup Ct. May 20, 2014) (dismissing breach of fiduciary duty claims under New York law); *see also Grika v. McGraw*, 2016 WL8716417, at *18 (N.Y. Sup. Ct. Dec. 21, 2016) (dismissing breach of fiduciary duty claims because complaint "impermissibly use[d] 'group pleading'" where it alleged "all of the Individual Defendants knew or should have known" of the alleged misconduct); *Aetna Cas. & Sur. Co. v. Merchants Mut. Ins. Co.*, 84 A.D.2d 736, 736 (1st Dep't 1981) (dismissing fraud claims "ple[d] against all defendants collectively without any specification as to the precise tortious conduct charged to a particular defendant").

Accordingly, the Complaint must be dismissed against Mr. Chen and Ms. Weng for failure to state a claim for breach of fiduciary duty.

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MARK CHEN

Under CPLR 3211(a)(8), a plaintiff bears the burden of establishing personal jurisdiction, which requires a *prima facie* showing that the Court's exercise of jurisdiction satisfies the New York CPLR and constitutional due process. *Copp v. Ramirez*, 874 N.Y.S.2d 52, 57-59 (1st Dep't 2009). Plaintiffs assert, pursuant to CPLR 302(a)(1), that personal jurisdiction exists here because Mr. Chen "directly or indirectly transacted business in New York." NYSCEF No. 2 ¶¶ 38-39.

### A. Plaintiffs Have Not Served Mr. Chen

15

New York courts "lack[] jurisdiction over the matter absent proper service." *Ultra Ortho Prods., Inc. v. N. Carolina Farm Bureau Ins. Grp.*, 2018 WL5916186, at \*3 (N.Y. Civ. Ct. Nov. 9, 2018) (dismissing action for improper service of defendants); *Klein v. Educ. Loan Servicing, LLC*, 71 A.D.3d 957, 958 (2d Dep't 2010) (same).

Plaintiffs claim that Mr. Chen was served under CPLR 308(2) at co-defendant Ms. Weng's New York apartment,[7] but failed to satisfy the two statutory requirements: (i) delivery of the summons within New York to an appropriate person at the "actual... dwelling place or usual place of abode of the person to be served", and (ii) "mailing the summons to the person to be served at his or her last known residence..." CPLR 308(2).  Although Mr. Chen and Ms. Weng are married, they have been living apart since 2014.  NYSCEF No. 50 ¶ 8.  Mr. Chen has not lived in New York since 2005 and currently resides in Xiamen, China, where he has lived since 2021.  *Id.* ¶¶ 3-4.  Mr. Chen has never lived at the apartment where service was attempted, which is not his actual dwelling or usual place of abode.  *Id.* ¶¶ 3-4, 9.  He holds no ownership or other financial, contractual, or leasehold interest in such apartment.  *Id.* ¶ 7.  Mr. Chen also never received the summons or other papers by mail at his actual residence.  *Id.* ¶ 15.  Accordingly, the Complaint should be dismissed with respect to Mr. Chen for failure to effect service.

## B.  Mark Chen Is Not Subject to Jurisdiction Under CPLR 302(a)(1)

Under CPLR 302(a)(1), a defendant "transacts business" in New York when he "purposefully avails [himself] of the privilege of conducting activities" here and "establishes a continuing relationship" to engage in the "sustained and substantial transaction of business." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (2014).  There also must be a "substantial

---

[7] Affidavit of Reginald Hunter Affirming Service of Mark Da-Jian Chen Pursuant to CPLR 308(2) (Aug. 3, 2023). (NYSCEF No. 10).

16

relationship" between the defendant's New York activity and the asserted claim. *Johnson v. Ward*, 4 N.Y.3d 516, 519 (2005).

### 1. Mr. Chen Did Not Transact Business in New York

Plaintiffs' allegations do not establish sufficient New York contacts to justify personal jurisdiction over Mr. Chen. *Teplin v. Manafort*, 81 A.D.2d 531, 531 (1st Dep't 1981) ("Plaintiff who seeks to invoke in personam jurisdiction with respect to nonresident defendant must expressly allege in complaint facts bringing nonresident within CPLR 301 and 302."). Mr. Chen, a resident of China who has not resided or worked in New York since 2005, did not attend any GCBC board meetings, make any business decisions, or engage in conduct related to the negotiation, consideration or approval of the Cellenkos Transaction in New York. NYSCEF No. 50 ¶¶ 3-4, 10-11; *see Davis v. Scot. Re Grp. Ltd.*, 2014 WL 7475035, at *10 (N.Y. Sup. Ct. Oct 14, 2014), *aff'd*, 160 A.D.3d 114 (1st Dep't 2018) ("[A] director is subject to specific jurisdiction if he conducts business in New York on an *individual* basis, as distinct from conducting business on behalf of a corporation.") (emphasis in original).

Plaintiffs' principal basis for personal jurisdiction—that Mr. Chen served as a director of an NYSE-listed corporation (NYSCEF No. 2 ¶ 42)—is plainly insufficient. *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) ("A person's status as a board member is not alone sufficient to establish jurisdiction...") (citation and quotation omitted); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008), *aff'd sub nom. State Universities Ret. Sys. of Illinois v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009) (same).

As noted above, Plaintiffs' allegation that Mr. Chen was a "founder" of Easton Capital Corp. is not true. *See* Section II, *supra*. The sole remaining New York contact pled as to Mr. Chen concerns the June 16, 2022 EGM shareholder meeting held in New York, which Plaintiffs

17

ironically concede Mr. Chen was prevented from attending. NYSCEF No. 2 ¶¶ 51, 67, 90-93. One unsuccessful attempt to attend a meeting called by a GCBC shareholder cannot confer jurisdiction. *NCA Holding Corp. v. Ernestus*, 1998 WL388562, at *4 (S.D.N.Y. July 13, 1998) ("To establish jurisdiction in New York based on a meeting, the meeting must be essential to the formation or continuance of a business relationship.").

Plaintiffs also allege that GCBC had some attenuated, transaction-specific New York contacts that should be imputed to Mr. Chen. *See, e.g.*, NYSCEF No. 2 ¶¶ 40-41, 44-50, 53-55, 82, 115. This is not even sufficient to support that GCBC transacted business here.[8] *See Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*, 307 Fed. Appx. 479, 481 (2d Cir. 2008) ("The mere fact that [a corporate Defendant] engaged in *some* contact with [] New York [] does not mean that [Defendant] transacted business in New York.") (emphasis in original). It certainly does not support jurisdiction over Mr. Chen.

Even if GCBC had transacted business here, to establish jurisdiction over Mr. Chen, Plaintiffs would have to allege that GCBC "engaged in 'purposeful activities' in New York" related to the challenged transaction "'for the benefit of and with the knowledge and consent of'" a director defendant who was a "primary actor" in the transaction. *Reynolds Corp. v. Nat'l Operator Servs., Inc.*, 73 F. Supp. 2d 299, 303 (W.D.N.Y. 1999) (quoting *Kreutter v. McFadden Oil*, 71 N.Y.2d 460, 467 (1988)); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) ("[C]ontrol cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations."). Plaintiffs do not allege any personal benefit, self-

---

[8] That GCBC was publicly listed is insufficient to confer jurisdiction over the company. *See, e.g.*, *Gilson v. Pittsburgh Forgings Co.*, 284 F. Supp. 569, 571 (S.D.N.Y. 1968) ("New York courts have consistently held that a corporation is not 'doing business' in the State for purposes of conferring jurisdiction because its shares of stock are listed on a stock exchange[.]") (collecting cases); *Transasia Commodities Ltd. v. Newlead JMEG, LLC*, 2014 WL6091958, at *4 (N.Y. Sup. Ct. Nov. 13, 2014) (same).

18

dealing or exercise of control by Mr. Chen, or that he was a "primary actor" in relation to the Cellenkos Transaction.

### 2. Plaintiffs' Claims Do Not Arise from the Alleged New York Contacts

First, there are no New York contacts whatsoever attached to Plaintiffs' claim that unspecified parties purportedly misappropriated hundreds of millions of dollars from GCBC by engaging in (an unidentified) "74 transactions from September 2015 to May 2022 [with] entities associated with [Golden Meditech]." NYSCEF No. 2 ¶¶ 1, 3, 139, 143-44.

As to the Cellenkos Transaction allegations, New York courts have repeatedly held that similar contacts were insufficient to establish the required "substantial relationship" to support jurisdiction for a fiduciary duty claim. *Haussman v. Baumann* is particularly illustrative. 2021 WL6110467 (N.Y. Sup. Ct. 2021 Dec. 27, 2021), *aff'd sub nom.* 217 A.D.3d 569 (1st Dep't 2023). There, even though the company engaged New York-based transactional lawyers and procured funding from New York banks, the court held that the purported breach of fiduciary duty in structuring a transaction without equity, approving it at an "allegedly highly inappropriate []" price," and "failing to properly assess the [target's] substantial [litigation] exposure," "undeniably occurred elsewhere." *Id.* at *1. The court further held that the "dispute does not arise out of the [director] defendants' contacts with New York and the [director] defendants cannot be said to have purposefully availed themselves of the benefit of the New York forum." *Id.*; *see also Poms v. Dominion Diamond Corp.*, 2019 WL2106090 (N.Y. Sup. Ct. May 15, 2019); *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378 (S.D.N.Y. 2012).[9]

---

[9] The allegations here pale in comparison to those in *Renren*, where a New York court exercised jurisdiction over a Cayman Islands incorporated company and one of its directors. *Renren*, 2020 WL2564684, at *16-17, *20-21. Unlike the multiple transactions in *Renren*, the Cellenkos Transaction was negotiated and agreed upon by GCBC in China, involved no New York parties, and contained no New York forum selection clause. While the court there found that the foreign director in *Renren* was a "primary actor" who "only served as a director of Renren to leverage his

19

## C. The Exercise of Jurisdiction Over Mr. Chen Would Violate Due Process

Exercising jurisdiction over Mr. Chen would not comport with due process, which "requires that a nondomiciliary have 'certain minimum contacts' with the forum and 'that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Williams v. Beemiller, Inc.*, 33 N.Y.3d 525, 528 (2019) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To make this determination, a court "must consider" the defendant's burden, the forum State's interests, and the plaintiff's interest in obtaining relief. *Copp*, 874 N.Y.S.2d at 59 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987)). Further, "the court must consider the international judicial system's interest in obtaining efficient and effective relief and the shared interests of the nations in advancing substantive policies." *Renren*, 2020 WL2564684, at *16 (citing *Asahi*, 480 U.S. at 115).

Here, the burden on Mr. Chen of litigating in New York is plainly onerous and New York has little cognizable interest in misappropriation and corporate governance claims concerning a foreign corporation brought by non-U.S. Plaintiffs against a non-U.S. Defendant. *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 160 A.D.3d 93, 110 (1st Dep't 2018) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.") (citation and quotation omitted); *Asahi*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.") (citation and quotation omitted).

---

influence" to effect the transactions (*Id.* at *21), Plaintiffs make no similar allegations regarding Mr. Chen's involvement as an independent director, much less allegations of his control or self-dealing.

20

## CONCLUSION

For the foregoing reasons, and those set forth in the accompanying Affirmations of Mark Chen and Tom Smith, KC, Defendants Mark Chen and Jennifer Weng respectfully request this Court to grant their motion to dismiss all claims against them with prejudice.

Dated: October 13, 2023
      New York, New York

WHITE & CASE LLP

*/s/ David G. Hille*

David Hille
Robert Tiedemann
1221 Avenue of the Americas
New York, NY 10020-1095
(212) 819-8200
david.hille@whitecase.com
robert.tiedemann@whitecase.com


*Attorneys for Defendants Mark Chen and Jennifer Weng*

21

## CERTIFICATE OF COMPLIANCE

I, David G. Hille, hereby certify this Memorandum of Law in Support of Motion to Dismiss the Derivative Complaint complies with the word count limit set forth in Rule 17 of the Commercial Division of the Supreme Court (22 N.Y.C.R.R. 202.70(g)) because it contains 6,739 words, excluding the parts of the affirmation exempted by Rule 17.

Dated: October 13, 2023

New York, New York

/s/ David G. Hille
David G. Hille

22