**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE: GLOBAL CORD BLOOD
CORPORATION SECURITIES
LITIGATION

Case No.  1:24-cv-03071-PKC

---

**DEFENDANT GOLDEN MEDITECH HOLDINGS LIMITED'S MEMORANDUM OF
LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE**

**KOBRE & KIM LLP**

Robin J. Baik
Daniel J. Saval
Jay Y. Mandel
800 Third Avenue
New York, New York 10022
Telephone: +1-212-488-1200
Fax: +1-212-488-1220

*Attorneys for Defendant*
*Golden Meditech Holdings Limited*

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..........................................................................................................1

**LEGAL STANDARD** .....................................................................................................................3

**ARGUMENT**...................................................................................................................................5

      I.        Plaintiffs' Motion Fails Because They Made No Effort to Serve Golden Meditech via the Hague Convention.......................................................................5

      II.      Plaintiffs' Motion Fails Because the Court's Intervention is Unnecessary .............7

      III.    The Court Should Direct Service via the Hague Convention Under Rule 4(f)(1).............................................................................................................................8

**CONCLUSION** ..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Convergen Energy LLC v. Brooks*,
    2020 WL 4038353 (S.D.N.Y. July 17, 2020) ...................................................................... 4, 9, 10

*Devi v. Rajapaska*,
    2012 WL 309605 (S.D.N.Y. Jan. 31, 2012) ............................................................................ 4, 5, 7

*Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Services Ltd.*,
    2023 WL 8716888 (S.D.N.Y. Nov. 30, 2023) ............................................................................... 5

*In re BRF S.A. Securities Litigation*,
    2019 WL 257971 (S.D.N.Y. Jan. 18, 2019) ................................................................................. 6

*In re GLG Life Tech Corp. Securities Litigation*,
    287 F.R.D. 262 (S.D.N.Y. 2012) ............................................................................................. 4, 6

*Levai v. Marlborough Gallery, Inc.*,
    2021 WL 8263546 (S.D.N.Y. May 3, 2021) ................................................................................. 5

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010) ................................................................................................. 4

*Montalbano v. Easco Hand Tools, Inc.*,
    766 F.2d 737 (2d Cir. 1985) ........................................................................................................ 5

*Orient Plus International Ltd. v. Baosheng Media Group Holdings Ltd.*,
    2024 WL 2317715 (S.D.N.Y. May 22, 2024) .............................................................................. 6

*Prediction Co. LLC v. Rajgarhia*,
    2010 WL 1050307 (S.D.N.Y. March 22, 2010) .......................................................................... 6

*Ryan v. Brunswick Corp.*,
    2002 WL 1628933 (W.D.N.Y. May 31, 2002) ............................................................................ 4

*S.E.C. v. Anticevic*,
    2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) ............................................................................... 7

*Smart Study Co. v. Acuteye-Us*,
    620 F. Supp. 3d 1382 (S.D.N.Y. 2022) ....................................................................................... 9

*Spin Master, Ltd. v. Aomore-US*,
    2024 WL 3030405 (S.D.N.Y. June 17, 2024) ............................................................................. 9

*Stream SICAV v. Wang*,
    989 F. Supp. 2d 264 (S.D.N.Y. 2013).................................................................................6

*Swarna v. Al-Awadi*,
    2007 WL 2815605 (S.D.N.Y. Sept. 20, 2007)....................................................................6

*United States v. Lebanese Canadian Bank SAL*,
    285 F.R.D. 262 (S.D.N.Y. 2012) ........................................................................................4

*USHA (India), Ltd. v. Honeywell International, Inc.*,
    421 F.3d 129 (2d Cir. 2005)................................................................................................5

*Washington State Investment Board v. Odebrecht S.A.*,
    2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018)................................................................4, 9

*Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y. 2013) ........................................................................................6

## Rules

Fed. R. Civ. P. 4(f)..........................................................................................................Passim

Fed. R. Civ. P. 4(h)(2).............................................................................................................3

Fed. R. Civ. P. 4(m) ................................................................................................................5

## Other Authorities

Hague Service Convention,
    20 U.S.T. 361, 1969 WL 97765............................................................................................8

Status Table - 14: Convention of 15 November 1965 on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private
International Law,
    https://www.hcch.net/en/instruments/conventions/status-table/?cid=17...................................9

Extensions - 14: Convention of 15 November 1965 on the Service Abroad of Judicial and
Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private
International Law,
    https://www.hcch.net/en/instruments/conventions/status-table/extensions/
    ?cid=17&mid=427 .................................................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs in this Action ask the Court to exercise its discretion to allow alternative service on Defendant Golden Meditech Holdings Limited ("Golden Meditech"), via email to the undersigned attorneys.[1] Plaintiffs argue that the Court should allow alternative service "to avoid the significant uncertainty, delays, and expense" that would be involved in serving Golden Meditech under the Hague Convention. According to Plaintiffs, "requiring adherence to Hague Service Convention procedures would serve no purpose." Plaintiffs make these representations despite the fact that they have made absolutely no effort to serve Golden Meditech, a Cayman Islands corporation, in its home jurisdiction. In addition, Plaintiffs refer to a related State Court proceeding without disclosing to this Court that the plaintiffs in that action actually served Golden Meditech at its registered office in the Cayman Islands. In other words, this Motion demonstrates why Plaintiffs are wrong: courts and litigants should not be burdened with motions for alternative service where the plaintiffs have made no effort to serve the defendant under the applicable law. The Court should deny Plaintiffs' Motion.

## FACTUAL BACKGROUND

The initial complaint in the instant Action was filed on April 22, 2024 by MW Gestion on behalf of a class of investors in Cayman Islands-incorporated Global Cord Blood Corporation ("GCBC"). ECF No. 1. The initial complaint named various individuals and corporate entities as defendants, including Golden Meditech and four other Golden Meditech affiliates. *Id*.

MW Gestion promptly effectuated service on GCBC at its registered office in the Cayman Islands. On May 22, 2024, MW Gestion filed an affidavit of service of the initial complaint upon

---

[1] Golden Meditech respectfully submits this Memorandum of Law subject to and without prejudice to its rights, claims, defenses and remedies, including its right to seek dismissal of this Action on jurisdictional or other grounds, and this does not constitute an appearance in this Action.

GCBC, indicating that service was completed on May 16, 2024, about three weeks after the initial complaint was filed. ECF No. 37. However, MW Gestion made no attempt to serve the initial complaint on Golden Meditech, which is also incorporated and maintains a registered office in the Cayman Islands. Declaration of Jay Y. Mandel ("Mandel Decl.") ¶ 3.

On July 9, 2024, the Court issued an order appointing Alessandro Somansino as lead Plaintiff and the law firm Glancy, Prongay & Murray LLP as lead counsel. ECF No. 56. On July 17, the Court granted Plaintiffs' letter motion for the extension of time, which allowed them to file an amended complaint on or before September 20, 2024. ECF No. 58. After their appointment, Plaintiffs took no action to serve Golden Meditech for the entire month of July. Mandel Decl. ¶ 4.

On July 31, 2024, three weeks after their appointment, lead counsel for Plaintiffs sent an email to Kobre & Kim attorneys who represent Golden Meditech and certain affiliates in a related New York state court action (the "Derivative Action"), asking whether Kobre & Kim would accept service of the initial class action complaint on behalf of Golden Meditech. Mandel Decl. ¶ 5. Kobre & Kim responded the next day (August 1, 2024) that it is not authorized to accept service on behalf of any of those Golden Meditech entities. Mandel Decl. ¶ 6. Plaintiffs did not respond to that email or otherwise make any further efforts to effectuate service on Golden Meditech (or any of the other Golden Meditech entities that were named in the initial complaint as defendants). Mandel Decl. ¶ 7. In particular, after they filed the Amended Complaint on September 20, 2024, Plaintiffs made no attempt to serve Golden Meditech with that complaint. Mandel Decl. ¶ 8.

By contrast, plaintiffs in the Derivative Action served Golden Meditech at its registered address in the Cayman Islands. The Derivative Action plaintiffs filed an affidavit of service upon Golden Meditech on August 15, 2023, indicating that service was completed on August 2, 2023 in the Cayman Islands, just one week after the Derivative Action complaint was filed on July 25,

2023. *See* Mandel Decl. ¶ 10. Consequently, there was no need for them to employ, nor did they seek the State Court's permission for, alternative service with respect to Golden Meditech. Plaintiffs' reference to the State Court's March 28, 2024 order allowing alternative service pertains to the State Court's decision to allow the plaintiffs in the Derivative Action to serve certain individuals at Golden Meditech's registered office in the Cayman Islands.[2] *See* Mandel Decl. ¶ 11. The plaintiffs in the Derivative Action filed an affirmation on May 8, 2024, indicating that they completed service on certain individual defendants by personal hand delivery of service documents to Golden Meditech in the Cayman Islands on April 11, 2024. Mandel Decl. ¶ 12.

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(f), which governs service of process on defendants in a foreign country, provides in pertinent part as follows:

> Unless federal law provides otherwise, an individual[3]… may be served at a place not within any judicial district of the United States:
>     (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>     (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice ...;
>     (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

---

[2] In the March 28, 2024 order, the State Court refused to permit plaintiffs' proposed method of alternative service on certain individual defendants by way of registered mail and email to Golden Meditech's counsel at Kobre & Kim, and authorized plaintiffs to effectuate service on those individuals by, among other means, service to Golden Meditech's Cayman Islands address. Mandel Decl. ¶ 11.

[3] Rule 4(f) applies to corporate entities through Rule 4(h)(2), which provides, in relevant part: "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served… (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i). Fed. R. Civ. P. 4(h)(2).

The decision of "whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *3 (S.D.N.Y. Sept. 21, 2018) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)). "In evaluating whether alternative service is 'necessitate[d]' … district courts in this Circuit have generally required: '(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'" *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012) (citing *Devi v. Rajapaska*, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012)); *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020).

"Imposing such a requirement has been viewed as necessary 'in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts,'" *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (citing *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)), "as well as to accord with 'principles of comity' by 'encourag[ing] the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process.'" *Convergen Energy*, 2020 WL 4038353, at *4 (internal citations omitted). "[I]n cases involving service on a person residing in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under section 4(f)(3)." *In re GLG Life Tech*, 287 F.R.D. at 266 ("[T]here will undoubtedly be many instances where significant efforts to make service under the Hague Convention should be required by a court before alternative service is ordered.").

4

## **ARGUMENT**

I.    **Plaintiffs' Motion Fails Because They Made No Effort to Serve Golden Meditech via the Hague Convention**

Plaintiffs concede that they have made no attempt to serve Golden Meditech in the Cayman Islands whether through the Hague Convention or otherwise, and therefore failed to satisfy the first prong of the test for exercising the Court's discretion. *See Devi*, 2012 WL 309605, at *1-2 (denying motion for alternative service where "plaintiff vaguely claims to have made arrangements (or attempted to have made arrangements) to personally serve defendant upon two of his visits to foreign countries, but plaintiff does not suggest that he has actually carried out an attempt to serve defendant [and] plaintiff has not attempted to serve defendant through the Hague Convention, the traditional mechanism for effectuating service abroad"); *see also Levai v. Marlborough Gallery, Inc.*, 2021 WL 8263546, at *4 (S.D.N.Y. May 3, 2021) (denying motion for alternative service where plaintiff did nothing more than "ask[] counsel to the defendants who appeared in this action … 'if they would accept service of the Amended Complaint on behalf of [the defendant]'" and where plaintiff did "not describe any other efforts … to determine the address at which [the defendant] could be served and to serve [him]"). Indeed, Plaintiffs' failure to effectuate service on Golden Meditech within 90 days of the commencement of the Action warrants dismissal of this Action as to Golden Meditech under Rule 4(m).[4] *See Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs. Ltd.*, 2023 WL 8716888, at *6 (S.D.N.Y. Nov. 30, 2023) ("The Second Circuit has held that the exemption from the time limit outlined in Rule 4(m) … for service in a foreign country does not apply if service never was attempted within the statutory period" (citing *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985).).

---

[4] Golden Meditech reserves the right to make a dismissal motion under Rule 4(m) at the appropriate time. *See USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005) (dismissing action for failing to comply with Rule 4(m) where "the plaintiff did not attempt to serve the defendant in the foreign country").

*In re GLG Life Tech*, 287 F.R.D. 262, cited by Plaintiffs in their motion, is illustrative. There, plaintiffs made *bona fide* attempts to locate and serve the defendant before requesting relief under Rule 4(f)(3), including attempting to serve the defendant at his company's headquarters in Canada and conducting an online investigation to uncover defendant's residential address in China, which plaintiff did not have knowledge of. *Id*. The plaintiff only requested relief from the court *after* these efforts failed. *Id.*[5] In *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013), also cited by Plaintiffs, alternative service was granted only after plaintiffs "originally tried to serve [the defendants] through the Chinese Ministry of Justice, China's designated Central Authority under the Hague Convention," but China refused under Article 13 of the Hague Convention on grounds of infringement of sovereignty or security.[6] 293 F.R.D. at 510; *see also Prediction Co. LLC v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y. March 22, 2010) (To obtain the Court's permission under Rule 4(f)(3), "[Plaintiff] must show that it has made a reasonable effort to effectuate service and that the facts and circumstances justify the Court's intervention … [Plaintiff] has met its burden, having actively, though unsuccessfully, attempted to obtain [Defendant's] address in a variety of ways."); *Swarna v. Al-Awadi*, 2007 WL 2815605, at *1 (S.D.N.Y. Sept. 20, 2007) (authorizing alternative service where "plaintiff has exhausted the possibility of service

---

[5] Similarly, other cases cited by Plaintiffs are inapposite as they involved defendants that either did not provide an address at all or refused to do so until well after the plaintiffs were forced to file a motion for alternative service. *See, e.g.*, *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 2024 WL 2317715, at *3 (S.D.N.Y. May 22, 2024) (granting alternative service where defendant refused to respond to request for address until weeks after the plaintiff filed a motion for alternative service because "the Hague Convention does not apply where, as here, 'the address of the person to be served with the document is not known'" and "[a]n address is not known if the plaintiff … exercised [reasonable] diligence in trying, and failing, to locate home addresses for [the defendants]"); *see also Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013) (holding the plaintiff "articulated good reasons why it could not have realistically served [the defendant] until now," including that "[t]o serve a defendant in China, a plaintiff must provide the defendant's address").

[6] Plaintiffs rely on *In re BRF S.A. Sec. Litig.*, 2019 WL 257971, at *3 (S.D.N.Y. Jan. 18, 2019), for the proposition that "this Court and others in this District have repeatedly authorized alternative service without requiring service attempts abroad under Rule 4(f)(1)." ECF No. 82 at 12. But Plaintiffs' reliance is misplaced. In *In re BRF S.A. Sec. Litig*, the court permitted alternate service where the plaintiff had "'made some attempts at service' and offered evidence 'demonstrating the difficulties associated with the letters rogatory process.'" 2019 WL 257971, at *3.

under subdivision 1 of Rule 4(f)"); *S.E.C. v. Anticevic*, 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (Wood, J.) (finding good faith efforts made to warrant substitute service where defendant's current address was unknown and plaintiff twice attempted to serve defendant in two different countries).

Here, Plaintiffs did not have to conduct any investigation to locate Golden Meditech. The original law firm that filed this Action is the same law firm that named and served Golden Meditech at its registered office in the Cayman Islands in the Derivative Action in 2023. Mandel Decl. ¶ 9. Although there is a new lead counsel and lead Plaintiff, they make no claim (nor could they) that they lacked the information necessary – such as a physical address – to at least attempt to serve Golden Meditech.

New counsel was appointed on July 9, 2024. Counsel has had plenty of time to attempt to serve Golden Meditech in the Cayman Islands. Under Plaintiffs' own estimate, they could serve Golden Meditech in the Cayman Islands in as little as two weeks and no more than nine weeks at the outer limits. *See* ECF No. 83, ¶ 9. There is simply no excuse for Plaintiffs to make any effort to first serve Golden Meditech prior to asking this Court for relief, and Plaintiffs cite no authority suggesting otherwise.

## II.  Plaintiffs' Motion Fails Because the Court's Intervention is Unnecessary

In addition to having made no efforts to serve Golden Meditech in Cayman Islands, Plaintiffs also cannot meet their burden to "show[] that the circumstances are such that the court's intervention is necessary." *Devi*, 2012 WL 309605, at *1. Instead, Plaintiffs try to justify the Court's intervention because alternative service would "avoid the significant delays, uncertainty, and expense." ECF No. 82 at 10. This argument too, fails.

Contrary to Plaintiffs' contention, the original plaintiff in this Action successfully served GCBC, one of the Defendants in this Action, at its registered office in the Cayman Islands within

7

about three weeks after the initial complaint was filed, without any issue.[7] ECF No. 82 at 3. Similarly, in the Derivative Action, Golden Meditech was served at its registered address in the Cayman Islands within one week after the complaint was filed. Mandel Decl. ¶ 10. In a complex cross-border litigation such as this Action, this cannot constitute the type of delay, uncertainty, and expense that require the Court's intervention. Plaintiffs do not cite any remotely comparable authority to support their position. *See* ECF No. 82.

The truth of the matter is that Plaintiffs have been sitting on their hands for months now, even after asking Golden Meditech's counsel in the Derivative Action to accept service on July 31, 2024 and having been rejected the next day (August 1, 2024), and after the Court set the October 28, 2024 deadline to respond to their Complaint. Now they are asking this Court to excuse their inaction for their convenience and at the expense of the resources of the Defendants and the Court.[8]

### III.    The Court Should Direct Service via the Hague Convention Under Rule 4(f)(1)

Plaintiffs contend that "the Hague Service Convention does not even apply to this form of service" because the Convention, by its terms, only applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad [and] the relevant transmittal here will be email to U.S. based counsel." ECF No. 82 at 9-10 (citing Hague Service Convention, 20 U.S.T. 361, 1969 WL 97765). This is a circular argument. The Hague Convention applies to these proceedings and Plaintiffs do not have the right to circumvent it unless and until the Court determines that the circumstances justify permitting an alternative method of service.

---

[7] Plaintiffs concede that Co-Defendant GCBC was successfully served at its registered office in Cayman Islands under the Hague Convention on May 16, 2024, less than one month after the initial complaint was filed in this Action. *See* Affidavit of Service Upon Global Cord Blood Corporation, May 22, 2024 (ECF No. 37).

[8] July 17, 2024 Order Granting Letter Motion for Extension of Time (ECF No. 58).

The Hague Convention applies because Plaintiffs have been tasked to serve a defendant in a foreign country and both countries of relevance here, i.e. the United States and Cayman Islands, are signatories to the Convention.[9] *See Spin Master, Ltd. v. Aomore-US*, 2024 WL 3030405, at \*4 (S.D.N.Y. June 17, 2024) ("The Hague Convention applies by its terms to 'service abroad'") (citing Hague Convention, Art. 1).). Therefore, Plaintiffs must effectuate service through the methods prescribed therein. *See Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1389 (S.D.N.Y. 2022) ("[C]ompliance with the Convention is mandatory in all cases to which it applies." (internal citation omitted)). "[T]he court cannot enter a Rule 4(f)(3) order permitting service on a foreign individual at a place not within a judicial district of the United States when the person to whom the complaint and summons is to be delivered and as to which service is deemed to be effective is at a place within the United States." *Convergen Energy*, 2020 WL 4038353, at \*7.

Accordingly, the argument Plaintiffs make in support of their Motion – that alternative email service on counsel in the U.S. does not violate the Hague Convention and should be permitted under Rule 4(f)(3) – is irrelevant because they first must demonstrate why they should be excused from compliance with the terms of the Hague Convention which unmistakably applies to these proceedings.[10] As discussed above, Plaintiffs fail to satisfy the standard applicable to requests for alternative service and must proceed as required under the Hague Convention.

---

[9] Status Table - 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (listing United States as signatory); Extensions - 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/extensions/?cid=17&mid=427 (listing Cayman Islands as signatory).

[10] Courts are split on whether service by email on U.S.-based attorneys is permissible under Rule 4. *Compare Wash. State Inv. Bd.*, 2018 WL 6253877, at \*4 (holding that defendants could be served via email on U.S. counsel because "the relevant circumstance is where the defendant is, and not the location of the intermediary") *with Spin Master, Ltd.*, 2024 WL 3030405, at \*7 (not allowing service via email to U.S. counsel because "service under Rule 4(f) must be

**CONCLUSION**

For the foregoing reasons, Defendant Golden Meditech Holdings Limited respectfully

requests that the Court deny Plaintiffs' motion for alternate service under Rule 4(f)(3).

Dated: October 10, 2024
       New York, New York

                                        **KOBRE & KIM LLP**

                              By: */s/ Jay Y. Mandel*
                                    Robin J. Baik
                                    Daniel J. Saval
                                    Jay Y. Mandel
                                    800 Third Avenue
                                    New York, New York 10022
                                    Telephone: +1-212-488-1200
                                    Fax: +1-212-488-1220

                                    *Attorneys for Defendant*
                                    *Golden Meditech Holdings Limited*

---

completed abroad … [T]he text of Rule 4(f) makes clear that Plaintiff can only avail itself of the Rule if service would occur abroad and '*not within* any judicial district of the United States.'"); *see also Convergen Energy*, 2020 WL 4038353, at *9 (holding that "a foreign company cannot be served by serving counsel in the United States" under Rules 4(f)(3) and 4(h)(1)). Given the current split—and the Plaintiffs' failure to show the need for judicial intervention (for the reasons stated herein)—this Court should deny Plaintiffs' Motion.

10