**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | Civil Action No. 24-cv-3071 (PKC)<br><br>Hon. P. Kevin Castel |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**TING (TINA) ZHENG'S AND BING CHUEN (ALBERT) CHEN'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Dated: January 31, 2025

**JONES DAY**

Nidhi (Nina) Yadava
Jacob Miller
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
nyadava@jonesday.com
jakemiller@jonesday.com

*Attorneys for Defendants Ting (Tina) Zheng and Bing Chuen (Albert) Chen*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

    A.    Global Cord Blood and the Cellenkos transaction................................. 2

    B.    The New York derivative suit................................................................. 3

    C.    This securities lawsuit is filed in this Court.......................................... 3

    D.    Plaintiffs first attempt service months after the original complaint is filed.......... 4

ARGUMENT ...................................................................................................... 5

I.    SERVICE ON MS. ZHENG AND ALBERT CHEN WAS IMPROPER........................ 5

    A.    Legal standard...................................................................................... 5

    B.    Service on Ms. Zheng and Albert Chen was untimely. ......................... 5

        1.    Plaintiffs cannot show good cause for their failure to timely serve.......... 8

        2.    Plaintiffs are not entitled to a discretionary extension of the deadline.................................................................................. 9

II.    PLAINTIFFS FAIL TO PLEAD FACTS TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER MS. ZHENG AND ALBERT CHEN. ............... 14

    A.    Legal standard.................................................................................... 14

    B.    This Court lacks personal jurisdiction over Ms. Zheng and Albert Chen. .......... 15

        1.    This Court lacks general jurisdiction over Ms. Zheng and Albert Chen................................................................. 16

        2.    Subjecting Ms. Zheng and Albert Chen to suit in this Court would be unreasonable........................................................ 16

        3.    Proper service of process is a prerequisite for personal jurisdiction. ...... 19

CONCLUSION.................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Abu Dhabi Inv. Auth. v. Mylan N.V.*,
  No. 20-cv-1342 (JPO), 2021 WL 516310 (S.D.N.Y. Feb. 10, 2021) ......................................12

*AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*,
  197 F.R.D. 104 (S.D.N.Y. 2000) .........................................................................................9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..........................................................................................................13

*Art Assure Ltd., LLC v. Artmentum GmbH*,
  No. 14-cv-3756 (LGS), 2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ...................................14

*Asahi Metal Industry Co. v. Superior Court*,
  480 U.S. 102 (1987) ..............................................................................................16, 17, 19

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999) ................................................................................................14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002) ................................................................................................15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...........................................................................................................15

*Cassano v. Altshuler*,
  186 F. Supp. 3d 318 (S.D.N.Y. 2016) ...............................................................................8, 12

*Casville Invs., Ltd. v. Kates*,
  No. 12-cv-6968 (RA), 2013 WL 3465816 (S.D.N.Y. July 8, 2013)......................................14

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018).................................................................................................14

*Counter Terrorist Grp. U.S. v. New York Mag.*,
  374 F. App'x 233 (2d Cir. 2010) ..........................................................................................9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).......................................................................................................15, 17

*DEF v. ABC,*
    366 F. App'x 250 (2d Cir. 2010) ............................................................................6

*DeLuca v. AccessIT Grp., Inc.,*
    695 F. Supp. 2d 54 (S.D.N.Y. 2010)......................................................................5

*Deptula v. Rosen,*
    558 F. Supp. 3d 73 (S.D.N.Y. Sept. 3, 2021) ....................................................5, 9

*Fajardo v. Arise News, Inc.,*
    No. 15-cv-6912 (PKC), 2016 WL 2851339 (S.D.N.Y. May 13, 2016)...................7

*Fantozzi v. City of New York,*
    343 F.R.D. 19 (S.D.N.Y. 2022) ...................................................................... passim

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
    592 U.S. 351 (2021)..............................................................................................16

*Frasca v. United States,*
    921 F.2d 450 (2d Cir. 1990)...................................................................................10

*George v. Pro. Disposables Int'l Inc.,*
    221 F. Supp. 3d 428 (S.D.N.Y. 2016)......................................................................8

*Gerena v. Korb,*
    617 F.3d 197 (2d Cir. 2010)......................................................................................8

*Gong v. Sarnoff,*
    No. 23-cv-00343 (LJL), 2023 WL 8096970 (S.D.N.Y. Nov. 21, 2023) .................8

*Harmon v. Bogart,*
    788 F. App'x 808 (2d Cir. 2019) .............................................................................9

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,*
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)....................................................................16

*In re Banco Bradesco S.A. Secs. Litig.,*
    277 F. Supp. 3d 600 (S.D.N.Y. 2017)...............................................................16, 18

*In re CIL Ltd.,*
    582 B.R. 46 (Bankr. S.D.N.Y. 2018)......................................................................17

*In re Lottery.com, Inc. Sec. Litig.,*
    715 F. Supp. 3d 506 (S.D.N.Y. 2024)....................................................................10

*In re Teligent Servs., Inc.*,
  324 B.R. 467 (Bankr. S.D.N.Y. 2005) ..................................................................11

*In re Veon Ltd. Sec. Litig.*,
  No. 15-cv-08672 (ALC), 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) ...........................7, 8

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).................................................................................15

*Khan v. Khan*,
  360 F. App'x 202 (2d Cir. 2010) .....................................................................5

*Kogan v. Facebook, Inc.*,
  334 F.R.D. 393 (S.D.N.Y. 2020) ....................................................10, 11, 12, 13

*Levitant v. Workers Comp. Bd. of N.Y.*,
  No. 16-cv-6990 (ER), 2018 WL 1274734 (S.D.N.Y. Mar. 8, 2018) ........................6

*Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)...........................................................................19

*Mentor Ins. Co. (U.K.) v. Brannkasse*,
  996 F.2d 506 (2d Cir. 1993).........................................................................6

*Minnie Rose LLC v. Yu*,
  169 F. Supp. 3d 504 (S.D.N.Y. 2016).............................................................2

*Montalbano v. Easco Hand Tools, Inc.*,
  766 F.2d 737 (2d Cir. 1985)......................................................................6, 7

*MW Gestion, et al. v. Golden Meditech Holdings Ltd., et al.*,
  No. 653598/2023 (N.Y. Sup. Ct., N.Y. County)...............................................3

*Norman v. Bank of New York Mellon Tr. Co. N.A.*,
  No. 24-cv-4737 (JGK), 2024 WL 4558471 (S.D.N.Y. Oct. 21, 2024)....................5

*Paulo v. Agence France-Presse*,
  No. 1:21-cv-11209 (JLR) (SLC), 2023 WL 2707201 (S.D.N.Y. Mar. 30,
  2023) ................................................................................................18

*RCC Ventures, LLC v. Brandtone Holdings Ltd.*,
  322 F.R.D. 442 (S.D.N.Y. 2017) ..................................................................7

*Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ..........................................................................17, 18

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
  369 F.3d 113 (2d Cir. 2004)...................................................................................6

*S.E.C. v. Straub*,
  921 F. Supp. 2d 244 (S.D.N.Y. 2013)...................................................................15

*Sartor v. Toussaint*,
  70 F. App'x 11 (2d Cir. 2002) .............................................................................11

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*,
  829 F.3d 173 (2d Cir. 2016)................................................................................13

*Tuscano v. Tuscano*,
  403 F. Supp. 2d 214 (E.D.N.Y. 2005) .................................................................18

*U.S. S.E.C. v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013)..............................................................17, 18

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
  421 F.3d 129 (2d Cir. 2005)...................................................................................6

*Vaher v. Town of Orangetown, N.Y.*,
  916 F. Supp. 2d 404 (S.D.N.Y. 2013).............................................................10, 12

*Vieira v. Korda*,
  No. 2:17-cv-160 (JMC), 2018 WL 2122825 (D. Vt. May 8, 2018)........................18

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016)............................................................................15, 19

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001).................................................................................14

*Zapata v. City of New York*,
  502 F.3d 192 (2d Cir. 2007).........................................................................9, 10, 11

**STATUTES**

28 U.S.C. § 1658(b) ....................................................................................10, 12, 18

28 U.S.C. § 2072(b) .................................................................................................13

**RULES**

Fed. R. Civ. P. 4 ................................................................................................ passim

Fed. R. Civ. P. 12(b) ............................................................................................1, 5, 14, 19

**OTHER AUTHORITIES**

WRIGHT & MILLER, 4B FED. PRAC. & PROC. CIV. § 1137 & n.54 (4th ed.) ...................................9

Defendants Ting (Tina) Zheng and Bing Chuen (Albert) Chen respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (ECF No. 60) ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

## INTRODUCTION

The Complaint suffers from procedural and jurisdictional defects that warrant dismissal.[1]

*First*, service of the Complaint was untimely. Under Rule 4(m), a plaintiff has 90 days to serve a complaint, irrespective of any amendments. Plaintiffs never sought an extension of that deadline and made no effort to serve the complaint within that timeframe. They did not file their pre-motion letter for alternative service until 155 days after the complaint was filed. And the complaint was not served on Ms. Zheng and Albert Chen until 184 days after it was filed. That is too late. Plaintiffs have not proffered any justification for their failure to comply with the Rules, let alone good cause that would warrant a mandatory extension under the Rules. Nor is a discretionary extension warranted—Ms. Zheng and Albert Chen provided plaintiffs their service addresses, noted the Rule 4(m) issues, and would suffer prejudice if the lawsuit is not dismissed, since it would effectively extend the statute of limitations for the conduct alleged in the Complaint.

*Second*, the Complaint fails to establish that this Court has personal jurisdiction over Ms. Zheng and Albert Chen. The assertion of personal jurisdiction here would not comport with traditional notions of fair play and substantial justice, as due process requires. Among other things, jurisdiction here would impose a severe burden, the interests of the United States are slight, and plaintiffs have little interest in obtaining convenient and effective relief in this action. Moreover, proper service of process is a prerequisite for personal jurisdiction, and it is lacking here.

---

[1] Ms. Zheng and Mr. Chen's motion to dismiss is limited to plaintiffs' failure to effect proper and timely service and to establish personal jurisdiction over Ms. Zheng and Mr. Chen.

## BACKGROUND

### A.     Global Cord Blood and the Cellenkos transaction.

Plaintiffs claim to be shareholders in Global Cord Blood Corporation, a Cayman-registered company headquartered in Hong Kong and doing business in mainland China.  Compl. ¶¶ 2, 15–17.[2]  Defendants include Yuen Kam, the former chair of Global Cord Blood; Ms. Zheng, the former CEO (and also former chair) of the company; Albert Chen, the former CFO of the company; Golden Meditech Holdings Ltd., a Cayman-registered healthcare company; Cellenkos, Inc., a biotech company; and two other former directors of Global Cord Blood, Mark Chen and Jennifer Weng.  *Id.* ¶¶ 18–25.  Plaintiffs allege that, between 2015 and 2022, Global Cord Blood wrongly transferred hundreds of millions of dollars to entities affiliated with Mr. Kam, including Golden Meditech subsidiaries.  *Id.* ¶¶ 4–5.  According to plaintiffs, defendants attempted to cover up these transfers by entering into a transaction whereby Global Cord Blood would buy Cellenkos, which was supposedly controlled by affiliates of Mr. Kam and Golden Meditech.  *Id.* ¶ 5.

After the Cellenkos transaction was announced on April 29, 2022, Global Cord Blood's putative majority shareholder, Blue Ocean Structured Investment Co., sued to enjoin it in the Cayman Islands.  *Id.* ¶¶ 79–81.  The Cayman court appointed trustees, known as Joint Provisional Liquidators, to oversee Global Cord Blood's affairs.  *Id.* ¶ 83.  Blue Ocean later initiated litigation in the British Virgin Islands concerning security agreements governing Global Cord Blood's and Blue Ocean's stock.  *Id.* ¶ 110.  The Joint Provisional Liquidators initiated litigation against Ms. Zheng, Albert Chen, and other parties in Hong Kong.  *Id.* ¶ 115.

---

[2] The following allegations are drawn from the complaint, which are accepted as true solely for purposes of this motion.  *See Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016).

**B.      The New York derivative suit.**

On July 25, 2023, two purported shareholders of Global Cord Blood filed a derivative suit on Global Cord Blood's behalf against certain of the defendants in this case in the New York Supreme Court. The suit is captioned *MW Gestion, et al. v. Golden Meditech Holdings Ltd., et al.*, No. 653598/2023 (N.Y. Sup. Ct., N.Y. County). In October 2023, certain defendants who had purportedly been served with the complaint (not including Ms. Zheng or Albert Chen) moved to dismiss the derivative suit on multiple grounds. Those motions have been fully briefed and argued. *Id.*, NYSCEF Docs. 391–392 (transcripts of hearing on motions to dismiss).

In March 2024, in response to a motion by the plaintiffs, the state court issued an *ex parte* order authorizing alternative service on certain as-yet unserved defendants, including Ms. Zheng and Albert Chen. *Id.*, NYSCEF Doc. 308. Plaintiffs purported to effect this service in April and May 2024. *Id.*, NYSCEF Doc. 313.

On May 30, 2024, derivative counsel for Ms. Zheng and Albert Chen filed a notice of appearance on the public docket (*Id.*, NYSCEF Doc. 320) and entered into a stipulation with plaintiffs' counsel extending all of their deadlines in the derivative suit until 40 days after the resolution of the pending motions to dismiss. This stipulation was filed to the state court's public docket the same day. *Id.*, NYSCEF Doc. 321 (filed to this Court's docket as ECF 83-9). This stipulation expressly preserves Ms. Zheng's and Albert Chen's rights to contest the state court's jurisdiction. *Id.* As of now, the October 2023 motions to dismiss remain pending.

**C.      This securities lawsuit is filed in this Court.**

On April 22, 2024, the first-named plaintiff in the derivative suit, represented by the same law firm representing it in the derivative suit, filed this action against Global Cord Blood and the other defendants, seeking relief under the federal securities laws. ECF 1. On July 9, 2024, this

Court appointed Alessandro Somansino as lead plaintiff and Glancy, Prongay & Murray LLP as lead counsel.  ECF 56.

Plaintiffs seek to represent a class of stockholders who purchased Global Cord Blood's stock between June 18, 2019, and May 9, 2022.  Compl. ¶ 1.  Plaintiffs assert three claims.  In the first claim, plaintiffs allege that all defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rules 10b-5(a) and (c) thereunder, concerning scheme liability.  *Id.* ¶¶ 178–80.  In the second claim, plaintiffs allege that Global Cord Blood, Ms. Zheng, and Albert Chen violated Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder by allegedly making misrepresentations and omissions in Global Cord Blood's public filings.  *Id.* ¶¶ 181–83.  And in the third claim, plaintiffs allege that the individual defendants and Golden Meditech are subject to control person liability under Section 20(a) of the Exchange Act.  *Id.* ¶¶ 184–89.

### D.    Plaintiffs first attempt service months after the original complaint is filed.

On July 31, 2024, three weeks after their appointment, lead counsel wrote to the Jones Day attorneys who had filed notices of appearance on behalf of Ms. Zheng and Albert Chen in the derivative suit, and asked whether the derivative counsel was authorized to accept service of the securities complaint.  Miller Decl. ¶ 4; Ex. 1.  This appears to have been the first communication or attempt at service of the complaint on Ms. Zheng or Albert Chen, and it came 100 days after the filing of the complaint on April 22, 2024.  Jones Day attorneys responded on August 6, 2024 that they were not authorized to accept service of the securities lawsuit.  Miller Decl. ¶ 6; Ex. 1.  Plaintiffs' counsel then asked Jones Day to provide service addresses for Ms. Zheng and Albert Chen.  *Id.*  Jones Day explained that service appeared to be untimely under the Federal Rules, but nevertheless provided service addresses for both Ms. Zheng and Albert Chen in the Republic of China.  *Id.*  It does not appear that plaintiffs made any effort to serve Ms. Zheng or Albert Chen at those addresses.

On September 24, 2024, plaintiffs filed a pre-motion letter seeking leave to file a motion for alternative service on certain defendants, including Ms. Zheng and Albert Chen. ECF 78. Leave was granted (ECF 79), and plaintiffs filed their motion on October 3, 2024. ECF 81–82. Defendants Mark Chen and Golden Meditech filed briefs in opposition to the alternative service motion, to which plaintiffs replied. ECF 84–89.

On October 22, 2024, this Court granted plaintiffs' motion to serve the Complaint on Ms. Zheng and Albert Chen by email to Jones Day. ECF 90. That service was purportedly effected on October 23, 2024 (ECF 91), 184 days after the original complaint was filed and 106 days after Mr. Somansino was appointed as lead plaintiff. This motion followed.

## ARGUMENT

## I. SERVICE ON MS. ZHENG AND ALBERT CHEN WAS IMPROPER.

### A. Legal standard.

"On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Deptula v. Rosen*, 558 F. Supp. 3d 73, 83 (S.D.N.Y. 2021) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order)). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *Id.* (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010)). "[M]aterials outside the pleadings may be considered without converting a motion to dismiss for insufficient service of process, under Rule 12(b)(5), into a motion for summary judgment." *Norman v. Bank of New York Mellon Tr. Co. N.A.*, No. 24-cv-4737 (JGK), 2024 WL 4558471, at *2 (S.D.N.Y. Oct. 21, 2024).

### B. Service on Ms. Zheng and Albert Chen was untimely.

Dismissal is warranted because service on Ms. Zheng and Albert Chen was untimely.

"The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1). "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The remedy for failure to abide by Rule 4(m) is dismissal. *See, e.g.*, *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005).

Here, the original complaint was filed on April 22, 2024, ECF 1, but not served until October 23, 2024—184 days later. ECF 91. That is too late. The filing of an amended complaint makes no difference; it does not restart the Rule 4(m) clock. *Levitant v. Workers Comp. Bd. of N.Y.*, No. 16-cv-6990 (ER), 2018 WL 1274734, at *4 (S.D.N.Y. Mar. 8, 2018) (collecting cases).

Moreover, although the final sentence of Rule 4(m) provides that the rule "does not apply to service in a foreign country under Rule 4(f)," that exception does not apply here. For one thing, having argued that service on U.S. counsel involved "no transmittal for service abroad," (ECF 82 at 10; ECF 89 at 4–6), plaintiffs cannot now argue that service actually occurred abroad. *See Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) ("The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding.").

In any event, in the Second Circuit, the exception for service in a foreign country does not apply if, as here, "the plaintiff did not attempt to serve the defendant in the foreign country" within the time limit. *USHA*, 421 F.3d at 134. Several other Second Circuit opinions, going back years, have held the same. *See Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 512 (2d Cir. 1993); *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985); and *DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010). Courts in the Southern District of New York routinely apply

this holding.  *See*, *e.g.*, *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2018 WL 4168958, at

*9 (S.D.N.Y. Aug. 30, 2018); *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442,

449 (S.D.N.Y. 2017); and *Fajardo v. Arise News, Inc.*, No. 15-cv-6912 (PKC), 2016 WL 2851339,

at *4 (S.D.N.Y. May 13, 2016).

As the Second Circuit put it in *Montalbano*, the foreign service exception in Rule 4(m)

does not apply where a party did not attempt service within the limit and "has not exactly bent

over backward to effect service."  766 F.2d at 740.  That is the case here:  by their own admission,

plaintiffs made no effort to serve defendants abroad.  *See* ECF 89 at 3.  At a minimum, they could

have contacted Ms. Zheng's and Albert Chen's counsel in the derivative suit to ask for waivers of

service, as they eventually did.  The name, telephone number, and email address of Ms. Zheng's

and Albert Chen's derivative counsel were filed publicly on the New York state court docket by

May 30, 2024.  ECF 83-9.  That was well within 90 days of service of the original complaint.

Indeed, the plaintiff's attorney who signed the original complaint in this action (ECF 1 at 49) is

the exact same attorney who signed the stipulation with Ms. Zheng's and Albert Chen's counsel

in the New York derivative suit (ECF 83-9).  But the first time the derivative counsel was contacted

by plaintiff's counsel was July 31, 2024—after the 90 days had already run.  Miller Decl. ¶¶ 3–4.

In sum, no one made any effort to contact Ms. Zheng's and Albert Chen's U.S. counsel in the

derivative suit even though that information was easily available and actually known to the

attorney who filed the original complaint.  And certainly no one made any effort to effect service

under the Hague Convention or seek an extension from this Court.

It is true that the attorneys who filed the original complaint are not the present lead counsel

under the Private Securities Litigation Reform Act (PSLRA).  But courts in this jurisdiction have

rejected the argument that the time period under Rule 4(m) does not begin until the court-appointed

lead plaintiff files a consolidated complaint. *Veon*, 2018 WL 4168958, at *8. Moreover, the lead plaintiff here was named on July 9, 2024 (ECF 56), nearly two weeks *before* the 90-day timeframe for service lapsed. That left plenty of time for lead counsel to seek an extension of its service deadline or to make some effort to obtain service waivers. They did not. Indeed, lead counsel filed a motion for adjournment of certain case deadlines on July 17, 2024—still within the 90-day period—but did not include any requests relating to the service deadlines. ECF 57. In any event, even counting from the appointment of lead counsel, service was not purportedly effected until October 23, 2024 (ECF 91), 106 days later. It cannot be disputed that service here was untimely.

That the defendants may have had actual notice of this action before the time period lapsed is, again, irrelevant. The Second Circuit has held that a defendant's notice of the action does not exclude untimely service or preclude dismissal for untimely service. *See Gerena v. Korb*, 617 F.3d 197, 201–02 (2d Cir. 2010) (affirming dismissal of action for untimely service even though defendant had removed the action from state to federal court).

### 1.    Plaintiffs cannot show good cause for their failure to timely serve.

It is true that "[a]n exception to this rule exists if a plaintiff is able to demonstrate good cause for failure to timely serve." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 321 (S.D.N.Y. 2016); Fed. R. Civ. P. 4(m). Plaintiffs "bear[] the burden of proof in showing that [they] had good cause in not timely serving the defendant." *George v. Pro. Disposables Int'l Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016). Plaintiffs cannot meet that burden here.

"Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service." *Gong v. Sarnoff*, No. 23-cv-00343 (LJL), 2023 WL 8096970, at *2 (S.D.N.Y. Nov. 21, 2023) (quoting *George*, 221 F. Supp. 3d at 432–33). "To establish good cause, a plaintiff must demonstrate that despite diligent attempts, service could

not be made due to exceptional circumstances beyond his or her control." *Deptula*, 558 F. Supp. 3d at 85 (quotation omitted). "In assessing whether diligent attempts were made to effect service, courts consider both any attempts made and whether plaintiff moved under FRCP 6(b) for an extension of time in which to serve the defendant." *Fantozzi v. City of New York*, 343 F.R.D. 19, 27 (S.D.N.Y. 2022) (quotation omitted). "A delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause." *AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000).

Here, plaintiffs cannot show good cause. Plaintiffs exercised no diligence in serving Ms. Zheng or Albert Chen. It does not appear they made any effort to serve them until after the deadline had passed.[3]

In addition, the mere fact that claims will be effectively barred by the statute of limitations if the defendant is dismissed is not sufficient, by itself, to show good cause for an extension. *E.g.*, *Zapata v. City of New York*, 502 F.3d 192, 197–98 (2d Cir. 2007); *Harmon v. Bogart*, 788 F. App'x 808, 809–10 (2d Cir. 2019); *Fantozzi*, 343 F.R.D. at 29 (citing several other authorities).

Accordingly, plaintiffs will not be able to show "good cause" here.

### 2. Plaintiffs are not entitled to a discretionary extension of the deadline.

In determining whether a discretionary extension is appropriate in the absence of good cause, a court considers the following four factors: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the

---

[3] Plaintiffs' reply memorandum of law in support of their motion for alternative service suggests that plaintiffs' counsel may have thought that the foreign service exception to Rule 4(m) applied, notwithstanding their lack of effort to serve the defendants. ECF 89 at 3 n.3. While certain jurisdictions do have that more liberal standard, that is not the rule in the Second Circuit. *See* WRIGHT & MILLER, 4B FED. PRAC. & PROC. CIV. § 1137 & n.54 (4th ed.) and Second Circuit cases cited *supra*, pp. 6–7. In any event, "[a]ttorney error does not constitute good cause under Rule 4(m)." *Counter Terrorist Grp. U.S. v. New York Mag.*, 374 F. App'x 233, 235 (2d Cir. 2010).

claims asserted in the complaint; (3) whether [the] defendant attempted to conceal the defect in service; and (4) whether [the] defendant would be prejudiced by extending plaintiff's time for service." *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 531 (S.D.N.Y. 2024). "However, the Second Circuit has stated clearly that even if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013) (quoting *Zapata*, 502 F.3d at 198 & n.7).

Taken together, these factors do not entitle plaintiffs to a discretionary extension. Moreover, plaintiffs have not advanced any colorable excuse for neglect.

### (a)    The statute of limitations.

It is likely that the applicable statute of limitations would bar the action once refiled. Securities fraud claims must be brought within "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). The Complaint alleges that the misleading statements and omissions came to light by the second half of 2022. Compl. ¶¶ 79–82. Accordingly, if plaintiffs had to refile this action, it would likely be time-barred, since a complaint that is not timely served does not stop the running of the applicable statute of limitations. *See Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990) ("If service is not complete by the end of the [service period] . . . the governing statute of limitations again becomes applicable.").

But, while this is a factor favoring the plaintiff, it is not dispositive. *See, e.g.*, *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 404 (S.D.N.Y. 2020) (not dispositive); *Fantozzi*, 343 F.R.D. at 29 (same). "Instead, courts weighing this consideration have focused on whether the plaintiff had been aware of the deadline and the extent of the plaintiff's efforts to meet it." *Kogan*, 334 F.R.D. at 404–05 (collecting cases). Limited weight may be assigned to this factor where, as here, the

plaintiff has made no effort to effect formal service, and did not request an extension to the deadline or ask the defendants for a waiver of service.  *Id.*

Courts also look to whether the plaintiff had actual knowledge of the statute of limitations deadline, and whether defendants did anything to induce the expiration of the limitations period ("laying low or engaging in gamesmanship").  *Id.*  Neither of those issues are present here. Plaintiffs are represented by experienced securities counsel.  ECF 45-4 (lead counsel's firm resume).  And Ms. Zheng and Albert Chen have done nothing to induce the expiration of the limitations period.  Their derivative counsel responded promptly, provided service addresses, and informed lead counsel of their view that service was untimely.  Miller Decl. ¶¶ 4–6.

In *Zapata*, the Second Circuit made the point that, while it is true that "any plaintiff would suffer by having the complaint dismissed with prejudice on technical grounds," "[i]t is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action."  *Zapata*, 502 F.3d at 198.  However, "in the absence of good cause," as here, "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect."  *Id.*  That being so, this factor should carry little weight here.

### (b)    Actual notice of the claims.

Actual notice to the defendant is not dispositive either.  "A defendant's notice of a lawsuit does not excuse a plaintiff's failure to serve."  *Kogan*, 334 F.R.D. at 406; *see also Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order) ("Nor can actual notice of suit cure a failure to comply with the statutory requirements for serving process.").  While "[a]ctual notice of an action militates against a finding of prejudice," *In re Teligent Servs., Inc.*, 324 B.R. 467, 474 (Bankr. S.D.N.Y. 2005), courts have found that actual notice does not necessarily justify an extension of the service deadline.  *Fantozzi*, 343 F.R.D. at 30.  Courts have given especially little weight to this factor "where the plaintiff made no effort to achieve service . . . or plaintiffs failed

11

to present a justifiable excuse for failing to effect service." *Kogan*, 334 F.R.D. at 406 (collecting cases). That is the case here.

(c)     <strong>Defendants' conduct.</strong>

Defendants did nothing to conceal the defect in service here. As noted, defendants' derivative counsel provided plaintiffs' counsel with service addresses, and notified plaintiffs' counsel very early in the exchange of the timeliness defect. *Supra*, p. 4. This factor accordingly favors Ms. Zheng and Albert Chen. *See Fantozzi*, 343 F.R.D. at 30 ("Because Defendants did not attempt to conceal the defect in service, the third factor cuts against granting an extension.").

(d)     <strong>Prejudice to the defendants.</strong>

Courts have found that extending the statute of limitations by means of a discretionary extension constitutes prejudice to defendants. *Fantozzi*, 343 F.R.D. at 31; *Cassano*, 186 F. Supp. 3d at 323; *Vaher*, 916 F. Supp. 2d at 421. Doing so would "extend[] the time that the Defendants would have to collect evidence regarding the events of [the complaint] far beyond the maximum time allowable by the statute of limitations acting in combination with Rule 4(m), with all of the associated challenges of fading memories and difficulties in the collection of aging documents." *Fantozzi*, 343 F.R.D. at 31.

Moreover, a discretionary extension would impair Ms. Zheng and Albert Chen's substantive rights under 28 U.S.C. § 1658(b)(2), the five-year statute of repose that limits the time in which plaintiffs may bring claims under Section 10(b) of the Exchange Act. Certain of the misstatements and omissions plaintiffs allege date back to June and July 2019. *See* Compl. ¶¶ 128–139; *Abu Dhabi Inv. Auth. v. Mylan N.V.*, No. 20-cv-1342 (JPO), 2021 WL 516310, at *3 (S.D.N.Y. Feb. 10, 2021) (statute of repose runs with respect to each statement from the time it was made). Thus, a discretionary extension would allow plaintiffs to base claims on misstatements or omissions that would otherwise be barred by the Exchange Act's statute of repose. In addition

12

to being prejudicial to the defendants, this would be improper.  The Exchange Act's statute of repose "creates a substantive right in defendants to be free from liability after five years."  *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016) (emphasis in original).  Using Rule 4(m) to enlarge or modify the repose period would therefore run afoul of the Rules Enabling Act, which forbids interpreting the Federal Rules to "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b); *see also SRM Glob.*, 829 F.3d at 176–77 (holding that equitably tolling the Exchange Act's statute of repose would violate the Rules Enabling Act); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("[T]he Rules Enabling Act . . . instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'").

Thus, this factor also favors Ms. Zheng and Albert Chen.

\*        \*        \*

This is not, therefore, a case in which the factors for a discretionary extension favor the plaintiffs.  Defendants have done nothing to prevent service, other than exercising their rights under the Federal Rules and the Hague Convention; defendants have not concealed any service defects from plaintiffs; and defendants would suffer prejudice if the lawsuit is not dismissed, since extending the time for service would effectively extend the statute of limitations.

Moreover, all these factors are to be viewed in light of plaintiffs' failure to justify the untimely service.  *Fantozzi*, 343 F.R.D. at 31; *Kogan*, 334 F.R.D. at 404.  In the absence of a justifiable excuse, courts will not grant the extension, even if equitable factors favor the plaintiff. *Kogan*, 334 F.R.D. at 404.  There needs to be "some colorable excuse for neglect."  *Id.*  There is no such excuse here.  Plaintiffs are represented by experienced securities lawyers, who had every

opportunity to begin serving defendants or to seek extensions from this Court. Their neglect or mistake in serving the complaint should not be excused.

## II.    PLAINTIFFS FAIL TO PLEAD FACTS TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER MS. ZHENG AND ALBERT CHEN.

Even assuming that plaintiffs' factual allegations are true, the Complaint fails to establish that this Court has personal jurisdiction over Ms. Zheng and Albert Chen. This is an additional reason the Complaint should be dismissed as to Ms. Zheng and Albert Chen.

### A.    Legal standard.

Plaintiffs opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction have the burden of establishing that the court has jurisdiction over the defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Plaintiffs "must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018). To meet this burden, plaintiffs must plead facts sufficient for a *prima facie* showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

The court construes all plaintiffs' allegations as true and resolves all doubts in plaintiffs' favor. *Casville Invs., Ltd. v. Kates*, No. 12-cv-6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013). "However, [plaintiffs] may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-cv-3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (cleaned up). The court may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *Casville*, 2013 WL 3465816, at *3.

### B.    This Court lacks personal jurisdiction over Ms. Zheng and Albert Chen.

This Court may exercise jurisdiction only if permitted by the Due Process Clause.[4]
*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). "[T]here are two parts
to the due process test for personal jurisdiction . . . the 'minimum contacts' inquiry and the
'reasonableness' inquiry." *Id.* at 331 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)
and *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)).
"The minimum contacts inquiry requires that the court determine whether a defendant has
sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction"
and "[t]he reasonableness inquiry requires the court to determine whether the assertion of personal
jurisdiction over the defendant comports with traditional notions of fair play and substantial
justice." *Id.* (citations and internal quotation marks omitted).

Federal law recognizes two types of personal jurisdiction: general and specific. Under
general jurisdiction, a district court may "hear any and all claims against that defendant . . . when
the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive
as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Daimler AG v. Bauman*, 571
U.S. 117, 122 (2014)). Under the narrower specific jurisdiction, a district court may hear claims
against a defendant only where that defendant "has purposefully directed his activities at residents
of the forum, and the litigation results from alleged injuries that arise out of or relate to those
activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (cleaned up). The
allegations in the Complaint establish neither.

---

[4] When a plaintiff asserts a federal cause of action against a foreign defendant, the Due Process
Clause of the Fifth Amendment (rather than the Fourteenth Amendment) is the limitation on the
federal forum's exercise of personal jurisdiction. The minimum-contacts test in such
circumstances looks to contacts with the entire United States rather than with the forum state.
*S.E.C. v. Straub*, 921 F. Supp. 2d 244, 252–53 (S.D.N.Y. 2013).

1.    **This Court lacks general jurisdiction over Ms. Zheng and Albert Chen.**

Plaintiffs do not (and cannot) contend that this Court has general jurisdiction over Ms. Zheng and Albert Chen, both of whom are residents of China. Compl. ¶¶ 22–23. *See, e.g.*, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (individual is subject to general jurisdiction in place of domicile); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 134 (S.D.N.Y. 2021) ("A Court has general personal jurisdiction over a defendant where the individual is domiciled.").

2.    **Subjecting Ms. Zheng and Albert Chen to suit in this Court would be unreasonable.**

Therefore, plaintiffs must show that this Court may exercise specific jurisdiction over Ms. Zheng and Albert Chen. But, even "if a Court finds that the plaintiff has alleged that defendant has minimum contacts with the forum sufficient to establish personal jurisdiction, the Court then must determine whether it is 'reasonable' to assert jurisdiction." *Aegean Marine*, 529 F. Supp. 3d at 135. Here, the assertion of jurisdiction over Ms. Zheng and Albert Chen would be unreasonable.

In *Asahi Metal Industry Co. v. Superior Court*, the Supreme Court explained that "the determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors." 480 U.S. 102, 113 (1987). These factors include "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *In re Banco Bradesco S.A. Secs. Litig.*, 277 F. Supp. 3d 600, 643 (S.D.N.Y. 2017) (citing *Asahi*, 480 U.S. at 113–14). All these factors point in favor of declining to exercise jurisdiction here.

For a start, as the Supreme Court has noted, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115; *see also, e.g.*, *U.S. S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) (applying *Asahi*).  That places a heavy thumb on the scale against jurisdiction here.  *See also Daimler*, 571 U.S. at 141 (noting that an "uninhibited approach to personal jurisdiction" creates "risks to international comity").  It is unquestioned that exercising jurisdiction in this case will create a severe burden for Ms. Zheng and Albert Chen, who live in China.  *See, e.g.*, *Sharef*, 924 F. Supp. 2d at 548 (declining to exercise jurisdiction over German citizen in securities suit in New York); *In re CIL Ltd.*, 582 B.R. 46, 79–80 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) (declining to exercise jurisdiction over U.K. resident in New York); and *City of Monroe Emps.' Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 665–66 (6th Cir. 2005) (declining to exercise jurisdiction over Japanese resident in securities suit in Tennessee).  As in these cases, defendants' "lack of geographic ties to the United States, . . . and the forum's diminished interest in adjudicating the matter, all weigh against personal jurisdiction."  *Sharef*, 924 F. Supp. 2d at 548.

The interests of the United States are slight in this case.  Before this lawsuit was filed, litigation relating to the Cellenkos transaction, and among Global Cord Blood, Blue Ocean, and their affiliates, had been filed in several other jurisdictions.  These cases include (1) a lawsuit in the British Virgin Islands filed in 2022, *see* Compl. ¶ 110; (2) a lawsuit in the Cayman Islands filed in 2022, *see id.* ¶ 88; (3) a lawsuit in Hong Kong filed in 2022, *see id.* ¶ 115; and (4) the derivative lawsuit filed in New York Supreme Court in 2024, *see supra*, p. 3.  This is therefore *not* a case where, if the court declines to exercise jurisdiction, there will be no forum to address the alleged wrongdoing—and this Court's interest in hearing this lawsuit is accordingly far less.  *See,*

*e.g.*, *Sharef*, 924 F. Supp. 2d at 548–59 (declining to exercise jurisdiction where "the SEC and the Department of Justice have already obtained comprehensive remedies against [the individual's employer] and Germany has resolved an action against [the individual]"); *cf. Bridgestone*, 399 F.3d at 666 (declining to exercise jurisdiction where plaintiff was still able to obtain full relief).

This conclusion is reinforced by the unusual nature of this particular suit. Securities fraud suits must be brought within "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). This suit came one year, 11 months and three weeks after the announcement of the Cellenkos transaction. Moreover, it was filed by the same plaintiffs who purported to be suing on the company's behalf in the state derivative suit—an obvious conflict of interest. *See, e.g.*, *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005) ("Any individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest."). And the gist of the complaint is identical. It is impossible to avoid the conclusion that this suit was brought by plaintiffs as a backup in case their state derivative suit was dismissed.

For these same reasons, the plaintiffs have little "interest in obtaining convenient and effective relief" in this action. *Cf. Banco Bradesco*, 277 F. Supp. 3d at 643. For one thing, the Complaint makes clear that most of the evidence and most of the witnesses are not located in the United States. *See Paulo v. Agence France-Presse*, No. 1:21-cv-11209 (JLR) (SLC), 2023 WL 2707201, at *13 (S.D.N.Y. Mar. 30, 2023) (finding that "where evidence and witnesses [were] located" in Portugal, "this factor weighs heavily in favor of finding personal jurisdiction unreasonable"). Moreover, if the plaintiffs' first-filed action, in state court, is successful, the *company* will receive all the relief that the plaintiffs could request. Suing the company and defendants here will hamper that. *See, e.g.*, *Vieira v. Korda*, No. 2:17-cv-160 (JMC), 2018 WL

2122825, at *13 (D. Vt. May 8, 2018) (declining to exercise jurisdiction where it would interfere with relief sought elsewhere).

The final two *Asahi* factors—"the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies"—also weigh in favor of declining to exercise jurisdiction here. Here, these factors require "consider[ing] the procedural and substantive policies of other *nations*." *Asahi*, 480 U.S. at 115 (emphasis in original). On the facts alleged in plaintiffs' complaint, this case seems certain to implicate procedural and substantive policies of nations including China and the Cayman Islands, including their jurisdictional laws.

### 3.    Proper service of process is a prerequisite for personal jurisdiction.

In addition, for a court to exercise personal jurisdiction lawfully, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Waldman*, 835 F.3d at 327 (quoting *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)). But service on Ms. Zheng and Albert Chen was untimely and therefore improper. *Supra*, pp. 5–14. This is a further reason why personal jurisdiction is lacking here, and is sufficient to warrant dismissal. *See, e.g.*, *Fantozzi*, 343 F.R.D. at 26 ("[I]nsufficient service can subject a complaint to dismissal under both [Rules 12(b)(5) and 12(b)(2).]").

### CONCLUSION

For the reasons stated above, the Court should dismiss this action as to defendants Ms. Zheng and Albert Chen.

Dated: January 31, 2025
New York, New York

**JONES DAY**

By */s/ Nidhi (Nina) Yadava*
Nidhi (Nina) Yadava
Jacob Miller
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
nyadava@jonesday.com
jakemiller@jonesday.com

*Attorneys for Defendants Ting (Tina) Zheng
and Bing Chuen (Albert) Chen*