**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | Case No. 1:24-cv-03071-PKC |

**DEFENDANT GOLDEN MEDITECH HOLDINGS LIMITED'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**THE AMENDED CLASS ACTION COMPLAINT**</u>

**KOBRE & KIM LLP**

Jay Y. Mandel
Steven W. Perlstein
Robin J. Baik (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
jay.mandel@kobrekim.com
steven.perlstein@kobrekim.com
robin.baik@kobrekim.com

*Attorneys for Defendant Golden
Meditech Holdings Limited*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 1

      A.    Parties and Procedural History.................................................................. 1

      B.    The Proposed Cellenkos Transaction and the Alleged Transfers ......................... 3

      C.    Allegations Against Golden Meditech.................................................................. 4

ARGUMENT.......................................................................................................................... 5

I.      Plaintiffs Failed to Timely Serve Golden Meditech ............................................. 5

II.     The Amended Complaint Is Untimely.................................................................. 7

III.    The Court Does Not Have Personal Jurisdiction Over Golden Meditech .......................... 8

      A.    Golden Meditech Has Insufficient Contacts with The United States ..................... 9

      B.    Exercising Personal Jurisdiction Over Golden Meditech Would Be
           Unreasonable.............................................................................................. 12

      C.    Plaintiffs' Alter-Ego Allegations Do Not Cure the Lack of A Jurisdictional
           Nexus .......................................................................................................... 12

IV.    Plaintiffs' Section 10(b) Claim Against Golden Meditech Fails..................................... 14

      A.    Plaintiffs Fail To Allege A Purported Scheme With The Requisite
           Particularity................................................................................................ 14

      B.    Plaintiffs Fail To Allege That The Purported Scheme Was "In Connection
           With" The Purchase Or Sale Of A Security........................................................ 17

      C.    Plaintiffs Fail To Plead A Strong Inference Of Scienter ..................................... 19

      D.    Plaintiffs Fail To Plead Reliance .......................................................................... 20

      E.    Plaintiffs Fail To Plead Loss Causation............................................................... 22

V.     Plaintiffs' Control Person Claim Against Golden Meditech Fails.................................... 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995) ............................................................................................ 17

*Asahi Metal Indusry Co. v. Superior Court of Calfornia, Solano County*,
480 U.S. 102 (1987) ...................................................................................................... 12

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ............................................................................................ 24

*Buhrke Family Revocable Trust v. U.S. Bancorp*,
726 F. Supp. 3d 315 (S.D.N.Y. 2024) ........................................................................... 15

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) ........................................................................................... 22

*Cassano v. Altshuler*,
186 F. Supp. 3d 318 (S.D.N.Y. 2016) .......................................................................... 6, 7

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ........................................................................................... 20

*Essilor International SAS v. J.P. Morgan Chase Bank, N.A.*,
650 F. Supp. 3d 62 (S.D.N.Y. 2023) ............................................................................... 8

*Ferreira v. Carranza*,
2022 WL 34610 (E.D.N.Y. Jan. 4, 2022) ........................................................................ 7

*Frasca v. United States*,
921 F.2d 450 (2d Cir. 1990) ......................................................................................... 7, 8

*Gucci America, Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) ............................................................................................. 9

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ........................................................................ 9, 10

*In re Alstom SA Securities Litigation*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ....................................................................... 24, 25

*In re Banco Bradesco, S.A. Securities Litigation*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ............................................................................. 25

*In re Braskem S.A. Securities Litigation*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017) ............................................................ 9, 10, 11, 24

*In re CarLotz, Inc. Securities Litigation*,
2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024) ........................................................... 15, 16

*In re EHang Holdings Ltd. Securties Litigation*,
646 F. Supp. 3d 443 (S.D.N.Y. 2022) ............................................................................... 8

iii

*In re Mindbody, Inc. Securities Litigation*,
    489 F. Supp. 3d 188 (S.D.N.Y. 2020).................................................................. 16

*In re Omnicom Grp., Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)............................................................................ 22, 23

*In re Parmalat Securities Litigation*,
    376 F. Supp. 2d 449 (S.D.N.Y. 2005)................................................................ 11

*In re Platinum & Palladium Antitrust Litigation*,
    61 F.4th 242 (2d Cir. 2023) .............................................................................. 13

*In re Refco, Inc. Securities Litigation*,
    609 F. Supp. 2d 304 (S.D.N.Y. 2009)................................................................ 21

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................ 21

*In re Veon Ltd. Securities Litigation*,
    2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)................................................... 6, 7

*Janbay v. Canadian Solar, Inc.*,
    2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ................................................. 23, 25

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)............................................................................ 19, 20

*Lavi v. MUFG Bank*,
    2024 WL 3924710 (S.D.N.Y. Aug. 23, 2024)...................................................... 8

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)........................................................................ 22, 23, 24

*Leykin v. AT&T Corp.*,
    423 F. Supp. 2d 229 (S.D.N.Y. 2006).......................................................... 17, 18, 19

*Long Side Ventures LLC v. Hempacco Co.*,
    2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023)..................................................... 13

*Lorenzo v. SEC*,
    587 U.S. 71 (2019)........................................................................................... 16

*Maso Capital Investments Ltd. v. E-House (China) Holdings Ltd.*,
    2024 WL 2890968 (2d Cir. June 10, 2024) ....................................................... 16

*Menaldi v. Och-Ziff Capital Management Group LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017).......................................................... 18, 21

*Metropolitan Life Insurance Co. v. Roberston-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)................................................................................ 12

*Miami Products & Chemical Co. v. Olin Corp.*,
    449 F. Supp. 3d 136 (W.D.N.Y. 2020) ............................................................ 13

*Milestone Shipping, S.A. v. Estech Trading LLC*,
    764 F. Supp. 2d 632 (S.D.N.Y. 2011)............................................................... 13

*Mutual Shares Corp. v. Genesco, Inc.*,
  384 F.2d 540 (2d Cir. 1967)..................................................................................... 17

*Pacific Investment Management Co. v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010).............................................................................. 14, 22

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ................................................................ 19, 20

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...................................................................... 14, 15, 17, 18

*Pross v. Katz*,
  784 F.2d 455 (2d Cir. 1986)..................................................................................... 17

*Rex & Roberta Ling Living Trust u/a December 6, 1990 v. B Communications Ltd.*,
  2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019) ........................................................... 10

*SEC v. Kelly*,
  817 F. Supp. 2d 340 (S.D.N.Y. 2011)....................................................................... 16

*SEC v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013)....................................................................... 12

*SEC v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ................................................................................. 16, 17

*SEC v. Zandford*,
  535 U.S. 813 (2002).................................................................................................. 19

*Shaw v. Rolex Watch U.S.A., Inc.*,
  745 F. Supp. 982 (S.D.N.Y. 1990).............................................................................. 7

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012)...................................................................... 6, 7

*Slayton v. American Express Co.*,
  604 F.3d 758 (2d Cir. 2010)..................................................................................... 24

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)....................................................................................... 20, 21, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................. 19

*USHA (India), Ltd. v. Honeywell International, Inc.*,
  421 F.3d 129 (2d Cir. 2005)....................................................................................... 5

*Vaher v. Town of Orangetown, New York*,
  916 F. Supp. 2d 404 (S.D.N.Y. 2013)......................................................................... 7

*Zapata v. City of New York*,
  502 F.3d 192 (2d Cir. 2007)................................................................................ 6, 7, 8

**Statutes**

28 U.S.C. § 1658(b) ................................................................................................................ 7

Private Securities Litigation Reform Act of 1995 ..................................................................... 1, 14

**Rules**

Federal Rules of Civil Procedure 4(m) .................................................................................. 5, 6, 7

Federal Rules of Civil Procedure 9(b) .................................................................................... 1, 14

Federal Rules of Civil Procedure 12(b)(2) ................................................................................ 1, 8

Federal Rules of Civil Procedure 12(b)(5) ................................................................................... 1

Federal Rules of Civil Procedure 12(b)(6) ................................................................................... 1

Defendant Golden Meditech Holdings Limited ("Golden Meditech") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Class Action Complaint, ECF No. 60 ("Amended Complaint" or "AC"), pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2), 12(b)(5), and 12(b)(6), as well as the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Lead Plaintiff Alessandro Somansino and named plaintiff Mark Lewko (together, "Plaintiffs") filed an untimely and legally defective Amended Complaint against Golden Meditech. The 52-page Amended Complaint alleges a complex scheme to cover up a purported diversion of hundreds of millions of dollars from Defendant Global Cord Blood Corporation ("GCBC"). But as to Golden Meditech, a foreign corporation with no presence or meaningful ties to the United States, Plaintiffs fail to allege any facts to establish that this Court has personal jurisdiction over it or any facts to show what Golden Meditech supposedly did to participate in or aid and abet the scheme in violation of federal securities law. Instead, Plaintiffs rely on a series of vague allegations, improper group pleading, and a conclusory alter ego theme. Reflecting the origin of this Action as a mere backstop for the New York state court action arising out of the same facts, Plaintiffs made no effort to serve Golden Meditech until after the Amended Complaint became time-barred. The Court should therefore dismiss the Action as to Golden Meditech.

## FACTUAL BACKGROUND

### A. Parties and Procedural History[1]

GCBC is incorporated in the Cayman Islands and operates primarily in Hong Kong and Mainland China. AC ¶ 17. Among other things, GCBC processes and stores umbilical cord blood

---

[1]    Golden Meditech disputes many of the allegations in the Amended Complaint and accepts them as true only for the purposes of this Motion.

for potential use in medical treatments. *Id.* Its shares were listed and traded on the NYSE during the period from June 18, 2019 through May 9, 2022 (the "Class Period"). *Id.* at ¶¶ 1, 17. Plaintiffs, who allegedly traded GCBC stock during the Class Period, brought this Action against GCBC and other individual and corporate defendants, including Golden Meditech. *Id.* at ¶¶ 15-16.

Golden Meditech is incorporated in the Cayman Islands and operates primarily in Hong Kong and Mainland China. *Id.* at ¶ 18. Golden Meditech was the largest shareholder of GCBC until January 31, 2018, when it sold all of its 65% equity interest in the company to Blue Ocean Structure Investment Company Ltd ("Blue Ocean"). *Id.* at ¶¶ 36, 37, 39.

MW Gestion, a purported GCBC shareholder, filed this Action on April 22, 2024. ECF No. 1. Nearly nine months earlier, MW Gestion had filed a purported derivative action on behalf of GCBC in New York State court (the "Derivative Action"), which was based on similar factual allegations as those being advanced in this Action, and named some of the same defendants, including Golden Meditech. *See* Complaint, *MW Gestion v. Cellenkos Inc.*, No. 653598/2023, NYSCEF No. 2 (Sup. Ct. N.Y. Cnty. July 25, 2023). MW Gestion did not attempt to serve Golden Meditech in this Action, despite serving Cayman-incorporated GCBC shortly after filing the complaint. *See* ECF No. 37.

On July 9, 2024, this Court issued an order appointing Lead Plaintiff and Lead Counsel. ECF No. 56. Plaintiffs filed the Amended Complaint on September 20, 2024. ECF No. 60. On October 3, 2024, two weeks after filing the Amended Complaint, Plaintiffs moved this Court for leave to serve certain Defendants (including Golden Meditech) by email to their respective U.S. counsel in the Derivative Action. ECF No. 81. This Court granted the motion on October 22, 2024. ECF No. 90. Lead Counsel served counsel for Golden Meditech by email the next day. ECF No. 91.

### B.  The Proposed Cellenkos Transaction and the Alleged Transfers

Plaintiffs assert two causes of action against Golden Meditech: (i) scheme liability under Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c), and (ii) control person liability under Section 20(a) of the Exchange Act.  Plaintiffs allege, on the one hand, that GCBC's proposed acquisition of a biotechnology company was overvalued and had not received requisite corporate approval; and, on the other hand, that certain Defendants had misappropriated funds from GCBC from 2015 through 2022.  AC ¶¶ 4-5.  Plaintiffs claim that the former was designed as a "cover up" for the latter.  *Id.* at ¶ 7.

*The Proposed Cellenkos Transaction.*  Plaintiffs allege that on April 29, 2022, GCBC announced that it had entered into a series of transactions to acquire Cellenkos, Inc. ("Cellenkos"), a Texas-based biotechnology company (the "Cellenkos Transaction").  *Id.* at ¶ 63.  As part of the Cellenkos Transaction, GCBC entered into a series of Stock Purchase Agreements ("SPAs") with shareholders of Cellenkos (one of which was a purported subsidiary of Golden Meditech) to acquire approximately 95% of Cellenkos's outstanding shares.  *Id.*  GCBC also entered into a Framework Agreement with another purported Golden Meditech subsidiary to acquire a license to market one of Cellenkos's products in Asia and certain laboratory assets.  *Id.* at ¶¶ 63-64.  Plaintiffs allege no other connections between Golden Meditech and the Cellenkos Transaction.

Several days later, on May 5, 2022, GCBC's controlling shareholder (Blue Ocean) filed a Winding Up Petition in the Grand Court of the Cayman Islands to challenge the proposed Cellenkos Transaction.  *Id.* at ¶ 69.  The Cayman court halted the transaction and appointed Joint Provisional Liquidators to take control over GCBC.  *Id.* at ¶¶ 69, 83.  As a result, the Cellenkos Transaction was never completed.  *Id.* at ¶ 69.

*The Alleged Transfers.*  Plaintiffs allege the Cellenkos Transaction was designed to "cover up" transfers from GCBC by Defendants from 2015 through 2022.  *Id.* at ¶¶ 7, 54.  Plaintiffs do

3

not, however, describe the circumstances surrounding these transfers, why they were improper, or that Golden Meditech received any unlawful payments.  Rather, Plaintiffs allege that another entity received most of the payments and other unnamed "entities related to" Golden Meditech purportedly received some of the allegedly misappropriated funds.  *See, e.g.*, *id.* at ¶¶ 55, 57, 88.  As to Golden Meditech, Plaintiffs only allege that it received "US$9.9 million" of "suspicious" payments, without alleging any reason why these payments were suspicious.  *Id.* at ¶ 60.

### C.  Allegations Against Golden Meditech

Most telling is what Plaintiffs' 189-paragraph Amended Complaint does *not* include: any specific allegation implicating Golden Meditech in any purportedly fraudulent conduct.  Plaintiffs group plead or reference non-parties to support the proposition that Golden Meditech participated in the purported scheme, but with respect to Golden Meditech specifically, Plaintiffs allege *only* the following:

- Golden Meditech is a Cayman Islands corporation with its headquarters in Hong Kong.  It is *not* alleged to have any offices or employees in the United States and is *not* alleged to have conducted any business in the United States.  *See id.* at ¶ 18.

- Golden Meditech was previously listed on the Hong Kong stock exchange and eventually taken private.  *Id.* at ¶¶ 28-35.

- The Cellenkos Transaction was meant to "provide a pretext for GCBC to *supposedly* transfer $664 million to [Golden Meditech] and Subsidiaries . . ."  *Id.* at ¶ 7.[2]

- "*Prior to the Class Period* Golden Meditech was the controlling shareholder of GCBC."  Golden Meditech was GCBC's largest shareholder up until 2018, when it sold its shares to Blue Ocean.  GCBC and Golden Meditech "share office space, telephone numbers and personnel."  *Id.* at ¶¶ 18, 38, 101.

- "During the Class Period Golden Meditech was the controlling shareholder of Cellenkos." *Id.* at ¶ 19.

- "The 2019/20 annual report of Golden Meditech *dated June 30, 2020* states that 'management determined that the Group has *significant influence* over Cellenkos,

---

2        Throughout this Memorandum, emphasis is added unless otherwise noted.

including participation in its financial and operating policy decisions.'" *Id.* at ¶ 53.

- The JPLs noted "additional suspicious transactions between GCBC and Golden Meditech," without explaining what made these transactions suspicious, but stating that "there has been a total of US$9.9 million of payments made by cheques authorised by Albert Chen to [Golden Meditech]." The JPLs "queried these payments with [Golden Meditech] and received no response to date." *Id.* at ¶ 60.

- Golden Meditech controlled or was the alter ego of GCBC, Cellenkos, Golden Meditech subsidiaries, and other individuals, but allege *no* support for these allegations. *See id.* at ¶¶ 65-68, 126.

- Golden Meditech remained a "related party" to GCBC after selling its ownership interest because one GCBC officer allegedly "was an immediate family member of" another Defendant. *Id.* at ¶¶ 137, 145.

Thus, stripped of claims containing their vague references to *other* individuals or entities, Plaintiffs allege that Golden Meditech is a foreign corporation that has no employees and conducts no business in the United States, that it has subsidiaries, has owned stock in other entities, and received a small amount of funds overseas from another company—without explaining how any of these allegations relate to any purported scheme.

## **ARGUMENT**

## I.    **Plaintiffs Failed to Timely Serve Golden Meditech**

This Action must be dismissed as to Golden Meditech for failure to timely serve. Plaintiffs made no attempt to serve Golden Meditech "within 90 days after the complaint [was] filed" and never requested an extension. Fed. R. Civ. P. 4(m).[3] Moreover, Plaintiffs made no showing of good cause, nor do they merit a discretionary extension. Rule 4(m) requires a court to "extend the time for service for an appropriate period" if "plaintiff shows good cause for the failure." *Id.* Good cause is available "only in exceptional circumstances, where the insufficiency of service results

---

[3]    The foreign exception to Rule 4(m) does not apply because Plaintiffs served Golden Meditech in the U.S. *See* ECF No. 82; *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005) (no foreign exception if "plaintiff did not attempt to serve the defendant in the foreign country").

from circumstances beyond the plaintiff's control." *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at \*8-9 (S.D.N.Y. Aug. 30, 2018);[4] *see also Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (considering "(i) whether the plaintiff has moved under Rule 6(b) for an enlargement of time and (ii) the prejudice to the defendants that would result from an extension"). Absent good cause, "district courts may exercise their discretion to grant extensions under Rule 4(m)." *Zapata v. City of New York*, 502 F.3d 192, 193 (2d Cir. 2007). However, "[n]either actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with Rule 4(m), unless plaintiff has diligently attempted to complete service." *In re Veon*, 2018 WL 4168958, at \*10.

Plaintiffs meet none of these criteria. Plaintiffs made no effort to serve the original complaint during the 90-day period, never moved for an enlargement of time under Rule 6(b), and provided no explanation for this failure. Plaintiffs' first and only outreach to Golden Meditech regarding service was via an email to its U.S. counsel on July 31, 2024—after the 90-day period had expired and more than three weeks after Lead Plaintiff and Lead Counsel had been appointed. *See* ECF No. 56; ECF No. 87 at 2. Plaintiffs made no further efforts until **after** they filed the Amended Complaint, which itself was **nearly two months after** the 90-day period had expired. Rather than attempting to serve Golden Meditech, Plaintiffs filed a motion for alternative service, arguing that serving Golden Meditech in the Cayman Islands would be inefficient and would incur expenses. *See* ECF No. 82 at 6, 11 (estimate of less than US $2,000 for expedited service). Plaintiffs' perceived inefficiency and burden of minor costs cannot replace their obligation to exercise diligence and do not excuse their failure to timely serve Golden Meditech. *See Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 607 (S.D.N.Y. 2012) (amended complaint "does not restart the

---

[4]    Internal citations, quotations, and alterations are omitted unless otherwise noted.

. . . period for service under Rule 4(m)"); *Shaw v. Rolex Watch U.S.A., Inc.*, 745 F. Supp. 982, 987 (S.D.N.Y. 1990) ("The fact that service of process may be difficult in no way acts as 'good cause' for failure to serve."). That Plaintiffs served GCBC in the Cayman Islands (ECF No. 82 at 3) shows Plaintiffs simply chose not to serve Golden Meditech.

Thus, while the Court granted their motion for alternative service, Plaintiffs' efforts were too little, too late to either demonstrate good cause under Rule 4(m) or to justify a discretionary extension. *See Zapata*, 502 F.3d at 194, 198-99 (affirming dismissal where plaintiff completed service four days after the service period expired and 84 days after the limitations period had run because the plaintiff had "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and ha[d] advanced no cognizable excuse for the delay."); *Ferreira v. Carranza*, 2022 WL 34610, at *3 (E.D.N.Y. Jan. 4, 2022) (no discretionary extension where statute of limitations had expired); *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 420-22 (S.D.N.Y. 2013) (denying discretionary extension, including because extending service period beyond limitations period "imposes a corresponding prejudice on defendants"); *Cassano*, 186 F. Supp. 3d at 323 (collecting cases).

## II.      The Amended Complaint Is Untimely

The Amended Complaint must also be dismissed because it was filed after the limitations period for Plaintiffs' claims had run. Securities fraud claims must be brought within "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). Plaintiffs' failure to serve the original complaint on Golden Meditech means that the filing of the original complaint in April 2024 did not toll the two-year statute of limitations for their claims. *See In re Veon*, 2018 WL 4168958, at *11 ("If service is not complete by the end of the [90-day period under Rule 4(m)], however, the governing statute of limitations again becomes applicable." (quoting *Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990))); *see also Zapata*, 502 F.3d at 197 (affirming

dismissal with prejudice where "the district court weighed the impact that a dismissal for [untimely service] would have on the parties").

In the Amended Complaint, Plaintiffs argue that "Defendants' scheme and misleading statements and omissions began to come to light" on April 29, 2022. AC ¶ 79.[5] According to Plaintiffs, then, the original complaint, filed on April 24, 2022, would have been (timely) filed at the eleventh hour. However, the filing of the original complaint did not toll the statute of limitations because Plaintiffs never served it on Golden Meditech. *See Zapata*, 502 F.3d at 194 n.4; *Frasca*, 921 F.2d at 451 (affirming dismissal because mere filing of pleading did not toll statute of limitations). Accordingly, regardless of whether Plaintiffs are effectively entitled to a retroactive extension of their service period to cure the untimely service (*see supra*, Section I), the Amended Complaint filed on September 20, 2022 is time-barred.

### III. The Court Does Not Have Personal Jurisdiction Over Golden Meditech

"To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of making a prima facie showing that personal jurisdiction over the defendant exists." *In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 454 (S.D.N.Y. 2022). To establish specific jurisdiction,[6] Plaintiffs must show that (1) Golden Meditech "has sufficient minimum contacts with the forum," and (2) "the exercise of personal jurisdiction

---

[5] As discussed *infra*, Section IV.E, there were no corrective disclosures on either April 29, 2022 or May 5, 2022. Sensing this fatal timing issue, Plaintiffs' pre-motion letter pivots to September 22, 2022 as a potential discovery date, which would conveniently allow the Amended Complaint to have been timely filed (again, at the eleventh hour). ECF No. 112 at 13. But this cannot be reconciled with Plaintiffs' allegations that corrective disclosures took place on April 29, 2022 and May 5, 2022. Plaintiffs are bound by the four corners of their Amended Complaint and may not amend their complaint through briefing. *See Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F. Supp. 3d 62, 86 (S.D.N.Y. 2023).

[6] Plaintiffs do not and cannot claim general jurisdiction over Golden Meditech. AC ¶ 18; *Lavi v. MUFG Bank*, 2024 WL 3924710, at *3 (S.D.N.Y. Aug. 23, 2024) ("In general, a corporation is at home only where it is incorporated or maintains its principal place of business.").

comports with traditional notions of fair play and substantial justice (the 'reasonableness' inquiry)." *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 767 (S.D.N.Y. 2017). Plaintiffs fail on both counts.

### A. Golden Meditech Has Insufficient Contacts with The United States

To find minimum contacts, "the court must decide if the defendant has purposefully directed his activities at . . . the forum and the litigation . . . arises out of or relates to those activities." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (omissions in original). Courts "evaluate[] the quality and nature of the defendant's contacts with the forum" and "considers these contacts in totality, with the crucial question being whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that the defendant should reasonably anticipate being haled into court there." *In re Braskem*, 246 F. Supp. 3d at 767. Plaintiffs contend Golden Meditech has sufficient contacts with the U.S. through its purported "control" of GCBC and Cellenkos, as well as its purported participation in the alleged fraudulent scheme, but these conclusory (and often non-existent) allegations fail as a matter of law.

Plaintiffs' allegations regarding Golden Meditech's purported control of GCBC (a Cayman Islands corporation with its principal place of business in China) are insufficient to confer personal jurisdiction. *See In re Braskem*, 246 F. Supp. 3d at 769-70 (no jurisdiction over parent of foreign company with U.S.-listed ADRs where parent allegedly held majority stake, appointed significant number of board members, and had veto power over corporate actions, power to appoint its CEO and CFO, and "sole power to approve [issuer's] business plan"); *see also In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 137-38, 140, 142 (S.D.N.Y. 2021) (founder and executives of U.S.-listed issuer did not have minimum contacts with regard to scheme liability claim, including because conduct in connection with unconsummated acquisition was not

"expressly aimed … at the United States"); *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 2019 WL 1407453, at \*1-2, 7 (S.D.N.Y. Mar. 28, 2019) (no minimum contacts for foreign subsidiaries of U.S.-listed Israeli company in connection with purported scheme where individual allegedly caused company to purchase shares in one affiliate from another affiliate). Plaintiffs advance no specific allegations to support Golden Meditech's purported control of GCBC.  To the contrary, Plaintiffs allege that Golden Meditech **sold** its equity interest in GCBC to an unaffiliated buyer on January 31, 2018, prior to the Class Period.  AC ¶¶ 1, 39, 59.  Plaintiffs obfuscate by engaging in group pleading.  *See, e.g.*, AC ¶ 54 ("*Defendants* caused GCBC and its subsidiaries to make undisclosed transfers . . . including to Golden Meditech subsidiaries.").  But "group pleading is not permitted.  Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."  *See In re Aegean*, 529 F. Supp. 3d at 135.

The Amended Complaint's specific allegations regarding Golden Meditech only purport to show common control by Defendant Kam, and no corporate affiliation (other than the historical ownership prior to the Class Period).  *See* AC ¶¶ 41, 88, 126.  There is thus no connection between Golden Meditech and GCBC that could form the basis for personal jurisdiction over Golden Meditech.  Similarly, the Amended Complaint is devoid of allegation that Golden Meditech was responsible for or otherwise involved in any of GCBC's purported misstatements.  *See In re Braskem*, 246 F. Supp. 3d at 769-70 (no minimum contacts because of failure to "allege, concretely, that [the foreign company] played *any* role in making, proposing, editing or approving [issuer's] public filings in the United States").

Similarly, Plaintiffs fail to establish that Golden Meditech controlled Cellenkos.  Plaintiffs advance only three allegations regarding Golden Meditech's supposed control of Cellenkos: (1) Golden Meditech and Cellenkos purportedly shared a director; (2) one annual report of Golden

10

Meditech from June 30, 2020 refers to its "significant influence over Cellenkos, including participation in its financial and operating policy decisions"; and (3) for a portion of the Class Period, Golden Meditech purportedly owned a minority stake in Cellenkos.  AC ¶¶ 52-53.[7]  These allegations—individually and collectively—fall well short of establishing minimum contacts needed to support personal jurisdiction over a foreign company in the U.S.  *See In re Braskem*, 246 F. Supp. 3d at 769-70.  As discussed *infra*, Section V, allegations such as these are insufficient to establish "control" for purposes of liability under Section 20(a), let alone for purposes of personal jurisdiction—the latter of which is "made of sterner stuff than a mere allegation of control."  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 453-54 (S.D.N.Y. 2005) ("readily dispos[ing]" of the argument that status as a "controlling person" under Section 20(a) is sufficient to confer personal jurisdiction).

Nor can Plaintiffs establish sufficient minimum contacts through Golden Meditech's ties to the Cellenkos Transaction.  To be sure, Golden Meditech itself is not even alleged to have participated in the Cellenkos Transaction.  *See* AC ¶¶ 65-67.  Essentially, Plaintiffs attempt to establish personal jurisdiction based on their conclusory allegation that Golden Meditech participated in a scheme with *other entities* that have U.S. ties.  But such an attempt is nothing more than an unacceptable expansion of the reach of the U.S. securities laws.  As one court put it:

> Illegal corporate action almost always requires cover ups, which to be successful must be reflected in financial statements.  Thus, under the SEC's theory, *every* participant in illegal action taken by a foreign company subject to U.S. securities laws would be subject to the jurisdiction of U.S. courts no matter how attenuated their connection with the falsified financial statements.  This would be akin to a tort-like foreseeability requirement, which has long been held to be insufficient.

---

[7]     Plaintiffs allege, without support, that "[d]uring the Class Period Golden Meditech was the controlling shareholder of Cellenkos."  AC ¶ 19.  The Court should not credit this conclusory allegation, which is contradicted by other allegations in the Amended Complaint.  *See id.* at ¶¶ 53 (Golden Meditech, **together** with a "strategic investor collectively own 51% of the voting stock of the new company"), 97 ("by April 2022 Golden Meditech owned a 30.5% interest in Cellenkos").

11

*SEC v. Sharef*, 924 F. Supp. 2d 539, 547 (S.D.N.Y. 2013) (emphasis in original).

**B. Exercising Personal Jurisdiction Over Golden Meditech Would Be Unreasonable**

Even if Golden Meditech had sufficient minimum contacts with the U.S. (which it does not), exercising jurisdiction over Golden Meditech in this case would not be reasonable. In determining whether personal jurisdiction is "reasonable under the circumstances of the particular case," courts consider the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Roberston-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). As to foreign defendants, "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international context." *Sharef*, 924 F. Supp. 2d at 548 (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987)).

Plaintiffs seek to exercise jurisdiction over a Cayman company whose principal place of business is in China, relating to a purported scheme to divert funds that supposedly took place outside of the U.S. The only alleged ties connecting Golden Meditech to the U.S. are that (1) its ***former*** subsidiary (GCBC) is a U.S. issuer, and (2) a transaction that ***never closed*** involved a U.S. company. *See Sharef*, 924 F. Supp. 2d at 547 (jurisdiction over foreign defendant was unreasonable because "the exercise of jurisdiction over foreign defendants based on the effect of their conduct on SEC filings is in need of a limiting principle").

**C. Plaintiffs' Alter-Ego Allegations Do Not Cure the Lack of A Jurisdictional Nexus**

In an attempt to find a back door into jurisdiction over Golden Meditech, Plaintiffs allege that "during the Class Period Defendant Kam controlled GCBC, Golden Meditech, their respective

12

subsidiaries, and Cellenkos, and each of those companies acted as alter egos of Kam and Golden Meditech."  AC ¶ 126.  Plaintiffs then recite a laundry-list of conclusory allegations that parrot many of the factors that courts typically consider for alter-ego jurisdiction.  *Id.*

"The crux of the alter-ego theory of personal jurisdiction is that courts are to look for two entities acting as one."  *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274-75 (2d Cir. 2023), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681 (2024).  While courts consider multiple factors, "[n]o single factor is determinative, but the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests as opposed to furthering the corporate ends."  *Long Side Ventures LLC v. Hempacco Co.*, 2023 WL 6386888, at *7 (S.D.N.Y. Sept. 29, 2023).[8]  Here, Plaintiffs repackage a selection of their deficient "control" allegations as alter-ego allegations, but the same deficiencies discussed *supra* with regard to minimum contacts foreclose alter-ego jurisdiction on this basis.  Plaintiffs' remaining alter-ego allegations are otherwise entirely conclusory.  *See id.* ("Stating purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability."); *see also In re Platinum*, 61 F.4th at 276 (finding no alter-ego jurisdiction where defendant should not be treated "differently from any corporation operated by its owner").

Plaintiffs' alter-ego allegations thus fall well short of showing that either GCBC or Cellenkos "is merely a shell" for Golden Meditech.  *Id.*[9]

---

[8]    The Amended Complaint does not state which law should apply to any alter-ego claims, and the question of which law to apply is an unsettled question in the Second Circuit.  *See Mia. Prods. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 183 (W.D.N.Y. 2020).  Regardless, Plaintiffs' alter-ego theory fails "even pursuant to th[e] more relaxed standard utilized for jurisdictional purposes under New York and federal common law." *Id.* at 183-84.

[9]    To the extent Plaintiffs currently seek to obtain alter-ego findings for purposes of liability, this would be premature. *See Milestone Shipping, S.A. v. Estech Trading LLC*, 764 F. Supp. 2d 632, 636 (S.D.N.Y. 2011) ("The determination of alter-ego liability is a fact-intensive inquiry," and court could not make a determination "without a fuller record aided by proper discovery.").

13

## IV.    Plaintiffs' Section 10(b) Claim Against Golden Meditech Fails[10]

Plaintiffs' only claim for primary liability against Golden Meditech is for scheme liability, and their allegations are insufficient to plead this claim.  For a claim of scheme liability under Section 10(b) and Rule 10b-5(a) and (c), Plaintiffs must show "(1) that [Golden Meditech] committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance," and, (5) that "the deceptive or fraudulent scheme or activity must have occurred in connection with the purchase or sale of a security." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021).  Plaintiffs must also prove (6) loss causation.  *See Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010).  Scheme liability claims sound in fraud and are subject Rule 9(b)'s heightened standard, as well as to the PSLRA for scienter, so Plaintiffs "must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Danske Bank*, 11 F.4th at 105.

### A.  Plaintiffs Fail To Allege A Purported Scheme With The Requisite Particularity

Plaintiffs' scheme liability claim must be dismissed because they fail to include any particularized allegations about either (1) the purported scheme or (2) Golden Meditech's involvement in it.    Plaintiffs attempt to construct a "scheme" alleging that amorphous "Defendants" "caused GCBC and its subsidiaries to make undisclosed transfers of hundreds of millions of dollars to companies controlled by Defendant Kam, including to Golden Meditech subsidiaries" or entities related to it, and that these "Defendants" tried to "conceal" those transfers through the Cellenkos Transaction.  AC ¶¶ 54, 57, 62.

---

[10]    In advancing substantive arguments regarding Plaintiffs' claims under Sections 10(b) and 20(a), Golden Meditech expressly does not consent to either the propriety of Plaintiffs' service upon Golden Meditech or to this Court's jurisdiction over Golden Meditech.

Tellingly, however, Plaintiffs do *not* allege:

- The nature of any of the alleged transfers;

- Any facts as to why these transfers were fraudulent or otherwise out of the ordinary;

- Any action Golden Meditech took other than accepting a relatively small amount of funds, which Plaintiffs claim without support was "suspicious;" or

- Any Golden Meditech involvement in the Cellenkos Transaction.

Plaintiffs have therefore not advanced particularized allegations to show that the alleged transfers were fraudulent such that they constitute a scheme for purposes of Section 10(b). *See Danske Bank*, 11 F.4th at 105 (no scheme liability where plaintiffs failed to "articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it"); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 726 F. Supp. 3d 315, 363 (S.D.N.Y. 2024) (same).  Nor have Plaintiffs articulated with particularity any fraudulent conduct by Golden Meditech specifically. *See Danske Bank*, 11 F.4th at 105.  A transfer of funds is not an "inherently deceptive" act that can support a scheme liability claim, and Plaintiffs fail to explain why the purported transfers to Golden Meditech were fraudulent or otherwise out of the ordinary. *See In re CarLotz, Inc. Sec. Litig.*, 2024 WL 3924708, at *5 (S.D.N.Y. Aug. 23, 2024). And Plaintiffs do not allege Golden Meditech was involved in the Cellenkos Transaction at all; they instead point to the involvement of two purported Golden Meditech subsidiaries, which are not even named as defendants in this case.  AC ¶ 67.  But these conclusory allegations— individually or collectively—fall far short of demonstrating any deceptive or manipulative acts by Golden Meditech that may support finding Section 10(b) liability against it.

Unable to allege with particularity any purported scheme or Golden Meditech's involvement in such scheme, Plaintiffs are left only with GCBC's purported misstatements regarding its cash reserves. *See* AC ¶¶ 127-62.  Plaintiffs, however, cannot bind Golden Meditech

15

to scheme liability simply by pointing to GCBC's alleged misstatements.  *See In re CarLotz*, 2024 WL 3924708, at *4 ("Where the only fraudulent conduct that is alleged is the making of a false statement to the investing public, a defendant in a private civil action is either liable as a maker under Rule 10b-5(b) or is not liable to investors at all."); *Maso Cap. Inv. Ltd. v. E-House (China) Holdings Ltd.*, 2024 WL 2890968, at *5 n.5 (2d Cir. June 10, 2024) (dismissing scheme liability claim where complaint "[did] not clearly identify any deceptive acts distinct from the alleged (inactionable) misstatements and omissions").

When it comes to scheme liability claims arising from alleged misstatements, the Second Circuit has made clear that "an actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination."  *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022); *see also Lorenzo v. SEC*, 587 U.S. 71, 74 (2019) (holding that one who "disseminate[s] false or misleading statements to potential investors with the intent to defraud" can violate Rule 10b-5(a) and (c)).  "[C]ourts have prohibited plaintiffs from recasting their pleadings" to "repackage their misstatement claims as scheme liability claims."  *Rio Tinto*, 41 F.4th at 55; *see also In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020) ("Subsections (a) and (c) of Rule 10b-5 . . . cannot 'be used as a back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5.'" (citing *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011))).  The Second Circuit has also cautioned that "[e]xpanding the scope of scheme liability would . . . lower the bar for primary liability for securities fraud. *Rio Tinto*, 41 F.4th at 52.[11]  Plaintiffs do not allege *any* involvement by Golden

---

[11]    Reflecting the inescapable conclusion that this Action is, at bottom, a misstatement case rather than a scheme liability case, Plaintiffs' "Additional Scienter Allegations" focus exclusively on issuing or disseminating GCBC's statements.  *See* AC ¶¶ 163-64.

Meditech in any statements made by GCBC, let alone anything "*beyond* misstatements," *id.* at 49, so their scheme liability claims against Golden Meditech fail.

**B. Plaintiffs Fail To Allege That The Purported Scheme Was "In Connection With" The Purchase Or Sale Of A Security**

The Amended Complaint also falls short of establishing that Golden Meditech performed any act "in connection with the purchase or sale of any security." Section 10(b) does not allow plaintiffs to bring "[c]onduct that is merely incidental or tangentially related to the sale of securities" within the realm of federal securities law. *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 241 (S.D.N.Y. 2006), *aff'd,* 216 F. App'x 14 (2d Cir. 2007). Instead, the alleged fraud must be "integral to the purchase and sale of the securities in question" to be actionable. *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986). Plaintiffs cannot simply repackage claims of general corporate mismanagement or asset diversion as securities fraud claims. *See, e.g.*, *Danske Bank*, 11 F.4th at 96; *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). Such claims are properly brought, if at all, under state law. *See Mut. Shares Corp. v. Genesco, Inc.*, 384 F.2d 540, 546 (2d Cir. 1967) ("[T]he fraudulent activities . . . alleged are primarily corporate abuse and diversion, claims cognizable under state law[.]"). Indeed, the original plaintiffs of this Action did file the Derivative Action against essentially the same group of defendants, based on substantially the same facts, advancing state law claims. *See supra*, Section A.

Plaintiffs have not pleaded any act that Golden Meditech—rather than another individual or entity or "Defendants" writ large—took in connection with the purchase or sale of securities that Golden Meditech neither issued, sold, or traded in. In the entirety of the Amended Complaint, the only allegation against Golden Meditech itself that Plaintiffs even attempt to tie to the alleged "scheme" is its receipt of a small amount of funds, overseas, from GCBC, adopting a characterization of the transfers as "suspicious" but providing no basis for characterizing them as

17

such or explaining how Golden Meditech's receipt of them was in connection with the purchase or sale of a security. AC ¶ 60. Instead, Plaintiffs again try to shore up their failure to plead with particularity any fraudulent conduct that Golden Meditech performed by tying this isolated incident to the acts of *other* parties through control or alter-ego allegations that as explained *supra*, cannot fill the gap left by their otherwise scant allegations against Golden Meditech.

Plaintiffs strain federal securities law by trying to connect Golden Meditech's incidental, overseas receipt of these funds to the purchase or sale of a security simply by way of the fact that, after the funds were transferred, a U.S. issuer released public statements purportedly implicating them. *Cf. Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 518 (S.D.N.Y. 2017), (dismissing scheme liability based on bribery scheme because the case was "not about bribery—it [was] about [the issuer's] conduct in the aftermath to that bribery"). Unmoored from either an allegedly false or misleading statement Golden Meditech made about GCBC securities or any transaction in the relevant securities, these actions are at best incidental, rather than "integral to," any sale or purchase of GCBC securities. *Leykin*, 423 F. Supp. 2d at 241-42 (distinguishing prior scheme liability cases because "[i]n those cases, defendants either made materially false or misleading statements upon which investors relied in purchasing or selling securities, or actually traded in securities as part of the fraud"). Plaintiffs allege neither.

Without alleging any Golden Meditech action connected to GCBC's securities, Plaintiffs simply seek redress for corporate misconduct or asset diversion that has no connection to the sale or purchase of GCBC's securities. Section 10(b), however, is not a vehicle to remedy alleged corporate mismanagement, and therefore Plaintiffs' claims must be dismissed. *See Danske Bank*, 11 F.4th at 96 ("All told, the allegations do not move the claims outside the realm of corporate mismanagement and into the realm of securities fraud."); *Leykin*, 423 F. Supp. 2d at 241-42 ("[T]he

18

scheme alleged here involved corporate abuse, misconduct and diversion of assets, but no transactions in the relevant securities."); *see also SEC v. Zandford*, 535 U.S. 813, 820 (2002) ("[T]he [Exchange Act] must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b).").

### C.  Plaintiffs Fail To Plead A Strong Inference Of Scienter

To plead scienter in a Section 10(b) action, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007).  Plaintiffs can establish a strong inference of scienter "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).

Once again, Plaintiffs' failure to advance any particularized allegations as to Golden Meditech is fatal.  As discussed *supra*, Section IV.A, Plaintiffs plead virtually no allegations directly involving Golden Meditech in the purported scheme, only pointing to a relatively small amount in transfers that Plaintiffs characterize as "suspicious," without any explanation for why these payments were out of the ordinary.  Instead, Plaintiffs try to plead scienter as to Golden Meditech by improperly lumping it with various Defendants—and on occasion with purported Golden Meditech subsidiaries that have not even been named as defendants—without particularizing these allegations as to Golden Meditech.  *See, e.g.*, AC ¶¶ 5 ("*Defendants* devised a sham transaction for GCBC to acquire Cellenkos, Inc."), 163 ("As alleged herein, *Defendants* acted with scienter because *Defendants* . . . .").  Plaintiffs cannot, however, rely on group pleading to meet their burden of alleging with particularity that Golden Meditech specifically—rather than other parties—acted with scienter.  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of*

*Am. Sec., LLC*, 446 F. Supp. 2d 163, 187 (S.D.N.Y. 2006) ("Plaintiffs must state with particularity facts giving rise to a strong inference that *each defendant* acted with scienter.").

Moreover, Plaintiffs fail to plead any non-generalized motive with respect to Golden Meditech.  To satisfy the "motive and opportunity" inquiry, "Plaintiffs must allege that [defendant] benefitted in some concrete and personal way from the purported fraud.  Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute motive for purposes of this inquiry."  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Plaintiffs here advance no allegations relating to any purported motive on the part of Golden Meditech, except the generalized motive to obtain funds.

When a plaintiff fails to show motive, "the strength of the circumstantial allegations" of conscious behavior or recklessness "must be correspondingly greater."  *Id.* at 198-99.  A plaintiff must show that defendant engaged in conduct that "is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Kalnit*, 264 F.3d at 142.  Plaintiffs' non-particularized and circumstantial allegations regarding purported transfers from GCBC, most of which are wholly disconnected from Golden Meditech, fall well short of providing the requisite level of detail from which to infer scienter.

### D.  Plaintiffs Fail To Plead Reliance

Plaintiffs have also failed to plead they relied on any of Golden Meditech's allegedly deceptive acts when they traded in GCBC stock.  Indeed, Plaintiffs allege that they *did not know* about Golden Meditech's purported deceptive acts and so cannot now claim reliance on them.

Reliance "is an essential element of the § 10(b) private cause of action" that ensures a "'causal connection between a defendant's [acts] and a plaintiff's injury' exists."  *Stoneridge Inv.*

*Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 159-60 (2008).  To rely on a defendant's allegedly deceptive acts, plaintiffs must have known about them when making the relevant investment decisions.  *See id.*[12]  Plaintiffs cannot show reliance by pointing to a defendant's undisclosed acts that "did not make it 'necessary or evitable' that the false statement (upon which Plaintiffs relied) would be made." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 254 (S.D.N.Y. 2022); *see also Stoneridge*, 552 U.S. at 159-61 (upholding dismissal of scheme liability claims where "[n]o member of the investing public had knowledge, either actual or presumed, of [their] deceptive acts during the relevant times" and their actions did not make it "necessary or inevitable for" the company to issue misleading statements).

Here, the crux of Plaintiffs' allegations against Golden Meditech is that they *did not know* it had any involvement with GCBC during the Class Period.  Plaintiffs allege that Golden Meditech sold its equity interest in GCBC on January 31, 2018, and to their knowledge at the time, Golden Meditech was no longer associated with GCBC.  AC ¶¶ 39, 135, 143.  Since Plaintiffs were completely unaware of Golden Meditech's alleged actions (and, in fact, disclaimed knowledge of them), they could not have relied on them.  *In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 315 (S.D.N.Y. 2009) ("[A]llegations that a defendant committed a deceptive act, even one in furtherance of a scheme to defraud investors, are insufficient."), *aff'd sub nom. Pac. Inv. Mgmt. Co.*, 603 F.3d 144; *see also Menaldi*, 277 F. Supp. 3d at 518-19 (no scheme liability absent allegations that investors knew of or relied upon defendant's acts).  Furthermore, Plaintiffs'

---

[12]    There is a "rebuttable presumption of reliance" either (1) when "one with a duty to disclose" makes an "an omission of a material fact" to an "investor to whom the duty [is] owed"; or (2) "under the fraud-on-the-market doctrine." *Stoneridge*, 552 U.S. at 159. Neither presumption applies to Golden Meditech.  Golden Meditech did not owe GCBC investors any duty, and the fraud-on-the-market doctrine does not apply because Golden Meditech's alleged acts "were not communicated to the public" during the Class Period. *Id.* (declining to apply either presumption).

allegations that Golden Meditech allegedly participated in the scheme do not, without more, plead that Golden Meditech did anything that made it "necessary" or "inevitable" that GCBC would make the statements at issue. *See Stoneridge*, 552 U.S. at 159-60 (defendants' actions in setting up sham transactions did not make it necessary or inevitable that issuer would make the relevant misstatement); *Pac. Inv. Mgmt. Co.*, 603 F.3d at 160 (drafting of documents related to fraudulent transactions did not "ma[k]e it necessary or inevitable for [the issuer] to record the transactions as it did"). Accordingly, Plaintiffs have not pled reliance on Golden Meditech's allegedly deceptive acts.

### E. Plaintiffs Fail To Plead Loss Causation

To plead loss causation, Plaintiffs must show a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). Plaintiffs may make this showing "*either* by alleging (a) the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud, or (b) that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014). Where plaintiffs allege corrective disclosures in support of loss causation, "plaintiffs must plausibly allege a disclosure of the fraud by which 'the available public information regarding the company's financial condition [was] corrected." *Id.* at 233 (citing *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010)).[13]

In the Amended Complaint, Plaintiffs argue that corrective disclosures occurred on two dates: (1) April 29, 2022, when the Cellenkos Transaction was announced; and (2) May 5, 2022,

---

[13]    As to a "materialization of the risk" theory, Plaintiffs neither describe what risks were concealed nor "allege that any such risk materialized." *See Carpenters*, 750 F.3d at 233, n.7.

when the Cayman winding up petition was filed.  AC ¶¶ 79-82.  But Plaintiffs' own allegations contradict the claim that there were *any* corrective disclosures on these dates.

*April 29, 2022 announcement.*  Plaintiffs' first alleged corrective disclosure occurred on April 29, 2022, when GCBC announced the Cellenkos Transaction, which allegedly "shocked investors" and caused GCBC's stock price to drop on the next trading day.  *Id.* at ¶¶ 79-80.  But Plaintiffs do not explain how this announcement revealed *any* information regarding the purported scheme that they now rely on in their Amended Complaint.  *See Lentell*, 396 F.3d at 175 (no loss causation where plaintiffs did not allege that corrective disclosure regarding the falsity of analyst recommendations to buy or accumulate stock was "the cause of the *decline* in stock value that plaintiffs claim as their loss"); *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *14-15 (S.D.N.Y. Mar. 30, 2012) (no loss causation where purported corrective disclosures did not "reveal the sham sales upon which Plaintiffs base their fraud claim"); *see also In re Omnicom*, 597 F.3d at 511 (no loss causation where "none of these matters even purported to reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint").  To the contrary, by Plaintiffs' own allegations, the Cellenkos Transaction was an "integral part" of the alleged scheme, and its entire purpose was to *prevent* the market becoming aware of any purportedly fraudulent conduct.  Accordingly, the April 29, 2022 announcement does not and cannot constitute a corrective disclosure for purposes of showing loss causation.

*May 5, 2022 filing.*  Plaintiffs allege that Blue Ocean filed a Winding Up Petition in the Cayman Islands "seeking an order enjoining the Cellenkos transaction and additional investor protections."  AC ¶ 81.  The petition's purported thrust was to "reveal" the following information: (1) one member of GCBC's board received three days' notice prior to the transaction being "rushed through by management and publicly announced, with little or no Board deliberation," (2) the

23

consideration that GCBC agreed to pay for its stake in Cellenkos was high relative to Cellenkos's valuation in a fundraising round the prior year, and (3) GCBC's CFO proposed a meeting between Blue Ocean and GCBC to discuss the Cellenkos Transaction, where Mr. Kam would act as GCBC's representative.  *Id.*  As with the April 29, 2022 announcement of the Cellenkos Transaction, the Winding Up Petition did not "reveal" *anything* about the purported fraud and does not constitute a corrective disclosure.  *See Lentell*, 396 F.3d at 175.[14]

## V.     Plaintiffs' Control Person Claim Against Golden Meditech Fails

Section 20(a) plaintiffs "must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  Plaintiffs' claim based on Golden Meditech's purported control of GCBC and/or Cellenkos (AC ¶¶ 185, 187) fails, for at least three reasons.

First, Plaintiffs fail to adequately plead primary violations by either GCBC or Cellenkos, the absence of which is fatal.  *Slayton v. Am. Express Co.*, 604 F.3d 758, 778 (2d Cir. 2010).[15]

Second, Plaintiffs fail to plead that Golden Meditech controlled GCBC or Cellenkos for purposes of Section 20(a).  To plead "control over a primary violator, a plaintiff must allege that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  *In re Braskem*, 246 F. Supp. 3d at 771.  Defendant must also have "actual control over the *transaction* in question."  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005).

---

[14]     Separately, Plaintiffs do not even allege what time of day the Winding Up Petition was filed, so they fail to allege that any stock drop that same day occurred subsequent to the filing.

[15]     Among other things, Plaintiffs' failure to plead loss causation dooms their claims against all Defendants.

As discussed in greater detail *supra*, Section III.A, Plaintiffs fail to allege that Golden Meditech exercised the requisite control over GCBC or Cellenkos.  As to GCBC, Plaintiffs at best allege that GCBC and Golden Meditech are sister companies with no specific facts to show that Golden Meditech exercised control over GCBC.  *See In re Banco Bradesco, S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 669-70 (S.D.N.Y. 2017) (Section 20(a) claims fail in the absence of allegations of "actual, de facto, control").  As to Cellenkos, "[m]inority stock ownership is not enough to establish control person liability," and these and Plaintiffs' other allegations relating to the relationship between Golden Meditech and either GCBC or Cellenkos fall well short of pleading "actual control over the *transaction* in question."  *See In re Alstom*, 406 F. Supp. 2d at 487, 489.[16]

Third, Plaintiffs fail to allege culpable participation for the same reasons they fail to allege scienter as discussed *supra*, Section IV.C.  *See Janbay*, 2012 WL 1080306, at *17.

**<u>CONCLUSION</u>**

For the foregoing reasons, Golden Meditech respectfully requests that the Court dismiss the Amended Complaint as to Golden Meditech.

Dated: January 31, 2025
       New York, New York

**KOBRE & KIM LLP**

By: */s/ Jay Y. Mandel*
    Jay Y. Mandel
    Steven W. Perlstein
    Robin J. Baik (admitted *pro hac vice*)
    800 Third Avenue
    New York, NY 10022
    Tel: (212) 488-1200
    jay.mandel@kobrekim.com
    steven.perlstein@kobrekim.com
    robin.baik@kobrekim.com

    *Attorneys for Defendant Golden Meditech Holdings Limited*

---

[16]    Plaintiffs' alter-ego allegations are similarly unavailing.  *See supra*, Section III.C.