# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: GLOBAL CORD BLOOD CORP SECURITIES LITIGATION | Case No. 24-cv-3071 (PKC)<br><br>Hon. P. Kevin Castel |

## DEFENDANT CELLENKOS'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Michael J. Biles
KING & SPALDING, LLP
500 W 2nd Street, Suite 1800
Austin, TX 78701
Telephone: (512) 457-2051
Facsimile:  (512) 457 2100
Email: mbiles@kslaw.com

John T. Goodwin
KING & SPALDING, LLP
1185 Avenue of the Americas, 34th Floor
New York, NY
Telephone: (212) 556-2369
Facsimile:  (212) 556-2222
Email: jgoodwin@kslaw.com

Jordan A. Block (admitted *pro hac vice*)
KING & SPALDING, LLP
110 N. Wacker, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6330
Facsimile:  (312) 995-6330
Email: jblock@kslaw.com

Counsel for Defendant Cellenkos

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION & BACKGROUND ............................................................................1

II.  LEGAL STANDARD.............................................................................................3

III.  ARGUMENT.......................................................................................................3

    A.  Plaintiffs' Scheme Liability Claim Fails........................................................3

        1.  Plaintiffs Fail to Plead a Deceptive Act....................................................4

        2.  Plaintiffs Fail to Plead Reliance...............................................................8

        3.  Plaintiffs Fail to Plead a Strong Inference of Scienter............................8

        4.  Plaintiffs Fail to Plead Loss Causation ...................................................12

    B.  Plaintiffs' Suggestion that Cellenkos Aided and Abetted a Scheme Does
        Not Give Rise to Liability Under Section 10(b) ................................................14

    C.  Plaintiffs Fail to Allege Alter Ego Liability .......................................................17

IV.  CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................... 3

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)............................................................................................. 14, 15

*Chiarella v. United States*,
445 U.S. 222 (1980).................................................................................................... 8

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)........................................................................................ 9

*In re Eaton Corp. Sec. Litig.*,
No. 16-cv-5894-JGK, 2017 WL 4217146 (S.D.N.Y. Sep. 20, 2017)...................................12

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..................................................................................... 8, 9

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017)......................................................................... 8

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F.Supp.2d 171 (S.D.N.Y. 2010).......................................................................... 11

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020).................................................................................... 10, 11

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).................................................................................................. 15

*Kalnit v. Eichler*,
264 F.3d 131 (2d. Cir. 2001)....................................................................................... 4

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005)................................................................................. 12, 13

*Leventhal v. Tow*,
48 F.Supp.2d 104 (D. Conn. 1999)............................................................................ 10

*In re Liberty Tax, Inc. Sec. Litig.*,
435 F. Supp. 3d 457 (E.D.N.Y. 2020), *aff'd*, 828 F. App'x 747 (2d Cir. 2020).............. 13, 14

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013)......................................................................11

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
  No. 19 CIV. 7536 (NRB), 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021),
  *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 49 F.4th
  790 (2d Cir. 2022) and *aff'd sub nom. Menora Mivtachim Ins. Ltd. v.
  Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022).....................................................9

*In re Mindbody, Inc. Sec. Litig.*,
  489 F. Supp. 3d 188 (S.D.N.Y. 2020)...................................................................3, 8

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  975 F. Supp. 2d 392 (S.D.N.Y. 2013)...............................................................18, 19

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010)..............................................................................16, 17

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005)...............................................................4, 5, 6

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006)....................................................................12

*Phillips v. LCI Int'l, Inc.*,
  190 F.3d 609 (4th Cir. 1999) .............................................................................9, 10

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...............................................................................3, 7, 8

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016).....................................................................11

*Shapiro v. Cantor*,
  123 F.3d 717 (2d Cir. 1997)...........................................................................15, 16

*Simpson v. AOL Time Warner Inc*,
  452 F.3d 1040 (9th Cir. 2006), *cert. granted, judgment vacated on other
  grounds sub nom. Avis Budget Grp., Inc. v. California State Teachers' Ret.
  Sys.*, 552 U.S. 1162 (2008), *vacated on other grounds sub nom. Simpson v.
  Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) .......................................5, 6, 7

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012)......................................................................3

*Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*,
  509 F. App'x 54 (2d Cir. 2013) ...............................................................................18

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
    531 F.3d 190 (2d Cir. 2008)...................................................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................... 8, 9, 10

*TradeWinds Airlines, Inc. v. Soros*,
    No. 08 Civ. 5901, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012) ..................................... 18, 19

*Winkler v. Wigley*,
    242 F.3d 369 (2d Cir. 2000)............................................................................. 16, 17

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir.1998)..................................................................................... 14

## Statutes

Exchange Act Section 10(b) .......................................................................................*passim*

Private Securities Litigation Reform Act.................................................................................. 3, 4

## Other Authorities

17 C.F.R. § 240.10b–5 .............................................................................................*passim*

Federal Rule of Civil Procedure 9(b)........................................................................................ 3, 4

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 3

iv

I.    INTRODUCTION & BACKGROUND

Defendant Cellenkos, Inc. ("Cellenkos") has nothing to do with the fraudulent transactions alleged in Plaintiffs' Amended Complaint (the "Complaint").  Plaintiffs allege that other individuals and entities misappropriated Global Cord Blood Corporation ("Global Cord") assets through a series of transactions to various entities, none of which were Cellenkos, from 2015 through 2022. *See* Am. Class Action Compl. ¶¶ 55, 57, 88, ECF No. 60 (hereinafter "Compl.").  There are no allegations in the Complaint that Cellenkos had any involvement in, connection to, or knowledge of these alleged transactions.

Separately, the Complaint describes an anticipated transaction that was announced in April 2022 (the "Proposed Cellenkos Transaction").  *Id.* ¶ 63–64.  Plaintiffs allege two aspects of the Proposed Cellenkos Transaction.  First, Global Cord would issue 65.7 million shares to acquire a stake in Cellenkos (the "Proposed Acquisition").  *Id.* ¶ 63.  Second, "in connection with" the Proposed Acquisition, Plaintiffs allege Global Cord and GM Precision Medicine (BVI) Limited ("GMPM") would enter into a separate agreement, under which Global Cord would obtain a license to market Cellenkos's product candidates in Asia for 12.4 million shares and $664 million in cash (the "Framework Agreement").  *Id.*  Importantly, Plaintiffs do not allege that Cellenkos was a party to the Framework Agreement.  According to the Complaint, the Proposed Cellenkos Transaction as a whole was an elaborate mechanism to "conceal" the earlier transactions involving the alleged theft of Global Cord funds.  *See id.* ¶ 5.

The Proposed Cellenkos Transaction was cancelled in 2022 and was never consummated.  *Id.* ¶ 69.  Thus, there was no cover up.  Cellenkos remains—as it always has been—a separate and distinct entity from Global Cord, Golden Meditech Holdings Limited ("Golden Meditech"), and any other entity or individual named as a defendant in this case.  As alleged in the Complaint, Cellenkos is a clinical stage biotechnology company based in Houston, Texas and incorporated in Delaware. *Id.* ¶ 19. Cellenkos was founded in 2016 by Dr. Simrit Parmar, then an Associate Professor at University of Texas's MD Anderson Cancer Center, a world-renowned institution which owned a partial stake in Cellenkos.  Cellenkos

1

seeks to develop drug product candidates to treat autoimmune diseases and inflammatory disorders. *Id.*

In their Complaint, Plaintiffs allege only a single claim against Cellenkos for "scheme liability" under Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c). *See* Compl. ¶¶ 178–80. To adequately plead a claim for "scheme liability" Plaintiffs must provide specific factual allegations regarding the deceptive acts, conduct, and the state of mind (*i.e.,* scienter) of Cellenkos when participating in the purported scheme.

But the Complaint does not contain specific allegations that Cellenkos engaged in any deceptive actions. The Complaint does not identify specific facts, such as documents or witnesses, that would give rise to a strong inference of Cellenkos's scienter. The Complaint is devoid of any facts suggesting that Cellenkos knew about the alleged earlier misappropriation of Global Cord funds or that the Proposed Acquisition was a purported attempt to "cover up" the alleged transfers. The Complaint does not allege Cellenkos made any false or misleading statements to Global Cord or its investors, and it does not allege with specificity details related to the relationship alleged between Cellenkos and the other defendants.

The Complaint instead contains conclusory statements that Cellenkos committed deceptive acts, coupled with generalized suggestions that allude to knowledge of an over-arching scheme to injure shareholders of Global Cord, a company entirely separate from Cellenkos. The only specific allegations Plaintiffs provide regarding Cellenkos is that it stood to receive "initial funding of US\$4 million" to develop "clinical trials and product development" and "an additional US\$2.1 million per month for the first 12 months [following the Transaction]." *See id.* ¶ 102. In other words, the only specific allegations regarding Cellenkos is that it stood to receive compensation for selling a stake in a business that developed potentially ground-breaking and lucrative treatments.

Plaintiffs' sparse and conclusory allegations regarding Cellenkos's deceptive conduct are insufficient to state a "scheme liability" claim for securities fraud against Cellenkos.

Plaintiffs' claim against Cellenkos should be dismissed.  Because Plaintiffs cannot amend to state a claim, the claim should be dismissed with prejudice.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    ARGUMENT

### A.    Plaintiffs' Scheme Liability Claim Fails

To state a scheme liability claim, a plaintiff must allege specific facts showing: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'" *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020) (quoting *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y. 2016)).  Since Plaintiffs' action was brought under Section 10(b) and Rule 10b–5, Plaintiffs must also plead loss causation and that the alleged scheme occurred in connection with the purchase or sale of a security. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 158 (S.D.N.Y. 2012) (citing *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010)); *see also* 17 C.F.R. § 240.10b–5.

Plaintiffs' scheme liability claim is subject to the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 158.  To meet the heightened requirements, a plaintiff must specify "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (quoting *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005)).  Moreover, Plaintiffs must plead specific facts that

3

raise a strong inference that Cellenkos engaged in those acts with scienter by showing that Cellenkos "either . . . had both motive and opportunity to commit fraud, or [] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" in furtherance of the allege scheme defrauded Global Cord shareholders. *See Kalnit v. Eichler*, 264 F.3d 131, 138 (2d. Cir. 2001) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). Plaintiffs' Complaint fails to plead the required elements, much less with the specificity required under the PSLRA or Rule 9(b), to succeed on their scheme liability claim against Cellenkos.

### 1.    Plaintiffs Fail to Plead a Deceptive Act

Plaintiffs' scheme liability claim against Cellenkos fails at the outset because Plaintiffs' Complaint lacks specific allegations that Cellenkos committed any deceptive act. Nowhere do Plaintiffs allege Cellenkos was involved in any way with the alleged fraudulent transfers. And Plaintiffs allegations related to Cellenkos's actions in the purported "cover-up" only allege that Cellenkos agreed to be acquired by Global Cord, a NYSE exchange listed company. The pleadings do not, and cannot, allege that Cellenkos's involvement in the Proposed Cellenkos Transaction was by itself a deceptive act. At most, Plaintiffs allege that Cellenkos aided or abetted an attempted "cover up" of the other defendants' alleged misappropriation of Global Cord assets through the Proposed Cellenkos Transaction, coupled with other parties agreeing to the Framework Agreement. But, as explained in detail in Section III.B, there can be no liability for aiding and abetting under Section 10(b) of the Exchange Act.

The mere participation by a party in a transaction is not by itself a deceptive act. For example, in *In re Parmalat Securities Litigation*, plaintiffs alleged that a food company, Parmalat, entered into an agreement with Citibank. 376 F. Supp. 2d 472, 482–84 (S.D.N.Y. 2005). As a part of its "joint venture" with the company, Citibank agreed to contribute funds to a Parmalat subsidiary. *Id.* Those funds were used as loans to Parmalat's other subsidiaries, but were reported as an equity investment on Parmalat's balance sheets. *Id.* at 482. Citibank had

structured the joint venture such that it was guaranteed to receive a return on its investment. *Id.* at 482.

There, Judge Kaplan noted that those transactions "were not shams. There is no suggestion that Citigroup did not own the equity stakes . . . that it purported to buy. . . Any deceptiveness resulted from the manner in which Parmalat or its auditors described the transactions on [the company's] balance sheets and elsewhere." *Id.* at 505. The court carefully avoided broadening the standard and Rule 10b-5(a) and (c) and sweeping other parties' conduct that was not in and of itself a deceptive act: "[a]t worst, the banks designed and entered into the transactions knowing or even intending that Parmalat or its auditors would misrepresent the nature of the arrangements. That is, they substantially assisted fraud with culpable knowledge—in other words, they aided and abetted it." *Id.*

The 9th Circuit dealt with a similar issue. In *Simpson v. AOL Time Warner Inc.*, an internet company called Homestore entered sham transactions with third party vendors, where Homestore paid exaggerated prices for shares in thinly capitalized companies, or it paid exaggerated prices for unneeded products, in return for an obligation from those vendors to buy Homestore advertising from AOL. 452 F.3d 1040, 1053 (9th Cir. 2006), *cert. granted, judgment vacated on other grounds sub nom. Avis Budget Grp., Inc. v. California State Teachers' Ret. Sys.*, 552 U.S. 1162 (2008), and *vacated on other grounds sub nom. Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008). AOL was alleged to have developed and structured, and participated in the deals in question, where money flowed "through the third party to AOL, which then took a commission and shared 'revenue' with Homestore." *Id.* at 1043–44.

Like Judge Kaplan, the 9th Circuit was careful not to sweep AOL's aiding and abetting conduct under the ambit of Section 10(a) and Rule 10b-5(a) and (c). It noted that the transactions involving AOL—the advertising agreements with the third parties—did not "create a false appearance until they were viewed in conjunction with Homestore's actions before and after the transaction." *Id.* at 1053. "While AOL would be liable under § 10(b) for its deceptive conduct as part of a scheme to defraud if AOL engaged in deceptive conduct, it may not be held

5

liable for participating in legitimate transactions that became 'deceptive' only when distorted by the willful or intentional fraud of another party." *Id.*; *see also Parmalat,* 376 F.Supp.2d at 505 ("Any deceptiveness resulted from the manner in which Parmalat or its auditors described the transactions on Parmalat's balance sheets and elsewhere.").

The Plaintiffs' allegations related to Cellenkos's acts are sparse.  Where they are found, the allegations are general and conclusory.  As an initial matter, the Proposed Cellenkos Transaction was not deceptive because it was cancelled—there was no concealment of the alleged misappropriation by other entities.

Ignoring this, the Complaint simply concludes that the Proposed Cellenkos Transaction, as a whole, was "a sham transaction."  Compl. ¶ 5.  But importantly, like the agreements in *In re Parmalat*, there are no factual allegations stating that the Proposed Acquisition was a sham. Plaintiffs do not allege, for example, that following the Proposed Acquisition, the other parties to the acquisition would "not own the equity stakes [in Cellenkos] . . . [they] purported to buy" through it.  *Parmalat,* 376 F.Supp.2d at 505.

As alleged, the Proposed Acquisition was to be an all-stock deal with relatively modest funding commitments for Cellenkos to further develop products and begin clinical trials. Compl. ¶¶ 63, 102.  Unsurprisingly, Plaintiffs do not allege how such an acquisition even *could* function to cover up hundreds of millions of dollars of alleged misappropriated funds.

Plaintiffs seem to suggest, but nowhere do they specifically allege, that the license fee payment under Framework Agreement was the means of covering up the alleged misappropriations.  *Id.* ¶ 67. Indeed, Plaintiffs juxtapose the total consideration agreed to in the Framework Agreement ($664 million) with the amount raised in a previous Cellenkos equity fundraising round ($15 million).  *Id.* ¶¶ 63, 81.  But the comparison is meaningless.  The Framework Agreement was a separate agreement, between separate entities, involving the acquisition of separate rights, from the Proposed Acquisition portion of the Proposed Cellenkos Transaction.  Plaintiffs do not, nor could they, allege that Cellenkos was a party to the Framework Agreement. *Id.* ¶¶ 63, 67.

6

Even if Cellenkos were alleged to have been a party to the Framework Agreement, Plaintiffs do not offer facts demonstrating that the actual or potential value of the license to be acquired by Global Cord from GMPM under the Framework Agreement—despite suggesting its value was lower than the agreed-to amount. *Id.* ¶¶ 5–7. *At most*, Plaintiffs allege that Global Cord shareholder reaction to the Proposed Cellenkos Transaction as a whole (as measured by movement in the price of Global Cord shares), was negative. *Id.* ¶¶ 81–82. But negative shareholder reaction by itself does not necessitate the existence of a deceptive act.

As for the Proposed Acquisition, Plaintiffs state in a conclusory fashion that the total consideration in the Proposed Cellenkos Transaction was "grossly inflated" without providing any detail about the value of the Cellenkos shares purchased in the Proposed Acquisition. *Id.* ¶ 7. Plaintiffs conclude that the valuation of Cellenkos was "extremely aggressive and unrealistic," *id.* ¶ 50, without any specifics on value or price per share of the Cellenkos stock to be acquired in the Proposed Acquisition. But Plaintiffs do not, and cannot, allege that Cellenkos did not negotiate the Proposed Acquisition in good-faith and in the best interest of Cellenkos shareholders. In other words, Plaintiffs never allege that the amount agreed to in Proposed Acquisition (the only part of the Proposed Cellenkos Transaction that Cellenkos was involved in) was anything other than a fair price.

In any event, Plaintiffs fail to acknowledge the delineation between the separate aspects of the Proposed Cellenkos Transaction that their own allegations describe. *Id.* ¶¶ 63, 67. They instead, lump everything together and allege in a conclusory fashion that the Proposed Cellenkos Transaction was deceptive. To the extent Plaintiffs specifically alleged anything about Cellenkos's acts (*i.e.* it's limited agreement to the Proposed Acquisition), it could only be deceptive through its tenuous connection to other allegedly fraudulent acts. In other words, when viewed through a lens "distorted by the [alleged] willful or intentional fraud of another party . . . ." *Simpson*, 519 F.3d at 1053.

Having failed to plead any facts showing a deceptive act by Cellenkos, the Complaint necessarily fails to state a Section 10(b) claim against it. *See, e.g., Danske Bank*, 11 F.4th at

7

105 (affirming dismissal of scheme liability claim where the complaint failed to "articulate with precision the contours of [the] alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it" and instead relied on "conclusory assertion[s]").

### 2.    Plaintiffs Fail to Plead Reliance

Plaintiffs do not allege they relied on any conduct of Cellenkos.  *See In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 471 (S.D.N.Y. 2017) ("'Reliance by the plaintiff upon the defendant's deceptive acts is an essential element' of a private cause of action alleging scheme liability under subsections (a) and (c) of Rule 10b–5." (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008))).  There is no allegation that Plaintiffs purchased Global Cord securities based on any conduct or statement by Cellenkos.  To the extent Plaintiffs allege relying on any actions, Plaintiffs suggest that Defendants, as a group, did not correct public statements by Global Cord regarding its cash reserves. *See* Compl. ¶ 54.  Such a claim fails against Cellenkos because Cellenkos owed no duty to disclose a Global Cord's cash reserve amounts to its shareholders.  *Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("when an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").  Since "the entire 'conduct' or 'scheme' complained of is the dissemination of misleading information," it also fails because it is "indistinguishable from the misstatements and omissions" fraud that comprise Plaintiffs' primary claim against other defendants under Rule 10b-5(b). *See In re Mindbody*, 489 F. Supp. 3d at 217.

### 3.    Plaintiffs Fail to Plead a Strong Inference of Scienter

The Complaint is similarly devoid of allegations that would give rise to a strong inference of Cellenkos's scienter.  To establish scienter under Section 10(b), Plaintiffs must "plead with particularity facts that give rise to a 'strong'—i.e., a powerful or cogent— inference" that a particular defendant intended "to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 323 (2007).

Four types of circumstances may give rise to a strong inference of the requisite scienter. Those circumstances are where the complaint sufficiently alleges that defendants: (1)

8

"benefitted in a concrete and personal way from the purported fraud"; (2) "engaged in deliberately illegal behavior"; (3) "knew facts or had access to information suggesting that their public statements were not accurate"; or (4) "failed to check information they had a duty to monitor." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009).

Plaintiffs' only allegations that they suggest provides a strong inference of scienter are those related to the "benefit" that Cellenkos stood to receive in the form of funding following the close of the Proposed Cellenkos Transaction. *See* Compl. ¶ 102.

But Cellenkos executives seeking funding to further develop its treatments through a transaction hardly establishes any fraudulent intent. To the contrary. Company leadership seeking increased funding or a higher valuation is typical. As the Second Circuit recognized in the public company context, establishing scienter through an executive's motive to have "its stock to be priced highly by the market" would be to render "the motive requirement [of Section 10(b) claims] meaningless" since it would render every action of every executive to increase the value of their company necessarily imbued with supposedly fraudulent intent. *Cf. Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 n.5 (2d Cir. 1996).

Indeed, "[a]n assertion that a corporation and its executives were looking for lucrative avenues to expand its business is precisely the type of generalized motive shared by all profit-oriented businesses that courts in this Circuit have routinely rejected as insufficient to plead a strong inference of scienter." *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19 CIV. 7536 (NRB), 2021 WL 1199035, at *24 (S.D.N.Y. Mar. 30, 2021), *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 49 F.4th 790 (2d Cir. 2022), and *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022); *see also ECA, Loc. 134*, 553 F.3d at 198 ("Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of [the scienter] inquiry."). Courts across the country agree. *See, e.g., Phillips v. LCI Int'l, Inc.,* 190 F.3d 609,

9

622 (4th Cir. 1999) (in merger context, allegations that director of a selling company sought to depress the stock price to assure the success of a merger to retain a position on the board and obtain a higher price for his stock did not constitute scienter); *Leventhal v. Tow,* 48 F.Supp.2d 104, 113–15 (D. Conn. 1999) (allegations that defendants had a motive to artificially inflate stock price to get more favorable terms in stock-for-stock transactions were too general to establish scienter).

Under *Tellabs,* to qualify as a "strong inference," the inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.* at 324.

The general allegations here suggest that Cellenkos agreed to the Proposed Cellenkos Transaction because it stood to receive funding as part of the transaction. Compl. ¶ 102. In other words, Plaintiffs suggest that agreeing to receive funding in exchange for equity and future licenses somehow evidences Cellenkos's fraudulent intent. Cellenkos's behavior related to the Proposed Cellenkos Transaction is consistent with how companies that develop products (and especially those that develop potentially ground-breaking and lucrative products) act. Plaintiffs' conclusory allegations that Cellenkos stood to receive funding as a part of the Proposed Cellenkos Transaction cannot establish scienter.

Apparently recognizing their lack of specific pleading regarding Cellenkos's intent, Plaintiffs suggested in their pre-motion letter (but do not specifically allege in their Complaint) that the alleged scienter of Kim Chuan Leong could be imputed to Cellenkos, given Leong's former role as CFO of Cellenkos. (ECF 112 at 5). Not so. While Plaintiffs unpled suggestion that "the most straightforward way" to establish scienter for a corporate defendant "is to impute it from an individual defendant who made the challenged misstatement," is technically correct,

10

it is irrelevant here given the lack of factual allegations regarding Leong's scienter. *Jackson v. Abernathy*, 960 F.3d 94, 98–99 (2d Cir. 2020) (internal quotation marks omitted).

First, Plaintiffs attempt to rely solely on Leong's position during the class period as CFO at Cellenkos and CFO and executive director to infer that Leong's alleged fraudulent intent could be imputed to Cellenkos. *See* Compl. ¶¶ 5, 52.  But an individual's scienter "cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." *See, e.g., In re Sanofi Sec. Litig.,* 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016) (quoting *Foley v. Transocean Ltd.*, 861 F.Supp.2d 197, 212 (S.D.N.Y. 2012)) (Castel, J.) ; *see also McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 128 (S.D.N.Y. 2013) ("[B]oilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter.").

Plaintiffs would still need to specifically allege that Leong acted with the requisite scienter to attempt to impute that scienter to Cellenkos: "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).  But the Plaintiffs here do not.

To the extent Plaintiffs allege anything related to Leong at all, the factual allegations include that Leong held roles at Golden Meditech, Cellenkos, and Funtalk (Compl. ¶ 5, 29, 30, 33–35, 52), that there was an employment agreement between Global Cord and Leong attached to the 6-K where Global Cord announced the Proposed Cellenkos Transaction (*id.* ¶ 64), that Leong would have received Global Cord shares as part of the Proposed Cellenkos Transaction (*id.* ¶ 65), and that Leong had an equity interest in Cellenkos (*id.* ¶ 97).  Accordingly, this unpled suggestion fails—Plaintiffs must have established "what the [d]efendants knew and when they knew it." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F.Supp.2d 171, 176 (S.D.N.Y. 2010).  Here, they did not.

11

Unable to factually plead either Cellenkos's or Leong's scienter, the Complaint instead relies on group pleading. But allegations cannot simply lump the conduct of a group of defendants together to establish any particular defendant's scienter for the purposes of stating a claim. The allegations must provide, with particularity, "facts supporting a strong inference **with respect to each defendant**." *In re Eaton Corp. Sec. Litig.*, No. 16-cv-5894-JGK, 2017 WL 4217146, at *11 (S.D.N.Y. Sep. 20, 2017) (emphasis added).

Again, Plaintiffs' allegations here do not. *See, e.g.*, Compl. ¶ 5 ("**Defendants** devised a sham transaction for GCBC to acquire Cellenkos, Inc."); *id*. ¶ 8 ("**Defendants'** repeated false testimony"); *id*. ¶ 54 ("**Defendants** caused GCBC and its subsidiaries to make undisclosed transfers"); *id.* ¶ 164 (concluding "**Defendants**" would have had access to information "reflecting **Defendants'** scheme.") (emphasis added in each). These allegations do not, as they must, "state with particularity facts giving rise to a strong inference that **each defendant** acted with scienter." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 187 (S.D.N.Y. 2006) (quoting 15 U.S.C. § 78u–4(b)(2)) (emphasis added).

Plaintiffs fail to specify a single specific piece of information allegedly known to Cellenkos (or to Leong for that matter) at any given time, let alone information that somehow reflected a fraudulent scheme related to the Proposed Cellenkos Transaction. Because the Complaint fails to factually allege anything regarding Cellenkos's or Leong's state of mind, the Complaint fails to plead facts that would provide a strong inference of scienter. For this additional reason, the claim against Cellenkos should be dismissed.

### 4.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs also failed to plead loss causation. Adequately pleading loss causation requires Plaintiffs to establish a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). For the reasons described in Sections III.A.1 and III.A.2, Cellenkos agreeing to the Proposed Cellenkos Transaction did not constitute a deceptive act, much less an

12

act made with scienter.  Accordingly, there is no "misconduct" to connect to the economic harm Plaintiffs alleged they suffered.  Establishing loss causation accordingly fails at the outset.

Still, even assuming Cellenkos's participation in the Proposed Cellenkos Transaction did constitute a deceptive act (which it did not), the Complaint does not adequately allege a link between this conduct and the economic harm allegedly suffered.

Analogizing the loss causation requirement to the principle of proximate causation in tort law, the Second Circuit explained that "it cannot ordinarily be said that a drop in the value of a security is 'caused' by the misstatements or omissions made about it, as opposed to the underlying circumstance that is concealed or misstated." *See id.* at 173. In other words, "a misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor." *Id.* (emphasis in original).

Here, Plaintiffs never establish how the Proposed Acquisition specifically, or Proposed Cellenkos Transaction generally, caused the alleged injury.  The Complaint alleges that the Global Cord share price fell following Global Cord's announcement of the Proposed Cellenkos Transaction, Compl. ¶ 80, and following Blue Ocean filing it's winding up petition in the Cayman Islands, which Plaintiffs allege "revealed serious problems" with the Proposed Cellenkos Transaction, *id.* ¶ 81. But, as Plaintiffs acknowledge, the Proposed Cellenkos Transaction was cancelled and was never completed. *Id.* ¶ 69.  By their own allegations, the market reacted to the announcement of the agreement "pay $664 million" to enter into the Framework Agreement and to acquire Cellenkos via the Proposed Acquisition by "doubl[ing] GCBC's share count," rather than a response to the disclosure of an alleged fraud.  *Id.* ¶ 79. And to the extent this market reaction was "caused" by anything, it was caused the announcements of entities other than Cellenkos.

In any event, this market reaction, in the form of a stock price drop, is not sufficient to plead loss causation. *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 471 (E.D.N.Y.

13

2020) ("[L]oss causation is not adequately pled simply by allegations of a drop in stock price following an announcement of bad news if the news did not disclose the fraud."), *aff'd*, 828 F. App'x 747 (2d Cir. 2020).  Accordingly, Plaintiffs failure to allege loss causation relating to any action taken by Cellenkos is an additional reason why their claim must be dismissed.

**B.      Plaintiffs' Suggestion that Cellenkos Aided and Abetted a Scheme Does Not Give Rise to Liability Under Section 10(b)**

For the reasons described above, Plaintiffs fail to allege a primary violation by Cellenkos under Section 10(b).  The remaining avenues to finding liability against Cellenkos suggested by Plaintiffs Complaint are equally unavailing since they would amount to "aiding and abetting" the primary alleged violation.  Because private plaintiffs "may not maintain an aiding and abetting suit under § 10(b)," Plaintiffs suggestion that Cellenkos aided and abetted an alleged fraudulent scheme cannot give rise to liability under Section 10.  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

Plaintiffs allege that the failed Proposed Cellenkos Transaction was a "cover up" scheme through which other individuals and entities intended to conceal $606 million in undisclosed related-party transactions not involving Cellenkos. *See, e.g.*, Compl. ¶¶ 7, 57, 62.  Plaintiffs' claim against Cellenkos under § 10(b) of the Securities Exchange Act and Rule 10b-5 also fails since it only suggests Cellenkos aided and abetted others' alleged misconduct by agreeing to be acquired by Global Cord. *See id.* ¶¶ 178–180.  But Supreme Court precedent is unequivocal that "because the text of § 10(b) does not prohibit aiding and abetting . . . a private plaintiff **may not maintain an aiding and abetting suit under § 10(b)**." *Cent. Bank of Denver, N.A.*, 511 U.S., 191 (emphasis added).  Instead, to be liable, a defendant must have **actually made a misstatement or omission** to the private plaintiff who claims to have been deceived. *See id.* at 177–78; *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir.1998) ("[A] defendant **must actually make** a false or misleading statement in order to be held liable under Section 10(b). **Anything short of such conduct is merely aiding and abetting**, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).") (quoting *Shapiro v.*

14

*Cantor*, 123 F.3d 717, 720 (2d Cir. 1997)) (emphasis added); *Shapiro v. Cantor*, 123 F.3d 717, 720–21 (2d Cir. 1997) ("a claim under § 10(b) must allege a defendant has **made a material misstatement or omission** indicating an intent to deceive or defraud in connection with the purchase or sale of a security.") (emphasis added).[1]

Here, Plaintiffs do not allege that Cellenkos made any misstatement or omission to Global Cord's shareholders at any point. Indeed, given that the Proposed Cellenkos Transaction was promptly terminated, it seems unlikely that Plaintiffs could even make such an allegation (which they have not). To the contrary, the Complaint suggests that the first time Global Cord's shareholders became aware of Cellenkos's existence was on April 29, 2022, when Global Cord "announced the Cellenkos transaction," which "shocked investors" and subsequently caused the Global Cord share price to drop. Compl. ¶¶ 79–80. But there is no allegation that Cellenkos made, reviewed, or had any editorial control over, Global Cord's April 29 announcement.

Nowhere in their Complaint do Plaintiffs allege that Cellenkos actually "made a material misstatement or omission" as required under *Central Bank*. *Shapiro*, 123 F.3d at 720–21. Moreover, Plaintiffs do not allege that Cellenkos drafted, edited, released, or participated in any way regarding *any* statements made related to the Proposed Cellenkos Transaction. Indeed, the only affirmative statements that Plaintiffs allege Cellenkos may have made to *anybody* at *any point* involve undisputed factual statements. *Compare* Compl. ¶ 51 (discussing representations made by Cellenkos representative regarding number of Cellenkos staff members, and number of patients who have received its T-reg cellular therapies), *and id.* ¶ 81 (discussing Cellenkos's "modest" valuation during a November 2021 fundraising round), *with id.* ¶ 53 (alleging that Golden Meditech stated "the Group has significant influence over Cellenkos . . ."); *and id.* ¶ 50 (alleging that a third-party valuation firm valued Cellenkos "extremely aggressive[ly] and

---

[1] However, "[t]he proscription [in Section 10(b)] **does not include** giving aid to a person who commits a manipulative or deceptive act." *See*, *e.g.*, *Cent. Bank of Denver*, 511 U.S. at 177–78 (in "considering conduct prohibited by § 10(b), we again conclude that the statute prohibits **only the making** of a material misstatement (or omission) or the commission of a manipulative act.") (emphasis added); *see also Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 147–48 (2011) (noting, in assessing liability under Rule 10b-5, "assistance [in preparing alleged misstatements], subject to the ultimate control of [the party that made the statement], does not mean that [the assisting party] 'made' any statement").

15

unrealistic[ally] . . ."). Plaintiffs later suggest the statements made by Cellenkos about its valuation during the November 2021 fundraising round *were* true and accurate at the time they were made. *See, e.g.*, *id.* ¶¶ 5, 7, 50, 79, 81. Accordingly, Cellenkos cannot be held liable for the April 29, 2022 announcement of the Proposed Cellenkos Transaction because Plaintiffs did not identify facts showing the Cellenkos was a "maker" of that statement, or *any other* statement, related to the Proposed Cellenkos Transaction as required under *Central Bank*.

Attempting to manufacture a claim where none exists, Plaintiffs suggest, via generalized allegations, that Cellenkos should be liable merely for engaging in business dealings with other defendants against whom they also allege § 10(b) claims. *See, e.g.*, Compl. ¶ 52 (alleging that Leong served as Chairman and CFO of Cellenkos); *id.* ¶ 53 (alleging that the Cellenkos website from 2018–2020 stated that Golden Meditech and another unidentified investor own a 51% share of the voting stock of Cellenkos); *id.* (alleging that Golden Meditech stated it "has significant influence over Cellenkos . . ."). But these are exactly the type of generalized allegations of a defendant's "complic[ity]" absent specific statements related to their own misstatements or omissions that Courts "construe . . . as primarily alleging aiding and abetting the principal defendants." *See Shapiro*, 123 F.3d at 720. Such allegations directly "fall within the prohibitive bar of [the Supreme Court's holding in] *Central Bank*." *Id*. Plaintiffs did not allege that Cellenkos "**made** a material misstatement or omission indicating an intent to deceive or defraud in connection with the purchase or sale of a security." *Id.* at 720–21 (citing *McMahan & Co. v. Wherehouse Entertainment, Inc.,* 900 F.2d 576, 581 (2d Cir.1990)) (emphasis added). They instead provided generalized "assertion of aiding and abetting" which do "not support a claim under § 10(b) as interpreted by the *Central Bank* Court." *Id.* at 721.

In addition to "actually mak[ing]" the misleading statement, to be liable under § 10(b) "the misrepresentation must be attributed to that [defendant] at the time of public dissemination, that is, in advance of the investment decision." *Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000) (quoting *Wright*, 152 F.3d at 175); *see also Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 148, 148 n.1 (2d Cir. 2010) ("[S]econdary actor[s]" or "other parties who are not

16

employed by the issuing firm whose securities are the subject of allegations of fraud" can "be held liable in a private damages action brought pursuant to Rule 10b–5(b) only for false statements attributed to the secondary-actor defendant at the time of dissemination."). Even had Plaintiffs here alleged that Cellenkos helped create or draft misstatements of other defendants (which they did not), "[a]bsent attribution, plaintiffs cannot show that they relied on [a] defendants' *own* false statements, and participation in the creation of those statements amounts, at most, to aiding and abetting securities fraud." *Pac. Inv. Mgmt. Co. LLC*, 603 F.3d at 148 (emphasis in original).

For example, in *Pacific Investment Management Company LLC v. Mayer Brown LLP*, defendant allegedly facilitated fraudulent transactions between the primary defendant and third parties for the purpose of concealing the primary defendant's uncollectible debt and drafted portions of the primary defendant's security offering documents that contained false information. *Id.* The Second Circuit affirmed the dismissal of § 10(b) claims against the defendant under *Central Bank* because the plaintiff did not allege "false statements attributed to the secondary-actor defendant at the time of dissemination." *Id.* Likewise, in *Winkler v. Wigley*, an individual defendant (an outside director of the primary defendant) and a public relations firm retained by the primary defendant, were found to have had claims against them related to alleged misstatements in a company press release, properly dismissed where "neither defendant had actually made a misrepresentation that was attributed to him." 242 F.3d 369.

Under *Central Bank of Denver* and its progeny, Plaintiffs are **required** to plead that Cellenkos made misrepresentations or otherwise engage directly in an "act, practice, or a course of business which operates as or would operate as fraud and deceit" upon Global Cord's shareholders. *See* 17 C.F.R. § 240.10b-5. There are no such allegations in the Complaint, and so Plaintiffs' claim against Cellenkos must be dismissed with prejudice.

### C.    Plaintiffs Fail to Allege Alter Ego Liability

Plaintiffs likewise fail to allege that Cellenkos is an alter ego of Golden Meditech or Defendant Kam. To plausibly state a claim under a theory of alter ego liability, a Complaint

must allege that the parent and subsidiary operated as a "single economic entity," and whether an "overall element of injustice or unfairness" is present. *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 402 (S.D.N.Y. 2013) (applying Delaware law)). Plaintiffs' sparse allegations regarding alleged connections between Cellenkos and Golden Meditech sufficiently allege neither.

Plaintiffs' bare allegation that Cellenkos "acted as [the] alter ego[] of Kam and Golden Meditech," *see, e.g.*, Compl. ¶¶ 18, 126, do not pass muster under this Circuit's binding precedent.[2]  In determining whether to treat separate legal entities as alter egos, courts analyze whether parent and the subsidiary operated as a "single economic entity," and whether an "overall element of injustice or unfairness" is present. *Nat'l Gear & Piston, Inc.*, 975 F. Supp. 2d at 402 (applying Delaware law)).

For the first prong, to establish that the entities in question operated as a single economic entity, a plaintiff must allege more than "mere domination and control" of the subordinate entity—they must allege "**exclusive** domination and control" such that the subordinate entity "no longer has legal or independent significance of its own." *Id.* (emphasis added) (internal quotation marks, citations, and alterations omitted). In evaluating whether there is "exclusive domination and control," courts consider factors including, for example, whether the corporation was adequately capitalized for the corporate undertaking, whether the corporation was solvent, whether dividends were paid, whether corporate records were kept, whether officers and directors functioned properly and other corporate formalities were observed, whether the dominant shareholder siphoned corporate funds, and whether, in general, the corporation simply functioned as a facade for the dominant shareholder. *Id.* at 403.  For the second prong, examples of allegations that could show fundamental injustice include where defendants "siphoned funds from" corporation "and thus improperly left it undercapitalized".

---

[2]    New York's choice of law rules provides that "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 57 n.2 (2d Cir. 2013) (internal quotation marks and citation omitted). Because Cellenkos was incorporated in Delaware, Delaware law controls Plaintiff's alter ego claims.

18

*TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901, 2012 WL 983575 (S.D.N.Y. Mar. 22, 2012).

Here, again, Plaintiffs allegations fail. Plaintiffs' Complaint alleges that Dr. Parmar, Cellenkos's founder and director, signed the SPAs on behalf of Cellenkos. Compl. ¶¶ 52, 65. But the Complaint contains **no** specific allegations regarding any connection between Dr. Parmar and any entity other than Cellenkos. The allegations themselves establish Cellenkos's independence and belie the notion that Cellenkos was dominated–much less "exclusive[ly]" controlled–by Golden Meditech, Kam, or any other entity.

Instead, Plaintiffs only allege that Golden Meditech owned 30.5% of Cellenkos. *See* Compl. ¶ 97. But even holding of a *majority* stake of a company is insufficient, by itself, to establish "exclusive domination and control." *See Nat'l Gear & Piston*, 975 F. Supp. 2d at 402, 404–05. This is especially true given the allegations here. And Plaintiffs allege nowhere that any funds ever passed to Cellenkos. Indeed, they could not have, given their own allegation that "the Cellenkos transaction was never completed." Compl. ¶ 69. Accordingly, Plaintiffs have failed to plead that Cellenkos is an alter ego of any other Defendant.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant Cellenkos's motion to dismiss Plaintiffs' Complaint.

DATED: January 31, 2025                     Respectfully Submitted,

                                            By: */s/ Michael J. Biles*

                                                Michael J. Biles
                                                KING & SPALDING, LLP
                                                500 W 2nd Street, Suite 1800
                                                Austin, TX 78701
                                                Telephone: (512) 457-2051
                                                Facsimile: (512) 457 2100
                                                Email: mbiles@kslaw.com

                                                John T. Goodwin
                                                KING & SPALDING, LLP
                                                1185 Avenue of the Americas, 34th Floor

19

New York, NY
Telephone: (212) 556-2369
Facsimile: (212) 556-2222
Email: jgoodwin@kslaw.com

Jordan A. Block (admitted *pro hac vice*)
KING & SPALDING, LLP
110 N. Wacker, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6330
Facsimile: (312) 995-6330
Email: jblock@kslaw.com

Counsel for Defendant Cellenkos

20

21

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that this document complies with the word count limitations articulated in Local Rule 7.1(c).

*/s/ Michael J. Biles*
Michael J. Biles

22

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, a true and correct copy of the foregoing was electronically filed and served via CM/ECF on all counsel of record in this action.

/s/ Michael J. Biles
Michael J. Biles