**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | No. 24-cv-3071-PKC<br><br>Hon. P. Kevin Castel |

**DEFENDANTS MARK CHEN AND JENNIFER WENG'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

WHITE & CASE LLP

David Hille
Ladan F. Stewart
Robert Tiedemann
Susan Grace
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

*Attorneys for Defendants Mark Chen*
*and Jennifer Weng*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................ 1

SUMMARY OF THE COMPLAINT.................................................... 3

LEGAL STANDARDS ...................................................................... 5

ARGUMENT ................................................................................ 5

I.    The Complaint Fails To Plead A Section 10(b) Claim Against Mark Chen Or Ms. Weng ........................................................................................... 5

    A.    The Complaint Fails To Plead A Deceptive Act By Mark Chen Or Ms. Weng...... 6

    B.    Plaintiffs Fail To Plead A Strong Inference Of Scienter By Mark Chen And Ms. Weng ............................................................................... 9

        1.    Plaintiffs Fail To Plead Motive And Opportunity To Commit Fraud ...... 10

        2.    Plaintiffs Fail To Plead Conscious Misbehavior Or Recklessness ........... 10

    C.    Plaintiffs Fail To Plead Loss Causation ................................................ 15

II.   The Complaint Fails To Plead A Control Person Claim Against Mark Chen Or Ms. Weng ........................................................................................... 17

    A.    The Complaint Fails To Plead Mark Chen And Ms. Weng Had Control Over GCBC Or The Transactions At Issue .................................................... 17

    B.    The Complaint Fails To Plead That Mark Chen And Ms. Weng Were Culpable Participants In Any Alleged Fraud ....................................................... 19

III.  The Court Lacks Personal Jurisdiction Over Mark Chen .................................. 20

    A.    The Complaint Fails To Allege That Mark Chen Has Sufficient Minimum Contacts with the United States ......................................................... 21

    B.    Exercising Jurisdiction Over Mark Chen Would Offend Traditional Notions Of Fair Play And Substantial Justice ...................................................... 23

CONCLUSION................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
   529 F. Supp. 3d 111 (S.D.N.Y. 2021) ...................................................................... 8, 19-20, 21

*Alki Partners, L.P. v. Vatas Holding GmbH*,
   769 F. Supp. 2d 478 (S.D.N.Y. 2011) .............................................................................21, 22

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................................................17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................5

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .........................................................................................3, 8, 10

*In re Bayou Hedge Fund Litig.*,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007) ...................................................................................14

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
   547 F. Supp. 3d 439 (S.D.N.Y. 2021) ............................................................................. 16-17

*In re CarLotz, Inc. Sec. Litig.*,
   No. 21-cv-5906-AS, 2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024) ............................6, 7, 8, 9

*Cheng v. Can. Goose Holdings Inc.*,
   No. 19-cv-8204-VSB, 2021 WL 3077469 (S.D.N.Y. July 19, 2021)............................... 14-15

*In re Citigroup Sec. Litig.*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010) ...................................................................................19

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) ...................................................................................10

*Converse, Inc. v. Norwood Venture Corp.*,
   No. 96-cv-3745-HB, 1997 WL 742534 (S.D.N.Y. Dec. 1, 1997) ..........................................18

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018).............................................................................13, 21

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-cv-9475-SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002).......................................19

*In re Eaton Corp. Sec. Litig.*,
    No. 16-cv-5894-JGK, 2017 WL 4217146 (S.D.N.Y. Sep. 20, 2017)....................................10

*ECA, Loc. 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)............................................................................... 10-11

*In re EHang Holdings Ltd. Sec. Litig.*,
    646 F. Supp. 3d 443 (S.D.N.Y. 2022)..............................................................22, 23

*In re Eletrobras Sec. Litig.*,
    245 F. Supp. 3d 450 (S.D.N.Y. 2017).................................................................8, 9

*Foley v. Transocean Ltd.*,
    861 F. Supp. 2d 197 (S.D.N.Y. 2012)....................................................................12

*Gomez v. Credit Suisse AG*,
    No. 22-cv-115-JPC-BCM, 2023 WL 2744415 (S.D.N.Y. Mar. 31, 2023),
    *aff'd*, No. 23-862-cv, 2024 WL 506240 (2d Cir. Feb. 9, 2024)................................6

*Greco v. Qudian Inc.*,
    No. 1:20-cv-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ...............................11

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).........................16

*Hernandez v. United States*,
    939 F.3d 191 (2d Cir. 2019)..................................................................................5

*In re Int'l Bus. Mach. Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998)..................................................................................8

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
    897 F. Supp. 2d 168 (S.D.N.Y. 2012)....................................................................15

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005)................................................................................15

*Li v. Eqonex Ltd.*,
    No. 1:23-cv-03346-GHW, 2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024) ...........................21

*In re Liberty Tax, Inc. Sec. Litig.*,
    435 F. Supp. 3d 457 (E.D.N.Y. 2020), *aff'd*, 828 F. App'x 747 (2d Cir. 2020)....................16

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
    No. 11-cv-398-GBD, 2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013).......................................13

*In re Lihua Int'l, Inc. Sec. Litig.*,
    No. 14-cv-5037-RA, 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016)......................................20

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp.2d 371 (S.D.N.Y. 2001)..................................................................20

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)...................................................12, 18, 19, 20

*In re Meta Materials Sec. Litig.*,
    No. 21-cv-7203-JRC, 2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023)....................10

*Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*,
    No. 23-cv-10310-JSR, 2024 WL 3197606 (S.D.N.Y. June 27, 2024) ..................22

*NCA Holding Corp. v. Ernestus*,
    No. 97-cv-1372-LMM, 1998 WL 388562 (S.D.N.Y. July 13, 1998)....................23

*Nesbeth v. New York City Mgmt. LLC*,
    No. 17-cv-8650-JGK, 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ..........................6

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ...........................................................................5, 6, 9

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008)..................................................................................23

*Prime Mover Capital Partners L.P. v. Elixir Gaming Tech., Inc.*,
    761 F. Supp. 2d 103 (S.D.N.Y. 2011)...................................................................21

*Russo v. Bruce*,
    777 F. Supp. 2d 505 (S.D.N.Y. 2011)...................................................................11

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)....................................................................................11

*S.E.C. v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011).....................................................................9

*S.E.C. v. Sharef*,
    924 F. Supp. 2d 539 (S.D.N.Y. 2013)...................................................................24

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016)............................................................ 12-13

*In re Sanofi-Aventis Sec. Litig.*,
    774 F. Supp. 2d 549 (S.D.N.Y. 2011)...................................................................20

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012)........................................................... 5-6, 18

*Sonera Holding B.V. v. Çukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)....................................................................22

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).......................................................19

*Starostenko v. UBS AG (A Swiss Bank)*,
    No. 19-cv-9993-KPF, 2023 WL 34947 (S.D.N.Y. Jan. 4, 2023) ..................... 20-21

*Steinberg v. Ericsson LM Tel. Co.*,
    No. 07-cv-9615-RPP, 2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) .............. 11-12

*Stone Family Trust v. Credit Suisse AG*,
    No. 19-cv-5192-AT, 2022 WL 954743 (S.D.N.Y. Mar. 30, 2022) .........................19

*Strougo v. Barclays PLC*,
    334 F. Supp. 3d 591 (S.D.N.Y. 2018)......................................................17

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)......................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................... 9-10

*In re Vivendi Universal, S.A. Sec. Litig.*,
    842 F. Supp. 2d 522 (S.D.N.Y 2012)........................................................17

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................13

*Walsh v. Rigas*,
    No. 17-cv-4089-NRB, 2019 WL 294798 (S.D.N.Y. Jan. 23, 2019)........................5

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)................................................................5

## STATUTES AND RULES

15 U.S.C. § 78j(b) ................................................................................. *passim*

15 U.S.C. § 78u-4 ...................................................................................20

17 C.F.R. § 240.10b–5 ......................................................................... *passim*

Fed. R. Civ. P. 4(m) ..........................................................................................................23

Fed. R. Civ. P. 8 ................................................................................................................6

Fed. R. Civ. P. 9(b) ................................................................................................1, 5, 6, 7

Fed. R. Civ. P. 12(b)(2) ...............................................................................................1, 20

Fed. R. Civ. P. 12(b)(6)....................................................................................................1

Defendants Mark Chen and Jennifer Weng respectfully submit this memorandum of law in support of their motion to dismiss the Amended Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 60) ("Complaint") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this securities fraud action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Plaintiffs allege that Defendants engaged in a scheme to make a series of unspecified payments by Defendant Global Cord Blood Corporation ("GCBC") to companies controlled by GCBC's former Chairman, Defendant Yuen Kam ("Kam"). Plaintiffs further allege that Defendants engaged in a scheme to conceal the alleged misappropriations by way of an alleged "sham transaction" in which GCBC would purchase a company called Cellenkos, Inc. ("Cellenkos"). It is undisputed that the Cellenkos transaction was never consummated. Defendants Mark Chen and Jennifer Weng are former independent directors of GCBC who had no alleged role in GCBC's day-to-day operations or management. The Complaint fails to state any cause of action against Mark Chen[1] and Ms. Weng, and the claims against Mark Chen should also be dismissed for lack of personal jurisdiction.

The Complaint fails to plead a Section 10(b) claim against Mark Chen and Ms. Weng for at least three reasons:

*First*, Plaintiffs assert a scheme liability claim but fail to plead with particularity—as required under Rule 9(b)—that Mark Chen or Ms. Weng committed any "deceptive or manipulative act" in furtherance of any alleged scheme to defraud. Plaintiffs do not assert that

---

[1] We refer to Mark Chen with his first name to distinguish him from Defendant Albert Chen. The two have the same last name but are not, and are not alleged to be, related.

Mark Chen or Ms. Weng had any role in the allegedly fraudulent transfers or any alleged misstatements, and there are no particularized facts showing Mark Chen or Ms. Weng was involved in the purported "cover-up" by way of the Cellenkos transaction. Rather, the only particularized act by either Mark Chen or Ms. Weng is that, after the Class Period, they attempted to attend a GCBC shareholder meeting but were denied entry. Merely attempting to attend a meeting is not a deceptive or manipulative act sufficient to state a securities fraud claim.

*Second*, Plaintiffs fall far short of pleading the "strong inference" of scienter required to state a securities fraud claim. The Complaint does not allege any motive or opportunity by Mark Chen or Ms. Weng to commit fraud. And, while the Complaint alleges in conclusory terms that all Defendants would have had access to information reflecting the scheme, Plaintiffs do not identify any particular reports, documents, or other information supposedly known to Mark Chen or Ms. Weng that would have alerted them to any alleged scheme. Accordingly, the far more plausible inference arising from the facts alleged is that Mark Chen and Ms. Weng had no knowledge of the scheme whatsoever.

*Third*, Plaintiffs fail to plead loss causation because the alleged fraud—*i.e.*, a "scheme" to misappropriate hundreds of millions of dollars and then "conceal" the misappropriations through the Cellenkos transaction—was not in any way revealed in the disclosures that Plaintiffs allege caused GCBC's stock price to drop and harm to Plaintiffs.

The Complaint also fails to plead a Section 20(a) control person claim against Mark Chen and Ms. Weng. *First*, the Complaint lacks any well-pleaded facts showing Mark Chen and Ms. Weng—both independent directors with no managerial or executive role at GCBC—had "control" over GCBC or the transactions at issue. And *second*, the Complaint fails to plead that either Mark Chen or Ms. Weng were "culpable participants" in any alleged fraud.

2

Additionally, the claims against Mark Chen should also be dismissed for lack of personal jurisdiction. Mark Chen has been a resident of China since 2005 and has had no meaningful contacts with New York for nearly twenty years. And while Plaintiffs allege Mark Chen attempted to attend a GCBC shareholder meeting in New York after the Class Period, that allegation fails to establish specific personal jurisdiction over Mark Chen because Plaintiffs' claims do not "arise out of" any conduct by Mark Chen at that meeting.

## SUMMARY OF THE COMPLAINT

GCBC is a Cayman Islands-incorporated company and is headquartered in Hong Kong, China. Compl. ¶ 17. GCBC provides umbilical cord blood storage and operates in China. *Id.*

Plaintiffs assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against GCBC and its former officers and directors—including its former Chairman Defendant Kam, former CEO Defendant Tina Zheng ("Zheng"), former CFO Defendant Albert Chen ("Albert Chen"), and two former non-executive independent directors, Mark Chen and Ms. Weng[2]—as well as Defendant Golden Meditech Holdings Limited ("Golden Meditech") and Cellenkos. The Complaint alleges that, between 2015 and 2022, GCBC and its subsidiaries made a series of unspecified transfers to companies controlled by Defendant Kam, including subsidiaries of Defendant Golden Meditech. *Id.* ¶ 4. The Complaint further alleges that Defendants sought to conceal the alleged transfers through a "sham transaction" for GCBC to acquire Defendant Cellenkos in a cash and stock transaction. *Id.* ¶ 5.

Plaintiffs allege that GCBC's share price fell following the announcement of the

---

[2] While the Complaint generally refers to Mark Chen and Ms. Weng as "directors," the documents upon which Plaintiffs rely make clear that Mark Chen and Ms. Weng were independent, non-executive directors. *See, e.g.*, Ex. 1 (Form 20-F dated July 29, 2021) at 105 (identifying Mark Chen and Ms. Weng as "Independent Non-executive Director[s]"); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (recognizing that at the motion to dismiss stage, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents . . ., and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").

Cellenkos transaction and again after a subsequent petition filed by a GCBC shareholder in the Cayman Islands seeking to enjoin the transaction (the "Winding Up Petition"). *Id.* ¶¶ 79-82. Plaintiffs further allege that, in the Cayman Islands proceedings, Defendant Albert Chen submitted a bank statement to the court as evidence that the $664 million cash portion of the transaction had already been paid, but that bank statement was later revealed to be a forgery. *Id.* ¶¶ 70-74. Plaintiffs further allege that GCBC's former directors have not cooperated in the Cayman Islands proceedings. *Id.* ¶¶ 59, 61, 86. Even if that were true, those proceedings all occurred after the alleged disclosures were made and after the alleged scheme was complete. *Id.*

The Complaint asserts three causes of action. First, Plaintiffs assert a "scheme liability" claim against all Defendants—including Mark Chen and Ms. Weng—under Section 10(b) of the Exchange Act and Rule 10b–5(a) & (c), promulgated thereunder. *See id.* ¶¶ 178-80. Second, Plaintiffs assert a separate Section 10(b) claim against only GCBC and Defendants Zheng and Albert Chen, alleging those defendants made certain false and/or misleading statements regarding GCBC's financial condition and whether certain entities qualified as related parties of GCBC. *See id.* ¶¶ 127-62, 181-83. (Plaintiffs do not allege Mark Chen or Ms. Weng had any role in the alleged misstatements. *See id.*) Third, Plaintiffs assert a control person claim under Section 20(a) of the Exchange Act against each of the Individual Defendants[3]—including Mark Chen and Ms. Weng—and Defendant Golden Meditech. *Id.* ¶¶ 184-89. As relevant to this motion, Plaintiffs assert that all such defendants were "controlling persons" of GCBC within the meaning of Section 20(a). *Id.* ¶ 185. The alleged class period is from June 18, 2019 through May 9, 2022. *Id.* ¶ 1.

---

[3] The "Individual Defendants" are Kam, Albert Chen, Zheng, Mark Chen, and Ms. Weng. Compl. ¶ 26.

## LEGAL STANDARDS

At the motion to dismiss stage, a court should "accept as true all factual allegations and draw from them all reasonable inferences," but it need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (citation and quotation omitted). A complaint will not suffice if it contains "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Where, as here, a complaint alleges a Rule 10b–5(a) or (c) claim, it must also satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Walsh v. Rigas*, No. 17-cv-4089-NRB, 2019 WL 294798, at *5 (S.D.N.Y. Jan. 23, 2019) (quoting Fed. R. Civ. P. 9(b)). Further, where, as here, scienter is an element of a plaintiff's claim, the PSLRA requires the plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 129 (2d Cir. 2011) (quoting 15 U.S.C. § 78u–4(b)(2)(A)).

## ARGUMENT

## I.    THE COMPLAINT FAILS TO PLEAD A SECTION 10(B) CLAIM AGAINST MARK CHEN OR MS. WENG

"To state a scheme liability claim, a plaintiff must show: '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'" *Danske Bank*, 11 F.4th at 105 (quoting *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020)). Additionally, as with any private action under Section 10(b) and Rule 10b–5, Plaintiffs must also plead and prove loss causation, *In re*

*Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 158 (S.D.N.Y. 2012), and that the allegedly deceptive or fraudulent scheme or activity occurred "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). And, as noted, "[b]ecause scheme claims sound in fraud, they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Danske Bank*, 11 F.4th at 105. Thus, "[t]o maintain a 10b–5(a) or (c) claim, a plaintiff must specify 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'" *Id.* (citation omitted).

A.     **The Complaint Fails To Plead A Deceptive Act By Mark Chen Or Ms. Weng**

Plaintiffs' scheme liability claim must be dismissed as against Mark Chen and Ms. Weng because the Complaint fails to particularize a single deceptive or manipulative act by either. The Complaint asserts that "Defendants" generally committed deceptive acts by: (i) causing a GCBC subsidiary to make undisclosed payments to entities controlled by Defendant Kam and related to Golden Meditech; and (ii) attempting to cover up the misappropriations by having GCBC agree to pay $664 million for the acquisition of Cellenkos. Compl. ¶¶ 57, 67, 70. But generic allegations of conduct by all "Defendants" are conclusory and plainly insufficient to state a securities fraud claim against Mark Chen or Ms. Weng.[4] *Gomez v. Credit Suisse AG*, No. 22-cv-115-JPC-BCM, 2023 WL 2744415, at *11 (S.D.N.Y. Mar. 31, 2023) ("General allegations not tied to the defendants or resting upon speculation are insufficient."), *aff'd*, No. 23-862-cv, 2024 WL 506240 (2d Cir. Feb. 9, 2024); *In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906-AS, 2024 WL

---

[4] Even if the heightened pleading standards for securities fraud claims did not apply, Plaintiff's reliance on group pleading is impermissible. "[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes, and that Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it." *Nesbeth v. New York City Mgmt. LLC*, No. 17-cv-8650-JGK, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) (citations omitted).

3924708, at *2 (S.D.N.Y. Aug. 23, 2024) ("because Rule 9(b) applies, 'a plaintiff must specify what deceptive or manipulative acts were performed, which defendants performed them, [and] when the acts were performed'" (citation omitted)).   As discussed below, there are no particularized facts showing any deceptive or manipulative act by Mark Chen or Ms. Weng.

*First*, Plaintiffs do not allege that Mark Chen or Ms. Weng had any role in the allegedly fraudulent transfers by GCBC.  *See* Compl. ¶¶ 4, 55-57.  Indeed, Mark Chen and Ms. Weng were independent, non-executive directors of GCBC who are not alleged to have had any control of, or involvement in GCBC's day-to-day operations.

*Second*, Plaintiffs allege no facts showing any act by Mark Chen or Ms. Weng in the purported "cover-up" by way of the Cellenkos transaction.  *Id*. ¶¶ 62-68.  Rather, the only particularized act alleged by either Mark Chen or Ms. Weng is that, nearly a month after the class period ended, in June 2022, Mark Chen and Ms. Weng "attempted to attend" an extraordinary general meeting of shareholders ("EGM")[5] called by one of GCBC's shareholders, but were prevented from doing so.  *See id*. ¶¶ 24-25, 91, 103.  This sole alleged act of attempting to attend a shareholders' meeting falls far short of pleading a deceptive act by either Mark Chen or Ms. Weng.  There is, of course, nothing inherently deceptive or improper about attending a shareholder meeting.[6]  *Cf. In re CarLotz*, WL 3924708, at *4 (in case concerning transmission of false information, holding deceptive act not pleaded based on allegations of "attending a conference" because "[t]he mere act of sitting in a hotel ballroom does not itself 'transmi[t]' any information" (citing *S.E.C. v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d Cir. 2022)).  Moreover, despite

---

[5] GCBC's Amended and Restated Memorandum of Association ("Memorandum of Association") provides that all general meetings are "extraordinary general meetings," except for the annual general meeting.  Ex. 2 § 57.

[6] To the contrary, GCBC's Memorandum of Association requires that directors be given notice of any EGM and provides that directors need not hold any shares to be entitled "to attend and speak" at any such meeting.  *See* Memorandum of Association at Arts. 59, 86(7).  Further, Mark Chen and Ms. Weng were in fact shareholders of GCBC and were entitled to attend the EGM in that capacity as well.  *See* Ex. 1 at 113.

alleging that there was some sort of "argy bargy" prior to the EGM, Plaintiffs do not particularize a single act by either Mark Chen or Ms. Weng before or during the meeting, let alone a deceptive one. *See* Compl. ¶ 91. Further, any alleged deception at the EGM would still fail to state a claim because that meeting occurred on June 16, 2022, over a month after the Class Period ended on May 9. *See id.* ¶¶ 1, 91; *In re Int'l Bus. Mach. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) ("A defendant . . . is liable only for statements during the class period.").[7]

While Plaintiffs argued in their pre-motion letter that Mark Chen and Ms. Weng approved the Cellenkos transaction, Pls' Ltr. (ECF No. 112) at 3, that argument fails. First, the Complaint lacks any particularized allegations showing that Mark Chen and Ms. Weng in fact approved the transaction. Plaintiffs rely on the allegation that Mark Chen and Ms. Weng "were directors of GCBC," *id.*, but there are no facts concerning their role in the Board's supposed approval of the transaction.[8] Plaintiffs therefore fail to plead any act by Mark Chen or Ms. Weng with particularity as required to state a Section 10(b) claim. *See ATSI Commc'ns*, 493 F.3d at 102 ("General allegations not tied to the defendants or resting upon speculation are insufficient."). Moreover, even if Mark Chen and Ms. Weng did approve the Cellenkos transaction, there is nothing inherently deceptive about approving an acquisition, even if done on

---

[7] Because the EGM occurred after the class period, Plaintiffs necessarily could not have relied on any conduct at the EGM for purposes of their class period transactions, as required to state a claim. *See In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 471 (S.D.N.Y. 2017) ("'Reliance by the plaintiff upon the defendant's deceptive acts is an essential element' of a private cause of action alleging scheme liability under subsections (a) and (c) of Rule 10b–5." (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008))). Accordingly, any claim based on the EGM should also be dismissed for failure to plead reliance.

[8] The Complaint also fails to allege that the Board approved the transaction. The only allegations regarding the Board's involvement with the transaction is that the transaction was "rushed through by management" with "no meaningful deliberation of GCBC's Board." Compl. ¶¶ 81, 8. Even if true (and even if particularized as to Mark Chen and Ms. Weng), this allegation fails to plead a deceptive act. *See In re CarLotz*, 2024 WL 3924708, at *5 ("it's clear that an act must be 'inherently deceptive' to give rise to scheme liability; allegations of 'corporate mismanagement' do not suffice"); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 170 (S.D.N.Y. 2021) (dismissing scheme liability claim against board member who approved a subsequently-enjoined transaction that he "did not think . . . would benefit stockholders" and noting "[w]hile a claim for breach of fiduciary duty may be appropriate here, a claim for securities fraud is not").

a compressed timetable.  Indeed, Plaintiffs do not allege that the Board approved a sham transaction or had any knowledge of or role in the alleged forged $664 million payment; they allege only that the Board approved an agreement to pay $664 million in exchange for acquiring Cellenkos.  Accordingly, there was nothing "inherently deceptive" about any Board approval, as required to give rise to scheme liability.  *In re CarLotz*, 2024 WL 3924708, at *5; *cf. S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (dismissing scheme liability claim based on individuals' alleged roles in negotiating and approving "round trip" transactions that AOL used to inflate its reported advertising revenue because "[t]here is nothing inherently deceptive about structuring a transaction with a counterparty so that the counterparty purchases advertising" and the only deception was "the manner in which those transactions were accounted for by AOL").

Having failed to plead any facts showing a deceptive or manipulative act by Mark Chen or Ms. Weng, the Complaint necessarily fails to state a Section 10(b) claim against them.  *See, e.g.*, *Danske Bank*, 11 F.4th at 105 (dismissing scheme liability claim for failure to "articulate with precision the contours of [the] alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it"); *In re Eletrobras*, 245 F. Supp. at 471 (dismissing scheme liability claim against executive officers because the complaint failed to plead that they "actively participated in any bribery or bid-rigging scheme").

### B.    Plaintiffs Fail To Plead A Strong Inference Of Scienter By Mark Chen And Ms. Weng

To plead scienter under Section 10(b), Plaintiffs must "plead with particularity facts that give rise to a 'strong'—i.e., a powerful or cogent—inference" that the defendant intended "to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw

from the alleged facts," *id.*, meaning that "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323-24. "In order to plead scienter adequately, the plaintiffs must allege facts supporting a strong inference with respect to each defendant." *In re Eaton Corp. Sec. Litig.*, No. 16-cv-5894-JGK, 2017 WL 4217146, at *11 (S.D.N.Y. Sep. 20, 2017).

"Plaintiffs may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *In re Meta Materials Sec. Litig.*, No. 21-cv-7203-JRC, 2023 WL 6385563, at *22 (E.D.N.Y. Sept. 29, 2023) (quoting *ATSI Commc'ns*, 493 F.3d at 99). Here, Plaintiffs allege no facts to support any inference of scienter as to Mark Chen and Ms. Weng under either theory, let alone a cogent and compelling inference.

### 1. Plaintiffs Fail To Plead Motive And Opportunity To Commit Fraud

To plead scienter through "motive and opportunity to commit fraud," plaintiffs must "'allege that defendants benefitted in some concrete and personal way from the purported fraud,' such as by profiting from insider sales at artificially inflated prices." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 380 (S.D.N.Y. 2004) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)). There are no such allegations as to Mark Chen or Ms. Weng. Indeed, the Complaint does not allege any facts suggesting a motive for Mark Chen or Ms. Weng to commit fraud. Nor does it allege that Mark Chen or Ms. Weng received any "concrete and personal" benefit, or any benefit at all, from the alleged scheme. *In re Citigroup*, 330 F. Supp. 2d at 380. Accordingly, Plaintiffs fail to plead scienter under a "motive and opportunity" theory.

### 2. Plaintiffs Fail To Plead Conscious Misbehavior Or Recklessness

Because Plaintiffs fail to allege any motive or opportunity to commit fraud, any showing of scienter based on circumstantial allegations must be "correspondingly greater." *See ECA,*

*Loc. 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  Strong circumstantial evidence of conscious misbehavior or recklessness requires "a state of mind approximating actual intent," and not merely a heightened form of negligence, and "conduct that at the least is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (quoting *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000)). Plaintiffs have not satisfied this burden as to Mark Chen and Ms. Weng.

Plaintiffs allege in conclusory terms that "Defendants" would have had access to unspecified information purportedly reflecting "Defendants' scheme."  Compl. ¶ 164 ("the Individual Defendants, by virtue of their receipt of information reflecting Defendants' scheme and the true facts regarding GCBC . . . participated in the fraud alleged herein").  Yet where, as here, "plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."  *Greco v. Qudian Inc.*, No. 1:20-cv-577-GHW, 2022 WL 4226022, at *26 (S.D.N.Y. Sept. 13, 2022) (citation and quotation omitted). And here, Plaintiffs fail to specify a single specific piece of information allegedly known to Mark Chen or Ms. Weng at any given time, let alone information that somehow reflected a fraudulent scheme.  Accordingly, Plaintiffs fail to plead scienter based on supposed access to contrary facts.  *See, e.g.*, *Russo v. Bruce*, 777 F. Supp. 2d 505, 525 (S.D.N.Y. 2011) (holding "a conclusory allegation that contrary information was well known within a company . . . does not create a strong inference of scienter" where complaint fails to specify "to whom this was made known, what precisely was made known, how it was made known or when it was made known"); *Steinberg v. Ericsson LM Tel. Co.*, No. 07-cv-9615-RPP, 2008 WL 5170640, at *13 (S.D.N.Y.

Dec. 10, 2008) (holding "boilerplate allegations" that adverse information was contained in "internal non-public reports" are "not a sufficient basis for alleging scienter").

Plaintiffs also cannot rely on Mark Chen's and Ms. Weng's positions as independent directors to infer that they had fraudulent intent.  *See* Compl. ¶ 164.  Even for executives who— unlike Mark Chen and Ms. Weng—are involved in day-to-day corporate operations, it is blackletter law that scienter cannot be inferred from a defendant's position within the company. *See, e.g.*, *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 212 (S.D.N.Y. 2012) ("Scienter cannot be inferred solely from the fact that, due to the defendants' . . . executive managerial position, they had access to the company's internal documentation as well as any adverse information." (citation omitted)); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 128 (S.D.N.Y. 2013) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter." (citation omitted)).

Further, even if Plaintiffs could rely on information that was allegedly presented to GCBC's board of directors, the Complaint does not identify any such information that would have revealed any alleged scheme regarding the Cellenkos transaction.  For example, Plaintiffs allege the Board "was first informed of the Transaction and provided with a draft PowerPoint presentation and execution version of the Transaction Documents" on April 26, 2022, but they do not suggest those documents revealed any misappropriations or cover-up.  Compl. ¶ 99.  In fact, Plaintiffs do not allege any detail about these documents whatsoever.  Plaintiffs' allegations therefore fall far short of pleading the detail required to raise a strong inference of scienter.  *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 408 (S.D.N.Y. 2016) (holding scienter not pleaded based on allegation that CEO was aware of contracts that allegedly included improper kickbacks

because there was no "supporting content showing [the CEO] had some indication that the contracts were improper"); *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, No. 11-cv-398-GBD, 2013 WL 4405538, at *7 (S.D.N.Y. Aug. 5, 2013) ("It is not enough to simply allege that defendants were receiving 'reports;' rather, Plaintiffs must plead that the information that defendants' [] were receiving was different than that reported to the market." (citation omitted)); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 351-52 (S.D.N.Y. 2011) (holding that "no inference of access to contrary facts" arises from allegations that defendants "received reports detailing significant and widespread problems" where plaintiffs "fail to specify which reports revealed the widespread [problems or] what information those reports contained").

Nor can Plaintiffs plead scienter by alleging the Cellenkos transaction was "rush[ed] through" in a matter of days with "no meaningful deliberation of GCBC's Board," because there are still no particularized allegations of fact showing Mr. Chen or Ms. Weng somehow knew the transaction was a sham or otherwise bearing on their states of mind. *See, e.g.*, *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 814 (S.D.N.Y. 2018) (holding scienter not pleaded based on approval of illegal payment because the plaintiff did not plead facts showing the defendants knew the payment was unlawful). Absent such facts, Plaintiffs' allegations suggest, at most, a claim for breach of fiduciary duty, but they fall far short of pleading a claim for securities fraud.[9]

Further, the documents Plaintiffs cite in the Complaint show that the Board was provided with multiple documents supporting the Cellenkos transaction, including a valuation of GCBC prepared by Duff & Phelps Opinions Practices, a 52-page Cellenkos Valuation Report by Redwood Valuation Partners, an analysis of "the attractiveness of the technology developed

---

[9] Claims for breach of fiduciary duty against Mr. Chen and Ms. Weng, among others, are being litigated in a derivative action filed in New York State court in 2023, by the same plaintiff who initiated this action. *See* Compl., *MW Gestion v. Cellenkos Inc.*, Index No. 653598/2023, NYSCEF No. 2 (Sup. Ct. N.Y. Cnty. July 25, 2023).

licensed or owned by [Cellenkos]," and a GCBC Tax Analysis by Deloitte.  *See* Ex. 3 at ¶ 18.2.[10]
As Plaintiffs do not allege these documents somehow showed that the transaction was a sham,
the far more plausible inference is that Mark Chen and Ms. Weng believed the Cellenkos
transaction was a legitimate acquisition that was in the best interests of the company.  *Cf. In re
Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 418 (S.D.N.Y. 2007) (holding allegations that
investment advisor failed to perform promised due diligence before recommending an
investment insufficient to support an inference that the advisor knew the investment was a Ponzi
scheme and recognizing, given the scheme had been concealed from investors for years, the
more compelling inference was that "due diligence would not have uncovered the fraud").

Likewise, Plaintiffs fail to plead scienter by arguing that Mark Chen and Ms. Weng
"attempted to disrupt" a shareholder meeting or "sought to frustrate" efforts in the Cayman
Islands proceedings.  *See* Pls' Ltr. (ECF No. 112) at 4.  There are no particularized facts alleged
showing how Mark Chen and Ms. Weng purportedly tried to "disrupt" the EGM that they had
every right to attend the meeting in their capacities as board members and shareholders.  The
Complaint merely alleges they "attempted to attend" the meeting but were "refused entry to the
meeting room."  Compl. ¶¶ 24-25, 91.  Likewise, there are no particularized facts showing how
Mark Chen or Ms. Weng purportedly sought to "frustrate" any efforts in the Cayman
proceedings.  Pls' Ltr. (ECF No. 112) at 4.  Nor, in any event, would such allegations be
sufficient to plead a strong inference of scienter.  Plaintiffs, therefore, fail to plead any inference
of scienter, let alone a "strong" inference as required to state a claim.  *See Cheng v. Can. Goose
Holdings Inc.*, No. 19-cv-8204-VSB, 2021 WL 3077469, at *9 (S.D.N.Y. July 19, 2021)
(holding complaint failed to plead a strong inference of scienter based on "conclusory allegations

---

[10] All citations to Exhibits refer to the Exhibits to the Declaration of Susan L. Grace, filed herewith.

indicating that Defendants were 'aware of adverse information at the time'" and a "hodgepodge of circumstantial evidence . . . that fails to indicate that Defendants had any specific contradictory information in their possession [at the time of the alleged fraud]" (quoting *In re Sierra Wireless Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007))).

In short, because there are no non-conclusory allegations bearing on Mark Chen's or Ms. Weng's state of mind at any given time, the Complaint fails to plead a strong inference of scienter. The claims against Mark Chen and Ms. Weng must therefore be dismissed.

### C.    Plaintiffs Fail To Plead Loss Causation

Loss causation requires a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted). "[A] plaintiff can plead loss causation only by alleging that the defendant's misstatements or omissions 'concealed something from the market that, when disclosed, negatively affected the value of the security.'" *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 282 (S.D.N.Y. 2008) (quoting *Lentell*, 396 F.3d at 173); *see also Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 178 (S.D.N.Y. 2012) (holding loss causation not pleaded where the articles and events alleged as "partial disclosures" failed "to disclose anything about the alleged scheme").

Here, Plaintiffs specifically allege they were defrauded by a scheme to misappropriate hundreds of millions of dollars and an attempt to "conceal" these misappropriations through the Cellenkos transaction. *See* Compl. ¶¶ 5, 62, 78, 162. Plaintiffs fail to plead loss causation because no such scheme was revealed in either of the disclosures that Plaintiffs assert caused their alleged losses—namely, (i) the April 29, 2022 announcement of the Cellenkos transaction; and (ii) the Winding Up Petition filed in the Cayman Islands court on May 5, 2022. *Id.* ¶¶ 9, 63, 69, 79-82. The press release announcing the Cellenkos transaction did not reveal the

misappropriations or any purported cover-up. *See id.* ¶ 63. To the contrary, Plaintiffs' own allegations acknowledge that the market reacted not to the disclosure of any fraud, but rather to the "plan to double GCBC's share count" and "pay $664 million" to acquire Cellenkos. *Id.* ¶ 79; *see also In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 471 (E.D.N.Y. 2020) ("[L]oss causation is not adequately pled simply by allegations of a drop in stock price following an announcement of bad news if the news did not disclose the fraud."), *aff'd*, 828 F. App'x 747 (2d Cir. 2020); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015) ("Alleging that the market reacted negatively to new information about a publicly-traded company, without more, is insufficient to plead loss causation in a private securities fraud action."), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

Similarly, the May 5 Winding Up Petition did not reveal any misappropriations or cover-up. Rather, as Plaintiffs allege, the petition revealed other "problems with the Cellenkos transaction" which allegedly made it unattractive to shareholders, including that Board members were only notified of the transaction "a mere three days" before the transaction was publicly announced and that Cellenkos had previously received a valuation lower than the price GCBC agreed to pay. Compl. ¶ 81. Again, absent any disclosure of the alleged fraud, this alleged revelation does not plead loss causation.[11] *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 446 (S.D.N.Y. 2021) ("Although a plaintiff may plead loss causation without alleging a disclosure that precisely mirrors the substance of a prior undisclosed fraud, the

---

[11] Plaintiffs also fail to plead loss causation with respect to their misstatement claim under Rule 10b-5(b). *See* Compl. ¶¶ 181-83. Plaintiffs allege GCBC's financial statements were misleading because of the same alleged misappropriation discussed above, which was not revealed in either of the alleged disclosures to which the market allegedly reacted. *See, e.g., id.* ¶¶ 9, 63, 69, 79-82. Plaintiffs also allege various statements were misleading because of an undisclosed alleged relationship between Defendant Kam and Defendant Zheng (*see id.* ¶¶ 3, 41, 138-39, 145-46, 152-53); however, that relationship was also not revealed in either the announcement of the Cellenkos transaction or in the Winding Up Petition. *See id.* ¶¶ 63, 81.

disclosure must nevertheless reveal to the market some part of the truth regarding the alleged fraud." (citation and quotation omitted)).

## II.    THE COMPLAINT FAILS TO PLEAD A CONTROL PERSON CLAIM AGAINST MARK CHEN OR MS. WENG

To plausibly allege a claim for control person liability, a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).

Here, the Section 20(a) claim must be dismissed as to Mark Chen and Ms. Weng because the Complaint fails to allege any facts plausibly suggesting they had "control" over either GCBC or the allegedly fraudulent transactions at issue and because Plaintiffs fail to plead that Mark Chen or Ms. Weng was a "culpable participant" in any alleged fraud.[12]

### A.    The Complaint Fails To Plead Mark Chen And Ms. Weng Had Control Over GCBC Or The Transactions At Issue

To establish the element control, a plaintiff must show that "the defendant possessed 'the power to direct or cause the direction of the management and policies of [the primary violator], whether through the ownership of voting securities, by contract, or otherwise.'" *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 596 (S.D.N.Y. 2018). This requires "an individualized determination of a defendant's control of the primary violator." *In re Alstom SA*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005). Further, a defendant "must not only have actual control over the primary violator, but have actual control over the *transaction* in question." *Id.* at 487.

---

[12] Given that Plaintiffs fail to plead loss causation with respect to either the alleged scheme or the alleged misstatements, *see supra* n.11, the Section 20(a) claim also fails for lack of an underlying violation of Section 10(b). *See In re Vivendi Universal, S.A. Sec. Litig.*, 842 F. Supp. 2d 522, 527 (S.D.N.Y 2012) ("the plaintiff cannot succeed on a Section 20(a) controlling-person-liability claim" where it fails to allege properly a primary violation).

Plaintiffs allege in conclusory fashion that Mark Chen and Ms. Weng were—along with each of the other Individual Defendants and Golden Meditech—"controlling persons of GCBC within the meaning of Section 20(a) of the Exchange Act,"[13] but they allege no facts plausibly supporting that allegation as to Mark Chen and Ms. Weng.  Compl. ¶ 185.  For example, there are no allegations that Mark Chen or Ms. Weng—both independent, non-executive directors on a board that had eight members at the time of the Cellenkos transaction, *see* Ex. 1 at 105—had any role in GCBC's day-to-day activities generally or in the alleged schemes in particular, as required.  *McIntire*, 927 F. Supp. 2d at 122 ("To be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person," as well as "actual control over the *transaction* in question." (emphasis in original)); *cf. Converse, Inc. v. Norwood Venture Corp.*, No. 96-cv-3745-HB, 1997 WL 742534, at *4 (S.D.N.Y. Dec. 1, 1997) (dismissing Section 20 claims in part because complaint lacked allegations that that defendant "was involved in the day to day operations of [the company] or had *any* role in preparing or approving the allegedly misleading [agreement]").  Indeed, as discussed above, Plaintiffs do not allege that Mark Chen or Ms. Weng had any role in the alleged transfers or any alleged misstatements.  *See supra* at 7.  And it is blackletter law that "mere status as a board member is not enough to demonstrate actual control over the company and the transaction in question."  *In re Alstom SA*, 406 F. Supp. 2d at 495; *see also In re Smith Barney*, 884 F. Supp. 2d at 167 (dismissing Section 20(a) claim where the allegations "focus exclusively on [defendant's] control person status rather than [defendant's] exercise of control over the matters at issue," and "do not allege that [defendant] signed, drafted, approved . . . confirmed . . . [or] ordered or encouraged [officers or directors] to sign a misleading statement").

---

[13] Plaintiffs do not allege Mark Chen and Ms. Weng "controlled" any Defendant besides GCBC.  *See* Compl. ¶ 185.

Absent facts showing any control by Mark Chen and Ms. Weng over GCBC or the alleged scheme, the Section 20(a) claim against Mark Chen and Ms. Weng must be dismissed.

**B.    The Complaint Fails To Plead That Mark Chen And Ms. Weng Were Culpable Participants In Any Alleged Fraud**

The Section 20(a) claim against Mark Chen and Ms. Weng must also be dismissed for the independent reason that the Complaint fails to plead that they were "culpable participants" in any alleged fraud. *McIntire*, 927 F. Supp. 2d at 122. To satisfy the "culpable participation" element, a plaintiff must plead that the controlling person was "in some meaningful sense" a "culpable participa[nt]" in the fraud perpetrated by the controlled person. *Stone Family Trust v. Credit Suisse AG*, No. 19-cv-5192-AT, 2022 WL 954743, at *8 (S.D.N.Y. Mar. 30, 2022). This requires "particularized facts of the controlling person's conscious misbehavior or recklessness" sufficient to show "a strong inference" that "the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." 15 U.S.C. § 78u-4; *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 439 (S.D.N.Y. 2014); *see also In re Deutsche Telekom AG Sec. Litig.*, No. 00-cv-9475-SHS, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) ("the PSLRA requires a strong inference of culpable participation"); *In re Citigroup Sec. Litig.*, 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010) (plaintiffs must "plead particularized facts that give rise to a strong inference of [the alleged control person's] culpable participation in the alleged fraud").

As discussed above, the Complaint fails to identify any role Mark Chen or Ms. Weng had in the alleged scheme, let alone control over any allegedly fraudulent transactions. It is likewise completely devoid of facts bearing on Mark Chen's or Ms. Weng's state of mind at any given time, let alone particularized facts showing they knew that GCBC was engaging in fraudulent conduct. *In re Aegean Marine*, 529 F. Supp. 3d at 150 ("To plead the culpable participation

element of a Section 20(a) claim, a plaintiff 'must allege facts indicating that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct.'" (quoting *Special Situations Fund III*, 33 F. Supp. 3d at 439)); *McIntire*, 927 F. Supp. 2d at 122 ("the heightened pleading standards of the PSLRA apply with respect to the third-prong of a § 20(a) claim, which requires plaintiffs to allege facts demonstrating that the defendant was a culpable participant"). Therefore, for the same reason the Complaint fails to plead scienter, it also fails to plead a control person claim under Section 20(a) as to Mark Chen or Ms. Weng. *See, e.g.*, *In re Lihua Int'l, Inc. Sec. Litig.*, No. 14-cv-5037-RA, 2016 WL 1312104, at *18 (S.D.N.Y. Mar. 31, 2016) (recognizing that plaintiffs are required "to plead culpable participation with the same particularity they must plead scienter under the PSLRA" and holding "Plaintiffs do not plead [the defendant's] culpable participation for the same reasons they do not plead her scienter"); *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 572 (S.D.N.Y. 2011) (holding culpable participation not pleaded because "[m]erely generally alleging that these Individual Defendants were decision-making officials or had access to material information is inadequate circumstantial evidence that does not indicate involvement in perpetrating the fraud"); *see also In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp.2d 371, 437 (S.D.N.Y. 2001) (dismissing Section 20(a) claim because the complaint "failed to allege more than negligence" by outside directors and thus did not show that they were "culpable participants in the underlying fraud perpetrated by the Inside Directors").

## III.   **THE COURT LACKS PERSONAL JURISDICTION OVER MARK CHEN**

The claims against Mark Chen must be dismissed for the additional and independent reason that the Court lacks personal jurisdiction over him.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Starostenko v. UBS*

20

*AG (A Swiss Bank)*, No. 19-cv-9993-KPF, 2023 WL 34947, at \*4 (S.D.N.Y. Jan. 4, 2023) (quoting *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "In determining whether it has personal jurisdiction over a defendant, the Court employs a two-step inquiry." *In re Aegean Marine*, 529 F. Supp. 3d at 134. "First, the Court must determine whether there is a 'statutory basis for exercising personal jurisdiction.'" *Id.* "Second, the Court must consider whether exercise of personal jurisdiction over the defendant is consistent with due process under the Constitution, which requires the Court to determine whether the defendant has minimum contacts with the forum and whether it is reasonable to exercise jurisdiction." *Id.* (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)). Here, the statutory basis for personal jurisdiction is Section 27 of the Exchange Act, 15 U.S.C. § 78aa. *Id.* Plaintiffs fail to satisfy either prong of the due process analysis as to Mark Chen.

### A. The Complaint Fails To Allege That Mark Chen Has Sufficient Minimum Contacts With The United States

"In assessing minimum contacts, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Das*, 332 F. Supp. 3d at 800 (citation omitted). "Because the Exchange Act authorizes worldwide service of process, the relevant contacts for purposes of the 'minimum contacts' analysis are those with the United States as a whole." *Li v. Eqonex Ltd.*, No. 1:23-cv-03346, 2024 WL 4241951, at \*19 (S.D.N.Y. Sept. 18, 2024). "Under the minimum contacts analysis, contacts with the forum may confer two types of jurisdiction—specific and general." *Prime Mover Capital Partners L.P. v. Elixir Gaming Tech., Inc.*, 761 F. Supp. 2d 103, 106 (S.D.N.Y. 2011). First, courts may exercise personal jurisdiction over a defendant "when the defendant's contacts with the forum have been continuous and systematic to establish the court's general jurisdiction over him." *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 488 (S.D.N.Y. 2011). Second, courts may exercise specific jurisdiction "when the

defendant has purposefully directed his activities toward the forum and the litigation arises out of or is related to his contact with the forum." *Id.* "To establish specific jurisdiction, the plaintiff must also show that the defendant 'purposely availed' himself of the privilege of doing business in the forum state and that the defendant could foresee being 'haled into court' there." *Id.* Here, Plaintiffs fail to establish that Mark Chen is subject to either general or specific personal jurisdiction.

Mark Chen is not subject to general jurisdiction in the United States because he is a resident of China, *see* Ex. 4 (Decl. of Mark D. Chen) at ¶¶ 2-3, and Plaintiffs do not allege any "continuous and systematic" contacts by Mark Chen with the United States whatsoever.[14] *Alki Partners*, 769 F. Supp. 2d at 488; *see also Sonera Holding*, 750 F.3d at 225 ("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home.").

Mark Chen is also not subject to specific jurisdiction because Plaintiffs' claims do not "arise out of" any alleged conduct by Mark Chen that was "purposefully directed towards" the United States. *In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 458 (S.D.N.Y. 2022). The only allegation of purposeful conduct by Mark Chen directed at the United States is that Mark Chen "attempted to attend" the June 2022 EGM in New York. Compl. ¶¶ 24, 103. This allegation does not establish specific jurisdiction because Plaintiffs' claims do not "arise out of" the EGM. *In re EHang*, 646 F. Supp. 3d at 458. Rather, Plaintiffs' claims arise out of the alleged misappropriation of funds and "cover up"—which allegedly occurred entirely outside the United States and in which Mark Chen had no alleged role—and alleged misstatements in

---

[14] While Plaintiffs allege that Mark Chen is "believed to reside in New York and/or Mainland China," Compl. ¶ 24, that speculative allegation is contradicted by Mark Chen's declaration, in which he explains that he currently resides in China and he has not lived in the United States since 2005. Ex. 4 at ¶¶ 2-3; *see also Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, No. 23-cv-10310-JSR, 2024 WL 3197606, at *1 (S.D.N.Y. June 27, 2024) ("[O]n a motion to dismiss. . . the Court does not need to 'accept[ ] as true a legal conclusion couched as a factual allegation nor allegations controverted by the defendant's affidavits that place the prima facie case in issue.'" (citation omitted)).

GCBC's press releases and SEC filings—in which Mark Chen also had no alleged involvement. *See* Compl. ¶¶ 128-62. The EGM is far too attenuated from these claims to provide a basis for the Court to exercise jurisdiction over Mark Chen, especially considering Mark Chen is not alleged to have done anything at the meeting and no fraud is alleged to have taken place at the EGM. *See, e.g.*, *NCA Holding Corp. v. Ernestus*, No. 97-cv-1372-LMM, 1998 WL 388562, at *6 (S.D.N.Y. July 13, 1998) (holding defendant not subject to personal jurisdiction in fraud action based on allegations that the defendant attended a meeting in New York where fraud was allegedly revealed because no new misrepresentations were made at that meeting such that "an assertion of personal jurisdiction over defendants [on the basis of that meeting] would violate the Due Process Clause"); *In re EHang*, 646 F. Supp. 3d at 458 (holding no personal jurisdiction over former director of a Chinese company where director had no alleged role in making the allegedly misleading statements at issue).[15]

### B. Exercising Jurisdiction Over Mark Chen Would Offend Traditional Notions Of Fair Play And Substantial Justice

Because Plaintiffs have failed to establish that Mark Chen has sufficient minimum contacts with the United States, the Court need not reach the second prong of the due process analysis. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 129 (2d Cir. 2008) (finding non-resident defendant's contacts insufficient for jurisdiction and declining to "consider whether personal jurisdiction would be 'reasonable'") (citing *Metropolitan Life Ins. Co.*, 84 F.3d at 568). Nevertheless, Plaintiffs' claims should also be dismissed because Plaintiffs have failed to establish that it would be consistent with traditional notions of fair play and substantial justice

---

[15] The claims against Mark Chen should also be dismissed because Plaintiffs failed even to attempt service on Mark Chen under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters at the address Mark Chen provided for service in China and Mark Chen remained unserved for well over 90 days after this action was filed on April 22, 2024 and after Lead Plaintiff was appointed on July 9, 2024. *See* Fed. R. Civ. P. 4(m).

for this Court to exercise jurisdiction over Mark Chen.  Indeed, the burden on Mark Chen—a resident of China who held a non-executive, independent director role at a Cayman company operating in China—is plainly onerous. Moreover, as courts in this District have recognized, "when a defendant, is not located in the United States, '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.'" *S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987)).

Because the Complaint fails to allege that this Court has jurisdiction over Mark Chen, Plaintiffs' claims against Mark Chen should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Mark Chen and Jennifer Weng respectfully request that this Court grant the Motion, dismiss the Complaint, and issue such further relief as the Court deems just and proper.

Dated: January 31, 2025

Respectfully submitted,

WHITE & CASE LLP

*/s/ David Hille*
David Hille
Ladan F. Stewart
Robert Tiedemann
Susan Grace
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 819-8200
dhille@whitecase.com
ladan.stewart@whitecase.com
rtiedemann@whitecase.com
susan.grace@whitecase.com

*Attorneys for Defendants Mark Chen
and Jennifer Weng*

24

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing memorandum of law, excluding the caption, table of contents, table of authorities, signature blocks, and this certificate, contains 8348 words and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as well as the Individual Practices in Civil Cases of the Honorable P. Kevin Castel.


Dated: January 31, 2025
      New York, New York

                                      */s/  David Hille*
                                        David Hille