# PX A

 GrantThornton

FSD Cause No. 108 of 2022 (IKJ)

# Global Cord Blood Corporation
# (In Provisional Liquidation) (the Company)
# Cause No. FSD 108 of 2022 (IKJ)

**TENTH Report**
Filing Date: 2 December 2024
Progress report cut-off Date: 22 November 2024



# Contents

| | | |
|---|---|---|
| 1 | Basis of Report | 2 |
| 2 | Disclaimer | 3 |
| 3 | Defined Terms | 4 |
| 4 | Executive Summary | 7 |
| 5 | Actions taken by the JPLs since the Ninth Report | 8 |
| 6 | Funding and costs to 30 September 2024 | 14 |
| 7 | Next steps | 16 |
| | Appendix A – Chronology of Key Events | 17 |

# 1 Basis of Report

## 1.1 Basis of Report

1.1.1 This report is to be used for the purpose of informing the Court and stakeholders of the progress made in the provisional liquidation of the Company, in accordance with the requirements of paragraph 12 of the Order dated 22 September 2022. Pursuant to the Court's previous direction, notice of this report will be published as a 6-K with the SEC.

1.1.2 This report has been prepared using the information available to the JPLs, being Margot MacInnis, John Royle and Chow Tsz Nga Georgia up to 22 November 2024. The JPLs have relied upon information that is available to them and recognise that this information may be incomplete and that they await third party verification. Accordingly, the JPLs consider there will be further developments in their investigations of the Company's affairs which will be incorporated in the JPLs' subsequent reports to the Court.

1.1.3 This report should be read in conjunction with all nine previous reports published. This report sets out the progress of the liquidation for the period 24 August 2024 to 22 November 2024.

# 2 Disclaimer

## 2.1 Disclaimer

2.1.1 The JPLs' investigations are continuing. Some matters being investigated are confidential and commercially sensitive. There are also ongoing proceedings which are subject to disclosure rules and codes of conduct in the relevant jurisdictions. Accordingly, consistent with the JPLs' approach to date, this report does not contain commercially sensitive or confidential information that could prejudice the outcome of the Provisional Liquidation or any proceedings. In a similar vein, the JPLs are not able to disclose the full results of their investigations to date.

2.1.2 In the event that this report is used for any purpose other than in accordance with its statutory purpose of informing the Court or in accordance with the JPLs' obligations under the Order, any party relying on this report does so entirely at their own risk and shall have no right of recourse against the JPLs, any GT entities, their partners, employees, professional advisors or agents.

2.1.3 None of the JPLs, GT, their partners, employees, professional advisors or agents accept any liability or assume any duty of care to any third party (whether it is an assignee or successor of another third party or otherwise) in respect of this report and any such party who receives a copy of this report whether from GT or any other source shall have no right of recourse against GT, their partners, employees, professional advisors or agents.

2.1.4 In preparing this report, the JPLs have relied upon information available to them and have not performed an audit examination on this information. Except where specifically stated, the JPLs have been unable to establish the reliability of the sources of information presented to them by reference to independent evidence.

2.1.5 The JPLs' report does not cover valuation advice or related valuation services, and no party should seek to rely on any comments by the JPLs in relation to the value of the assets of the Company.

2.1.6 Nothing in this report is intended to waive legal privilege in respect of any matter referred to herein, and privilege is not being waived.

2.1.7 "Grant Thornton" refers to the brand under which the Grant Thornton member firms provide assurance, tax and advisory services to their clients and/or refers to one or more member firms, as the context requires.

2.1.8 Grant Thornton Specialist Services (Cayman) Limited and Grant Thornton Recovery & Reorganisation Limited are member firms of Grant Thornton International Ltd ("**GTIL**"). GTIL and the member firms are not a worldwide partnership. GTIL and each member firm is a separate legal entity. Services are delivered by the member firms. GTIL does not provide services to clients. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions.

# 3 Defined Terms

## 3.1 Defined Terms

| | |
|---|---|
| **8 February 2024 HK Judgment** | Judgment handed down by the HK Court on 8 February in favour of the JPLs deeming the transfer away of the HK Subsidiaries of the Company for US$1 each (1 week before the appointment of the JPLs) as invalid |
| **Albert Chen or AC** | Albert Chen Bing Chen, former Chief Financial Officer of the Company |
| **BVI** | British Virgin Islands |
| **BVI Proceedings** | Proceedings in the BVI in which the Petitioner (and its associates) filed proceedings against GMSC and in which GMSC claims, inter alia that the Petitioner's shares in GCBC are subject to a share charge dated 30 March 2018 and that accordingly beneficial ownership of the Petitioner's shares in GCBC have passed to GMSC |
| **Cayman Share Charge** | Shares in the Company which are subject to an alleged share charge dated 30 March 2018 |
| **Cellenkos** | Cellenkos Inc – registered in Delaware, specialises in stem cell therapy and was the target entity in the 29 April 2022 Cellenkos Transaction |
| **Cellenkos Transaction** | On 29 April 2022 the Former Board purportedly approved a multi-step transaction whereby the Company would acquire 100% of the equity in Cellenkos and the rights to develop and commercialise certain of Cellenkos' existing and future products worldwide on 29 April 2022. This was purportedly in exchange for consideration of, inter alia, 114 million shares in the Company and US$664 million cash |
| **CISIL** | China In Shine Investment Limited, one of the defendants to the HK Proceedings |
| **Class Action Complaint** | A class action complaint filed in the United States District Court for the Southern District of New York that names the Company as a defendant. The JPLs were provided with a copy of the complaint on 16 May 2024 |
| **CoA** | HK Court of Appeal |
| **Controlling Shareholders** | The Petitioner, Oasis Investments II Master Fund Limited and IsZo Capital LP |
| **Cordlife** | Cordlife Group Limited, a listed company registered in Singapore and indirectly owned by GCBC |
| **Court** | The Grand Court of the Cayman Islands |
| **CSC Holdings** | China Stem Cells Holdings Limited – incorporated in the Cayman Islands |
| **Derivative Shareholder Complaint** | A derivative action filed in the Supreme Court of the State of New York (Index No. 653598/2023) by certain purported shareholders of the Company against various parties historically associated with the Company – including members of the Former Board |
| **Disclosure Order** | Court order requiring the Former Board to deliver up documents for examination, the books, records and documents of GCBC and its subsidiaries within their possession, custody or control to the JPLs or provide details of their location |
| **EGM** | Extraordinary general meeting |
| **EGM Injunction** | Injunction to prevent resolutions passed on 16 June 2022 at an extraordinary general meeting of shareholders voting against the Cellenkos Transaction and for the resignation of the Former Board and appointment of a new board of directors |
| **Enjoined HK Directors** | Albert Chen and/or Tina Zheng and/or Notake Minori and/or Sonoe Muramatsu |
| **Fifth Report** | Fifth Report prepared by the JPLs, submitted to the Court on 1 September 2023 and published on GCBC's website |
| **Fee Approval Period** | The JPLs' remuneration and disbursements for the period 22 September 2022 to 30 September 2023 |

| | | | |
|---|---|---|---|
| **Fee Approval Summons** | JPLs' Summons filed on 13 May 2024 in the Cayman Proceedings for court approval of the terms of their remuneration agreement and their remuneration for the Fee Approval Period pursuant to section 109(2) of the Companies Act and the IPR | **IPR** | Insolvency Practitioners' Regulations (2023 Consolidation) |
| | | **JPLs** | Margot MacInnis, John Royle and Chow Tsz Nga Georgia, the Joint Provisional Liquidators of GCBC |
| **Former Board** | The Company's former board of directors consisting of Mark D. Chen, Albert Chen Bing Chen, Jacky Cheng, Jack Chow, Ken Yungang Lu, Jennifer J. Weng, Xu Ping, Ting Zheng (information from general registry of the Cayman Islands) | **Maxcess** | Maxcess Finance Limited, registered as a private limited company in HK with Money Lender's License Number 0640/2022 |
| | | **Ninth Report** | Ninth report prepared by the JPLs, submitted to the Court on 2 September 2024 and published on GCBC's website |
| **Fourth Report** | Fourth Report prepared by the JPLs, submitted to the Court on 1 June 2023 and published on GCBC's website | | |
| **GCBC or the Company** | Global Cord Blood Corporation (In Provisional Liquidation) | **New LSC** | Zhai Lingyun, Michael Steven Weiss and Wang Yang with Zhai Lingyun appointed as Chairperson |
| **GMSC** | Golden Meditech Stem Cells (BVI) Company Limited, registered in the BVI. It sold its shareholding in GCBC to the shareholder of the Petitioner on 30 December 2016 | **Notake Minori or Notake** | Notake Minori, believed to be a resident of Japan, purportedly appointed to the boards of CSC Holdings, Stem South (BVI), and the HK Subsidiaries |
| **GP** | Cellenkos GP Limited – registered in the BVI, and acts as general partner of Cellenkos Holdings LP | **NYSE** | New York Stock Exchange |
| | | **ODIM** | Open Door Investment Management Limited |
| **Group** | The Company and its subsidiaries including, inter alia, the HK Subsidiaries and the PRC Subsidiaries | **Petitioner** | Blue Ocean Structure Investment Company Ltd – incorporated in the British Virgin Islands and also the party on whose application the JPLs were appointed. Holds an interest of c. 65.4% in GCBC |
| **GT** | Grant Thornton (a collective term for both Grant Thornton Recovery & Reorganisation Limited and Grant Thornton Specialist Services (Cayman) Limited) | | |
| | | **PIML** | Prime Intelligent Management Limited, purported corporate secretary of the HK Subsidiaries |
| **GTSS** | Grant Thornton Specialist Services (Cayman) Limited | **PRC** | People's Republic of China |
| **HK** | Hong Kong | **PRC Subsidiaries** | GCBC's indirectly owned, operating PRC subsidiaries |
| **HK Court** | The High Court of the Hong Kong Special Administrative Region | **Remuneration Agreement** | The JPLs' terms of remuneration approved by the Cayman Court as part of the Amended Summons |
| **HK Proceedings** | The legal proceedings initiated by the JPLs in HK regarding the HK Subsidiaries as previously outlined in the Second Report | **Second Fee Approval Period** | The JPLs' remuneration and disbursements for the period 1 October 2023 to 30 September 2024 |
| **HK Subsidiaries** | GCBC's indirectly owned HK subsidiaries, the majority of which are currently party to the HK Proceedings | **Second Report** | Second report prepared by the JPLs, submitted to the Court on 1 December 2022 and published on GCBC's website |
| **INEDs** | The former Independent Non-Executive Directors (of GCBC) | | |

| | |
|---|---|
| **Set-Aside Summons** | Petitioner's summons which sought to have the 29 July 2022 Judgment in the Petition Proceedings set aside on the grounds that it was procured by fraud |
| **Seventh Report** | Seventh report prepared by the JPLs, submitted to the Court on 8 March 2024 and published on GCBC's website |
| **Sixth Report** | Sixth report prepared by the JPLs, submitted to the Court on 1 December 2023 and published on GCBC's website |
| **Sonoe Muramatsu or Sonoe** | Sonoe Muramatsu, believe to be a resident of Japan, purportedly appointed to the boards of the HK Subsidiaries |
| **Stem South (BVI)** | China Stem Cells (South) Company Limited – incorporated in the British Virgin Islands |
| **Ting or Tina Zheng or TZ** | Former Chairperson and Executive Director of GCBC (as well as director of GMHL until 24 May 2019) |
| **Varied Order** | Order effective 20 February 2023 resulting from the JPLs' application to the Cayman Court by summons dated 16 January 2023 for orders, inter alia, that the Order be varied to include a penal notice that would be triggered in the event of further non-cooperation from members of the Former Board |
| **Yuen Kam** | The former Chairman and Executive Director of the Company |

# 4  Executive Summary

## 4.1  Summary

4.1.1    Since the Ninth Report, the JPLs have continued taking steps to take control of the Group and prevent asset dissipation. Securing and protecting the Group's operating businesses in the PRC and preventing the dissipation of the HK Subsidiaries remains an urgent and important priority for the JPLs and their counsel.

4.1.2    The JPLs have also continued taking steps to defend and protect the Company against attempts to remove assets from the structure by (amongst other matters):

    i.    Preparing the relevant papers to oppose the appeal of the 8 February 2024 HK Judgment by AC, TZ, and PIML.

    ii.    Continuing efforts to take control of and safeguard the operating business and assets of the PRC Subsidiaries and pursuing actions in a number of provinces in the PRC.

    iii.    Facilitating funding to satisfy outstanding petition debts in response to the winding-up petitions filed in HK by Maxcess against Stem South (BVI) and CSC Holdings.

    iv.    Pursuing realisations.

4.1.3    While continuing efforts to gain control over, protect and preserve the Group, the JPLs sought the Court's approval of their remuneration and disbursements for the Fee Approval Period by way of the Amended Summons, which was contested by the Controlling Shareholders, resulting in a drawn out Court process including a two day hearing on 9 and 10 October 2024. The Court handed down its final judgment on 13 November 2024 approving the JPLs' remuneration subject to certain discounts proposed by the JPLs.

4.1.4    The Company was served with the Class Action Complaint filed in the United States District Court, seeking compensation from various defendants, including the Company. The Class Action Complaint is continuing against the Company and other defendants. Due to a lack of funding, the JPLs have to date been unable to take any substantive steps in the Class Action Complaint proceedings.

## 4.2  Next Steps

4.2.1    The JPLs will, for so long as they remain in office, continue to investigate and/or progress litigation against the Enjoined HK Directors, Yuen Kam, and the Former Board (excluding Xu Ping) in order to protect and preserve the Group's assets. However, to do so, the JPLs require further funding on an urgent basis.

4.2.2    The lack of funding has, and continues to, put significant pressure on the JPLs, their firms and the JPLs' service providers to undertake work necessary to obtain control and secure the assets of the Company and to preserve value for the benefit of the Company's stakeholders collectively. To date, those professional service providers have, to a significant extent, acted on an unfunded basis with no guarantee as to payment. Unfortunately, the current scenario cannot continue.

4.2.3    Absent further funding being provided in an amount sufficient to discharge all current liabilities, the Company is unable to pay its debts as they fall due. That position is unlikely to change unless and until funding is obtained or value is unlocked lower down the Group structure, the timing and certainty of which is dependent upon certain variables including the outcome of the legal proceedings on foot in HK and the PRC.

4.2.4    The Company requires total funding of at least US$20 million comprised of (i) US$16.1 million to pay the unpaid debts, and costs of the provisional liquidation incurred to 30 September 2024; (ii) US$3.9 million to fund estimated costs incurred and to be incurred in the provisional liquidation to 30 June 2025.

4.2.5    The JPLs have now been in office for more than 2 years. The Company has insufficient liquid assets to pay the expenses of the provisional liquidation incurred to date and, as such, the JPLs consider it appropriate for (i) the JPLs to seek an order for their own discharge and (ii) for the powers of the Board to be restored.

4.2.6    The JPLs anticipate that an application for discharge will be filed on or before 11 December 2024 and a hearing date sought for the first available date on or after 13 January 2025.

4.2.7    The JPLs are taking steps to prepare a further fee report to stakeholders, detailing their remuneration and disbursements for the Second Fee Approval Period.

# 5 Actions taken by the JPLs since the Ninth Report

## 5.1 Books and Records

5.1.1 The JPLs have continued their efforts to acquire the Company's books and records. However, for the reasons previously highlighted in the Fourth and Fifth Reports, the position remains largely unchanged.

## 5.2 Assets

5.2.1 To date the JPLs have identified the following assets:

**Bank Accounts**

i. Bank accounts for GCBC with a total balance of c.US$218k; and

ii. Bank accounts for subsidiaries of GCBC with a total balance of c. US$168k (excluding known balances of PRC Subsidiaries), US$155k of which has been recovered.

**Retainer Refunds**

5.2.2 The JPLs have received a refund of retainer from former Cayman Islands counsel to the Company netting approximately c.US$246k.

5.2.3 This is in addition to the net funds received previously from former Cayman counsel to the Company of approximately US$271k (see §5.2.2 of the Second Report).

**Insurance Refund**

As previously reported, the JPLs have cancelled the Director's & Officer's insurance taken out by the Company prior to the appointment of the JPLs. The JPLs have recovered the insurance refund in full in the amount of c. US$477k.

**Refundable Earnest Deposit**

5.2.4 The position regarding the Refundable Earnest Deposit as outlined in the Fourth Report remains unchanged.

**Cordlife**

5.2.5 The JPLs have completed a sale of GCBC's indirect interest in Cordlife. Details of the steps taken by the JPLs to realise GCBC's interest in Cordlife were included in the Ninth Report.

**Cost Awards**

5.2.6 In total, the JPLs have received costs that have been awarded of HK$865k (i.e. c.US$111k). In each instance, the cost awards received were used to settle in part outstanding legal costs incurred in the HK Proceedings and Maxcess winding up proceedings.

5.2.7 Following the handing down of the HK Judgment, the JPLs are preparing a bill of costs to claim against Albert, Tina, PIML as well as CISIL, MS, and Notake. These sums are yet to be agreed and assessed, should these sums not be agreed the JPLs will need to commence taxation proceedings.

5.2.8 The law costs draftsman will shortly be circulating the draft bill of costs to the JPLs and their HK counsel for finalisation.

## 5.3 Liabilities

**Contingent Liability – Class Action Complaint**

5.3.1 A civil class action complaint was filed with the United States District Court for the Southern District of New York on 22 April 2024, listing the Company as a defendant to the proceedings, together with former directors, related entities, and service providers of the Company. A new lead plaintiff was appointed on 9 July 2024, along with their lead counsel, resulting in an amended complaint being filed on 20 September 2024.

5.3.2 The allegations in the amended complaint against the Company may be summarised as follows:

i. The persons in the class consist of those who purchased publicly traded shares in GCBC between 18 June 2019 and 9 May 2022 ("**Class Period**");

ii. During the Class Period, plaintiffs and the class purchased GCBC stock at prices artificially inflated by defendants' scheme, misrepresentations, and/or omissions;

iii.   The defendants' wrongful conduct directly and proximately caused the economic loss suffered by plaintiffs and the class; and

iv.   The price of GCBC stock significantly declined when the scheme, misrepresentations made to the market, and/or the information alleged in the amended complaint to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

5.3.3   The JPLs have placed the lead plaintiff on notice that they are in breach of the statutory moratorium arising in the Cayman Islands, which is deemed to have extraterritorial effect, from the Appointment Order in bringing proceedings against GCBC without leave of the Court and have sought either (i) that the lead plaintiff immediately take steps to seek leave of the Grand Court of the Cayman Islands prior to taking any further step in the  Class Action; or (ii) confirm that the Class Action will be discontinued or stayed against the Company. To date the lead plaintiff has not taken either of these steps.

5.3.4   Notwithstanding the above, the defendants were required to file a motion to dismiss or an answer to the amended complaint by 28 October 2024. The JPLs sought funding to take the appropriate steps in the proceedings. However, due to the JPLs' stance detailed at §5.3.3. and given no funding was made available to service the costs of either response, no filing was made by the JPLs. While the JPLs are considering their options, the JPLs will be unable to take any substantive steps in the proceedings absent appropriate funding being in place.

**Liabilities**

5.3.5   To date, the JPLs have been notified of amounts claimed to be owed by the Company in the amount of US$1,164,416. The principal amount has not increased since the Ninth Report. Given the Company is unable to pay its debts as they fall due, these liabilities are unable to be paid.

5.3.6   A number of proofs of debt have been submitted and the JPLs are taking steps to notify any creditors to provide information about amounts that may be owed to them and to provide proofs of debt in respect of any such claims. The JPLs have established a liquidation website and the forms will also be available on that platform:

https://www.grantthornton.ca/en/service/advisory/creditor-updates/#Global-Cord-Blood-Corporation.

**Costs Award**

5.3.7   The JPLs have been ordered by the HK Court to pay a cost order following the adjournment of the Maxcess hearing of 15 April 2024. Whilst the petition debts have been paid, the amount of costs payable under the order has yet to be agreed or taxed.  This is further outlined from §5.7.6 of our Ninth Report.

## 5.4   Control of GCBC's Corporate Structure

5.4.1   Since their appointment, the JPLs have taken (and are continuing to take) the steps required to take control of GCBC's corporate structure via its subsidiaries, including in the Cayman Islands, the BVI, HK, and the PRC.

## 5.5   Cayman Islands

**AC, TZ and the JPLs' Disclosure Order**

5.5.1   As of the date of this report, AC's 9 May 2023 summons to set-aside the JPLs' Disclosure Order and certain parts of the Varied Order has not progressed, AC and TZ have failed to provide books and records or answers to the written question to the JPLs.

5.5.2   As disclosed in §7.2.8 of our Fifth Report, TZ determined that her obligation to serve answers on the JPLs to be directly impacted by the outcome of AC's Summons of 9 May 2023 (and it therefore be inappropriate for her to serve her affirmation on the JPLs before AC's Summons is disposed of). On 12 May 2023, TZ filed a summons with the Court seeking to vary the terms of the Disclosure Order. TZ filed her third affirmation containing answers to the written interrogatories with the Court (and not on the JPLs) pending the outcome of AC's 9 May 2023 summons.

**The INEDs and the JPLs' Disclosure Order**

5.5.3   The JPLs have written to the INEDs in respect to the 60 outstanding written responses.

5.5.4    On 2 October 2023, the INEDs wrote to the JPLs to inform them they had instructed Cayman Counsel to consider the JPLs' Disclosure Order and that they were currently reviewing both the outstanding written questions and other information requests. The JPLs responded pressing for answers to the written questions which remain unanswered.

5.5.5    On 19 July 2024, the INEDs wrote to the JPLs requesting to be indemnified and for an advancement of defence costs from the Company to defend the Class Action Complaint. On 6 August 2024, the JPLs responded denying this request and reminding them of their obligation to respond to the outstanding interrogatories.

5.5.6    As of the date of this report the JPLs have yet to receive a response. This is another workstream that requires funding in order to be progressed.

**The Set-Aside Summons**

5.5.7    On 8 September 2023, Justice Kawaley perfected an order that the injunction to prevent the consummation of the Cellenkos Transaction be continued; and the EGM Injunction be discharged and delivered his reasons for this decision (the "Set-Aside Judgment").

5.5.8    The Former LSC did not apply for leave to appeal or a stay ahead of the finalised Set-Aside Judgment being handed down and order being finalised.

**The LSC and Board of Directors following the Set-Aside Judgment**

5.5.9    On 6 November 2023, the board of directors of GCBC passed resolutions which, amongst other things, reconstituted the membership of the LSC. Zhai Lingyun, Michael Weiss and Wang Yang were appointed as members of the LSC (the New LSC) and the LSC's former members were removed (the Former LSC).

**LSC's Privilege Summons**

5.5.10   On 25 March 2024, the JPLs and the New LSC agreed by consent summons to dismiss the Privilege Summons, and this was approved by the Court.

**JPLs' Replacement Application**

5.5.11   On 21 March 2024, the JPLs and the New LSC agreed a consent order to dismiss the JPL Replacement Application which was subsequently approved and sealed by the Court on 25 March 2024.

**Fee Approval Summons**

5.5.12   On 13 May 2024, the JPLs filed the Fee Approval Summons for Court approval of their remuneration for the Fee Approval Period, which was subsequently amended on 17 July 2024 to include an order for Court approval of the JPLs' proposed remuneration agreement ("**Amended Summons**"). The application was opposed by the Petitioner and Controlling Shareholders.

5.5.13   On 30 July 2024, following a part hearing, the Court made an order dated 30 July 2024 (the "30 July Order"), *inter alia*, approving the JPLs' terms of remuneration and adjourning the hearing of the remainder of the Amended Summons. Notice of the 30 July Order was given to shareholders by correspondence dated 9 August 2024, a copy is located on the Company's website below:

https://ir.globalcordbloodcorporation.com/static-files/2024_08_09_Notice_to_Shareholders.pdf

5.5.14   By consent of the parties, the Court listed the remainder of the Amended Summons to be heard on 9 October 2024.

5.5.15   Prior to the final hearing, the parties to the application took the following steps:

i.    On 9 August 2024, the JPLs provided copies of their timesheets to the parties who had proved their standing in the proceeding, detailing the time incurred during the Fee Approval Period in accordance with the 30 July Orders.

ii.   On 6 September 2024, the Petitioner filed evidence in opposition to the Amended Summons, together with a report prepared by a third party regarding the JPLs' remuneration.

iii.  On 27 September 2024, the JPLs filed evidence in support of the Amended Summons.

iv.   On 2 October 2024, the JPLs and Controlling Shareholders filed skeleton arguments.

v. On 7 October 2024, the Court ruled that ODIM had failed to establish its standing as a contributory to the Company and therefore was unable to participate in the Amended Summons hearing.

5.5.16 Following a full day hearing on 9 October 2024, the Judge determined that further time was necessary to rule on the Amended Summons and the parties attended Court once more on 10 October 2024.

5.5.17 On 13 November 2024, the Judge handed down judgment on the Amended Summons, which approved the JPLs' remuneration during the Fee Approval Period, subject to applying a 10% discount of the total remuneration sought by the JPLs. In this regard, the Court has sanctioned the JPLs' remuneration for the Fee Approval Period totaling $9,274,956.43, as set out in a judgment dated 13 November 2024.

## 5.6 BVI

**BVI Proceedings in respect to the Cayman Share Charge**

5.6.1 An order formally recording the decision to grant summary judgment has been perfected. As explained in our Sixth Report, a copy of the finalised order has been made publicly available.

5.6.2 The JPLs understand that the defendants appealed against the summary judgment and the appeal hearing was held on 28 and 29 October 2024. The JPLs understand that judgment was reserved.

5.6.3 Absent appropriate funding, the JPLs will be unable to take substantive steps in these proceedings.

**Cellenkos Holdings L.P.**

5.6.4 Should it be deemed necessary for the partnership to be reinstated at any point in the future, and subject to appropriate funding, it is understood that this option will be available to the JPLs given they will continue to control the GP.

## 5.7 HK

5.7.1 A chronology which includes details of the steps taken in HK and/or events concerning the HK Subsidiaries since the Ninth Report is set out below for ease of reference at Appendix A.

**HK Proceedings: Judgment**

5.7.2 Following the trial in the HK Proceedings which was outlined in the Sixth Report, on 8 February 2024, the HK Court issued its judgment in the HK Proceedings (the 8 February 2024 HK Judgment) which is available to view at the following link:

legalref.judiciary.hk/lrs/common/ju/loadPdf.jsp?url=https://legalref.judiciary.hk/doc/judg/word/vetted/other/en/2022/HCA001407_2022.docx&mobile=N

**HK Proceedings: Cost Awards**

5.7.3 The JPLs' legal representatives are preparing a bill of costs and liaising with the defendants with respect to the quantum of the costs and will be finalising a draft. If this cannot be agreed, taxation proceedings will have to be commenced.

5.7.4 The law costs draftsman will shortly be circulating the draft bill of costs to the JPLs and their HK counsel for finalisation

5.7.5 However, absent appropriate funding, the JPLs will be unable to take substantive steps in respect of this workstream.

**HK Proceedings: Appeal**

5.7.6 Notices appealing the 8 February HK Judgment and the 4 March 2024 Order were received from TZ and PIML on 7 March 2024. Supplemental Notices of Appeal were received from AC on 18 March 2024. Notice to set down the appeal was filed by TZ and AC on 13 March 2024 and by PIML on 25 April 2024.

5.7.7 TZ lodged her skeleton submissions on 30 October 2024, with AC and PIML each lodging their skeleton submissions on 31 October 2024. Subsequently, the JPLs lodged their skeleton submissions on 18 November 2024.

5.7.8 The appeal is scheduled to be heard on 28 November 2024 in the CoA and a decision is expected to be handed down by 28 May 2025.

5.7.9 However, absent appropriate funding, the JPLs will be unable to take further substantive steps in these proceedings.

## 5.8 PRC

5.8.1 The JPLs, in conjunction with their legal counsel, are continuing to progress their efforts to take control of and safeguard the operating business and assets of the PRC Subsidiaries, as well as allow the business to continue to operate with as little interruption as possible.

5.8.2 The JPLs are pursuing claims in a number of provinces to obtain control of the PRC Subsidiaries and are continuing to progress their efforts to pursue claims to safeguard the assets of PRC Subsidiaries.

5.8.3 The JPLs' PRC counsel, review the public filings on a weekly basis in respect of the PRC Subsidiaries to monitor any filings, change of shares issued etc.

5.8.4 The JPLs' PRC counsel identified a newly established company, Nanjing Xinbai Stem Cell Technology Co., Ltd, incorporated on 21 October 2024 by Shandong Qilu Stem Cell Engineering Co. Ltd (Qilu). Qilu is an indirect subsidiary of GCBC based in the PRC. Given the recency of the incorporation, there is limited information available regarding the company.

5.8.5 However, the JPLs will be unable to take any further substantive steps in respect of this workstream and proceedings in the PRC absent appropriate funding being in place.

## 5.9 US

**NYSE**

5.9.1 As at the date of this report, the Company remains delisted from the NYSE. However, the JPLs have continued to comply with regulatory requirements by issuing 6-Ks on the SEC platform where appropriate.

**Section 1782 Proceedings**

5.9.2 As detailed in the Sixth Report, the Petitioner has also historically filed an application under title 28 of the United States Code (Section 1782) for a subpoena against Cellenkos and a variety of parties connected to the Cellenkos Transaction.

5.9.3 Currently, the JPLs are not in a position to take any further steps in respect of that proceeding.

**Derivative Shareholder Complaint**

5.9.4 Since the Seventh Report, the Court set down a hearing date of 20 December 2024 to consider the standing of the plaintiff of the Derivative Shareholder Complaint to pursue derivative relief.

5.9.5 While the JPLs will continue to monitor this derivative claim for any significant updates, absent appropriate funding, the JPLs will be unable to take any substantive steps in these proceedings.

**Class Action Complaint**

5.9.6 As detailed in §5.3.1, a Class Action Complaint has been filed in the Southern District of New York that names the Company as a defendant. In the absence of funding the JPLs are unlikely to be able to take any steps in those proceedings.

## 5.10 Communications with stakeholders

5.10.1 The JPLs issued a Form 6-K with confirmation that on 2 September 2024, the JPLs furnished their Ninth Report to the Court. A copy of the Ninth Report is available on the Company's website which can be accessed here:

https://ir.globalcordbloodcorporation.com/static-files/GCBC_2_September_2024.pdf

5.10.2 The JPLs have also set-up a bespoke website that includes FAQs, the nine reports to date and downloadable proof of debt forms. Stakeholders can access this website here:

https://www.grantthornton.ca/en/service/advisory/creditor-updates/#Global-Cord-Blood-Corporation

5.10.3   The Company's creditors and shareholders can contact the JPLs at GCBCJPLs@uk.gt.com. This email account is monitored regularly by the JPLs.

5.10.4   The JPLs are continuing their investigations in respect of the affairs of the Group and in that regard request shareholders to provide any information or records they may have in relation to the Company.

## 5.11 Investigations

5.11.1   Investigations into the affairs of the Company and its subsidiaries are ongoing and complex. Some matters being investigated are confidential and commercially sensitive. As detailed earlier in this report, there are also ongoing proceedings which are subject to disclosure rules and codes of conduct in those jurisdictions. Accordingly, consistent with the JPLs' approach to date, this report omits commercially sensitive or confidential information that could prejudice the outcome of the Provisional Liquidation or any proceedings. The JPLs are therefore not able to disclose the full results of their investigations to date.

5.11.2   As the investigations progress and further steps are taken by the JPLs, the results of these investigations and actions taken with respect to them will be reported to stakeholders, but only where this would not prejudice the Company's interests (e.g. by potentially cutting-across any steps to bring proceedings or make recoveries). All comments, findings and observations herein resulting from the JPLs' investigative efforts to date are subject to further investigation and verification. Such further investigation is contingent on the JPLs obtaining appropriate funding, access to and examining of books and records, financial, banking, and communications data, as well as interviews of former management.

# 6 Funding and costs to 30 September 2024

## 6.1 Funding

**Initial Bridge Financing**

6.1.1 As set out in the Report of the JPLs' Fees and Disbursements from 22 September 2022 to 30 September 2023 dated 20 February 2024 at §10.1.01 to 10.1.04, the JPLs on behalf of the Company entered into a funding agreement dated 6 March 2023 (the "**Funding Agreement**") with a third party funder (the "**Funder**") pursuant to which limited funding was to be advanced for the purpose of paying certain third-party costs of the JPLs in the provisional liquidation (the "**Initial Bridge Financing**").

6.1.2 The Funding Agreement initially provided for an unsecured loan of US$1 million, which was used towards payment of certain costs, charges and disbursements to be paid or reimbursed by the JPLs to their external consultants, legal counsel and other advisers which were necessary for the JPLs to urgently carry out their duties, including preserving, realising or getting in the assets of the Group.

6.1.3 Ultimately, this initial line of bridge funding was extended pursuant to the terms of the Funding Agreement on several occasions such that a total of c. US$7.60 million was advanced.

6.1.4 As set out at §5.7.6 to 5.7.15 in our Ninth Report, given the adverse decision of the HK Court in respect of the Maxcess winding-up petitions, on 21 August 2024 the JPLs entered into an amended and restated funding agreement (the "**A&R Funding Agreement**") with the Funder to advance an additional US$3 million to enable the Company to pay the Maxcess debts and avoid those entities being placed into liquidation in HK.

6.1.5 The terms of the A&R Funding Agreement are commercially sensitive and confidential. However, should any verified member of the Company require further information, the JPLs will consider such requests on a case by case basis.

**Funding required for continuation of provisional liquidation**

6.1.6 It was apparent very early on in the JPLs' appointment that the Company's access to cash and the funding necessary to take appropriate steps to recover and secure the assets was significantly challenged. These circumstances imposed significant difficulty and pressure on the JPLs and service providers to undertake the steps necessary to protect and secure the Company's interest in circumstances where it has been stripped of its assets and cash put beyond the reach of the JPLs.

6.1.7 The expenses required to engage and co-ordinate both urgent and important workstreams to secure and control the assets across multiple jurisdictions are, and will continue to be, considerable. The JPLs' highest priority is securing and protecting the assets of the Company with the resources available.

6.1.8 Pursuant to the Order, the JPLs are able to exercise the power to raise and borrow money and grant securities therefore over the property of the Company. Accordingly, the JPLs have held, and are in, discussions with several parties who provide litigation and/or liquidation financing as well as the Company's stakeholders in order to seek funding for the liquidation.

6.1.9 To date, scoped funding has been provided to service certain important workstreams, however, the JPLs have not received funding to meet the costs of the provisional liquidation. Accordingly, the JPLs and their service providers continue to carry a substantial amount of outstanding costs for the liquidation. The lack of funds continues to put significant pressure on the JPLs and the JPLs' service providers to undertake work necessary to obtain control and secure the assets of the Company and preserve value to its stakeholders.

6.1.10 Absent further funding being provided in an amount sufficient to discharge all current liabilities, the Company is unable to pay its debts as they fall due. That position is unlikely to change unless and until funding is obtained or value is unlocked lower down the Group structure, the timing and certainty of which is dependent upon certain variables including the outcome of the legal proceedings on foot in HK and the PRC.

6.1.11 The Company requires total funding of at least US$20 million comprised of (i) US$16.1m to pay the unpaid debts, and costs of the provisional liquidation incurred to 30 September 2024; (ii) US$3.9 million to fund estimated costs incurred and to be incurred in the provisional liquidation to 30 June 2025.

6.1.12 The JPLs have now been in office for more than 2 years. The Company has insufficient liquid assets to pay the expenses of the provisional liquidation incurred to date and, as such, the

JPLs consider it appropriate for (i) the JPLs to seek an order for their own discharge and (ii) for the powers of the Board to be restored.

6.1.13  The JPLs anticipate that an application for discharge will be filed on or before 11 December 2024 and a hearing date sought for the first available date on or after 13 January 2025.

6.1.14  The JPLs are conscious that an order for their discharge would constitute an Event of Default under the A&R Funding Agreement thereby entitling the Funder to make demand on the Company for repayment of the outstanding balance. There is also a material risk of the Funder enforcing its security in that scenario. The JPLs are willing to engage in constructive discussions with the Company's Board relating to the orderly transition of power back to the Board and any steps which can be taken to protect the Company's interests. Again, the JPLs remain willing and able to remain in office subject to adequate funding being provided.

6.1.15  Should any party wish to fund the liquidation, we welcome expressions of interest, which can be sent to GCBCJPLs@uk.gt.com.

## 6.2  JPLs' Remuneration and Legal Costs

6.2.1  The costs incurred in the liquidation (including the JPLs' professional fees and those of their instructed counsel) up to 30 September 2024, amount to approximately US$23.835 million as set out below:

| Costs to Date | Total US$'000 |
|---|---|
| Liquidators' fees and expenses | 12,480 |
| Legal fees and expenses | 11,355 |
| **Costs incurred** | **23,835** |
| *Less*: costs paid | (9,215) |
| **Costs outstanding** | **14,620** |

*Time incurred from JPLs' appointment on 22 September 2022 to end of Q3 2024 and incorporating the discount on fees ordered by the Court.

6.2.2  The costs outlined above represents approximately 1.75% of the total Group assets as per its latest annual report filed with the SEC for the year ended 31 March 2022.

## 6.3  Fee approval

6.3.1  Approval of the JPLs' fees and expenses for the period 22 September to 2022 to 30 September 2023 have been approved by Cayman Court, subject to a 10% discount on the fees – as outlined in §5.5.12 of this report.

# 7 Next steps

## 7.1 Immediate next steps

7.1.1    Absent appropriate funding being obtained, the JPLs will seek their own discharge in accordance with the timetable indicated in this report. Pending funding or discharge, the key areas of focus for the JPLs in the immediate term will be as follows:

**HK Proceedings**

7.1.2    Following a successful judgment being handed down in respect to the HK proceedings, the JPLs will continue taking steps to enforce cost orders against AC, TZ, Notake and Sonoe and defend the appeal of the 8 February 2024 HK Judgment and the 8 March 2024 Order.

**PRC**

7.1.3    To JPLs will continue safeguarding and obtain control over the key assets in the PRC as a matter of urgency and progressing the JPLs' asset preservation proceedings begun in Beijing.

**Funding**

7.1.4    Negotiating and taking all necessary steps to obtain sufficient funding to enable the continued progress of the provisional liquidation. Absent funding being agreed beforehand, the JPLs intend to file an application for discharge on or around 11 December 2024. It is envisaged that the application will be heard in January 2025, subject to the Court's availability. The JPLs will remain in office until formally discharged by order of the Court.

**Fee Application**

7.1.5    Preparing an application to Court to approve the JPLs' remuneration and disbursements for the period 1 October 2023 to 30 September 2024.

## 7.2 Reporting

7.2.1    The JPLs, should they remain appointed as such, intend to continue reporting to the Court and stakeholders on a quarterly basis. Should the JPLs be discharged from office, appropriate communications will be circulated to all stakeholders, including details of ongoing reporting requirements.

Signed John Royle – Joint Provisional Liquidator of the Company

2 December 2024

# Appendix A – Chronology of Key Events

**Chronology of Key Events (since the Ninth Report)**

**2 September 2024**: The JPLs furnished their Ninth Report to the Court and lodged notice by 6-K on the SEC platform.

**5 September 2024**: The JPLs received a report from FTI Consulting reviewing the JPLs' remuneration during the Fee Approval Period.

**6 September 2024**: The Petitioner filed evidence in opposition to the Amended Summons, together with a report prepared by a third party regarding the JPLs' remuneration.

**20 September 2024**: The JPLs received a copy of the amended complaint filed in the US Class Action Complaint against the Company

**25 September 2024**: The JPLs issued written submission on the issue of ODIM's standing in the Amended Summons proceeding.

**27 September 2024**: The JPLs filed evidence in support of the Amended Summons.

**2 October 2024**: The JPLs filed skeleton arguments in the Amended Summons proceeding.

**7 October 2024**: The Court ruled that ODIM had failed to establish its standing as a contributory to the Company and therefore was unable to participate in the Amended Summons hearing.

**9/10 October 2024**: The JPLs attended the hearing for the Amended Summons with their legal counsel.

**28 October 2024**:  The deadline for defendants to the US Class Action Complaint to file a motion to dismiss or an answer to the amended complaint.

**30 October 2024**: TZ lodged skeleton submissions for the appeal of the HK Proceedings.

**31 October 2024**: AC and PIML lodged skeleton submissions for the appeal of the HK Proceedings.

**18 November 2024**: The JPLs lodged their skeleton submissions in relation to the appeal of the HK proceedings.



**grantthornton.ky**

© 2024 Grant Thornton Specialist Services (Cayman) Ltd.  All rights reserved

'Grant Thornton' refers to the brand under which the Grant Thornton member firms provide assurance, tax and advisory services to their clients and/or refers to one or more member firms, as the context requires.

Grant Thornton International Ltd (GTIL) and the member firms are not a worldwide partnership. GTIL and each member firm is a separate legal entity. Services are delivered by the member firms. GTIL does not provide services to clients. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions. As from 12 August 2024 Grant Thornton, which was constituted as a general partnership under the laws of the Cayman Islands, converted to a limited liability partnership registered in the Cayman Islands as Grant Thornton (Cayman) LLP.

www.grantthornton.ky

© 2024 Grant Thornton Recovery & Reorganisation Limited. All rights reserved.

"Grant Thornton" refers to the brand under which the Grant Thornton member firms provide assurance, tax and advisory services to their clients and/or refers to one or more member firms, as the context requires.

Grant Thornton Recovery & Reorganisation Limited is a member firm of Grant Thornton International Ltd (GTIL). GTIL and the member firms are not a worldwide partnership. GTIL and each member firm is a separate legal entity. Services are delivered by the member firms. GTIL does not provide services to clients. GTIL and its member firms are not agents of, and do not obligate, one another and are not liable for one another's acts or omissions.

www.grantthornton.cn