**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | Case No.  1:24-cv-03071-PKC |

**DEFENDANT YUEN KAM'S REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

                                                                          **Page**

ARGUMENT ........................................................................................................... 1

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER MR. KAM. ..................... 1

        A.      Plaintiffs Misstate the Standard for Specific Personal Jurisdiction. ...................... 2

        B.      Plaintiffs Fail to Allege Mr. Kam Directed Any Relevant Actions at the
                U.S. ...................................................................................................................... 2

        C.      Plaintiffs' Remaining Allegations and Newly Cited Schedule 13D Filings
                Do Not Confer Specific Jurisdiction over Mr. Kam. ........................................... 5

        D.      Plaintiffs Fail to Plausibly Assert Conspiracy Jurisdiction. ................................. 6

        E.      Exercising Personal Jurisdiction over Mr. Kam Would Be Unreasonable. ........... 7

II.     THE COURT SHOULD DISMISS THE CLAIMS AGAINST MR. KAM FOR
        IMPROPER SERVICE OF PROCESS. .............................................................................. 7

        A.      Plaintiffs Have Not Acted Diligently. .................................................................... 8

        B.      The Court Should Not Grant Plaintiffs a Discretionary Extension. ....................... 8

CONCLUSION ...................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
  No. 20 CIV. 9568 (GBD), 2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ............................3, 4

*Bakken Res., Inc. v. Edington*,
  No. 15 CIV. 8686 (ALC), 2019 WL 1437273 (S.D.N.Y. Mar. 29, 2019).................................5

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)...................................................................................2, 6

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021)........................................................................................5

*In re Comverse Tech., Inc. Sec. Litig.*,
  543 F. Supp. 2d 134 (E.D.N.Y. 2008) .....................................................................................10

*Dupont v. N.J. State Police*,
  No. 08CIV10220(DLC), 2009 WL 2486052 (S.D.N.Y. Aug. 14, 2009) ..................................6

*Fantozzi v. City of New York*,
  343 F.R.D. 19 (S.D.N.Y. 2022) .................................................................................................9

*Fometal S.R.L. v. Keili Trading LLC*,
  No. 22 CIV. 1928, 2024 WL 307976 (S.D.N.Y. Jan. 26, 2024)................................................6

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014)......................................................................................................2

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)...................................................................................................................5

*Kogan v. Facebook, Inc.*,
  334 F.R.D. 393 (S.D.N.Y. 2020) ...............................................................................................9

*Nat'l Union Fire Ins. Co. v. Barney Assocs.*,
  130 F.R.D. 291 (S.D.N.Y. 1990) ...............................................................................................9

*SEC v. China Energy Sav. Tech., Inc.*,
  No. 06CV6402ADSAKT, 2007 WL 9711174 (E.D.N.Y. Mar. 19, 2007) ................................7

*SEC v. Hurgin*,
  484 F. Supp. 3d 98 (S.D.N.Y. 2020)..........................................................................................4

*SEC v. Passos*,
　No. 1:22-CV-3156-GHW, 2024 WL 5203022 (S.D.N.Y. Dec. 21, 2024) ............................6, 7

*SEC v. PlexCorps*,
　No. 17CV7007CBARML, 2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018) ................................7

*SEC v. Sharef*,
　924 F. Supp. 2d 539 (S.D.N.Y. 2013)....................................................................................6

*Tarsavage v. Citic Tr. Co.*,
　3 F. Supp. 3d 137 (S.D.N.Y. 2014)........................................................................................2

*Tastefairy Corp. v. Kumar*,
　No. 19-CV-2953 (NGG), 2019 WL 13220974 (E.D.N.Y. Oct. 31, 2019) ...............................9

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
　960 F.2d 1080 (1st Cir. 1992)................................................................................................5

*Wang Yan v. ReWalk Robotics Ltd.*,
　No. CV 17-10169-FDS, 2018 WL 1041541 (D. Mass. Feb. 23, 2018)..................................10

*Zapata v. City of New York*,
　502 F.3d 192 (2d Cir. 2007).........................................................................................8, 9, 10

iii

Plaintiffs bear the burden to demonstrate that this Court has jurisdiction over Mr. Kam and that he was timely served. Their Opposition[1] underscores their failure to do both.

First, Plaintiffs misstate the law in contending that "showing that a defendant's actions abroad caused foreseeable effect in the United States" is sufficient to establish minimum contacts with this forum. As the very precedent Plaintiffs cite makes clear, jurisdiction over Mr. Kam must be supported by allegations that he ***purposefully directed*** actions at the U.S., not some butterfly effect of actions he allegedly took elsewhere. As to those actions, Plaintiffs' Opposition cannot remedy their heavy reliance in the Amended Complaint on group pleading that fails to allege what, specifically, Mr. Kam did that was directed at the U.S. Neither the Opposition's references to ancillary SEC filings not even mentioned in the Amended Complaint, nor a half-hearted assertion of conspiracy jurisdiction—in a case where Plaintiffs are not even pursuing any conspiracy claim against Mr. Kam—cure Plaintiffs' pleading deficiencies.

Separately, Plaintiffs' claims against Mr. Kam should be dismissed for the independent reason that Plaintiffs (a) did not timely serve Mr. Kam, (b) concede they had no good cause for failing to do so, and (c) do not justify the grant of a discretionary retroactive extension of time.

## ARGUMENT

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. KAM.

Decades of binding case law requires that a defendant purposefully direct actions at a forum to be subject to personal jurisdiction there; actions abroad causing a "foreseeable effect" in the U.S. are not sufficient. (Mot. at 7–9.) That test should be rigorously applied to ***each*** defendant— Plaintiffs' group pleading and conspiracy theories are no substitute for defendant-specific

---

[1] Capitalized terms not otherwise defined herein have the meaning used in Mr. Kam's Motion to Dismiss (ECF No. 133) (the "Motion" or "Mot."). "Opposition" or "Opp'n" refers to Plaintiffs' Opposition to the Motion (ECF No. 136).

allegations, which are lacking in the Amended Complaint and thus (unsurprisingly) rarely articulated in Plaintiffs' Opposition. Plaintiffs' jurisdictional argument as to Mr. Kam relies heavily on him allegedly signing a contract to effectuate an intellectual property transfer between two non-American companies and an unpled allegation that he signed irrelevant Schedule 13D filings. These are insufficient to support personal jurisdiction over Mr. Kam.

### A.    Plaintiffs Misstate the Standard for Specific Personal Jurisdiction.

While Plaintiffs initially concede that they must show Mr. Kam "purposefully directed [his] activities at the forum and the litigation arises out of or relates to those activities," they try to lower this bar by claiming it is jurisdictionally sufficient for Mr. Kam's actions abroad to cause "a foreseeable effect in the United States." (Opp'n at 34 (citations omitted).) It is not. Indeed, the Supreme Court—and Plaintiffs' own cases—state this rule explicitly: "Although foreseeability is a component of the minimum contacts analysis, 'foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 642 (S.D.N.Y. 2017) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)); (*see also* Mot. at 7–9). A defendant must "purposefully direct[]" his activities at the forum. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014) (citation omitted). And where those activities occur exclusively out-of-forum, meaning the only relevant contacts with the forum are their "effects" (however foreseeable), the defendant must have "expressly aimed its conduct at the forum." *Tarsavage v. Citic Tr. Co.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014) (citation omitted).

### B.    Plaintiffs Fail to Allege Mr. Kam Directed Any Relevant Actions at the U.S.

Conclusory allegations aimed at "Defendants" in general do not adequately support

2

jurisdiction over Mr. Kam.[2] (Mot. at 16–17.) And Plaintiffs' few allegations specific to Mr. Kam fare no better. Those allegations can be summarized as: (1) he signed the Framework Agreement; (2) he signed unrelated SEC filings not mentioned in the Amended Complaint; and (3) he was the "mastermind of a fraudulent scheme directed at U.S. investors." (Opp'n at 40–42.)

Plaintiffs state Mr. Kam "signed the Framework Agreement for the deceptive Cellenkos transaction, which included GCBC's fictitious obligation to pay $664 million." (*Id.* at 40.) That is misleading. As Plaintiffs allege, that agreement outlined terms for the assignment of a license for Cellenkos technology from GMPM, a GMHL subsidiary, to GCBC. (Am. Compl. ¶ 67.) Plaintiffs fail to offer any plausible argument that the act of signing the Framework Agreement subjects Mr. Kam to jurisdiction here. (*See* Mot. at 13–14.)

Plaintiffs allege "[t]he Framework Agreement was filed with the SEC." (Opp'n at 40.) But that does not suffice for jurisdiction either. Plaintiffs' use of the passive voice is telling—the Agreement was filed by GCBC, not Mr. Kam, who Plaintiffs do not allege signed any relevant SEC filing or directed anyone to do so, which presumably is why Plaintiffs did not assert a Rule 10b-5(b) claim against Mr. Kam despite pursuing such claims against other defendants. Plaintiffs' arguments about what Mr. Kam "would have known" based on his alleged role as GCBC's board chair prior to the class period do not save them. (*Id.*) By Plaintiffs' logic, any board member or officer would be subject to jurisdiction based on the company's filings. That is not the law. (*See* Mot. at 11–16.[3]) Plaintiffs tellingly do not cite a single case supporting their assertion

---

[2] *See, e.g.*, Opp'n at 35 n.9 ("Defendants here did expressly aim their conduct by issuing false statements to U.S. investors and engaging in the Cellenkos transaction designed to deceive U.S. investors."), 37 ("[W]hen Defendants conceived and attempted to implement the Cellenkos transaction to deceive shareholders by covering up the theft of GCBC's assets, that deceit was directed at . . . U.S. shareholders and analysts. . ."), 38 ("Defendants knew [SEC filings] would reach U.S. investors.").

[3] Plaintiffs argue that *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, No. 20 CIV. 9568 (GBD), 2023 WL 2601472, at *6–7 (S.D.N.Y. Mar. 22, 2023), is distinguishable because Mr. Kam "personally signed the misleading Framework agreement filed with the SEC (among other documents), and litigation has revealed his total domination of GCBC and

that Mr. Kam's purported knowledge that someone else might file a licensing contract with the SEC is sufficient to assert jurisdiction over him.

Plaintiffs stretch the facts of *SEC v. Hurgin*, 484 F. Supp. 3d 98 (S.D.N.Y. 2020), to claim support for their argument, but those facts differ markedly from the circumstances here. In *Hurgin*, two Israeli residents, Hurgin and Aurovsky, each owned half of the Israeli company Ability, which entered into a merger with Cambridge, a U.S.-based special purpose acquisition company ("SPAC"), resulting in a publicly traded U.S.-based company named Ability, Inc. *Id.* at 104–05. Aurovsky, who unsuccessfully contested personal jurisdiction, was a "co-controlling shareholder, CTO, and a board member" of Ability, Inc.; consented to use his name in proxy materials containing false and misleading statements intended to persuade Cambridge shareholders to approve the merger; and approved and signed a Merger Agreement that was also filed with the SEC and included a "consent to jurisdiction" in New York courts. *Id.* at 104–05, 114–15.

None of these facts exist here. Plaintiffs allege Mr. Kam signed a Framework Agreement on behalf of GMPM, a GMHL subsidiary, to assign a license for Cellenkos technology to GCBC. (Opp'n at 40; Am. Compl. ¶ 67.) Plaintiffs do not allege Mr. Kam consented to or caused the filing of the agreement with the SEC, or consented to the use of his name in any misleading filing. They do not allege any similar "consent to jurisdiction" clause in the Framework Agreement. And an intellectual property transfer between two foreign companies is a far cry from a merger involving

---

its directors and officers." (Opp'n at 42.) Not so. First, Plaintiffs elide the distinction between signing a document that another party appended as an exhibit to an SEC filing and signing or directing the public filing itself. Second, Plaintiffs misrepresent the allegations in *Alibaba*: "Plaintiffs' primary theory of liability is that Ma 'has always controlled and continues to control Alibaba' . . . Specifically, Plaintiffs allege that (1) Ma was responsible for appointing Alibaba's Board Members, (2) several Board Members were indebted to him, and (3) Ma was able to 'seize licenses' to retain 'substantial holdup leverage over Alibaba.'" 2023 WL 2601472, at *6. Third, as explained in the Motion, there are a number of flaws in Plaintiffs' conclusory allegations that Mr. Kam had "total domination of GCBC." (Mot. at 14–16.)

4

a U.S. SPAC that led to the creation of a U.S. company half-owned by the defendant.[4]

    **C.**      **Plaintiffs' Remaining Allegations and Newly Cited Schedule 13D Filings Do Not Confer Specific Jurisdiction over Mr. Kam.**

For the first time, Plaintiffs state that Mr. Kam "also signed other misleading SEC filings"—two Schedule 13Ds for GCBC securities. (Opp'n at 40–41.) This does not bolster their jurisdictional argument. These filings are not relevant to any purported scheme, as evidenced by Plaintiffs' decision not to mention them in the Amended Complaint, so these filings, from which none of their claims arise, are insufficient to establish the relevant specific ties needed for specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Aside from signing the Framework Agreement and the irrelevant Schedule 13Ds, Plaintiffs are left with a handful of general, conclusory allegations that do not justify the exercise of jurisdiction over Mr. Kam. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395–96 (S.D.N.Y. 2021) (plaintiffs "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone" (citations omitted)). Plaintiffs seem to ask the Court to assume that, because GCBC shares were traded on the NYSE, Defendants must have aimed their alleged fraudulent conduct at the United States. (*See, e.g.*, Opp'n at 36–37 (stating, without support, that the Cellenkos transaction "was intended to conceal the theft of GCBC's assets from its public shareholders, *i.e.* investors who purchased GCBC shares on the [NYSE]" (citations omitted)).) But that conclusion is not supported by either the facts or the law.

Plaintiffs provide no support for their assertion that the alleged overseas scheme to misappropriate GCBC assets was directed at the U.S. Without purposeful direction by Mr. Kam,

---

[4] *Cf. Bakken Res., Inc. v. Edington*, No. 15 CIV. 8686 (ALC), 2019 WL 1437273, at \*4–5 (S.D.N.Y. Mar. 29, 2019) (holding that an individual's "indirect actions are insufficient to establish personal jurisdiction under either CPLR or RICO"); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) (rejecting the exercise of personal jurisdiction where "the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect. Instead, the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." (citations omitted)).

there is no personal jurisdiction over him. (*See* Mot. at 9–11.) As Plaintiffs' own cases demonstrate, alleged participation in illicit conduct abroad, without more, is insufficient to allege that Mr. Kam directed conduct at the U.S. *See In re Banco Bradesco*, 277 F. Supp. 3d at 643–44 ("[A]lleged involvement in bribery schemes aimed at the Brazilian government is insufficient, on its own, to permit the exercise of personal jurisdiction against [defendant] in the [U.S.] . . . [C]ourts have exercised personal jurisdiction over individuals who orchestrated bribery schemes aimed at foreign governments *and* as part of that scheme signed off on misleading management representations to company auditors and signed false SEC filings.").[5]

### D.    Plaintiffs Fail to Plausibly Assert Conspiracy Jurisdiction.

Plaintiffs do not, and cannot, plausibly allege that Mr. Kam is subject to conspiracy jurisdiction. This is not because Plaintiffs did not use the word "conspiracy" (*see* Opp'n at 49–50), but because there is no cause of action for conspiracy to violate the Exchange Act. (*See* Mot. at 17–18.) Plaintiffs never allege facts supporting any conspiracy claim involving Mr. Kam, leaving them to rely now on conclusory statements that "a conspiracy existed, in which each Defendant participated, to carry out the sham Cellenkos transaction." (Opp'n at 49.) But the "bland assertion of conspiracy or agency is insufficient to establish jurisdiction." *Dupont v. N.J. State Police*, No. 08CIV10220(DLC), 2009 WL 2486052, at *10 (S.D.N.Y. Aug. 14, 2009) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 793 (2d Cir. 1999)).

Of course, where no conspiracy exists, a court cannot "imput[e] the minimum contacts of one co-conspirator to another" for conspiracy jurisdiction. (Opp'n at 49); *see Fometal S.R.L. v.*

---

[5] *See also SEC v. Sharef*, 924 F. Supp. 2d 539, 546–47 (S.D.N.Y. 2013) (no personal jurisdiction over foreign executive who allegedly participated in bribery abroad and did not prepare or file any relevant misstatements with the SEC); *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 250, 255–56 (S.D.N.Y. 2013) (finding personal jurisdiction where, as part of a foreign bribery scheme, the defendant signed off on misleading management representations to the company's auditors and signed false SEC filings); *SEC v. Passos*, No. 1:22-CV-3156-GHW, 2024 WL 5203022, at *7 (S.D.N.Y. Dec. 21, 2024) (finding personal jurisdiction where defendant caused a false story to be published in the U.S. to inflate the stock price and "Defendant also took significant steps while in the U.S. to further" the scheme).

6

*Keili Trading LLC*, No. 22 CIV. 1928, 2024 WL 307976, at *9 n.7 (S.D.N.Y. Jan. 26, 2024) (to use conspiracy to establish personal jurisdiction, one must "make a prima facie showing of conspiracy"). Plaintiffs have not pointed to any case where a court exercised conspiracy jurisdiction where no cause of action for conspiracy exists under the relevant statute.

### E.    Exercising Personal Jurisdiction over Mr. Kam Would Be Unreasonable.

Because Plaintiffs have not plausibly alleged that Mr. Kam has sufficient minimum contacts with the U.S., the Court's analysis may end there. But the weakness of those contacts and the unreasonableness of exercising jurisdiction over Mr. Kam militate further against exercising jurisdiction here. (*See* Mot. at 19–21.) Plaintiffs' attempt to argue otherwise based on cases in which the SEC was plaintiff is unpersuasive—the SEC undoubtedly has a stronger interest in prosecuting the federal securities laws in a U.S. forum than does a lead plaintiff from Italy. *See Passos*, 2024 WL 5203022, at *8 (also noting that defendant allegedly "took significant steps while in the United States in furtherance of [his] plan" and had made no showing on several reasonableness factors); *SEC v. China Energy Sav. Tech., Inc.*, No. 06CV6402ADSAKT, 2007 WL 9711174 (E.D.N.Y. Mar. 19, 2007); *SEC v. PlexCorps*, No. 17CV7007CBARML, 2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018).

## II.    THE COURT SHOULD DISMISS THE CLAIMS AGAINST MR. KAM FOR IMPROPER SERVICE OF PROCESS.

In a bid to avoid application of the Hague Convention, Plaintiffs served foreign defendants' domestic counsel in the U.S. Now, seeking to avoid application of Rule 4(m)'s 90-day service requirement, Plaintiffs argue that service on domestic counsel constitutes foreign service. Plaintiffs should not be permitted to use Rule 4 as both a sword and a shield.

Plaintiffs' case law is inapposite. They do not cite any case where plaintiffs sought to apply Rule 4 where it favored them and avoid the Rule when it does not. One of Plaintiffs' cases even

7

notes a split in authority regarding whether service on domestic counsel constitutes service "not within any judicial district of the United States." (Opp'n at 53–54 (citing *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 CV. 8118 (PGG), 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018).) Because Plaintiffs served Mr. Kam's counsel in the U.S., Plaintiffs cannot avail themselves of the exception to the 90-day service period outlined in Rule 4(m).[6]

### A.    Plaintiffs Have Not Acted Diligently.

While Plaintiffs argue that a "due diligence standard" governs their service efforts, such a standard is of no help because Plaintiffs have not, in fact, been diligent. Missing from Plaintiffs' recounting of the procedural history of this matter is ***any*** attempt to timely serve Mr. Kam. The Complaint was filed April 22, 2024, meaning Plaintiffs' 90-day deadline for service was July 21, 2024. Lead Plaintiff was appointed July 9, 2024—well within the time for service, particularly if Plaintiffs' plan was simply to request a waiver by email to U.S. counsel. But Plaintiffs did not even ask Mr. Kam to waive service until July 31, after the service deadline expired. While Plaintiffs complain it would have been "pointless" to initiate Hague Service Convention procedures in a timely fashion, they offer no explanation for the tardiness of even their initial request for a waiver of service. (Opp'n at 56–57.) That delay, and speculative timelines for a service method they did not attempt, are not enough to establish diligence.

### B.    The Court Should Not Grant Plaintiffs a Discretionary Extension.

Plaintiffs ignore the Second Circuit's admonition that a "plaintiff must ordinarily advance some colorable excuse for neglect" when requesting a discretionary extension of time to serve. *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007). As discussed above, Plaintiffs make no such showing and instead lean heavily on factors that fail to justify a discretionary extension.

---

[6] Plaintiffs have no response to Mr. Kam's argument that they have failed to show any "good cause" for their untimely service and therefore concede that this exception to Rule 4(m) does not apply.

Plaintiffs concede that a re-filed action "would likely be time-barred," but they are not correct that "[c]ourts have consistently considered" this fact as favoring a discretionary extension. (Opp'n at 60–61.) More recent cases explain that the expiration of the statute of limitations does not exclusively favor extension and recognize that extensions in such circumstances prejudice defendants. (*See* Mot. at 24–25.)

Plaintiffs also overstate the weight of actual notice. (*See* Opp'n at 61.) "A defendant's notice of a lawsuit does not excuse a plaintiff's failure to serve." *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 406 (S.D.N.Y. 2020) (citing *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002)). And "notice—like the running of the statute of limitations—does not necessarily justify an extension of the service deadlines." *Fantozzi v. City of New York*, 343 F.R.D. 19, 30 (S.D.N.Y. 2022).

Mr. Kam would indeed be prejudiced by a discretionary extension here. (Mot. at 24.) If the Court were to extend retroactively Plaintiffs' time for service, Mr. Kam "would be obliged to spend time, money, and resources litigating apparently time-barred claims," which "weighs against an extension." *Kogan*, 334 F.R.D. at 406; *see also id.* at 403 ("Simply put, defendants have a right to enforcement of a statutory limitations period."). Plaintiffs' dated and out-of-district cases to the contrary are unpersuasive (*see* Opp'n at 61–62), as the Second Circuit has more recently reiterated the prejudice to defendants stemming from an expired limitations period. *See Zapata*, 502 F.3d at 198. Such prejudice is much more substantial than the "procedural or technical advantage[s]" discussed in several of Plaintiffs' cases. *Nat'l Union Fire Ins. Co. v. Barney Assocs.*, 130 F.R.D. 291, 294 (S.D.N.Y. 1990) (grant of discretionary extension was based on change in minimum amount in controversy requirement for diversity jurisdiction that would prevent plaintiff from refiling in federal court); *Tastefairy Corp. v. Kumar*, No. 19-CV-2953 (NGG), 2019 WL

9

13220974, at *6 (E.D.N.Y. Oct. 31, 2019) (finding no obvious prejudice where statute of limitations had not yet run).

In a last-ditch plea for a discretionary extension, Plaintiffs proffer several "additional considerations," but none are persuasive. As discussed above, Plaintiffs' service efforts have not been diligent or timely. And Plaintiffs cite no authority for their argument that "the combination of the Amended Complaint's timeliness and prompt service should favor a discretionary extension." (Opp'n at 63.) Plaintiffs likewise cite no authority justifying an extension based on defendants' declination to waive service or hypothetical difficulties of a Hague Service Convention process Plaintiffs never even pursued. Finally, the Court need not grant an extension because of the PSLRA lead plaintiff process. Plaintiffs' two out-of-district cases on this point are distinguishable: both granted extensions where the lead plaintiff was not appointed until *after* the time for service had already expired. *See In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 147 (E.D.N.Y. 2008); *Wang Yan v. ReWalk Robotics Ltd.*, No. CV 17-10169-FDS, 2018 WL 1041541, at *4 (D. Mass. Feb. 23, 2018). Here, in contrast, Plaintiffs were appointed on July 9, 2024, within the 90-day period for service. (ECF No. 56.)

"[I]n the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of [Plaintiffs'] neglect." *Zapata*, 502 F.3d at 198. The Court accordingly should decline to retroactively extend Plaintiffs' time for service.

## **CONCLUSION**

Plaintiffs' claims against Mr. Kam should be dismissed with prejudice.

Dated: New York, New York
     March 18, 2025

MORRISON & FOERSTER LLP

By: */s/ Michael D. Birnbaum*

  Michael D. Birnbaum (NY Bar No. MB3645)
  MORRISON & FOERSTER LLP
  250 West 55th Street
  New York, NY  10019-9601
  Telephone:  212.468.8000
  Facsimile:  212.468.7900
  MBirnbaum@mofo.com

  *Counsel for Defendant Yuen Kam*

11

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

The foregoing memorandum of law, excluding the caption, table of contents, table of authorities, signature blocks, and this certificate, contains 3,485 words and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as well as the Individual Practices in Civil Cases of the Honorable P. Kevin Castel.

*/s/ Michael D. Birnbaum*
Michael D. Birnbaum

12