**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: GLOBAL CORD BLOOD
CORPORATION SECURITIES
LITIGATION

Case No. 1:24-cv-03071-PKC

**DEFENDANT GOLDEN MEDITECH HOLDINGS LIMITED'S**
**REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

**KOBRE & KIM LLP**

Jay Y. Mandel
Steven W. Perlstein
Robin J. Baik (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
jay.mandel@kobrekim.com
steven.perlstein@kobrekim.com
robin.baik@kobrekim.com

*Attorneys for Defendant Golden*
*Meditech Holdings Limited*

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 1

I.  Plaintiffs' Claims Are Not Adequately Pled and Fail as a Matter of Law. ........................ 1

    A.  Scheme Liability under Section 10(b) .................................................................... 1

        a.  Plaintiffs' Reliance on Group Pleading Fails as a Matter of Law. ............. 1

        b.  Plaintiffs' Scienter Allegations Fail as a Matter of Law............................. 3

        c.  Plaintiffs' Allegations of Loss Causation Fail as a Matter of Law............. 4

    B.  Control Person Liability under Section 20(a) .......................................................... 6

II.  Plaintiffs Fail to Establish Personal Jurisdiction Over Golden Meditech.......................... 7

III.  Plaintiffs Did Not Timely Serve Golden Meditech. ........................................................ 8

IV.  The Amended Complaint Is Time-Barred. ........................................................................ 9

V.  The Court Should Not Grant Leave to Amend. ................................................................. 10

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Amorosa v. General Electric Co.*,
  2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022).......................................................................... 3

*Brunson-Bedi v. New York*,
  2018 WL 2084171 (S.D.N.Y. May 1, 2018) ........................................................................ 10

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000).................................................................................................. 10

*DEF v. ABC*,
  366 F. App'x 250 (2d Cir. 2010) ........................................................................................... 9

*In re Alstom SA Securities Litigation*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005).................................................................................... 6

*In re Eletrobras Securities Litigation*,
  245 F. Supp. 3d 450  (S.D.N.Y. 2017)................................................................................... 2

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
  308 F. Supp. 2d 249 (S.D.N.Y. 2004).................................................................................... 6

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
  218 F.R.D. 76 (S.D.N.Y. 2003) ............................................................................................. 4

*In re Omnicom Group, Inc. Securities Litigation*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008)................................................................................. 4, 5

*In re Platinum & Palladium Antitrust Litigation*,
  61 F.4th 242 (2d Cir. 2023) .................................................................................................. 8

*In re Security Capital Assurance Ltd. Securities Litigation*,
  2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011)..................................................................... 4, 5

*In re Veon Ltd. Securities Litigation*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)........................................................................ 9

*In re Vivendi, S.A. Securities Litigation*,
  838 F.3d 223 (2d Cir. 2016)................................................................................................... 5

*Leykin v. AT&T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006).................................................................................... 3

*Long Side Ventures LLC v. Hempacco Co.*,
  2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023)........................................................................ 7

*Pacific Investment Management Co. v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010)................................................................................................... 2

*Parker v. Columbia Pictures Industries*,
  204 F.3d 326 (2d Cir. 2000)................................................................................................. 10

*Przewozman v. Charity*,
  2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023)........................................................................ 7

*Rosenfeld v. AC2T, Inc.*,
   2021 WL 4197176 (E.D.N.Y. Sept. 15, 2021) ...................................................... 2, 7

*Rudersdal v. Harris*,
   2022 WL 263568 (S.D.N.Y. Jan. 28, 2022) ........................................................ 7, 8

*SEC v. Zandford*,
   535 U.S. 813 (2002) ................................................................................................ 3

*Solow v. Citigroup, Inc.*,
   2012 WL 1813277 (S.D.N.Y. May 18, 2012) ........................................................ 5

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014) ...................................................................... 6

*Yellowave Corp. v. Mana*,
   2000 WL 1508249 (S.D.N.Y. Oct. 11, 2000) ........................................................ 9

Plaintiffs' Opposition exposes the fundamental flaw underlying their Amended Complaint: their failure to plead specific facts against Golden Meditech Holdings Limited ("Golden Meditech") to establish any of the elements of their securities law claims with particularity. Plaintiffs also fail to establish this Court's personal jurisdiction over Golden Meditech, or the timeliness of their service or their Amended Complaint. Instead, they rely on legally insufficient group pleading, superficial allegations of alter ego and civil conspiracy, and misinterpretations of the law. The Court should grant Golden Meditech's Motion to Dismiss the Amended Class Action Complaint and deny Plaintiffs' futile request to amend the complaint again.

## **ARGUMENT**

**I.      Plaintiffs' Claims Are Not Adequately Pled and Fail as a Matter of Law.**

To plead scheme liability under Section 10(b), Plaintiffs must allege with particularity (1) that *Golden Meditech* committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) in connection with the purchase or sale of a security; as well as (4) scienter, (5) reliance, and (6) loss causation. ECF No. 126 ("Motion" or "Mot.") at 14-17. To establish control person liability under Section 20(a), Plaintiffs must allege with specificity (1) a primary violation; (2) that *Golden Meditech* controlled the primary violator; and (3) culpable participation by *Golden Meditech*. *Id.* at 24-25. The Amended Complaint alleges none of these elements with the required particularity, and Plaintiffs' Opposition does not (and cannot) cure these failings.

### **A.  Scheme Liability under Section 10(b)**

#### **a.  Plaintiffs' Reliance on Group Pleading Fails as a Matter of Law.**

Plaintiffs contend that the Cellenkos transaction was the "deceptive act" at the heart of the scheme to misappropriate hundreds of millions of dollars.[1] *See* ECF No. 136 ("Opposition" or

---

[1]      By making this argument, Plaintiffs at least implicitly concede that the alleged transfers to Golden Meditech and cited by the JPLs cannot, standing alone, constitute a deceptive act that supports their scheme liability claim.

"Opp.") at 10-18.  Plaintiffs argue that Golden Meditech "orchestrated" this scheme through two of its "shell" subsidiaries.  Opp. at 17-18.  The Amended Complaint, however, refers to "*Defendants' scheme*" in generality and contains no facts to show *Golden Meditech* "orchestrated" the transaction or that it somehow did so through "shell" subsidiaries that it controlled.  *See, e.g.*, ECF No. 60 ("Am. Compl.") ¶ 9; *Rosenfeld v. AC2T, Inc.*, 2021 WL 4197176, at *2 (E.D.N.Y. Sept. 15, 2021) ("[I]t is the complaint, not the briefs, being tested at this stage.").

Plaintiffs ask the Court to place great weight on two facts alleged in the Amended Complaint: (1) that one Golden Meditech subsidiary received a license from another Golden Meditech subsidiary for unidentified consideration; and (2) that Defendant Kam, who signed an agreement for one of the subsidiaries, also separately serves as Chairman of Golden Meditech. But Plaintiffs, again, have not alleged Golden Meditech had any involvement with these events. *Compare* Am. Compl. ¶ 67 (no mention of Golden Meditech), *with* Opp. at 17.  As such, they fail to allege with the requisite particularity that Golden Meditech performed a deceptive act.[2]

Another example of Plaintiffs' improper attempt to group Golden Meditech with the other Defendants is how they attempt to establish the "in connection with the purchase or sale of a security" element.  Plaintiffs point to the alleged transfers made to Golden Meditech as part of the scheme, but there is no factual allegation tying those transfers to the alleged fraudulent scheme. Opp. at 30-31.  Plaintiffs simply failed to respond to Golden Meditech's Motion that there is

---

[2]    Plaintiffs also cannot salvage their failure to plead reliance on a deceptive act by arguing that their allegations are "unlike" the authorities cited by Golden Meditech.  *See* Opp. at 28-29 (citing *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450 (S.D.N.Y. 2017)).  First, Golden Meditech is not adequately alleged to have participated in the Cellenkos transaction, Plaintiffs' only alleged deceptive act.  Second, *Eletrobras* only found reliance pleaded because the defendant was an employee of the issuer; the court distinguished *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP* ("*PIMCO*"), 603 F.3d 144 (2d Cir. 2010), because it purportedly applies when the defendant is a "secondary actor," defined broadly as "parties who are not employed by the issuing firm whose securities are the subject of allegations of fraud."  *Eletrobras*, 245 F. Supp. 3d at 472 n.14 (quoting *PIMCO*, 603 F.3d at 148 n.1).  In other words, *PIMCO* applies to the exact scenario alleged here.

nothing in the Amended Complaint from which to draw a conclusion that any of these transfers were themselves improper, that they were connected to the alleged fraudulent scheme, or that they were made in connection with the purchase or sale of a security.[3]  Opp. at 30-31.

These are but a few examples of Plaintiffs' repeated attempts to fold Golden Meditech into the scheme through improper group pleading.  *See id.* at 26 (arguing "Defendants" participated in the Cellenkos transaction); *id.* at 41 (referencing "Defendants' . . . scheme").  Plaintiffs cannot meet their pleading obligations by resorting to this facially improper pleading strategy and their attempt to do so fails as a matter of law.  *See, e.g.*, Mot. at 14-16.

**b.  Plaintiffs' Scienter Allegations Fail as a Matter of Law.**

Plaintiffs argue that scienter is adequately pled as to Golden Meditech because an alleged Golden Meditech executive allegedly made knowingly false statements concerning the Cellenkos transaction.  *See* Opp. at 24.  These allegations cannot support a claim for securities fraud, however, because they are copied wholesale from unsubstantiated records of foreign legal proceedings, and Plaintiffs do not explain applicable evidentiary burdens or whether Golden Meditech could even participate.  *See* Am. Compl. ¶ 84 (citing JPLs' Report), ¶ 95 (Amended Winding Up Petition), ¶¶ 71, 74-77, 111, 123 (foreign rulings and judgments); *Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *1 (S.D.N.Y. Aug. 19, 2022) ("Courts generally do not consider averments taken directly from uncorroborated allegations embedded in a complaint in another action or parroted

---

3    Confusingly, despite not arguing that the alleged fund transfers were deceptive acts, Plaintiffs later imply these transfers were in connection with the purchase or sale of a security by citing *SEC v. Zandford*, 535 U.S. 813 (2002).  Opp. at 31.  But the alleged misappropriations in *Zandford* were in connection with the purchase or sale of a security because the misappropriated funds were proceeds from securities sales.  535 U.S. at 820-21.  Plaintiffs do not and cannot allege anything similar here; therefore, their argument that the alleged misappropriations were in connection with the purchase or sale of a security fails.  *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 241-42 (S.D.N.Y. 2006) (holding that "corporate abuse, misconduct and diversion of assets" was not in connection with the purchase or sale of a security), *aff'd*, 216 F. App'x 14 (2d Cir. 2007).

allegations for which counsel has not conducted independent investigation.");[4] *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits"). Plaintiffs argue in even more conclusory fashion that "there is a strong inference" of Golden Meditech's scienter because "high level executives of Golden Meditech, including Defendant Kam and Mr. Leong" supposedly "knew" that aspects of the Cellenkos transaction were "fictitious." Opp. at 24. But these bare assertions are devoid of any factual support in—or even reference to—the Amended Complaint and thus should be dismissed.

### c.    Plaintiffs' Allegations of Loss Causation Fail as a Matter of Law.

Plaintiffs argue that the April 29, 2022 announcement of the Cellenkos transaction and May 5, 2022 Winding Up Petition constitute "corrective disclosures" or a "materialization of the risk." *Id.* at 25-26. Both theories fail.

In the Opposition, Plaintiffs make clear that (1) the gravamen of their fraud claim is that shareholders purchased GCBC shares because of the company's large cash reserves when the cash in fact had been "misappropriated"; and (2) the Cellenkos transaction is the "deceptive act" that underlies their scheme liability claim. *See*, *e.g.*, *id.* at 1, 6-7, 10; Am. Compl. ¶ 44 ("Shareholders noticed [GCBC's] large and growing cash balances"), ¶¶ 129-62 (alleging GCBC was not "retaining capital" but rather "misappropriating" it). But nothing in the announcement or the Petition plausibly suggested that GCBC's cash reserve was misappropriated. *See* Mot. at 22-23; *In re Sec. Cap. Assurance Ltd. Sec. Litig.*, 2011 WL 4444206, at *4 (S.D.N.Y. Sept. 23, 2011) (loss causation pled "only if the public disclosure causing injury addressed the specific fact allegedly concealed by the misrepresentation"); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp.

---

[4]    Internal citations, quotations, and alterations are omitted unless otherwise noted.

4

2d 546, 552 (S.D.N.Y. 2008) (transaction failed to establish loss causation because "a disclosure [that] does not reveal the falsity of the alleged misstatements . . . does not qualify as 'corrective'"), *aff'd*, 597 F.3d 501 (2d Cir. 2010). And as established in the Motion, Plaintiffs' allegation that the Cellenkos transaction was both a "corrective disclosure" *and* a deceptive act integral to the scheme to *conceal* the fraud is logically incoherent and cannot establish loss causation. *See* Mot. at 22-24.

Plaintiffs' materialization theory fares no better. The announcement and Petition only suggest, at most, that GCBC was planning a transaction that a GCBC shareholder took exception to. *See In re Sec. Cap.*, 2011 WL 4444206, at *4, *6 (no materialization of the risk when events did not "explicitly reveal[] facts concealed" related to "*the specific misrepresentations alleged in the complaint*" (emphasis added)). Plaintiffs argue they establish materialization because the announcement and Petition were instances of Defendants' alleged scheme beginning to "leak out." Opp. at 27 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016)). But *Vivendi* arose from a record supporting that the alleged "leaks" had "***a sufficiently direct***" connection with misstatements alleged to have caused loss. *See Vivendi*, 838 F.3d at 263 (emphasis added). Thus, under *Vivendi*, a "leak" must still plausibly reveal the fraud and have a "sufficiently direct" connection to the loss—and Plaintiffs have not alleged that here. Plaintiffs' argument that the mere "magnitude" of GCBC share price drops establishes loss causation, *see* Opp. at 26, fails for the same reason: the "leaks" raise no plausible link to the facts allegedly concealed, and cannot be disaggregated from the effects of the market's perceptions of the Cellenkos transaction alone. *See Solow v. Citigroup, Inc.,* 2012 WL 1813277, at *9 (S.D.N.Y. May 18, 2012) (no loss causation where "the events and dates" identified "relate to other negative information about the company"), *aff'd*, 507 F. App'x 81 (2d Cir. 2013).[5]

---

[5]    The Amended Complaint makes clear that investors doubted GCBC's strategy and capital allocation ***well before*** the April 29, 2022 announcement of the Cellenkos transaction. *See, e.g.*, Am. Compl. ¶¶ 42-48. Plaintiffs

5

**B.  Control Person Liability under Section 20(a)**

Plaintiffs' response to Golden Meditech's control person arguments is similar.  Without addressing the fact that Golden Meditech owned *no* shares in GCBC since its divestiture in 2018 and was never anything more than a minority shareholder in Cellenkos, Plaintiffs simply argue that Golden Meditech (or Defendant Kam) must have controlled both because Golden Meditech "stood to benefit" from the alleged scheme.  Opp. at 33.  That is not the standard for control person liability.  Plaintiffs must plead, but failed to do so, specific facts to show *Golden Meditech* had "the power to direct or cause the direction of the management and policies of [GCBC or Cellenkos], whether through the ownership of voting securities, by contract or otherwise."  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 273-74 (S.D.N.Y. 2004) (finding that alleged 30% stock ownership did not establish control).  Plaintiffs were also required to allege that Golden Meditech possessed "actual control over the transaction in question," but failed to do that as well.  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005).  That Plaintiffs continue to group-plead Golden Meditech with Defendant Kam only underscores that Plaintiffs allege no facts to show control by *Golden Meditech*.  *See* Mot. at 10-11, 24-25.

Moreover, Plaintiffs failed to establish that Golden Meditech was a "culpable participant" for purposes of a Section 20(a) claim because the Amended Complaint does not include any allegations with the requisite particularity that Golden Meditech either (i) participated in the Cellenkos transaction, or (ii) benefited from any out-of-the-ordinary transfers.  *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) ("[C]ulpable participation is an element of a Section 20(a) claim that must be pleaded with the same particularity as scienter.").

---

make no effort to disaggregate their losses supposedly arising from fraud from losses caused by market disapproval of the business decision to enter into the Cellenkos deal.

**II.    Plaintiffs Fail to Establish Personal Jurisdiction Over Golden Meditech.**

Unable to point to any in-forum contacts made by Golden Meditech, Plaintiffs argue the Court should impute the U.S. contacts of others onto Golden Meditech because: (1) the two subsidiaries which participated in the Cellenkos transaction were "mere shells" of Golden Meditech; (2) Golden Meditech engaged in a conspiracy with the other Defendants; and (3) GCBC and Cellenkos were alter egos of Golden Meditech.  All three theories fail.

*First*, conclusory allegations that the two subsidiaries marginally involved in the Cellenkos transaction were mere "shells" of Golden Meditech fall short as a matter of law.  *See Long Side Ventures LLC v. Hempacco Co.*, 2023 WL 6386888, at *7 (S.D.N.Y. Sept. 29, 2023) (stating courts look to "various factors" to determine whether a corporation "dominat[ed another] entity to advance its own personal interests as opposed to furthering the corporate ends").

*Second*, Plaintiffs' argument that there was a "conspiracy" to carry out the Cellenkos transaction does not bolster their case for personal jurisdiction because Plaintiffs fail to allege Golden Meditech was involved in that transaction at all.  Plaintiffs cannot substitute a conclusory claim of "conspiracy" for facts to establish Golden Meditech's contacts with the United States needed to support personal jurisdiction over it.  *See Przewozman v. Charity*, 2023 WL 2562537, at *18 (E.D.N.Y. Mar. 17, 2023) (no conspiracy jurisdiction where plaintiffs "fail[ed] to allege in a non-conclusory manner any facts from which an inference of agreement between [one defendant] and the other defendants can be drawn"); *Rosenfeld*, 2021 WL 4197176, at *2 (no conspiracy jurisdiction where plaintiffs only offered "vague and general allegations of conspiracy").  Plaintiffs likewise fail to sufficiently connect the (relatively small) amount of transfers made to Golden Meditech overseas to the Cellenkos transaction.  *See Rudersdal v. Harris*, 2022 WL 263568, at *12 (S.D.N.Y. Jan. 28, 2022) (no conspiracy jurisdiction over foreign defendants where Plaintiffs

7

"pleaded two separate courses of action" and the foreign defendants' "course of action occurred only outside of the United States").

*Third*, Plaintiffs fail to establish that Golden Meditech "dominated" GCBC and/or Cellenkos even against the ten factors they cite. Of these ten factors, Plaintiffs only offer four as to Cellenkos, three of which are not supported by the Amended Complaint. Opp. at 50-52. First, Plaintiffs point to the "non-arm's length" Cellenkos transaction. *Id.* at 51-52. Golden Meditech is not adequately alleged to have participated in this transaction. Next, Plaintiffs argue Cellenkos and Golden Meditech "had overlapping ownership." *Id.* Plaintiffs do not identify a single shared owner. Finally, Plaintiffs argue Golden Meditech "caus[ed] Cellenkos to assign a license to a Golden Meditech subsidiary." *Id.* at 52. That allegation appears nowhere in the Amended Complaint. *See* Am. Compl. ¶ 67. This leaves Plaintiffs with one out of ten of the cited factors: that Golden Meditech and Cellenkos allegedly "share a key overlapping officer" Jackie Leong— in other words, *one* officer. Opp. at 51.

Plaintiffs' arguments as to GCBC are likewise scarce. Apart from group-pled allegations about the Cellenkos transaction and fund transfers, Plaintiffs only assert that the entities share (1) *one* employee; and (2) office space. *Id.* at 51-52. Sharing a single employee and office space (only as to GCBC) does not support treating either Cellenkos or GCBC as Golden Meditech's alter ego for purposes of personal jurisdiction (or for any other purposes for that matter). *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 276 (2d Cir. 2023) ("sharing the same offices" and "some of the same staff" does not make companies alter egos), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681 (2024). Thus, none of Plaintiffs' three theories establishes Golden Meditech has the required minimum contacts with the United States.

## III.   Plaintiffs Did Not Timely Serve Golden Meditech.

In an attempt to escape their belated service on Golden Meditech, Plaintiffs first argue that

8

the foreign country exception to Rule 4(m)'s 90-day service deadline applies and therefore service was governed only by Rule 4(f)(3)'s due diligence standard. Opp. at 53-56. Not so. First, Plaintiffs served Golden Meditech in the United States. *See* Mot. at 5 n.3. Second, the Second Circuit has "held inapplicable the foreign country exception" where, like here, the plaintiff "did not attempt service within" Rule 4(m)'s time limit and "had not exactly bent over backward to effect service." *DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010). Far from bending over backward, Plaintiffs barely even attempted to serve Golden Meditech at all until they filed their alternative service motion 73 days after Rule 4(m)'s service deadline lapsed. *See Yellowave Corp. v. Mana*, 2000 WL 1508249, at *2 (S.D.N.Y. Oct. 11, 2000) (dismissing foreign defendant 80 days after service period lapsed).

Second, even if Rule 4(f)(3) applied, "[c]ourts have observed that the 'good cause' standard for delay in service of process under 4(m) and the 'due diligence' standard under the foreign country exception are practically the same." *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *8 (S.D.N.Y. Aug. 30, 2018). Thus, for the same reasons Plaintiffs have failed to meet Rule 4(m)'s good cause standard, Plaintiffs failed to satisfy Rule 4(f)(3)'s due diligence standard. *See* Mot. at 5-7. Indeed, Plaintiffs now attempt to show their diligence by pointing to the purported difficulty of completing service *in China* through the Hague Convention. Opp. at 56-57. This is irrelevant as to service on Golden Meditech, which is incorporated and could have been served in the Cayman Islands, the exact same jurisdiction in which Plaintiffs served GCBC with no difficulty at all.

## IV.    The Amended Complaint Is Time-Barred.

Neither of Plaintiffs' statute of limitations arguments saves the Amended Complaint from being time-barred. The statute of limitations began to re-run once Plaintiffs failed to serve Golden Meditech within the 90-day service window. *See* Mot. at 7-8. Plaintiffs cite a single out-of-circuit case to argue that a case must first be dismissed before the statute of limitations begins to run

again, Opp. at 66, but authority within this District holds to the contrary. *Brunson-Bedi v. New York*, 2018 WL 2084171, at *8 (S.D.N.Y. May 1, 2018) ("Plaintiff's failure to serve within the Rule 4(m) timeframe triggered the remaining five days of the limitations period.").

Further, though Plaintiffs argue that the statute of limitations did not begin to run until September 22, 2022, this cannot be squared with other parts of the Amended Complaint such as, for example, Plaintiffs' attempt to establish scienter by imputing Jackie Leong, Defendant Albert Chen, *and* Defendant Kam's alleged scienter on to Golden Meditech. Opp. at 22-24. As to Leong and Defendant Kam, Plaintiffs largely rely on publicly available information from the April 29, 2022 announcement and the May 5, 2022 Winding-Up Petition. *Id.* If Plaintiffs have pleaded scienter as to these individuals (Golden Meditech does not concede they have), then their claims against Golden Meditech, Cellenkos, and Kam are time-barred. If they have not, then their claims must be dismissed on the merits. Plaintiffs cannot have it both ways by ignoring their allegations against Kam and Leong to save the timeliness of the Amended Complaint as to Golden Meditech.

## V.    The Court Should Not Grant Leave to Amend.

Finally, the Court should deny Plaintiffs' request to further amend the Complaint. Plaintiffs have amended once, and the Court's deadline for amended pleadings has passed. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) (affirming denial of leave to amend "after the court-ordered deadline for amending the pleadings"). Further, for the reasons stated in the Motion and above, any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of leave to amend when plaintiff "suggested no new material she wishe[d] to plead" and "better pleading [would] not cure" the deficiencies).

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Golden Meditech respectfully requests that the Court grant its Motion to Dismiss the Amended Class Action Complaint.

10

Dated: March 18, 2025
     New York, New York

**KOBRE & KIM LLP**

By: */s/ Jay Y. Mandel*
    Jay Y. Mandel
    Steven W. Perlstein
    Robin J. Baik (admitted *pro hac vice*)
    800 Third Avenue
    New York, NY 10022
    Tel: (212) 488-1200
    jay.mandel@kobrekim.com
    steven.perlstein@kobrekim.com
    robin.baik@kobrekim.com

    *Attorneys for Defendant Golden*
    *Meditech Holdings Limited*

11