**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: GLOBAL CORD BLOOD CORP SECURITIES LITIGATION | Case No. 24-cv-3071 (PKC)<br><br>Hon. P. Kevin Castel |

**CELLENKOS'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Michael J. Biles
KING & SPALDING, LLP
500 W 2nd Street, Suite 1800
Austin, TX 78701
Telephone: (512) 457-2051
Facsimile: (512) 457 2100
Email: mbiles@kslaw.com

John T. Goodwin
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY
Telephone: (212) 556-2369
Facsimile: (212) 556-2222
Email: jgoodwin@kslaw.com

Counsel for Defendant Cellenkos

**TABLE OF CONTENTS**

**Page(s)**

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     ARGUMENT.............................................................................................................2

        A.      Plaintiffs' Opposition Confirms Their Scheme Liability Claim Fails..................2

                1.      Plaintiffs Cannot Plead a Deceptive Act By Cellenkos............................3

                2.      Plaintiffs Cannot Plead a Strong Inference of Scienter ...........................6

                3.      Plaintiffs Cannot Plead Reliance ............................................................7

                4.      Plaintiffs Cannot Plead Loss Causation...................................................8

        B.      Plaintiffs Abandon Theories of Aiding and Abetting or Alter Ego

                Liability....................................................................................................9

III.    CONCLUSION...........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China North East Petroleum Holdings Ltd,*
  615 F. App'x 44 (2d Cir. 2015)..................................................................................................7

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ......................................................................................................6

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017) .......................................................................................8

*In re Lernout & Hauspie Sec. Litig.*,
  236 F. Supp. 2d 161 (D. Mass. 2003).........................................................................................4

*In re Liberty Tax, Inc. Sec. Litig.*,
  435 F. Supp. 3d 457 (E.D.N.Y. 2020).........................................................................................8

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005 ..................................................................................3, 5, 6

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) .......................................................................................3

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ......................................................................................................9

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012) .......................................................................................9

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005) ......................................................................................................8

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ......................................................................................................7

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
  75 F.3d 801 (2d Cir. 1996) ........................................................................................................7

*Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*,
  210 F. Supp. 3d 421 (E.D.N.Y. 2016).......................................................................................3

*Sec. & Exch. Comm'n v. Sullivan*,
  68 F. Supp. 3d 1367 (D. Colo. 2014) ........................................................................................4

ii

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
    348 F. Supp. 3d 313 (S.D.N.Y. 2018) ...................................................................6

*Simpson v. AOL Time Warner Inc.*,
    452 F.3d 1040 (9th Cir. 2006) ..................................................................5, 6

*Skiadas v. Acer Therapeutics Inc.*,
    2020 WL 4208442 (S.D.N.Y. July 21, 2020) .........................................................6

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) ...................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................6

*United States Sec. & Exch. Comm'n v. Wey*,
    246 F. Supp. 3d 894 (S.D.N.Y. 2017) ...............................................................3

**Other Authorities**

17 C.F.R. § 240.10b-5........................................................................................3

Federal Rule of Civil Procedure 9(b).......................................................................3

Private Securities Litigation Reform Act...................................................................3

## I.    PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that Defendant Cellenkos, Inc. ("Cellenkos") has nothing to do with the allegedly fraudulent transactions described in Plaintiffs' Amended Complaint (the "Complaint"). Indeed, the chart that Plaintiffs prominently display on the first page of their brief, which they claim describes the "basic structure of these fraudulent transactions," demonstrates that Cellenkos was a mere bystander to the alleged fraud on par with the public shareholders of Global Cord Blood Corporation ("GCBC"):



ECF No. 136 ("Opp.") at 1. The remainder of Plaintiffs' Opposition fares similarly: critically, while Plaintiffs admit that the anticipated transaction announced in April 2022, whereby GCBC would acquire Cellenkos in exchange for $664 million in cash (the "Proposed Cellenkos Transaction") was canceled and never consummated—*see* Opp. at 7 (citing Complaint ¶ 69)— Plaintiffs entirely fail to acknowledge that a transaction that did not happen cannot constitute a

"deceptive act" for purposes of Section 10(b) of the Exchange Act.  Even assuming that it could, however, Plaintiffs cannot tie Cellenkos to any of the purportedly deceptive acts in the Proposed Cellenkos Transaction, which had two separate stages: *first*, GCBC would issue 65.7 million shares to acquire a stake in Cellenkos (the "Proposed Acquisition"); and *second*, GCBC and GM Precision Medicine (BVI) Limited ("GMPM") would enter into a separate agreement involving the exchange of a license owned by GMPM for 12.4 million in shares and $664 million in cash from GCBC (the "Framework Agreement").  Nowhere in the Complaint or Plaintiffs' Opposition is there any allegation that the Proposed Acquisition—which is the only transaction to which Cellenkos is alleged to have been a party—was deceptive or a "sham" transaction.  The Framework Agreement is the alleged "sham transaction" that supposedly "covered up" the underlying fraud.    And despite a misleading attempt to paint Cellenkos as involved in the Framework Agreement merely because the agreement mentions Cellenkos, Plaintiffs admit that Cellenkos was not, in fact, party to that agreement. *See* Opp. at 6-7; Complaint ¶ 67.

Plaintiffs' Opposition also fails to rebut any of Cellenkos' arguments regarding Plaintiffs' failure to plead scienter, loss causation, or reliance, instead simply restating the conclusory allegations of the Complaint or asserting baseless (and unpled) speculation.  And Plaintiffs expressly disclaim in their Opposition any aiding and abetting theory of liability against Cellenkos, *see* Opp. at 16, and decline entirely to address Cellenkos' arguments regarding the failure to plead alter ego liability for Cellenkos, *see* ECF 128 ("Br.") at 17-19, instead they only address an alter ego theory to support personal jurisdiction and their Section 20(a) claims against other codefendants, *see* Opp. at 31-33, 50-52.  For these reasons, the Court should dismiss Plaintiffs' Complaint for failure to state a claim against Cellenkos.

## II.    ARGUMENT

### A. Plaintiffs' Opposition Confirms Their Scheme Liability Claim Fails

Plaintiffs acknowledge that to state a claim for scheme liability, they must allege "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance," Opp. at 9 (quoting *In re Turquoise Hill Res. Ltd.*

2

*Sec. Litig.*, 625 F. Supp. 3d 164, 247 (S.D.N.Y. 2022), along with loss causation, *id.* (citing *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 510 (S.D.N.Y. 2005) and that the scheme was "in connection with the purchase or sale of any security, *id.* (citing 17 C.F.R. § 240.10b-5). But Plaintiffs disregard that the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b) apply to their claim, and as such they must specify "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue," *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (quoting *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005)).  Regardless, Plaintiff's Opposition makes clear that they cannot plead any of the elements of a scheme liability claim against Cellenkos, let alone with the requisite specificity required under the PSLRA or Rule 9(b).

### 1.  Plaintiffs Cannot Plead a Deceptive Act By Cellenkos

In its opening brief, Cellenkos pointed out that Plaintiffs' Complaint fails to specifically allege that Cellenkos committed any deceptive act.  Br. at 4-8.  In response, Plaintiffs' Opposition is still unable to identify any deceptive act committed by Cellenkos, confirming that Plaintiffs' claim against Cellenkos must be dismissed.

***First***, Plaintiffs cannot point to a single instance in which the "deceptive act" element of a scheme liability claim was satisfied by a transaction that was canceled and did not take place, instead pointing to several cases involving actual, consummated deceptive actions.  *See* Opp. at 12 (citing *United States Sec. & Exch. Comm'n v. Wey*, 246 F. Supp. 3d 894, 918 (S.D.N.Y. 2017) (PKC) (defendant lawyer instructed clients to move gifted shares into a brokerage account, and, when those transactions were completed, "lied to NASDAQ by claiming that his clients satisfied the minimum shareholder requirements without the gifted shareholders" in order to obtain approval for NASDAQ listings); *Parmalat*, 376 F. Supp. 2d at 510 (defendants "securitized, and [] factored, invoices that, for various reasons, were worthless"); *Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445 (E.D.N.Y. 2016) (entire course of business of defendant

3

pyramid scheme company was a fraud, including "organizing seminars and in-person meetings" and "enrolling victims . . . through the purchase of business packs"); *Sec. & Exch. Comm'n v. Sullivan*, 68 F. Supp. 3d 1367, 1378 (D. Colo. 2014) (defendant "solicited investments in furtherance of [a] Ponzi scheme" in which "note-holders' payments were being diverted to pay other investors and cover [the defendant's] business and personal expenses"); *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 173 (D. Mass. 2003) (defendants participated in scheme by "owning and funding multiple" sham entities through specific investment transactions, in order to artificially inflate a related company's revenues).

Unlike the deceptive acts in those cases, Plaintiffs admit that the Proposed Cellenkos Transaction (which is the only supposedly deceptive act involving Cellenkos) never actually took place. Opp. at 7 ("However, due to Blue Ocean's efforts to oppose the Cellenkos transaction in the Cayman Grand Court, the transaction was never completed."); Complaint ¶ 69 ("However, due to the vigilance of GCBC's majority shareholder Blue Ocean, the Cellenkos transaction was never completed."). Because the Proposed Cellenkos Transaction did not happen, it did not "cover up" any alleged misappropriation by other entities, as Plaintiffs claim. *See* Opp. at 11. Nor was it an "illegitimate, sham or inherently deceptive transaction," *id.* at 10-11, since it was not a transaction at all, but rather a canceled non-event.

***Second***, even assuming that Plaintiffs could allege a "deceptive act" based on a canceled transaction, Plaintiffs do not—and cannot—connect Cellenkos to any allegedly deceptive act within the Proposed Cellenkos Transaction. As alleged, the Proposed Cellenkos Transaction was set up not as single transaction but rather as two entirely separate transactions: the Proposed Acquisition and the Framework Agreement. Cellenkos is alleged to have been involved in the Proposed Acquisition because it was a signatory to the Stock Purchase Agreements whereby Cellenkos shareholders agreed to sell their equity interests in the company to GCBC. Opp at 14 (citing Complaint ¶¶ 63-65). But even in their Opposition, Plaintiffs do not claim that the Proposed Acquisition was a "sham transaction" or an otherwise deceptive act. Plaintiffs do not claim, for example, that following the Proposed Acquisition, GCBC would "not own the equity

4

stakes [in Cellenkos] . . . [it] purported to buy," or that Cellenkos shareholders would not receive the equity and cash promised under the acquisition. *Parmalat,* 376 F.Supp.2d at 505.

Instead, Plaintiffs focus their entire "deceptive act" argument on the Framework Agreement, "under which GCBC agreed to pay $664 million to a Golden Meditech subsidiary in exchange for a hypothetical, future Cellenkos product[.]" Opp. at 15 (citing Complaint ¶ 67). Plaintiffs admit that Cellenkos was not a party to the Framework Agreement. *See* Complaint ¶ 67 ("Under the Framework Agreement between GCBC and GM Precision Medicine (BVI) Limited ('GMPM'), GCBC was to acquire a ten-year license from GMPM to market one of Cellenkos's product candidates in Asia."). Plaintiffs also admit that Cellenkos lacked control over the Cellenkos product license to be exchanged in the Framework Agreement, which was originally obtained by GMPM "from another Golden Meditech subsidiary, Golden Meditech Precision Medicine Limited, which had obtained the license in an October 2021 agreement with Cellenkos." Complaint ¶ 67. Regardless, in a misleading attempt to connect Cellenkos to this allegedly deceptive transaction, Plaintiffs argue that "the Framework Agreement required the Golden Meditech subsidiary to provide GCBC with an assignment executed *by Cellenkos*." Opp. at 15. But Plaintiffs do not allege that Cellenkos ever agreed to provide this purported assignment, actually provided such an assignment, or was even aware of this supposed provision in an agreement between two separate entities. Without any connection to the Framework Agreement (other than being mentioned in it), Plaintiffs cannot plead a deceptive act on the part of Cellenkos.

For this reason, Plaintiffs' attempts to distinguish *Parmalat* and *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006) miss the mark. Plaintiffs argue that, unlike the transactions in those cases—which were facially valid and did not give rise to scheme liability because they were only arguably deceptive based on the conduct of other parties—"the Cellenkos transaction was *itself* deceptive," Opp. at 15, but Plaintiffs are referring exclusively to the Framework Agreement. *See id.* ("A central part of the Cellenkos transaction—the $664 million that GCBC was to pay to a Golden Meditech affiliate for a license on a Cellenkos product under the Framework Agreement—was a fiction."). The Proposed Acquisition, which is the only

5

transaction that Cellenkos was alleged to have been a part of, was precisely like the "legitimate transactions that became 'deceptive' only when distorted by the willful or intentional fraud of another party," and which do not give rise to scheme liability, described in Cellenkos' cases. *Simpson*, 452 F.3d 1040 at 1053; *see also Parmalat,* 376 F.Supp.2d at 505 ("Any deceptiveness resulted from the manner in which Parmalat or its auditors described the transactions on Parmalat's balance sheets and elsewhere.").

Without pleading any deceptive act on the part of Cellenkos, Plaintiffs cannot state a claim for scheme liability against Cellenkos. Because Plaintiffs' Opposition confirms that Plaintiffs have not pled any deceptive act on the part of Cellenkos, their Complaint must be dismissed.

### 2.  Plaintiffs Cannot Plead a Strong Inference of Scienter

Plaintiffs' Complaint should also be dismissed because it fails to "plead with particularity facts that give rise to a 'strong'—i.e. powerful or cogent—inference" that Cellenkos intended "to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Plaintiffs' Opposition does not identify a document or witness alleged in the Complaint that placed anyone at Cellenkos on notice of the alleged fraudulent transactions. Instead, Plaintiffs argue: (i) Cellenkos had "motive and opportunity" to commit fraud because it stood to receive funding following the close of the Proposed Cellenkos Transaction, and (ii) the scienter of Cellenkos CFO Kim Chuan Leong can be imputed to Cellenkos. Opp. at 22. Neither of these is availing

*First*, as Cellenkos explained in its opening brief, it is improper to establish Section 10(b) scienter through a company's motivation to fundraise because "the motive requirement becomes meaningless" if every action of every executive to increase the value of their company has supposedly fraudulent intent. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 n.5 (2d Cir. 1996). In response, Plaintiffs cite *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 4208442, at *5 (S.D.N.Y. July 21, 2020) and *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018) for the proposition that "courts have found allegations of motive adequate where the company[] needed to fundraise to survive" or depended "on sales of stock to cover its

6

operating losses." Opp. at 23. But, aside from conclusory statements that "Cellenkos badly needed [] funds because it was years away from generating any revenue," *id.,* Plaintiffs have not pled—let alone with requisite particularity—that Cellenkos "needed to fundraise to survive."

Moreover, even if Plaintiffs' allegations were sufficient to establish motive, they cannot establish opportunity, which "would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Because Cellenkos is not alleged to have been a party to the Framework Agreement—which is the means by which GCBC allegedly agreed to provide funding to Cellenkos for clinical trials and product development, *see* Complaint ¶ 102[1]—Plaintiffs have not alleged that Cellenkos itself had the means to achieve such a fundraising benefit. *Cf.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) ("opportunity" component of "motive and opportunity" adequately pled where key directors and officers had ability to manipulate their company's stock price). As alleged, Cellenkos is merely a passive beneficiary.

**Second**, Plaintiffs halfheartedly argue that the purported scienter of Cellenkos CFO Leong can be imputed to Cellenkos, citing only a single case in support: *Acticon AG v. China North East Petroleum Holdings Ltd.*, in which a CEO was alleged to have filed all of the company's "SEC filings attesting to the company's internal controls, while allegedly simultaneously looting China North's treasury and engaging in unauthorized transfers of company funds." 615 F. App'x 44, 45 (2d Cir. 2015). As explained in Cellenkos' opening brief, however, Plaintiffs have failed to plead facts giving rise to a similarly strong inference of scienter on the part of Leong, who is barely mentioned in the Complaint. Br. at 10-11.

### 3. Plaintiffs Cannot Plead Reliance

Plaintiffs do not even attempt to rebut Cellenkos' primary argument on reliance: namely, that Plaintiffs fail to allege that they actually relied on any conduct of Cellenkos. Instead,

---

[1] Furthermore, the Amended Winding Up Petition referenced in ¶ 102 of the Complaint does not even indicate that the alleged funding to Cellenkos was agreed to in the Framework Agreement.

Plaintiffs choose to misconstrue this argument as: "Cellenkos argue[s] that [its] deceptive acts were unknown to the public." Opp. at 28. Not so. Plaintiffs' entire reliance argument is premised on the Proposed Cellenkos Transaction, which, as discussed above, was never consummated. Simply put, Plaintiffs did not purchase GCBC stock in reliance on a transaction that never closed. Moreover, Plaintiffs have already admitted Celenkos was not a party to the Framework Agreement, and, unlike the case cited by Plaintiffs, *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 472 (S.D.N.Y. 2017), nothing Cellenkos allegedly did in the Proposed Acquisition—which was, as alleged, a set of facially valid stock purchase transactions—made it "necessary or inevitable" for the Framework Agreement to be structured in the allegedly fraudulent way it was. *See, e.g., Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 154 (2008) ("nothing respondents did made it necessary or inevitable for Charter to record the transactions as it did."). Plaintiffs thus fail to plead reliance on any of Cellenkos' conduct.

### 4. Plaintiffs Cannot Plead Loss Causation

Finally, Plaintiffs cannot plead that there was a "causal link between the alleged misconduct" on the part of Cellenkos "and the economic harm ultimately suffered" by Plaintiffs. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). In their Opposition, Plaintiffs claim that the alleged GCBC share price drops following the announcement of the Proposed Cellenkos Transaction and the filing of Blue Ocean's winding up petition in the Cayman Islands were "causally linked to Defendants' fraudulent scheme . . . because the Cellenkos transaction was Defendants' attempt to cover up the hundreds of millions of dollars they had already stolen from GCBC." Opp. at 26. But, as Cellenkos noted in its opening brief, this amounts to nothing more than an allegation that there was a market reaction to the terms of the Proposed Cellenkos Transaction, which was never completed, rather than a response to the disclosure of alleged fraud. *See* Br. at 13. Such an allegation is insufficient to plead loss causation. *See In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 471 (E.D.N.Y. 2020) ("[L]oss causation is not adequately pled simply by allegations of a drop in stock price following

8

an announcement of bad news if the news did not disclose the fraud."), *aff'd*, 828 F. App'x 747 (2d Cir. 2020)).

Plaintiffs attempt to get around this inconvenient reality by arguing that, even though the disclosure of alleged fraud was not revealed until after the end of the Class Period, it is sufficient to allege that loss was caused when "truth began to leak out." Opp. at 27 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016). But the case cited by Plaintiffs for this proposition, *Vivendi,* still required the underlying fraud to actually be disclosed, whether "by way of a corrective disclosure describing the precise fraud inherent in the alleged misstatements, or through events constructively disclosing the fraud." *Vivendi*, 838 F.3d at 262. Here, Plaintiffs have not alleged that any part of the alleged fraud was actually or constructively disclosed in the announcement of the Proposed Cellenkos Transaction or the Blue Ocean winding up petition. Accordingly, this situation is much closer to *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 177 (S.D.N.Y. 2012), in which loss causation was not established because "the articles and events that Plaintiffs cite as 'partial disclosures' fail to disclose anything about the alleged scheme underlying this lawsuit."

### B. Plaintiffs Abandon Theories of Aiding and Abetting or Alter Ego Liability

Plaintiffs entirely fail to address in their Opposition two theories of liability discussed by Cellenkos in its opening brief, and the Court should accordingly consider those theories abandoned.

***First***, Plaintiffs expressly state that they are not pursuing any theory of liability against Cellenkos premised on aiding and abetting. Opp. at 16 ("Plaintiffs bring only scheme liability claims against Cellenkos, which focus on Cellenkos's own violations of Rule 10b-5(a) and (c), not its aiding and abetting of other parties' violations."). For this reason, and for all of the reasons Cellenkos articulated in its opening brief on pages 14-17, Plaintiffs fail to state a scheme liability claim against Cellenkos under any theory that its conduct constituted aiding and abetting of the actions of its co-defendants.

9

*Second*, Plaintiffs fail to address any theory of liability against Cellenkos premised on an argument that Cellenkos is an alter ego of Golden Meditech or Defendant Yuen Kam. Indeed, Plaintiffs' only mentions an alter ego theory related to Cellenkos in support of personal jurisdiction over Golden Meditech, *see* Opp. at 50-51, and in support of Plaintiffs' Section 20(a) claims against Golden Meditech and Defendant Kam, *see* Opp at 33. Neither of these arguments are advanced in support of holding Cellenkos liable for the alleged conduct of Golden Meditech or Defendant Kam; Plaintiff has not brought a Section 20(a) claim against Cellenkos, and Cellenkos has not moved to dismiss on the basis of personal jurisdiction. Accordingly, for all of the reasons stated in Cellenkos' opening brief on pages 17-19, Plaintiffs fail to state a claim against Cellenkos under any theory that it is an alter ego of Defendant Kam or Golden Meditech.

## III.    CONCLUSION

For the reasons stated above, the Court should grant Cellenkos's motion to dismiss Plaintiffs' Complaint.

DATED: March 18, 2025

Respectfully Submitted,

By: */s/ Michael J. Biles*

Michael J. Biles
KING & SPALDING, LLP
500 W 2nd Street, Suite 1800
Austin, TX 78701
Telephone: (512) 457-2051
Facsimile: (512) 457 2100
Email: mbiles@kslaw.com

John T. Goodwin
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY
Telephone: (212) 556-2369
Facsimile: (212) 556-2222
Email: jgoodwin@kslaw.com

Counsel for Defendant Cellenkos

10

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that this document complies with the word count limitations articulated in Local Rule 7.1(c).

*/s/ Michael J. Biles*
Michael J. Biles

12

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2025, a true and correct copy of the foregoing was electronically filed and served via CM/ECF on all counsel of record in this action.

*/s/ Michael J. Biles*
Michael J. Biles
