**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GLOBAL CORD BLOOD CORPORATION SECURITIES LITIGATION | No. 24-cv-3071-PKC<br><br>Hon. P. Kevin Castel |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS MARK CHEN AND JENNIFER WENG'S MOTION TO DISMISS**

WHITE & CASE LLP

David Hille
Ladan F. Stewart
Robert Tiedemann
Susan Grace
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

*Attorneys for Defendants Mark Chen*
*and Jennifer Weng*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................2

I.   The Complaint Fails To Plead A Section 10(b) Claim Against Mark Chen Or Ms.
     Weng ..............................................................................................................................2

          A.   Plaintiffs Fail To Identify Any Deceptive Act By Mark Chen Or Ms. Weng .........2

          B.   The Opposition Fails To Show A Strong Inference Of Scienter ............................3

          C.   The Opposition Fails To Show Loss Causation.......................................................6

II.  The Complaint Fails To Plead A Control Person Claim Against Mark Chen Or Ms.
     Weng ..............................................................................................................................7

III. The Court Lacks Personal Jurisdiction Over Mark Chen .....................................................9

CONCLUSION.........................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008)............................................. 10

*In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017) ............................... 9

*Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46 (2d Cir. 1987) ........................................................ 3

*In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015)............................................. 8

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997)............................................................... 8

*City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776 (S.D.N.Y. 2017) ................................................ 10

*Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-cv-7014-VSB, 2018 WL 4680989
    (S.D.N.Y. Sept. 28, 2018)............................................................................................................ 2

*Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786 (S.D.N.Y. 2018) ......................................................... 6

*In re Fischbach Corp. Sec. Litig.*, No. 89-cv-5826-KMW, 1992 WL 8715
    (S.D.N.Y. Jan. 15, 1992)............................................................................................................. 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005)................... 8

*In re Forest Lab'ys, Inc. Derivative Litig.*, 450 F. Supp. 2d 379 (S.D.N.Y. 2006) ........................ 6

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ............................................................................... 3

*Lea v. TAL Educ. Grp.*, 837 F. App'x 20 (2d Cir. 2020) ................................................................ 6

*In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161 (D. Mass. 2003) .................................. 3

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002)........................................................ 4

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................... 8

*Mucha v. Volkswagen Aktiengesellschaft*, 540 F. Supp. 3d 269 (E.D.N.Y. 2021) ......................... 9

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005).................................................. 3

*In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463 (S.D.N.Y. 2004) ................................. 8

*SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011) ........................................................ 3

*SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421 (E.D.N.Y. 2016).................................... 3, 4

*SEC v. Familant*, 910 F. Supp. 2d 83 (D.D.C. 2012) ........................................................ 3

*SEC v. Sullivan*, 68 F. Supp. 3d 1367 (D. Colo. 2014).................................................... 3

*Tarsavage v. Citic Tr. Co.*, 3 F. Supp. 3d 137 (S.D.N.Y. 2014).................................... 10

*Travelers Indem. Co. v. U.S. Fire Ins. Co.*, No. 22-cv-6440-MKV, 2024 WL 295355
    (S.D.N.Y. Jan. 25, 2024)........................................................................................ 10

*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ........................................... 7

## STATUTES

17 C.F.R. § 240.12(b) .................................................................................................... 8

Defendants Mark Chen and Jennifer Weng respectfully submit this reply memorandum in further support of their motion to dismiss.[1]

## PRELIMINARY STATEMENT

Plaintiffs' consolidated Opposition to Defendants' Motions to Dismiss (ECF No. 136) ("Opposition") fails to identify any allegations that could support a securities fraud claim against GCBC's former independent, non-executive directors Mark Chen and Jennifer Weng.

The Opposition makes clear that Mark Chen and Ms. Weng are not alleged to have had any role in the alleged misappropriations that underpin Plaintiffs' entire case. Rather, Plaintiffs argue that Mark Chen and Ms. Weng are liable for securities fraud solely because GCBC's Board approved the acquisition of Cellenkos. This argument fails for multiple reasons, including that the Board's alleged approval of the Cellenkos acquisition was not inherently deceptive. Indeed, despite arguing that the transaction was a "sham," Plaintiffs cannot identify a single alleged fact showing that the Board understood the Cellenkos acquisition was anything other than a legitimate acquisition. *See infra* § I.A. The Opposition also fails to show a strong inference of scienter as to Mark Chen and Ms. Weng because they had no alleged motive to defraud, and there are no facts whatsoever showing—let alone pleaded with particularity—that either independent director knew of any misappropriations or any "sham" aspect of the transaction. *See infra* § I.B. Further, Plaintiffs do not identify any alleged revelation of the alleged schemes in the disclosures that allegedly caused Plaintiffs' losses. *See infra* § I.C.

Additionally, the Opposition fails to identify any facts showing Mark Chen and Ms. Weng could be liable as "controlling persons" of GCBC, including because they were each only one member of an eight-person Board and, therefore, lacked the ability to "direct" GCBC or the

---

[1] All capitalized terms not otherwise defined herein have the meaning set forth in Mark Chen and Ms. Weng's Memorandum of Law in Support of their Motion to Dismiss (ECF No. 131) ("Motion").

Cellenkos transaction, as required for Section 20(a) liability. *See infra* § II. Finally, the Opposition fails to identify any basis for exercising personal jurisdiction over Mark Chen. *See infra* § III.

## ARGUMENT

I.    **THE COMPLAINT FAILS TO PLEAD A SECTION 10(B) CLAIM AGAINST MARK CHEN OR MS. WENG**

### A.    Plaintiffs Fail To Identify Any Deceptive Act By Mark Chen Or Ms. Weng

The Opposition does not dispute, and therefore concedes, that the Complaint pleads no deceptive act by Mark Chen or Ms. Weng at the EGM, and that Mark Chen and Ms. Weng had no role in the alleged misappropriation of funds or the alleged forged payment. Mot. 7-9.[2] Rather, Plaintiffs allege that Mark Chen and Ms. Weng engaged in only one deceptive act—the Board's approval of the Cellenkos transaction. Opp'n 13-14. This argument fails.

Plaintiffs argue that the Cellenkos transaction was a "sham" because the "$664 million payment at its heart was never going to happen." Opp'n 14. But that does not show anything inherently deceptive about the alleged Board approval. Plaintiffs do not allege that the Board approved or were aware of a plan to *not* make the $664 million payment. Nor do they allege that the Board approved any alleged misappropriations or forgery. The only transaction that the Board allegedly approved was an agreement to acquire Cellenkos. Mot. 9. There is nothing inherently deceptive about approving an acquisition, and the Opposition does not contend otherwise. *See* Opp'n 13-14. To the contrary, the Complaint acknowledges that the Board received and considered third party financial valuations and other materials supporting the acquisition. Compl. ¶ 50. Plaintiffs allege that the Board should have drawn different conclusions from these materials

---

[2] As Plaintiffs do not dispute these points, they are conceded. *Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-cv-7014-VSB, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument") (collecting cases).

2

or could have taken more time to consider the transaction, but that does not constitute a deceptive act to support a *securities* claim against Mark Chen and Ms. Weng.[3]

Unlike here, the cases Plaintiffs cite involve defendants who were the "architects" of alleged schemes and/or directly carried out inherently deceptive acts.  In *CKB168 Holdings*, the individual defendants were the founders and top promoters of a Ponzi scheme that portrayed itself as a marketing operation despite having no legitimate business whatsoever.  *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445-46 (E.D.N.Y. 2016).  In *Sullivan*, the defendant ran a Ponzi scheme with no legitimate business and deceived investors by generating false reports.  *SEC v. Sullivan*, 68 F. Supp. 3d 1367, 1371 (D. Colo. 2014).  The acts at issue in these cases were deceptive on their face; the approval of the Cellenkos Transaction was not.[4]

**B.    The Opposition Fails To Show A Strong Inference Of Scienter**

Plaintiffs do not dispute that Mark Chen and Ms. Weng had no alleged motive to commit fraud.  Mot. 10; Opp'n 19-22.  With no alleged motive to commit fraud, in order for Plaintiffs to plead scienter as to Mark Chen and Ms. Weng under a theory of conscious misbehavior or recklessness, "the strength of [their] circumstantial allegations must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quoting *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).  Plaintiffs fail to plead scienter because the Complaint does not identify

---

[3] Since there was nothing inherently deceptive about the Cellenkos transaction, Plaintiffs' attempt to distinguish *Kelly* falls flat.  *See* Opp'n 14.  Like the Cellenkos transaction, the transactions at issue in *Kelly* were only deceptive for reasons independent from the transaction itself.  *See SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (holding it was "the manner in which those transactions [for a counterparty to purchase advertising] were accounted for by AOL and reported to the public . . . that is deceptive, and not the act of engaging in such transactions itself").

[4] Plaintiffs' other cases are similarly inapposite.  *See In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 166, 173-74 (D. Mass. 2003) (defendants set up "sham entities," with "no employees, and no general ability to conduct any business" that were designed only "to enter into bogus [agreements]"); *SEC v. Familant*, 910 F. Supp. 2d 83, 86 (D.D.C. 2012) (individual defendants were executives who "ran a scheme" that "directed … employees to issue unearned memos of credit" to pad financial statements). Plaintiffs' reliance on *Parmalat* is misplaced because it did not involve any individual defendants—let alone independent directors—but rather banks that knowingly factored and securitized worthless invoices.  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 504 (S.D.N.Y. 2005).

a single specific piece of information allegedly known to Mark Chen or Ms. Weng that revealed the alleged misappropriations or that the Cellenkos transaction was a "cover-up." Mot. 11-15. The Opposition fails to refute this point.

Plaintiffs repeat their conclusory allegations that the Board approved the Cellenkos transaction "on only three days notice and with little to no Board deliberation," but they do not even attempt to identify specific information known to the Board (let alone Mark Chen or Ms. Weng in particular) at that time, as required to plead scienter. Mot. 13; Opp'n 19. Further, while Plaintiffs describe Cellenkos as "a tiny, zero-revenue startup," this is plainly insufficient to plead scienter. *See cf. Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) ("[N]egative characterizations of reports relied on by insiders . . . are insufficient to meet the heightened pleading requirements of the PSLRA."). Indeed, Plaintiffs do not dispute that Cellenkos was a real, clinical-stage biotechnology company with product candidates in clinical trials. Compl. ¶¶ 19, 51. Moreover, even if the Cellenkos transaction was an imprudent deal, Plaintiffs offer no explanation for how Mark Chen or Ms. Weng would have known that part of the transaction purportedly was designed to cover up years of alleged misappropriations by others and about which they are alleged to know nothing. Plaintiffs cannot demonstrate scienter with only half of their alleged fraud.

Plaintiffs' reliance on *CKB168 Holdings* is also misplaced. Opp'n 19. While "willful blindness" is a means of pleading conscious recklessness, Plaintiffs have not pleaded any facts showing what exactly Mark Chen and Ms. Weng turned a blind eye to that would have revealed the alleged scheme of years of misappropriation followed by a cover-up acquisition.[5] *See*

---

[5] In contrast to the lack of allegations bearing on Mark Chen's and Ms. Weng's states of mind, *CKB168 Holdings* involved defendants who were aware of specific and "obvious signs" that CKB—a multi-level marketing operation— was a Ponzi scheme, including that "CKB offered no incentive for retail sales" and awarded commissions solely for recruiting new investors. 210 F. Supp. 3d at 442, 448.

4

Opp'n 19-20.  Further, a theory of willful blindness is not plausible given that Mark Chen and Ms. Weng are not alleged to have had any motive to deliberately shut their eyes to fraud.  As courts have recognized, "in most cases of 'reckless disregard of the truth,' defendants have had a motive for deliberately remaining ignorant of the facts in question, rendering [plaintiffs'] characterization as wilfully [sic] blind more plausible."  *In re Fischbach Corp. Sec. Litig.*, No. 89-cv-5826-KMW, 1992 WL 8715, at *6 (S.D.N.Y. Jan. 15, 1992).  Here, Mark Chen and Ms. Weng had no alleged personal or financial connection to any of the other Defendants or to the Cellenkos transaction.  To the contrary, they were shareholders of GCBC who would have only been harmed by the alleged misappropriations and cover-up.  Mot. 7 n.6.  Thus, as in *Fischbach*, "the complaint's allegations actually undermine the plausibility of willful blindness."  1992 WL 8715, at *7.

Plaintiffs also repeat their allegations that Mark Chen and Ms. Weng attempted to attend an EGM, but they still do not identify any facts at all showing how Mark Chen or Ms. Weng tried to "disrupt" the meeting.  Mot. 14.  Vague allegations of an "argy bargy" and unspecified "inappropriate conduct" say nothing of Mark Chen's and Ms. Weng's intentions and fall well short of Rule 9's and the PSLRA's heightened pleading requirements.  Opp'n 20.  Likewise, Plaintiffs' reliance on Blue Ocean for an allegation about Mark Chen's and Ms. Weng's supposed "clear intention" is itself sheer conjecture, which does not support an inference of scienter.  *Id.*  And, of course, Mark Chen and Ms. Weng had every right to attend the shareholder meeting in their capacities as independent directors and shareholders.  *See* Mot. 14.  Scienter cannot be premised on something Mark Chen and Ms. Weng were legally entitled to do.

Similarly, Plaintiffs fail to identify any facts supporting their conclusory allegations that Mark Chen or Ms. Weng "continued to serve the interests of Kam and GCBC's former management."  Opp'n 20.  The Opposition does not identify a single specific act by Mark Chen or

Ms. Weng that was supposedly in service of Kam's interests. *See id.* At most, Plaintiffs allege that Mark Chen and Ms. Weng were part of a larger "Litigation Steering Committee" that purportedly did not fully cooperate with unspecified requests from the JPLs in the Cayman Islands proceedings. *See id.* (citing Compl. ¶¶ 59, 61, 85-86, 104-06, 109). There are numerous reasons why an individual (non-party) might object to certain discovery requests. Plaintiffs allege no facts to support their wildly speculative leap that Mark Chen and Ms. Weng have done so because they "knew of the fraud all along."[6] *Id.*

Plaintiffs' last-ditch resort to the core operations doctrine is unavailing because the doctrine "at most constitutes 'supplemental support' for alleging scienter but does not independently establish scienter." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018). Since Plaintiffs have not offered any independently sufficient means to plead scienter, their core operations argument necessarily fails.[7] *Id.*

### C.     The Opposition Fails To Show Loss Causation

The opening brief demonstrated that Plaintiffs' allegations fail to plead loss causation because the alleged corrective disclosures did not reveal any purported misappropriations or cover-up; *i.e.*, Plaintiffs' entire theory of the case. Mot. 15-17. The Opposition fails to show otherwise.

The Opposition does not identify anything in the April 29, 2022 announcement of the

---

[6] *Lea* is inapposite because it concerned executives who made allegedly false statements and, "by virtue of [their] position[s]," could be charged with knowledge that their statements were untrue. *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 27 (2d Cir. 2020). Moreover, at least two of the defendants had "direct participation" in the very "design and implementation of the [sham] transactions at issue." *Id.* Here, by contrast, Mark Chen's and Ms. Weng's roles as independent, non-executive directors do not support an inference that they would have known of any scheme and they are not alleged to have any role in designing or carrying out the alleged scheme.

[7] Moreover, the core operations doctrine is inapplicable where, as here, plaintiffs seek to impute knowledge to defendants who served as independent, non-executive directors with no role in management or involvement in day-to-day operations. *See In re Forest Lab'ys, Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 390–91 (S.D.N.Y. 2006) ("While it is true that (in the securities fraud context) knowledge of facts critical to the continued viability of major transactions or 'core' business operations have been imputed to a company and its 'key' or 'top' officers, there is no authority to support the attribution of knowledge to Outside Directors who are not alleged to be directly involved in the day-to-day operations of the company") (internal citations and quotations omitted).

Cellenkos transaction that even suggests a revelation of fraud. Opp'n 25. Similarly, while the Opposition argues that the May 5, 2022 Winding Up Petition revealed "problems" with the "rushed" Board approval of the Cellenkos transaction and that Cellenkos had previously received a valuation lower than the amount GCBC agreed to pay, *id.*, those disclosures are insufficient to satisfy loss causation because they also do not reveal any misappropriations or cover-up. Mot. 16.

Lacking any viable corrective disclosure, Plaintiffs attempt to recast their Complaint as alleging the materialization of a concealed risk "[t]hat GCBC would enter into a highly disadvantageous acquisition like the Cellenkos transaction." Opp'n 26. This does nothing to save their claims because the April 29 and May 5 disclosures did not reveal that the alleged "risk" had materialized, for the same reasons already discussed above. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016) (recognizing that "'corrective disclosure' and 'materialization of risk' are not wholly distinct theories of loss causation" and both require that "the truth comes out").

Moreover, it does not help Plaintiffs that loss causation can be pleaded where the truth "leaks out" over multiple disclosures. Opp'n 27. As Plaintiffs' cases acknowledge, there must still be a "revelation of the truth." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d at 262. There was no such revelation here. Mot. 15-16.

## II.    THE COMPLAINT FAILS TO PLEAD A CONTROL PERSON CLAIM AGAINST MARK CHEN OR MS. WENG

Control liability requires "actual control over the transaction in question." Mot. 17. The Opposition does not dispute that Mark Chen and Ms. Weng had no role in the alleged misappropriations or misstatements. Mot. 18; *see* Opp'n 32-33. This alone is fatal to Plaintiffs' control person claim.

Instead, the Opposition argues that Mark Chen and Ms. Weng had "control" over only the Cellenkos transaction, because they—as Board members—allegedly approved it. Opp'n 32-33.

This argument fails because Mark Chen and Ms. Weng were each only one member of an eight-member board. Mot. 18. They therefore lacked the ability to "direct" either GCBC's management or the Cellenkos transaction, as required to plead control liability. 17 C.F.R. § 240.12b-2. "Control in this context 'is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions of people who issue or sell securities.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (internal quotations omitted) (emphasis in original). Therefore, the power to vote on a transaction—without the ability to *direct* it—is insufficient to establish control. *Id*. (holding a shareholder's power to appoint three of nine board members did not establish control because, "[i]f the [shareholder's] designees convinced enough of the other six members of the Board of Directors to [enter into transactions], it would have been the result of the exercise of their powers of persuasion, not through actual control of [the company]"); *see also In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015) (quoting *In re Blech Sec. Litig.*, 961 F. Supp. 569, 586 (S.D.N.Y. 1997) ("Substantial influence is not the same as actual control, and '[a]ctual control is essential to control person liability.'")).

Plaintiffs' argument that a director's power to *approve* misstatements has been held sufficient to establish control misstates the law. Opp'n 32. The cases Plaintiffs cite did not hold that merely voting to approve a statement establishes control, but rather, unlike here, concern directors who *signed* the alleged false statements at issue. *See In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 485 (S.D.N.Y. 2004) ("the Complaint alleges…that [the defendants] signed the November 1997 registration statement"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001) (holding a director can be found to control matters within "company reports and SEC registrations that they actually sign").

Finally, the Opposition argues that the Complaint pleads culpable participation for the same

reasons it pleads scienter.  Opp'n 32.  Plaintiffs' culpable participation claims fail for the same reasons outlined above with respect to their scienter allegations.  *See supra* § I.B; Mot. 19-20.

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER MARK CHEN

The Opposition fails to show that Mark Chen has sufficient contacts with the United States to establish personal jurisdiction.  Mot. 22; *see* Opp'n 38-39.  *First*, while Plaintiffs argue that Mark Chen "approved the Cellenkos transaction," they fail to cite any authority suggesting that approval—done outside the United States—supports personal jurisdiction.  Opp'n 38.  Rather, Plaintiffs rely on cases where directors were found subject to jurisdiction because they signed or were directly involved in preparing reports that they knew would be filed with the SEC and otherwise relied upon by investors in the United States.  *See, e.g.*, *Mucha v. Volkswagen Aktiengesellschaft*, 540 F. Supp. 3d 269, 284 (E.D.N.Y. 2021) (defendants "sign[ed] English language reports advertising Volkswagen's ADRs to American consumers"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 644 (S.D.N.Y. 2017) (defendant signed SEC filing). Mark Chen, by contrast, had no alleged involvement in preparing any SEC filings or materials aimed at U.S. investors.

*Second*, Plaintiffs fail to show that Mark Chen is subject to personal jurisdiction based on his attempt to attend a shareholder meeting in New York, and Plaintiffs' claims further do not "arise out of" any conduct at the shareholder meeting.  Opp'n 38-39; Mot. 22.  The Opposition only bolsters this conclusion by effectively conceding that there was no "deceptive act" by Mark Chen at that meeting.  *See supra* § I.A.

*Third*, recognizing that their allegations are insufficient, Plaintiffs introduce an entirely new theory that Mark Chen is subject to personal jurisdiction because he signed a registration statement incorporating one of GCBC's Annual Reports. Opp'n 39.  Yet the registration statement is not referenced anywhere in the Complaint, which alone is fatal to Plaintiffs' new theory of

9

personal jurisdiction under well settled authority. *See, e.g.*, *Travelers Indem. Co. v. U.S. Fire Ins. Co.*, No. 1:22-cv-6440-MKV, 2024 WL 295355, at *4 (S.D.N.Y. Jan. 25, 2024) (collecting cases). In any event, Plaintiffs' new theory of personal jurisdiction fails because, as other courts have held, merely signing a registration statement that incorporates a document containing alleged misstatements is insufficient for personal jurisdiction. *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (holding fact that director signed a registration statement that incorporated an alleged misstatement was "insufficient for personal jurisdiction").

In addition to failing to show sufficient minimum contacts with the United States, Plaintiffs do not establish that jurisdiction over Mark Chen would be reasonable under the separate due process prong for the reasons set forth in the opening brief. *See* Mot. 23-24.

Further, Plaintiffs fail to provide any conspiracy basis for personal jurisdiction over Mark Chen. Opp'n 49-50. To plead the existence of a conspiracy, Plaintiffs must allege "specific facts" showing, *inter alia*, "a corrupt agreement between two or more parties" and "the parties' intentional participation in the furtherance of the plan or purpose." *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 807 (S.D.N.Y. 2017). Plaintiffs have not pleaded either element as to Mark Chen. *See also Tarsavage v. Citic Tr. Co.*, 3 F. Supp. 3d 137, 147 (S.D.N.Y. 2014) (complaint failed to plead conspiracy jurisdiction where "[t]he *facts* that plaintiff alleges are equally consistent with [defendant's] ignorance of Zhao's fraud").[8]

## **CONCLUSION**

For the foregoing reasons, Defendants Mark Chen and Jennifer Weng respectfully request that this Court grant their motion to dismiss the Complaint with prejudice.

---

[8] Plaintiffs should not be permitted to amend their complaint again. Opp'n 69-70. Following pre-motion letters and the Motion, Plaintiffs failed to move for leave to amend by the court ordered deadline of February 14, 2025. ECF No. 113. Plaintiffs identify no additional, unpled facts as to Mark Chen and Ms. Weng.

Dated: March 18, 2025

Respectfully submitted,

WHITE & CASE LLP

 */s/ David Hille*
David Hille
Ladan F. Stewart
Robert Tiedemann
Susan Grace
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 819-8200
dhille@whitecase.com
ladan.stewart@whitecase.com
rtiedemann@whitecase.com
susan.grace@whitecase.com

*Attorneys for Defendants Mark Chen
and Jennifer Weng*

11

**CERTIFICATE OF COMPLIANCE**

The foregoing memorandum of law, excluding the caption, table of contents, table of authorities, signature blocks, and this certificate, contains 3,554 words and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Practices in Civil Cases of the Honorable P. Kevin Castel.

Dated: March 18, 2025
       New York, New York

                                      */s/ David Hille*
                                      David Hille