FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405    RECEIVED NYSCEF: 10/10/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

-------------------------------------------------------------------------------X

| | |
|---|---|
| MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION, and MW OPTIMUM, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION, | **INDEX NO.** 653598/2023 |
| | **MOTION DATE** -- |
| Plaintiffs, | **MOTION SEQ. NO.** 002 003 004 005 006 |
| - v - | **DECISION + ORDER ON MOTION** |
| CELLENKOS INC., GOLDEN MEDITECH HOLDINGS LIMITED, TING TINA ZHENG, ALBERT CHEN, YUEN KAM, MARK DA-JIAN CHEN, JENNIFER J. WENG, KEN LU, JACK CHOW, JACKY CHENG, GOLDEN MEDITECH STEM CELLS (BVI) COMPANY LIMITED, GM PRECISION MEDICINE (BVI) LIMITED, GOLDEN MEDITECH (BVI) COMPANY LIMITED, EASTON CAPITAL CORP., and REDWOOD VALUATION PARTNERS, | |
| Defendants. | |

-------------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 144, 210, 289, 290, 291, 292, 310, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390
were read on this motion to/for          DISMISSAL          .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 97, 212, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 311, 312, 391, 392
were read on this motion to/for          DISMISS          .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 121, 123, 213, 287
were read on this motion to/for          DISMISS          .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 117, 118, 119, 120, 122, 214, 286

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL    Page 1 of 20
Motion No.  002 003 004 005 006

1 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM
INDEX NO. 653598/2023

NYSCEF DOC. NO. 405                                                      RECEIVED NYSCEF: 10/10/2025

were read on this motion to/for                                DISMISS                                                    .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 127, 128, 129, 130, 131, 132, 215, 288

were read on this motion to/for                                DISMISS                                                    .

In motion sequence 002, defendant Redwood Valuation Partners (Redwood) moves pursuant to CPLR 3211(a)(1), (2), (3) and (7), CPLR 3016(b) and (e), and CPLR 3013 to dismiss the derivative complaint.  (*See* NYSCEF Doc. No. [NYSCEF] 38, Notice of Motion.)

In motion sequence 003, defendants Mark Chen and Jennifer Weng move pursuant to CPLR 3211(a)(3), (7) and (8), and the Fourteenth Amendment of the United States Constitution to dismiss the derivative complaint.  (*See* NYSCEF 49, Notice of Motion.)

In motion sequence 004, defendant Easton Capital Corporation (Easton) moves pursuant to CPLR 3211(a)(3) and (7), and CPLR 3013 to dismiss the derivative complaint.  (*See* NYSCEF 98, Notice of Motion.)

In motion sequence 005, defendant Cellenkos Incorporated (Cellenkos) moves pursuant to CPLR 3211(a) and CPLR 3016 to dismiss the derivative complaint.  (*See* NYSCEF 117, Notice of Motion.)

In motion sequence 006, defendants Golden Meditech Holdings Limited, Golden Meditech Stem Cells (BVI) Company Limited, GM Precision Medicine (BVI) Limited, and Golden Meditech (BVI) Company Limited (collectively the Golden Meditech defendants), moves pursuant to CPLR 3211(a)(1), (7), and (8), and CPLR 3016 to dismiss the derivative complaint.  (*See* NYSCEF 127, Notice of Motion.)

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL            Page 2 of 20
CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

2 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM

NYSCEF DOC. NO. 405

INDEX NO. 653598/2023

RECEIVED NYSCEF: 10/10/2025

**Parties**

Plaintiff MW Gestion is an institutional asset manager based in France that manages investment assets through separate funds.  (NYSCEF 2, Complaint ¶17.)

Plaintiff MW Optimum is an investment fund based in Luxemburg under the management of MW Gestion.  (*Id.* ¶18.)  MW Gestion owns shares of Global Cord Blood Corporation (Global Cord Blood or Company) and owned such shares and other securities at the time of the transaction complained of herein.  (*Id.*)

Nominal defendant Global Cord Blood is a Cayman Islands corporation that, at the relevant time, had its principal executive offices in Hong Kong.  (*Id.* ¶19.)  The Company's shares traded on the New York Stock Exchange (NYSE) under the symbol "CO" until NYSE halted trading in the Company's shares on September 23, 2022.  (*Id.*)  The Company's shares continue to trade in the United States on the over-the-counter market.  (*Id.*)

Defendant Golden Meditech Holdings Limited (Golden Meditech) is a medical device and hospital management company incorporated under the laws of the Cayman Islands with its principal executive offices in Hong Kong.  (*Id.* ¶¶20, 64.)  Golden Meditech was founded by defendant Yuen Kam.  (*Id.* ¶20.)

Defendant Ting (Tina) Zheng served as the Chief Executive Officer (CEO) of the Company at all relevant times, in addition to serving as the Company's chairperson since on or about January 31, 2018.  (*Id.* ¶21.)  Moreover, Zheng served as a Director of the Company between 2009 and 2023.  (*Id.*)  Between August 2012 and May 2019, Zheng also served as a non-executive member of the Board of Directors of Golden Meditech.  (*Id.*)

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

Page 3 of 20

3 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405                                                      RECEIVED NYSCEF: 10/10/2025

Defendant Albert Chen served as the Chief Financial Officer (CFO) of the Company at all relevant times, in addition to being a member of the Company's Board of Directors. (*Id.* ¶22.) Moreover, Chen served as a Director of the Company between 2009 and 2023. (*Id.*) Beginning in March 2005, Chen also served as the Corporate Finance Vice President of Golden Meditech. (*Id.*)

Defendant Yuen Kam founded Golden Meditech and served as its Chairperson and CEO at all relevant times. (*Id.* ¶23.) Furthermore, Kam served as the Company's Chairperson until on or about January 31, 2018. (*Id.*)

Defendant Mark Da-Jian Chen was a Director of the Company from 2009 to 2023. (*Id.* ¶24.) Chen was also the founder, CEO, Chairman, and President of Pantheon China Acquisition Corp. (Pantheon), a special purpose acquisition company that merged with the Company in 2009. (*Id.* ¶¶24, 60.)

Defendant Jennifer J. Weng was a Director of the Company from 2009 to 2023. (*Id.* ¶25.) Moreover, Weng was the CFO and Secretary of Pantheon before it merged with the Company in 2009. (*Id.*)

Defendant Dr. Ken Lu was a Director of the Company from 2009 to 2023. (*Id.* ¶26.)

Defendant Jack Chow was a Director of the Company from 2019 to 2023. (*Id.* ¶27.)

Defendant Jacky Cheng was a Director of the Company from 2020 to 2023. (*Id.* ¶28.)

Defendant Cellenkos is a biotechnology company based in Houston and incorporated in Delaware. (*Id.* ¶31.) Cellenkos focuses on umbilical cord blood-derived

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405                                          RECEIVED NYSCEF: 10/10/2025

T-regulatory cellular therapies.  (*Id.*)  Defendants Kam and Golden Meditech own approximately 55.7% of Cellenkos.  (*Id.*)

Defendant Golden Meditech Stem Cells (BVI) Company Limited is a subsidiary of Golden Meditech and a British Virgin Islands company.  (*Id.* ¶32.)

Defendant GM Precision Medicine (BVI) Limited, is also a subsidiary of Golden Meditech. (*Id.* ¶33.)

Defendant Golden Meditech (BVI) Company Limited is a British Virgin Islands company associated with Golden Meditech. (*Id.* ¶34.)

Defendant Easton is allegedly a company co-founded by defendant Mark Chen,[1] and provided an analysis of Cellenkos technology to support the Cellenkos Transaction. (*Id.* ¶35.)

Defendant Redwood is a company based in Seattle, Washington that provided a valuation of Cellenkos to support the Cellenkos Transaction.  (*Id.* ¶36.)

**Background**

The following facts are drawn from the complaint unless otherwise noted and are assumed to be true for purposes of the motion to dismiss.

The Company, together with its subsidiaries, provides umbilical cord blood storage and ancillary services in the Beijing Municipality, Guangdong Province, and

---

[1] Mark Chen states that "I was not a founder of, have no ownership interest in, and did not work for Easton.  From approximately 1999 until 2005, I worked with a different entity that has 'Easton' in its name."  (NYSCEF 50, Mark Chen aff ¶13.)  Similarly, Easton states that "Defendant Mark Da-Jian Chen ('Mark Chen') was not a founder of Easton.  Defendant Mark Chen has never owned any interest in Easton nor was he ever employed by Easton."  (NYSCEF 99, John Friedman aff ¶¶5-6.)

653598/2023  MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL          Page 5 of 20
CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

5 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM

NYSCEF DOC. NO. 405

INDEX NO. 653598/2023

RECEIVED NYSCEF: 10/10/2025

Zhejiang Province of the People's Republic of China.  (*Id.* ¶59.)  The Company began operating 2003, as a subsidiary of Golden Meditech, under the name China Cord Blood Services.  (*Id.* ¶60.)  From the Company's inception until January 2018, Golden Meditech was the Company's largest shareholder.  (*Id.* ¶64.)

On June 30, 2009, China Cord Blood Services merged with a special purpose acquisition company, Pantheon, resulting in the parent company being a Cayman Islands company called China Cord Blood Corporation.  (*Id.*)  The Company began publicly trading its shares on the NYSE on November 10, 2009.  (*Id.*)

In September 2016, Golden Meditech, together with the University of Texas at MD Anderson Cancer Center, announced the founding of Cellenkos.  (*Id.* ¶66.)  One of Cellenkos' primary products is CK0802, an allogenic cell therapy product.  (*Id.*)  In October 2021, Cellenkos assigned the license of CK0802 to Golden Meditech Precision Medicine Limited (GMPM), a subsidiary of Golden Meditech, pursuant to a license agreement.  (*Id.*)   In 2022, GMPM assigned its interest in the license agreement to defendant GM Precision Medicine (BVI) Limited, a subsidiary wholly owned by GMPM.  (*Id.* ¶¶66, 96)

In 2021 and 2022, the Company reported substantial amounts of revenue, income, and cash reserves.  (*Id.* ¶¶61-62.)  In fact, on February 28, 2022, the Company reported revenues of $148.5 million, gross profit of $126.3 million, net income of $63.2 million, and cash and cash equivalents of $1.02 billion.  (*Id.* ¶62.)  Shareholders advocated for the Company to use those funds to repurchase Company shares, paying dividends to shareholders, or accepting an offer to be acquired at fair value.  (*Id.* ¶¶63, 71.)

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL          Page 6 of 20
CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

6 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023
NYSCEF DOC. NO. 405    RECEIVED NYSCEF: 10/10/2025

On April 26, 2022, the Company's board was informed of the proposed purchase of Cellenkos (the Cellenkos Transaction).  (*Id.* ¶82.)  After reviewing a select number of documents, including the valuation report of Cellenkos prepared by defendant Redwood and an analysis of Cellenkos prepared by defendant Easton, the Board approved the Cellenkos Transaction during a board meeting held on April 29, 2022.  (*Id.* ¶¶83-84.)  Shareholders were never notified, nor called to vote on the transaction.  (*Id.* ¶81.)

On the same day that the Board approved the Cellenkos Transaction, on April 29, 2022, the Company publicly announced that it was purchasing Cellenkos for over $1 billion.  (*Id.* ¶¶4, 67.)  The purchase price included $664 million in cash and approximately 114 million Company shares.  (*Id.* ¶¶4, 71.)  The number of newly issued shares would be nearly equal the number of shares outstanding.  (*Id.*)  Upon news of the Cellenkos Transaction, the Company's stock price fell $0.98 per share, from $3.43 at the close of trading on April 29, 2022, to $2.45 at the close of trading on May 2, 2022. (*Id.* ¶68.)

On May 3, 2022, Blue Ocean Structure Investment Company Limited (Blue Ocean), the Company's majority shareholder, filed a petition opposing the Cellenkos Transaction in the Grand Court of the Cayman Islands, Financial Services Division.  (*Id.* ¶69.)  Blue Ocean also called an extraordinary general meeting (EGM) for the Company's shareholders.  (*Id.* ¶90.)  On May 12, 2022, the Grand Court of the Cayman Islands granted Blue Ocean's *ex parte* injunction order, pausing the Cellenkos Transaction.  (*Id.* ¶107.)

On June 16, 2022, the EGM was held at DLA Piper's office in New York City, at 1251 Avenue of the Americas, New York, NY 10020.  (*Id.*)  A number of Company

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405                                                    RECEIVED NYSCEF: 10/10/2025

representatives, including two defendant Directors, allegedly tried to gain access to the meeting to disrupt the proceedings, but were refused entry. (*Id.* ¶91.) Allegedly, the EGM successfully passed several resolutions, which included removing the Company's Board of Directors, appointing a new Board, canceling the Cellenkos Transaction, and amending the Company's Articles of Association to add provisions to protect shareholders. (*Id.* ¶93.) As reported on Blue Ocean's SEC filing, "104,369,577 shares out of 121,551,075 total outstanding shares of [the Company] voted in the EGM, which represented 85.86 percent of all outstanding shares of [the Company]." (*Id.* ¶92.) The Company's Board and management contest the validity of the EGM. (*Id.* ¶94.)

On September 22, 2022, the Grand Court of the Cayman Islands suspended the powers of the Company's Directors and appointed Joint Provisional Liquidators (JPLs) over the Company. (*Id.* ¶108.) Following the appointment of the JPLs, on or about September 23, 2022, the NYSE halted trading in the Company's ordinary shares. (*Id.* ¶109.)

Proceedings before the Grand Court of the Cayman Islands have allegedly revealed that the Cellenkos Transaction was part of a cover-up to fill gaps in the Company's balance sheet. (*Id.* ¶15.) Between September 2015 and May 2022, the Company made payments of approximately $606 million to entities related to Golden Meditech. (*Id.* ¶¶15, 143.) Moreover, compared to the more than $1 billion in cash that the Company reported prior to the Cellenkos Transaction, the JPLs have identified only US$427,000 and HK$135,000 in the Company's bank accounts. (*Id.* ¶¶16, 145.) Plaintiffs, therefore, allege that defendants have misappropriated hundreds of millions of dollars from the Company. (*Id.*)

653598/2023    MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL    Page 8 of 20
CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No. 002 003 004 005 006

8 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405    RECEIVED NYSCEF: 10/10/2025

As of the date of the complaint, the Company's business operations continue under the control of the JPLs.  (*Id.* ¶148)

**Causes of Action**

This is a derivative action.  Plaintiffs allege five causes of action: (1) "Breach of Fiduciary Duty Under Cayman Islands Law (*Against Ting (Tina) Zheng, Albert Chen, Mark Chen, Jennifer Weng, Ken Lu, Jack Chow, and Jacky Cheng (collectively the 'Director Defendants')*)"; (2) "Aiding and Abetting Breach of Fiduciary Duty Under New York Law (*Against Yuen Kam, [Cellenkos], [the Golden Meditech defendants], [Easton], and [Redwood]*)"; (3) "Dishonest Assistance Under Cayman Law" (*Against Yuen Kam, [Cellenkos], [the Golden Meditech defendants], [Easton], and [Redwood]*)"; (4) "Knowing Receipt Under Cayman Law (*Against Yuen Kam, [Cellenkos], [the Golden Meditech defendants], Ting (Tina) Zheng, and Albert Chen)*"; and (5) "Unjust Enrichment Under New York Law or Common Law (*Against Yuen Kam, [Cellenkos], [the Golden Meditech defendants], Ting (Tina) Zheng, and Albert Chen)*".  (NYSCEF 2, Complaint.)

**Legal Standard**

CPLR 3211(a)(3) provides that a cause of action may be dismissed where "the party asserting the cause of action has not legal capacity to sue."  (CPLR 3211 [a] [3].) "[T]he defense of lack of capacity must be raised in a pre-answer motion to dismiss or the answer, or else it will be waived."  (*Security Pac. Natl. Bank v Evans*, 31 AD3d 278, 280 [1st Dept 2006].)

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

Page 9 of 20

9 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM
NYSCEF DOC. NO. 405

INDEX NO. 653598/2023
RECEIVED NYSCEF: 10/10/2025

**Discussion**

<u>Standing</u>

Defendants allege that this action should be dismissed pursuant to CPLR 3211(a)(3) because plaintiffs lack standing to bring this derivative action under Cayman Islands law.  CPLR 3211(a)(3) provides that a cause of action may be dismissed where "the party asserting the cause of action has not legal capacity to sue."  (CPLR 3211 [a] [3].)  "New York courts look to the substantive law of the place of incorporation to determine whether a plaintiff has standing to bring a derivative suit on behalf of a corporation."  (*Matter of Renren Inc. Derivative Litig. v XXX* (2020 NY Slip Op 50588[U], *24 [Sup Ct, NY County 2020], *affd* 192 AD3d 539 [1st Dept 2021].)  Accordingly, because plaintiffs are "incorporated in the Cayman Islands, so Cayman Islands law governs the issue of derivative standing in this case."  (*Id.*)

Rule 12A of order 15 of the Cayman Islands Grand Court Rules provide that a plaintiff must seek leave of court to establish standing to commence a derivative action.  Because this rule has been determined to be procedural and not substantive, it "does not apply where, as here, a plaintiff seeks to litigate his derivative claims in New York."  (*Davis v Scottish Re Group Ltd.*, 30 NY3d 247, 250 [2017]; *see also City of PA Bd. of Pensions & Retirement v Winters*, 2022 NY Slip Op 34589[U], *10 [Sup Ct, Nassau County 2022] ["Rule 12A is a procedural rule that is inapplicable in New York courts."].)  Accordingly, plaintiffs' failure to seek leave of court does not bar this action.

"The Cayman Islands modeled its laws predominantly on English common law."  (*Shenwick v HM Ruby Fund, L.P.,* 106 AD3d 638, 639 [1st Dept 2013].)  "Under English common law, the plaintiff bears the burden of establishing standing to bring a derivative

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM     INDEX NO. 653598/2023

NYSCEF DOC. NO. 405                                                                           RECEIVED NYSCEF: 10/10/2025

suit." (*Erie County Employees' Retirement Sys. v Isenberg*, 2012 WL 3100463, *2, 2012 US Dist LEXIS 105519, *13 [SD Tex, July 30, 2012, Civ. A. No. H-11-4052], citing *Prudential Assurance Co. Ltd. v Newman Indus. Ltd. (No. 2)*, [1982] Ch 204 at 210-211 (Eng.)[2].) Whether a plaintiff has standing to bring a derivative action under Cayman Islands law is determined by a rule set forth in *Foss v Harbottle*. ([1843] 2 Hare 461 (Eng.)[3].) The *Foss* rule imposes a general prohibition on shareholder derivative actions, holding that "the corporation should sue in its own name and in its corporate character." (*Id.* at 491; *see also Shenwick*, 106 AD3d at 639 ["English common law . . . prohibits shareholder derivative actions"]; *Varga v McGraw Hill Fin., Inc.*, 147 AD3d 480, 481 [1st Dept] ["[t]he law of the Cayman Islands . . . generally prohibits derivative actions."], lv denied 28 NY3d 908 [2017].)

There are four recognized exceptions to the general rule set forth in *Foss*: "(1) if the conduct infringed on the shareholder's personal rights; (2) if the conduct would require a special majority to ratify; (3) if the conduct qualifies as a fraud on the minority; or (4) if the conduct consists of *ultra vires* acts." (*Winn v Schafer*, 499 F Supp 2d 390, 396 [SD NY 2007]; *see also Edwards v Halliwell*, [1950] 2 All ER 1064 at 1067 (Eng.)[4].) The court finds that plaintiffs here have not established a prima facie case for any of the *Foss* exceptions; the action is dismissed for lack of standing.

---

[2] *See* NYSCEF 63, *Prudential Assurance Co. Ltd. v Newman Indus. Ltd. (No. 2)*, [1982] Ch 204 at 210-211 (Eng.).

[3] *See* NYSCEF 59, *Foss v Harbottle*. ([1843] 2 Hare 461 (Eng.).

[4] *See* NYSCEF 205, *Edwards v Halliwell*, [1950] 2 All ER 1064 at 1067 (Eng.).

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM
NYSCEF DOC. NO. 405

INDEX NO. 653598/2023

RECEIVED NYSCEF: 10/10/2025

1.  Conduct Infringed on Shareholder's Personal Rights

The first exception to the *Foss* rule allows a shareholder to bring a derivative action if the conduct infringed on shareholders' personal rights.  Here, plaintiffs allege that defendants' misconduct "trampled on Plaintiffs' personal rights as a stockholder of [the Company]."  (NYSCEF 2, Complaint ¶161.)  Nevertheless, plaintiffs bring only derivative claims on behalf of the Company.  (*See id.* at 1 ["Plaintiffs MW Gestion and MW Optimum ('Plaintiffs'), derivatively on behalf of [the Company], bring this action against [defendants]"].)  Accordingly, "plaintiffs personal rights as a shareholder are not implicated."  (*Saratoga Advantage Trust Tech. & Communications Portfolio v Marvell Tech. Group, Ltd.*, 2016 WL 4365593, *4, 2016 US Dist LEXIS 108774, *15 [ND Cal, Aug. 16, 2016, No. 15-cv-04881-RMW ] [holding that the case does not qualify under the personal rights exception where only derivative claims are asserted]; *see also In re Tyco Intl. Ltd.*, 340 F Supp 2d 94, 98 [D NH 2004] [suggesting that the personal rights exception may not be a true exception because "a shareholder's suit to protect her personal rights is not brought as a derivative action"].)

2.  Conduct Required a Special Majority to Ratify

The second exception to the *Foss* rule allows a shareholder to bring a derivative action if the conduct required a "special majority" to ratify.  (*Winn*, 499 F Supp 2d at 396.)  When asked to determine whether a plaintiff has sufficiently pled the second exception, courts look to whether the alleged "wrong is capable of ratification by a majority of shareholders."  (*CMIA Partners Equity Ltd. v O'Neill,* 29 Misc 3d 1228[A], *7 [Sup Ct, NY County 2010].)  Where the alleged wrongful conduct is "capable of ratification by a simple majority of shareholders under English and, therefore, Cayman

653598/2023  MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

Page 12 of 20

12 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405                                                    RECEIVED NYSCEF: 10/10/2025

Island[s] law," plaintiffs do not have standing to bring a derivative action.  (*Id.* at *6-7 [held that plaintiffs lacked standing to bring the derivative action under Cayman Islands law because "[t]o the extent that the director defendants' acts could be considered a breach of their fiduciary duties to the [Company], that breach [was] capable of ratification by a simple majority of shareholders"]*; see also City of Harper Woods Employees' Retirement Sys. v Olver*, 589 F3d 1292, 1299 [DC Cir 2009] ["no individual shareholder can maintain an action if the alleged wrong is capable of ratification by a simple majority of shareholders."] [citation to *Prudential* omitted].)

Here, plaintiffs allege that the Cellenkos Transaction was improper because it sought "to divert the Company's funds to related parties in highly conflicted transactions" and "was the culmination of [a] scheme" to "cover-up" discrepancies "in [the Company's] balance sheet."  (*Id.* ¶¶3, 15.)  Authorizing the Cellenkos Transaction "without the shareholder approval that would be expected—and was required" (*id.* ¶5), may have constituted wrongful conduct on the part of the Board of Directors. Nevertheless, plaintiffs do not allege that such conduct could only be ratified by a special majority of shareholders.[5]  Rather, plaintiffs allege that pursuant to NYSE rules,[6] the Cellenkos Transaction "required shareholder approval."  (*Id.* ¶160.)  Because

---

[5] The second exception to the *Foss* rule is sometimes referred to as "the super majority exception."  (*City of Harper Woods Employees' Retirement Sys.*, 589 F3d at 1300.) Plaintiffs' experts refer to it as "the Supermajority Limit."  (NYSCEF 202, Toube and Mokal aff ¶13.2.)  This characterization suggests that more than a simple majority vote is required to establish standing.

[6] Section 312.07 (Shareholder Approval Policy) of the NYSE's *Listed Company Manual* provides that "where any matter requires shareholder approval, the minimum vote which will constitute shareholder approval for such purposes is defined as approval by a majority of votes cast on a proposal."  (New York Stock Exchange Listed Company Manual § 312.07.)

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM

NYSCEF DOC. NO. 405

INDEX NO. 653598/2023

RECEIVED NYSCEF: 10/10/2025

plaintiffs fail to plead any wrongful conduct on the part of defendants that required ratification by a special majority, the allegations in the complaint do not satisfy the second exception to the *Foss* rule.  Accordingly, plaintiffs do not have standing to bring this derivative action pursuant to the "super majority exception."  (*See City of Harper Woods.*, 589 F3d at 1300.)

### 3. Conduct Qualifies as a Fraud on the Minority

The third exception to the *Foss* rule allows a shareholder to bring a derivative action if the conduct qualifies as a fraud on the minority.

> "In order to invoke that exception, plaintiff must plead and prove that the alleged wrongdoers controlled a majority of the stock with voting rights and that those wrongdoers committed fraud. Control may be sufficiently pleaded by showing that the wrongdoers own majority of the corporation's voting shares or have acquired de facto control of those voting shares." (*Davis,* 160 AD3d at 116 [1st Dept 2018] [citations omitted].)

Because plaintiffs have not sufficiently pleaded the control element, any reliance on the fraud-on-the-minority exception also fails.[7]  Plaintiffs concede that "[d]efendants were not technically majority shareholders of the Company."  (NYSCEF 2, Complaint ¶161.)  Moreover, plaintiffs fail to plead sufficient facts to establish that defendants had acquired de facto control of a majority of the voting shares.

Plaintiffs state that "[defendants] used their entrenched positions comprising the entirety of the Company's senior management and every Board seat except for one to force through actions that plainly were not in the interests of the Company's ordinary shareholders."  (*Id.*)  However, while plaintiffs allege that defendants controlled the

---

[7] Plaintiffs concede in their Memorandum of Law (MOL) that they "do not argue that [the fraud on the minority exception] applies."  (NYSCEF Doc. Nos. 210, 212, 213, 214, and 215, MOL at 30.)

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM          INDEX NO. 653598/2023
NYSCEF DOC. NO. 405                                        RECEIVED NYSCEF: 10/10/2025

Company's executives and board of directors, plaintiffs do not allege anywhere in the complaint that defendants either owned or controlled a majority of the Company's voting shares.  (*See Feiner Family Trust v VBI Corp*., 2007 WL 2615448, *5, 2007 US Dist LEXIS 66916, *17 [SD NY, Sept. 11, 2007, No. 07 Civ.1914 (RPP)] ["for this exception to apply '[t]here must be a minority who are prevented from remedying the fraud or taking any proceedings because of the protection given to the fraudulent shareholders or directors by virtue of their majority'"], quoting *Daniels v Daniels*, [1978] Ch 406 at 408 (Eng.)[8].)

Rather, plaintiffs' allegations establish that defendants did not exercise de facto control over the Company's voting shares.  Plaintiffs allege that "shareholders tried to stop the Cellenkos Transaction through an [EGM]" (NYSCEF 2, Complaint ¶10), "[t]his EGM successfully passed several resolutions including . . . canceling the Cellenkos Transaction (passed by 99.98% of the vote)" (*id.* ¶93), and "104,369,577 shares out of 121,551,075 total outstanding shares of [the Company] voted in the EGM, which represents 85.86 percent of all outstanding shares."  (*Id.* ¶93 [internal quotation marks omitted].)  Necessarily accepting these allegations as true, defendants were far from controlling a majority of the Company's shares and were, similarly, nowhere near exercising de facto control.[9]  Plaintiffs fail to plead the control element required to satisfy the fraud-on-the-minority exception to the *Foss* rule.  (See *Davis,* 160 AD3d at 117 ["[P]laintiff[s] do[] not identify a single factual allegation in the complaint that support

---

[8] *See* NYSCEF 65, *Daniels v Daniels*, [1978] Ch 406 at 408 (Eng.).

[9] Plaintiffs' own experts concede "that the Fraud on the Minority Exception does not apply because the Company is under the JPLs' control."  (NYSCEF 202, Toube and Mokal aff ¶39.)

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM    INDEX NO. 653598/2023

NYSCEF DOC. NO. 405    RECEIVED NYSCEF: 10/10/2025

[their] position that the . . . [defendants] controlled the company's voting shares,"]; *see also Winn*, 499 F Supp 2d at 398; *In re Harbinger Capital Partners Funds Investor Litig.*, 2013 WL 5441754, *22, 2013 US Dist LEXIS 142268, *74-75 [SD NY, Sept. 30, 2013, No. 12 Civ.1244(AJN)] [held that plaintiffs "failed to adequately plead wrongdoer control."].)  Accordingly, plaintiffs do not have standing to bring this derivative action pursuant to the fraud-on-the-minority exception.

4. Conduct Consists of *Ultra Vires* Acts

The fourth exception to the *Foss* rule allows a shareholder to bring a derivative action if the conduct consists of *ultra vires* acts.  However, "the exception applies only to **prospective** ultra vires acts." (*Levin v Kozlowski*, 13 Misc 3d 1236[A], *5 [Sup Ct, NY County 2006] [emphasis added], affirmed 45 AD3d 387 [1st Dept 2007].)  "[W]hen a shareholder seeks to bring a derivative action to recover damages for **past** *ultra vires* acts, the shareholder must demonstrate that the case qualifies under the fraud on the minority exception." (*In re Tyco*, 340 F Supp 2d at 102 [Quoting *Clark v Energia Global Intl. Ltd.* [2002] Bermuda LR 39 at 10-1 and *Smith v Croft (No 2)*, [1988] Ch 114 at 172–73 (Eng.)[10]].)

Here, plaintiffs allege that the "diverting of at least hundreds of millions of dollars of the Company's substantial funds to the personal interests of Defendant Kam and the other Company insiders or related parties associated with Cellenkos and Golden Meditech was plainly *ultra vires* conduct." (NYSCEF 2, Complaint ¶159.)  Because the alleged conduct complained of are past, as opposed to prospective, *ultra vires* acts,

---

[10] *See* NYSCEF 66, *Clark v Energia Global Intl. Ltd.* [2002] Bermuda LR 39 at 10-1 and *Smith v Croft (No 2)*, [1988] Ch 114 at 172–73 (Eng.).

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM
NYSCEF DOC. NO. 405

INDEX NO. 653598/2023
RECEIVED NYSCEF: 10/10/2025

plaintiffs must satisfy the fraud-on-the-minority exception in order to establish standing pursuant to the *ultra vires* exception.  As set forth above, plaintiffs fail to satisfy the fraud-on-the-minority exception to the *Foss* rule.[11]  Accordingly, plaintiffs also fail to allege the *ultra vires* exception.  (*See Winn*, 499 F Supp 2d at 398 ["[b]ecause plaintiff cannot establish fraud on the minority, his attempt to resort to the *ultra vires* exception is equally unavailing"]; *see also Aungst v Light*, 2020-Ohio-3347 (9th Dist), *P20 [2020] ["[b]ecause [plaintiff] has admittedly not pleaded fraud on the minority, her attempt to rely on the *ultra vires* exception fails."] [internal quotation marks and citation omitted].)

   5.   Interests of Justice

Plaintiffs coin the term 'Redress Principle' to invoke what other courts have referred to as the 'interests of justice exception' to the *Foss* rule.  (NYSCEF 202, Toube and Mokal aff ¶19.)  The interests-of-justice exception allegedly allows a derivative claim to proceed, even where plaintiff cannot establish "compliance with formalities," because "application of the Rule would leave the company without redress for the wrong allegedly done to it."  (*Id.*)  Though multiple English courts have referenced the interests-of-justice exception, there is no formal recognition of a fifth exception to the *Foss* rule or consensus that the interest of justice allows a plaintiff to circumvent the rule.

The proposition that there is a fifth exception to the *Foss* rule appears to find its origins in the *Foss* decision itself.  In the decision, the Court of Chancery noted that "the claims of justice would be found superior to any difficulties arising out of technical rules

---

[11] Again, plaintiffs concede that they "do not argue that [the fraud on the minority exception] applies."  (NYSCEF Doc. Nos., 210, 212, 213, 214, and 215, MOL at 30.)  Accordingly, plaintiffs concede that the *ultra vires* exception is also unavailable.

respecting the mode in which corporations are required to sue." (2 Hare at 492.[12])   The

*Foss* rule "is not an inflexible rule and it will be relaxed where necessary in the interest

of justice." (*Schultz v Reynolds*, 1992-93 CILR 59[13] [quoting dicta in *Edwards v*

*Halliwell (*[1950] 2 All ER at 1067.[14])  However, while these cases suggest that there

may be an exception to *Foss* rule when justice so requires, a number of later cases

have expressed skepticism and reluctance to recognize a fifth exception.

In *Prudential Assurance Co. v. Newman Indus. Ltd. (No.2)*, the Court of Appeal

said of the interests-of-justice exception that

> "[i]t is doubtful whether it is a practical test of an exception to the rule in [*Foss*] that the justice of the case requires the bringing of a derivative action . . .  Whatever may be the properly defined boundaries of the exception to the rule, the plaintiff before proceeding with his action ought at least to be required to establish a prima facie case that the company is entitled to the relief claimed and the action falls within the proper boundaries of the exception to the rule in *Foss*." ([1981] Ch 257 at 206 (Eng.)[15] [citations omitted]; *see also Smith v Croft,* [1988] Ch 114 at 185[16] [the Chancery Court expressing verbatim the sentiment set forth in *Prudential*].)

A year after the *Prudential* decision, Vice-Chancellor Sir Robert Megarry of the

High Court of Justice stated in *Estmanco (Kilner House) Ltd. v Greater London Council*

that

> "I do not think that it can simply be said that there is an exception from the rule whenever the justice of the case requires it. . . . The Court of Appeal [in *Prudential*] . . . observed that this was 'not a practical test' . . . and I would respectfully concur." (*In re* Tyco, 340 F Supp 2d at 102 [internal quotation marks omitted], quoting *Estmanco*, [1982] 1 All ER 437 (Eng.)[17].)

---

[12] *See* NYSCEF 59, *Foss v Harbottle* ([1843] 2 Hare 461 (Eng.).

[13] NYSCEF 249, *Schultz v Reynolds*, 1992-93 CILR 59.

[14] *See* NYSCEF 205, *Edwards v Halliwell (*[1950] 2 All ER at 1067 [NYSCEF pagination 292/1170].)

[15] *See* NYSCEF 63, *Prudential Assurance Co. Ltd. v Newman Indus. Ltd. (No. 2),* [1982] Ch 204 at 210-211 (Eng.).

[16] *See* NYSCEF 66, *Smith v Croft,* [1988] Ch 114 at 185.

[17] NYSCF 244, *Estmanco*, [1982] 1 All ER 437 (Eng.).

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM
NYSCEF DOC. NO. 405

INDEX NO. 653598/2023
RECEIVED NYSCEF: 10/10/2025

A similar sentiment was expressed by the Chancery Court in *Konamaneni v Rolls Royce (India) Ltd.* ([2002] 1 WLR 1269 at 1283 [Eng.]), where the court went as far as to say, "that after the *Prudential* case there is no justification for the assumption that there is a general exception to the rule in [*Foss*] where the interest of justice so require." (*In re Tyco Intl. Ltd.*, 340 F Supp 2d at 102.)

United States courts have expressed similar reluctance to extend the *Foss* rule beyond the four recognized exceptions. (*See City of Harper Woods.*, 589 F3d at 1304 ["[plaintiff] has not proven the existence of an 'interests of justice' exception to the *Foss* rule."]; *Davis*, 160 AD3d at 119 [plaintiff "has offered no Cayman Islands case in support of th[e] position" that the claim "go forward under the so-called fifth exception based on interest of justice."]; *In re Tyco*, 340 F Supp 2d at 102 ["I share the skepticism expressed by the Court of Appeal about the viability of a distinct interests of justice exception."]; *Winn*, 499 F Supp 2d at 397, n 39 [2007] [recognized that "[t]here has been some discussion in the case law of a 'fifth' exception for cases in which the interests of justice require a derivative action to proceed" but did not further discuss its application]; *Erie County Employees' Retirement Sys.*, 2012 WL 3100463, *7, 2012 US Dist LEXIS 105519, *27 ["[b]ased on the greater weight of legal authority, this Court is not persuaded that the courts of Bermuda would recognize an 'interest of justice' exception to the rule in [*Foss*]."].)

Having failed to allege facts sufficient to establish standing to bring this derivative action under Cayman Islands law, the action is dismissed. Since defendants' motions to dismiss are granted, the court need not reach defendants' other arguments.

Accordingly, it is

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL
CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No. 002 003 004 005 006

Page 19 of 20

19 of 20

FILED: NEW YORK COUNTY CLERK 10/10/2025 04:43 PM

NYSCEF DOC. NO. 405

INDEX NO. 653598/2023

RECEIVED NYSCEF: 10/10/2025

ORDERED that motions 002, 003, 004, 005, and 006 are granted; and it is further

ORDERED that the action is dismissed for lack of standing pursuant to CPLR 3211(a)(3).

| 10/10/2025 | | ANDREA MASLEY, J.S.C. |
|---|---|---|
| **DATE** | | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

653598/2023   MW GESTION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT GLOBAL CORD BLOOD CORPORATION ET AL vs. CELLENKOS INC. ET AL
Motion No.  002 003 004 005 006

Page 20 of 20

20 of 20